Catharine M. Tolson, Esq., SBN 271223
GOODMAN, NEUMAN, HAMILTON
100 Bush Street, Suite 1800
San Francisco, CA 94104
T: 415/705-0400
ctolson@gnhllp.com

Attorneys for plaintiff
STATE NATIONAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE NATIONAL INSURANCE COMPANY, a Texas corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMIR MOSTAFAVI, TRUSTEE OF THE NM FAMILY TRUST, Dated July 10, 2018; and SHLOMI ABITTAN, individually and dba Your Prime Contractor; and DOES 1-50,<br><br>Defendants. | Case No. 2:25-cv-7863<br><br>**STATE NATIONAL INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF** |

COMES NOW, STATE NATIONAL INSURANCE COMPANY ("SNIC" and/or "Plaintiff"), against AMIR MOSTAFAVI, TRUSTEE OF THE NM FAMILY TRUST, Dated July 10, 2018, and SHLOMI ABITTAN, individually and dba Your Prime Contractor, and DOES 1-50, and alleges as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff SNIC is now, and at all times mentioned in the Complaint was, a Corporation organized and existing under the laws of the State of Texas, with its principal place of business in Bedford, Texas.  SNIC is licensed to do

1

1    business in the State of California by the California Secretary of State and the

2    California Department of Insurance.

3        2.    Defendant Amir Mostafavi, Trustee of the NM Family Trust,

4    Dated July 10, 2018 ("Mostafavi") is an individual residing in Los Angeles

5    County, California, and the legal owner of the real property located at 1407

6    Monte Grande Pl., Pacific Palisades, California 90272 (the "Property").

7        3.    Defendant Shlomi Abittan is an individual residing in Los

8    Angeles County, California, who also conducts business as a dba sole

9    proprietorship Your Prime Contractor, which business is also domiciled in

10    California.

11        4.    The true names and capacities of defendants named herein as

12    DOES 1 through 50 are unknown to Plaintiff at this time. Plaintiff sues said

13    defendants by such fictitious names and will seek leave to amend this

14    Complaint to allege their true names and capacities when ascertained.  Plaintiff

15    is informed and believes and based thereon alleges that each DOE Defendant is

16    in some manner liable for the events and actions alleged herein.

17        5.    The controversy for which SNIC requests a declaratory judgment

18    involves parties who are subject to the diversity jurisdiction of this court and

19    the amount in controversy exceeds the jurisdictional limitations set forth in 28

20    U.S.C. §1332.  "In actions seeking declaratory or injunctive relief, it is well

21    established that the amount in controversy is measured by the value of the

22    object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S.

23    333, 347 (1977).  Here, the objects of this litigation are the measure of

24    damages sought by Defendant in the Underlying Action, which are alleged to

25    be $317,198.  These sums are in excess of the monetary threshold set out in 28

26    U.S.C. § 1332(a).

27        6.    Separately, this Court has jurisdiction over this declaratory

28    judgment action pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C.

COMPLAINT                                        CASE NO. 2:25-CV-7863

§§ 2201 and 2202, which grant the United States District Courts jurisdiction to declare the "rights and other legal relations of any interested party making such a declaration, whether or not further relief is or could be sought."

## VENUE

7.    Venue is proper in the Central District of California in that Defendant is subject to personal jurisdiction in this district at the time this action is commenced (28 U.S.C. §1391(c)) and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## SUMMARY OF THIS ACTION

8.    SNIC brings this action for a declaration concerning the rights and the obligations of the parties under commercial general liability policy number NXTYHC6TE9-01-GL, effective August 4, 2022 through August 4, 2023 (the "Policy"), issued to individual/sole proprietor Shlomi Abittan/Your Prime Contractor, with respect to an underlying construction suit titled *Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018 v. Your Prime Contractor, Inc. dba Prime Construction, et al.,* Superior Court of California for the County of Los Angeles, Case No. 23SMCV05401 (the "Underlying Action")(a true and correct copy of the Complaint in that Action is attached hereto as **Exhibit A**).

9.    SNIC seeks an order of declaratory relief that there is no coverage available for Shlomi Abittan dba Your Prime Contractor ("Shlomi") or Mostafavi for the Underlying Action under the Policy because:

(1) The Policy at issue was cancelled prior to commencement of work on the project at issue in the Underlying Action, and therefore there could be no "property damage" caused by an "occurrence" during the policy period;

(2) Even if the Policy were in effect for any portion of the work performed, SNIC insures only individual and sole proprietor Shlomi

1    Abittan dba Your Prime Contractor.   The construction contract under

2    which Defendant seeks to recover its damages was entered into as

3    between Defendant and Your Prime Contractor, Inc., with work

4    performed under Your Prime Contractor, Inc.'s contractors license

5    number 1031676.   Your Prime Contractor, Inc. is not an insured under

6    the SNIC Policy; and

7    (3) Even if the Policy were in effect for any portion of the work, and

8    even if its insured did perform work on the project, the business risk

9    exclusions on the Policy operate to preclude coverage because any

10   potential property damage would be property damage to "your work"

11   which is specifically precluded under the Policy.

12                          **FACTUAL RECITALS**

13   10.    The Underlying Action alleges that on or about July 26, 2023,

14   Defendant entered into a Home Improvement Contract with "Your Prime

15   Contractor, Inc. dba Prime Construction" (Exhibit A ¶ 35.)   Thereafter, a

16   number of change orders were allegedly issued broadening the scope of work

17   under the original contract.   The scope of the ultimate project was remodel of a

18   master bathroom, a jack and jill bathroom, a third upstairs bathroom, epoxy to

19   garage flooring, and demolition and installation of a waterproof balcony (the

20   "Project".)

21   11.    The Underlying Action repeatedly alleges that work on the Project

22   began on August 4, 2023. (Exhibit A ¶ 56, 93, 120, and 124.)

23   12.    The Policy was non-renewed effective August 4, 2023 at 12:01

24   AM Pacific Standard Time.   Accordingly, the Policy was not in effect at the

25   time work began on the Project (A true and correct copy of that Non-Renewal

26   Notice is attached herein as **Exhibit B**).

27   13.    Ultimately, Defendant filed the Underlying Action against Your

28   Prime Contractor, Inc. dba Your Prime Construction, a corporation, David

                                    4

NMN Abittan, individually, Shlomi Abittan, individually, Pron Aharon Avitan, individually, Shay Yefet individually, and Business Alliance Insurance Company.    Defendant alleges Fraud (intentional misrepresentation, concealment, and false promise), Violation of Business and Professions Code, Negligence, Breach of Written Contract, Breach of Oral Contract, Breach of Good Faith and Fair Dealing, Negligent Interference with Prospective Economic Relations, Conversion, Negligent Misrepresentation, and Breach of Third Party Beneficiary Contract.

14.    The Underlying Action was tendered to SNIC for defense and indemnity, and SNIC denied coverage to its insured, Shlomi Abittan, on April 24, 2024, on the basis that the Project did not start until after the Policy expired.

15.    SNIC understands that a Request for Default has been entered against Your Prime Contract, Inc. in the Underlying Action, and Defendant believes he is entitled to recover directly from SNIC under the Policy pursuant to Insurance Code Section 11580 for that default.    SNIC understands that Shlomi Abittan has appeared in the Underlying Action.

**FIRST CAUSE OF ACTION**
**DECLARATORY RELIEF**
**(Against All Defendants)**

16.    SNIC re-alleges, and incorporates by reference as though set forth in full, each and every allegation contained in Paragraphs 1 through 15 of the Complaint.

17.    SNIC seeks an order of declaratory relief that there is no insurance available under the Policy for the Underlying Action because:

(1) The SNIC Policy at issue was cancelled prior to commencement of work on the Project, and therefore there could be no "property damage" caused by an "occurrence" during the policy period.  The Underlying Action repeatedly alleges that work on the Project began on August 4,

2023. (Exhibit A ¶ 56, 93, 120, and 124.)    The SNIC Policy was non-renewed effective August 4, 2023 at 12:01 AM Pacific Standard Time. Accordingly, the Policy was not in effect at the time that work began on the Project.

(2) Even if the Policy were in effect for any portion of the work performed, SNIC insures only individual and sole proprietor Shlomi Abittan dba Your Prime Contractor.  The construction contract under which Defendant seeks to recover its damages was entered into as between Defendant and Your Prime Contractor, Inc., with work performed under Your Prime Contractor, Inc.'s contractors license number 1031676.  (Exhibit A ¶ 35.)  Your Prime Contractor, Inc. is not an insured under the SNIC Policy. (Exhibit B.)

(3) Even if the Policy were in effect for any portion of the work, and even if its insured did perform work on the project, the business risk exclusions on the Policy operate to preclude coverage because any potential property damage would be property damage to "your work" which is specifically precluded under the Policy.

The Insuring Agreement on the Policy states:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM SECTION I – COVERAGES COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

***

2.    Exclusions

COMPLAINT                                          CASE NO. 2:25-CV-7863

This insurance does not apply to:

\*\*\*

**j.    Damage To Property**

"Property damage" to:

\*\*\*

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**k.    Damage To Your Product** "Property damage" to "your product" arising out of it or any part of it.

**l.    Damage To Your Work** "Property damage" to "your work" arising out of it or any part of it and included in the "Products completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage To Impaired Property Or Property Not Physically Injured** "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

**n. Recall Of Products, Work or Impaired Property** Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**    "Your product";

**(2)**    "Your work:; or

**(3)**    Impaired property; If such product, work, or property is withdrawn or recalled from the market or

7

from use by any person or organization because of a known or suspected defect, deficiency inadequacy or dangerous condition in it.

The Policy contains the following relevant definitions:

SECTION V – DEFINITIONS

\*\*\*

**8.** "Impaired property" mean tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement; If such property can be restored to sue by the repair, replacement, adjustment, or removal of "your product" or "your work" or your fulfilling the Terms of the contract or agreement liability means a liability that would be imposed by law in the absence of any contract or agreement.

\*\*\*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has yet been completed or abandoned.

**17.** " Property damage" means:

    **a**. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically

8

injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

**21**. "Your product":

    **a.**   Means:

        **(1)**   Any goods or products, other than real property, manufactured, sold handled, distributed or disposed of by:

            **(a)**   You;

            **(b)**   Other trading under your name; or

            **(c)**   A person or organization whose business or assets you have acquired; and

        **(2)**   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**   Includes:

        **(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)**   The providing of or failure to provide warnings or instructions

**22**. "Your work":

    **a.**   Means:

        **(1)**   Work or operations performed by you or on your behalf; and

        **(2)**   Materials, parts or equipment furnished in connection with such work or operations.

18. Further, SNIC understand that Mostafavi has taken default judgment of Your Prime Contractor, Inc. in the Underlying Action, and believes he is entitled to recover directly from SNIC under the Policy pursuant to Insurance Code Section 11580.

///

///

19. While 11580(b)(2) does entitle a judgment creditor to bring an action against an insurer to recover final a judgment against an insured, Your Prime Contractor, Inc. is not an insured under the Policy.

20. In order to recover on the judgment under section 11580, Defendants must prove that: "1) [they] obtained a judgment for bodily injury, death, or property damage, 2) the judgment was against a person insured under a policy that insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal, 3) the liability insurance policy was issued by the defendant insurer, 4) the policy covers the relief awarded in the judgment, [and] 5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California and insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal." (*Wright v. Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998, 1015, 14 Cal.Rptr.2d 588.)

21. First, there has been no final judgment entered against SNIC's insured in the Underlying Action and therefore Defendant has not met the threshold prerequisites to seek recovery under the SNIC Policy pursuant to Insurance Code 11580. The only default taken is as against Your Prime Contractor, Inc., who is not a named insured.

22. Even if a final judgment were entered in the Underlying Action, Mostafavi will have the burden of proof to establish that any final judgment is covered under the Policy. Defendants will be unable to meet that burden for all of the foregoing reasons.

23. Based on these facts, there is no insurance available under the Policy for either Shlomi or Mostafavi. An actual controversy has arisen over the lack of insurance coverage under the Policy, and SNIC requests a judicial

COMPLAINT                                                    CASE NO. 2:25-CV-7863

declaration that there is no coverage under the Policy for the reasons stated above.

## **PRAYER FOR RELIEF**

WHEREFORE, SNIC respectfully prays for relief as follows:

1.    On its First Cause of Action, a declaratory judgment that of not coverage under the Policy for the Underlying Action; and

2.    For costs of suit, to the extent permitted by law; and

3.    For such other and further relief as the Court may deem just and proper.

Dated:    August 21, 2025        GOODMAN, NEUMAN, HAMILTON, LLP

*/s/ Catharine M. Tolson*

By: _____
Brandt L. Wolkin, Esq.
Catharine M. Tolson, Esq.

Counsel for Plaintiff
STATE NATIONAL INSURANCE
COMPANY

# EXHIBIT A

# EXHIBIT A



1  AMIR MOSTAFAVI, ESQ. (SBN: 282372)
2  **MOSTAFAVI LAW GROUP, APC**
   528 Palisades Dr., Suite 220
3  Pacific Palisades, CA 90272
   Telephone: (310) 849-2030
4  Facsimile: (310) 473-2222
   amir@mostafavilaw.com
5
6  *Attorneys for Plaintiff Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018*

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/15/2023 11:10 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By I. Valencia, Deputy Clerk

7             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8             **COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION**

9  AMIR MOSTAFAVI, TRUSTEE OF THE       **COMPLIANT FOR: 23SM CV05401**
10 NM FAMILY TRUST, Dated July 10, 2018,

11                                      1. **FRAUD - INTENTIONAL**
                  Plaintiff,              **MISREPRESENTATION**
12                                      2. **FRAUD - CONCEALMENT**
          vs.                           3. **FRAUD - FALSE PROMISE**
13                                      4. **VIOLATION OF BUSINESS AND**
   YOUR PRIME CONTRACTOR, INC. DBA       **PROFESSIONS CODE SECTION**
14 PRIME CONSTRUCTION; a corporation;   5. **NEGLIGENCE**
   DAVID NMN ABITTAN, an individual;    6. **BREACH OF WRITTEN CONTRACT**
15 SHLOMI ABITTAN, an individual; ORON  7. **BREACH OF ORAL CONTRACT**
   AHARON AVITAN, an individual; SHAY   8. **BREACH OF COVENANT OF GOOD-**
16 YEFET, an individual, BUSINESS         **FAITH AND FAIR DEALING**
   ALLIANCE INSURANCE COMPANY.          9. **NEGLIGENT INTERFERENCE WITH**
17 DOES 1-30; inclusive,                  **PROSPECTIVE ECONOMIC RELATIONS**
18                                      10. **CONVERSION**
                  Defendants.          11. **NEGLIGENT MISREPRESENTATION**
19                                     12. **BREACH OF THIRD PARTY**
20                                         **BENEFICIARY CONTRACT**
21
22                                          DEMAND FOR JURY TRIAL
23

24     Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018, ("Plaintiff"), hereby

25 brings this Complaint against defendants YOUR PRIME CONTRACTOR, INC. DBA PRIME

26 CONSTRUCTION; a corporation; DAVID NMN ABITTAN, an individual; ORON AHARON

27 AVITAN, an individual; SHAY YEFET, an individual; BUSINESS ALLIANCE INSURANCE

28 COMPANY and DOES 1-30, inclusive, on information and belief alleges as follows:

                                      1
                               COMPLIANT

## NATURE OF THE ACTION

1.    This action is between the plaintiff homeowner one hand, and the home improvement contactor, its owners and its employees on the other hand who, *inter alia*, fraudulently induced the plaintiff into a home improvement contract, increased the contract price in multiple times, failed to complete the work as promised after receiving $44,500.00, and abandoned the work when the homeowner refused to pay more before they finish the work causing substantial damages including but limited to loss of rental income. The demand of additional payment was not only was unjust and unlawful, but also was prohibited under the terms of the home improvement contract that provided:

**IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NIT YET COMPLETED OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWN PAYMENT.**

Plaintiff seeks to hold Contractor Defendants accountable for their bad advice and construction services and the Plaintiff seek, among other things, the cost of completion of the work abandoned by Contractor Defendants, restitution of the money they received, and payment of loss of rental income, and the diminished value of their property as the result of their defective work.

## THE PARTIES

2.    Plaintiff NM Family Trust, through and by its trustee Amir Mostafavi, who is 65 years of age or older and is considered as a "Senior citizen" under Business & Professional Code Section 7150(b) and is the legal owner of the property located at 1407 Monte Grande Pl., Pacific Palisades, California 90272. (the "PROPERTY")

3.    On information and belief, Defendant YOUR PRIME CONTRACTOR, INC. DBA PRIME CONSTRUCTION, ("PRIME CONSTRUCTION") is a construction company engaged, as a home improvement contractor as defined under Business & Professional Code Section 7150.1 a home improvement contractor shall satisfy all requirements imposed by this article. in the County of Los Angeles and State of California, a CONTRACTOR under Bus & Prof C §§7026, and 7026.1 possessing a B - General Building Contractor and C-54 - Ceramic and Mosaic Tile Contractor licenses under the License # 1031676.  (Exhibit A)

4.    On information and belief, Defendant DAVID NMN ABITTAN, is the PRIME CONSTRUCTION's CEO, Secretary, CFO, Director, and Agent for Service of Process, is an individual who, under Bus & Prof C §7026, as a CONTRACTOR is at all times relevant, resided and did business in the County of Los Angeles and State of California who undertakes to or offers

2

COMPLIANT

Exhibit A, page 2

to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, or the cleaning of grounds or structures in connection therewith, or the preparation and removal of roadway construction zones, lane closures, flagging, or traffic diversions, or the installation, repair, maintenance, or calibration of monitoring equipment for underground storage tanks, and whether or not the performance of work herein described involves the addition to, or fabrication into, any structure, project, development or improvement herein described of any material or article of merchandise. "Contractor" includes subcontractor and specialty contractor.

5.     On information and belief, Defendant SHLOMI ABITTAN is an individual who, at all times relevant, resided and did business in the County of Los Angeles and State of California. On information and belief, SHLOMI ABITTAN and DAVID NMN ABITTAN are related, separate individuals, or might be the same individuals.

6.     On information and belief, Defendant ORON AHARON AVITAN, is an individual who, at all times relevant, resided and did business in the County of Los Angeles and State of California, who is also a CONTRACTOR under Bus & Prof C §7026.

7.     On information and belief, Defendant SHAY YEFET, is an individual who, at all times relevant, resided and did business in the County of Los Angeles and State of California, who worked for PRIME CONSTRUCTION, DAVID NMN ABITTAN, and ORON AHARON AVITAN as a "Home improvement salesperson" under Bus & Prof C §7152(a), which required him to be registered under the California Business and Professions Code, Chapter 9. Contractors [Sections 7000 - 7191] in order to be engaged in the business of soliciting, selling, negotiating, or executing contracts for home improvements, for the sale, installation or furnishing of home improvement goods or services, on behalf of Defendant PRIME CONSTRUCTION.

8.     Plaintiff is informed and believes and thereupon alleges that Defendant BUSINESS ALLIANCE INSURANCE COMPANY was, at times relevant herein, a California corporation with its principle place of business in the State of California. Plaintiff is further informed and believes and thereupon alleges that Defendant BUSINESS ALLIANCE INSURANCE COMPANY was the license bonding company for Defendant PRIME CONSTRUCTION as it acted as described herein.

3

COMPLIANT

9.      Plaintiff is informed, believes, and thereon alleges that the true names and capacities, whether individual, corporate, associate, or otherwise of all defendants named herein as DOES 1 through 30 are unknown to Plaintiff at this time.  Plaintiff, therefore, sues said defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1-30 when their names are ascertained.

10.     Plaintiff is informed, believes, and thereon alleges that each of the DOE defendants is in some manner liable to Plaintiff for the events and actions alleged herein. Unless otherwise specified by name, Defendants PRIME CONSTRUCTION, DAVID NMN ABITTAN, ORON AHARON AVITAN, SHAY YEFET and DOES 1 through 30, will be collectively referred to "Contractor Defendants".

11.     Plaintiffs Plaintiff is informed, believes, and thereon alleges that at all times, defendants were acting as an agent, joint venture, integrated enterprise, and/or alter ego for each of the other defendants and each was a co-conspirator with respect to the acts and the wrongful conduct alleged herein so that each is responsible for the acts of the other in connection with the conspiracy in such wrongful acts in connection with the other defendants.

12.     Plaintiff is informed, believes, and thereon alleges that defendants were acting partly within and partly without the scope and course of their employment, and were acting with the knowledge, permission, consent, and ratification of every other Defendant.

### AGENCY ALLEGATIONS

13.     Plaintiff is informed, believes and thereon alleges that that at all relevant times herein, each named defendant and DOES 1-30, were the partner, officer, director, agent, employee, servant and/or representative of other defendant and DOES 1-30, and in doing the things as alleged in this Complaint were acting within the course, scope, and/or authority of such agency, service, employment, partnership and/or joint venture, and with the consent, knowledge, approval and ratification of defendants.

14.     Plaintiff is informed, believes and thereon alleges that defendants at all relevant times herein:

a.      Defendant PRIME CONSTRUCTION is a corporation under the Entity (File) Number: C4048081 with the California Secretary of State.

b.      Defendant DAVID NMN ABITTAN is the co-owner and co-managing operator of PRIME CONSTRUCTION and a contractor as defined in Bus & Prof C §7026.

4

COMPLIANT

c.      Defendant ORON AHARON AVITAN is the co-owner and co-managing operator of PRIME CONSTRUCTION.

d.      Defendant SHAY YEFET is a Home improvement salesperson under Bus & Prof C §7152(a) for PRIME CONSTRUCTION, DAVID NMN ABITTAN, and ORON AHARON AVITAN.

e.      Each Defendant exercised and/or employed indirect control over the hiring, supervision, compliancy with California laws and regulations, and overall performance of terms and conditions of the HOME IMPROVEMENT CONTRACT. (*infra*)

f.      Authorized, directed, sanctioned, consented, cooperated, approved, aided, instigated, assisted, participated in, made the decision to, and/or voted for hiring, retaining, firing, supervising, and controlling the operations of the contractors, subcontractors, employees, and service providers, regardless whether directly employed or retained as independent contractors for purposes of compliance with California law in general and California Department Of Consumer Affairs Contractors State License Board.

g.      Authorized, directed, sanctioned, consented, cooperated, approved, aided, instigated, assisted, participated in, made the decision to, and/or voted for the acts, or omission of acts, as alleged in this Complaint, and incorporated herein by reference;

h.      Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control was in violation of the applicable laws and applicable regulations, and he/she/it failed to take or order appropriate action to remedy and/or avoid the violation of the applicable ordinance(s) as alleged in this Complaint, and incorporated herein by reference;

i.      Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control caused defendants and DOES 1-30 to violate the applicable laws, and he/she/it failed to take or order appropriate action to remedy and/or avoid the violation of the applicable laws by defendants and DOES 1-30 as alleged in this Complaint, and incorporated herein by reference;

j.      Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control was injuring Plaintiff and he/she/it failed to take or order appropriate action to avoid harm;

k.      Furthered the conspiracy by cooperation with *or* lent aid and encouragement to or ratified and adopted the acts of defendants and DOES 1-30 including, but not limited to, their refusal and failure to perform as required by the HOME IMPROVEMENT CONTRACT. (*infra*)

5

COMPLIANT

Exhibit A, page 5

**ALTER EGO ALLEGATIONS**

15.    Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned, defendants and DOES 1-30 were the alter ego of the remaining defendants and DOES 1-30, and as hereinafter alleged, were acting for their own benefit and/or the benefit of one or more of the remaining defendants.

16.    Plaintiff is informed, believes and thereon alleges that there exists a unity of ownership and interest, between one or more defendants and DOES 1-30 herein, such that any individuality and separateness between said defendants has ceased, and the said other defendants, and each of them, was at all times relevant to Plaintiff's claims, the alter ego of and all other defendants.

17.    Plaintiff is informed, believes and thereon alleges that the Court's adherence to the fiction of the separate existence of any or all defendants and DOES 1-30 as entities distinct from the other defendants and DOES 1-30 would permit an abuse of the corporate privilege, would sanction fraud and/or promote injustice in that said defendants and DOES 1-30 have defaulted on their individual and collective obligations to Plaintiff under California law.

18.    Plaintiff is informed, believes and thereon alleges that defendants and DOES 1-30 herein were an entity which is, and at all times herein mentioned was, controlled, dominated, and operated by one or more of the other defendants and in that the activities and business of the other Defendants was carried on without or with the holding of directors and/or shareholders meetings and records or no records and/or minutes of any corporate preceding were maintained.

19.    Plaintiff is informed, believes and thereon alleges that one or more of defendants and DOES 1-30 herein, and all other business entity defendants herein, is and at all times herein mentioned was a mere shell and sham without the requisite capital and assets. Thus, said all other business entity defendants herein, is and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by defendants and DOES 1-30, said capitalization was inadequate to do business properly and legally under California law.

20.    On information and belief, at all relevant times herein, defendants and DOES 1-30 were subject to the laws of the State of California.

**JURISDICTION AND VENUE**

21.    Pursuant to Article VI § 10 of the California Constitution, Subject Matter Jurisdiction is proper in the Superior Court of California, County of Los Angeles, State of California.

22.    Pursuant to California Code of Civil Procedure § 395, venue is proper in the Superior Court of California for the County of Los Angeles, State of California, because this is where defendants'

6

COMPLIANT

1   headquarters and principal place of business is located, and it is where the wrongful misconduct

2   alleged herein originated.

3                              **GENERAL ALLEGATIONS**

4   23.    Plaintiff purchased the PROPERTY, a two-story property in Pacific Palisades Highland, an

    affluent neighbored Los Angeles, California in or about June 3, 2021 as a rental property. Plaintiff

5   leased the PROPERTY shortly on June 25, 2021.

6   24.    Plaintiff is informed, believes and thereon alleges that the PROPERTY was assessed with

7   fair market monthly lease amount of $20,000 by the real estate professionals in July 2022.

8   25.    Plaintiff is informed, believes and thereon alleges that in December 2022, the PROPERTY

9   suffered damages from the water leaks caused by soft blockage in master bathroom on the second

10  floor of the PROPERTY.

11  26.    Plaintiff is informed, believes and thereon alleges that after performing cleanup & dry out

    and water mitigation in accordance with standards & guidelines (IICRC S-500/520) including, but

12  not limited to, the removal of the affected/damaged building materials in master bathroom and

13  kitchen, Plaintiff desired to to restore the master bathroom and kitchen to its original conditions

14  before the water damages.

15  27.    Plaintiff is informed, believes and thereon alleges that on or about July 23, 2023, Plaintiff

16  entered onto a service contract with a licensed contractor for a complete painting of the

17  PROPERTY starting August 3, 2023 for $17,000 in total including labor and material with a down
    payment of $1,000.

18  28.    In or about July 2023, Plaintiff learnt about PRIME CONSTRUCTION through their online

19  advertising and marketing campaigns promoting itself as a general contractor for home, bathroom,

20  and kitchen remodeling under www.remoelingforless.com website.

21  29.    On or about July 26, 2023, Plaintiff met with PRIME CONSTRUCTION's sales person

22  SHAY YEFET when he visited the PROPERTY, where Plaintiff told him that the PROPERTY is

23  rental property and discussed with him his desire to remodel the Property and that the time of the

24  essence and the work must be completed with maximum exigency to avoid the loss of rental

    income.

25  30.    SHAY YEFET told Plaintiff about a variety of remodeling options, however, Plaintiff

26  informed him that he needs only remodeling of the master bathroom and nothing else. During the

27  same visit, Plaintiff explicitly informed SHAY YEFET that a painting contractor has been already

28  retained and remodeling of the master bathroom is the only work that is needed.

COMPLIANT

31.     SHAY YEFET presented to Plaintiff that if PRIME CONSTRUCTION is retained for the remodeling of the bathroom, PRIME CONSTRUCTION essentially act as a contractor, designer, and project manager rolled into one.

32.     SHAY YEFET also presented himself as knowledgeable and experienced based on other projects that he had built so that Plaintiff would believe that he was capable of providing such services and acting in such capacity. In this regard, SHAY YEFET stated that PRIME CONSTRUCTION had many years of experience and that it had a crew of excellent, licensed subcontractors who he would have work on the project.

33.     DAVID NMN ABITTAN and ORON AHARON AVITAN never said anything to contradict SHAY YEFET's statements and representations regarding PRIME CONSTRUCTION's knowledge, experience, or qualifications.

34.     Based on SHAY YEFET's statements, representations, and omissions, Plaintiff entered into written agreements with PRIME CONSTRUCTION for them to remodel the master bathroom.

35.     Plaintiff is informed, believes and thereon alleges that on behalf of Defendant, SHAY YEFET signed a home improvement contract ("HOME IMPROVEMENT CONTRACT") under B&P §7151.2 for the repairing, remodeling, altering, converting, or modernizing of the master bathroom on July 26, 2023.

36.     Plaintiff is informed, believes and thereon alleges that the HOME IMPROVEMENT CONTRACT provided for remodeling the master bathroom for $25,000. The CONTINUATION/ADDENDUM page described the work as:

a.     Clear area for the start of work and preparation for work;
b.     Demo shower wall and make it up-to-date;
c.     Prepare the flooring in the shower, toilet, and vanity area for tiling, and install tiles;
d.     Fix the ceiling and update the recess lights, speakers, and relocate the fans, and install new fans;
e.     Prepare outlets/switches and make them up-to-date with the code;
f.     Install toilet water and drainage connections and follow the code;
g.     Prepare the vanity area and install the new vanity and mirrors;
h.     Prepare the shower area and install the shower door and fixed glass;
i.     Install bathroom faucets for the vanity, shower, and the tub;
j.     Tiles around the shower, bathroom, and vanity areas on the wall.

37.     The CONTRACT CHANGE ORDER page of the HOME IMPROVEMENT CONTRACT provided that materials will be purchased by the owner and paid by the contractor up to $4,000. The total price of $25,000 includes all labor and materials for up to $4,000. Any cost exceeding

8

COMPLIANT

Exhibit A, page 8

1    $4,000 for shower glass, vanity, mirror, toilet, faucets and tiles ("FINISHED MATERIALS"), will

2    be paid by the owner in addition to $25,000. (Exhibit B)

3    38.    After expiration of the Three-Day Cancellation Notice, Plaintiff made the down payment of

4    $1,000 on August 2, 2023. (Exhibit C)

5    39.    On August 1, 2023, Plaintiff met with SHAY YEFET and Julio (Last name unknown, an

6    individual brought, who is believed to be an unlicensed sub-contractor working for PRIME

7    CONSTRUCTION again at the PROPERTY to review the work as specified in the HOME

8    IMPROVEMENT CONTRACT before the start.

9    40.    During the walk-through, SHAY YEFET induced Plaintiff to cancel the contract with other

painting contractor and replaced with PRIME CONSTRUCTION instead.

10   41.    SHAY YEFET demanded to increase the contract price by $68,300 from $21,000 labor

11   (excluding $4,000 allocated for the FINISHED MATERIALS) to $89,300 claiming that expanded

12   scope of the work beyond the remodeling of the master bathroom requires the increase of the

13   contract price and shorten the time to complete the work if PRIME CONSTRUCTION does all the

     work instead of multiple contractors.

14   42.    In reliance to the representations by SHAY YEFET on behalf of the PRIME

15   CONSTRUCTION, Plaintiff agreed to amend the HOME IMPROVEMENT CONTRACT that

16   included higher price for additional work. ("FIRST AMENDED HOME IMPROVEMENT

17   CONTRACT") (Exhibit D)

18   43.    Under the FIRST AMENDED HOME IMPROVEMENT CONTRACT, it was also agreed

19   that the finished material remain limited to vanity, faucets, valves, floor tiles, wall tiles, shower

     glass, door levers, locks, mirrors, toilets, and tubs.

20   44.    On behalf of PRIME CONSTRUCTION, SHAY YEFET agreed the work starts by August

21   4, 2023. SHAY YEFET verbally promised that if Plaintiff give PRIME CONSTRUCTION the

22   additional work, PRIME CONSTRUCTION would complete the entire work within 4-6 weeks, but

23   no later than September 15, 2023.

24   45.    The FIRST AMENDED HOME IMPROVEMENT CONTRACT also itemized prices for

25   work or services to be perform provided with the following payment schedule:

26   a.    Down payment: $2,000, which exceeded the lesser of $1,000 or 10% of the contract price

     of $89,300.

27   a.    Upon Start of job: $17,500

28   b.    Electrical and Plumbing: $10,000

COMPLIANT

1   c.     Tiling: $10,000

2   d.     Balcony: $10,000

     e.     Painting: $10,000

3   f.     Door knobs, levers, recess lights. switches: $19,500

     g.     Completion of work in entirely: $10,300

4   46.     On August 4, 2023, Plaintiff authorized the payment of $18,500 with a credit card. PRIME

5   CONSTRUCTION charged $19,147.50, which was more than authorized amount. (Exhibit E)

6   47.     On August 7, 2023, PRIME CONSTRUCTION through its home improvement

7   salesperson, SHAY YEFET, demanded the second increase to the contract price by $10,000 from

8   $89,300 to $93,300 for changing the toilet area in the Jack & Jail Bathroom to shower, relocating

9   toilet to the side of vanity, removing the existing tub and replace it with new tub in the small

     bathroom, and add recess lights in the small bathroom. ("SECOND AMENDED HOME

10  IMPROVEMENT CONTRACT") (Exhibit F)

11  48.     Under SECOND AMENDED HOME IMPROVEMENT CONTRACT, the payment

12  schedule was changed as shown in Exhibit F:

13  a.     down payment: $1,000

     b.     upon the start of job: $18,500

14  c.     upon plumbing and electrical: $10,000

15  d.     upon tile: $10,000

     e.     upon balcony demo: $10,000

16  f.     upon hot mop: $10,000

17  g.     upon paint: $16,000

18  h.     upon fixtures installation: $14,500

     i.     upon completion: $7,300

19  49.     On August 8, 2023, SHAY YEFET demanded another increase to the contract price by

20  $9,000 from $93,300 to $102,300 to install one tub and to create framing for two tile tubs,

21  installation of tiles for tile tubs and shower for the master bathroom, Jack & Jill bathroom, and

22  guest bathroom on floors and walls. ("THIRD AMENDED HOME IMPROVEMENT

     CONTRACT) (Exhibit G)

23  50.     The payment schedule for the THIRD AMENDED HOME IMPROVEMENT

24  CONTRACT) was modified to show:

25  a.     down payment: $1,000

26  b.     upon the start of job: $18,500

     c.     upon plumbing and electrical: $15,000

27  d.     upon start tile: $15,000

28  e.     upon balcony demo + start uator proofing: $10,000

10

COMPLIANT

Exhibit A, page 10

f.      upon hot mop: $10,000

g.      upon start paint: $15,000

h.      upon fixtures installation: $11,300

i.      upon completion: $6,500

51.     Under the THIRD AMENDED HOME IMPROVEMENT CONTRACT, PRIME CONSTRUCTION agreed that for $102,300 to complete the followings:

a.      Complete Remodeling of the Jack & Jill Bathroom (J&J) – similar to the master bathroom including demolition of old tiles, clearing and preparing the area to start the work; installing tiles in the bathroom, installing faucets and vanity; upgrading the electrical to the code including recess lights, replacement of the fans, electrical switches, plugs, outlets in the bathroom area; installation of toilet, drainage pipes, installation of the new vanity and mirrors, glass shower doors, bathroom faucets and tiles on bathroom walls up to ceiling. The agreement provided the Owner is responsible for supplying the vanity, faucets, shower glass, shower head, and tiles for the remodeling of the J&J bathroom.

b.      All interior painting for walls, ceilings, doors, windows, balcony, and railings;

c.      Install waterproof balcony after demolishing existing tiles down to the plywood, sealing up with waterproofing, patching, and painting of the stucco; painting the railing, and restoration of the double door with patching and painting;

d.      Replace and install all door levers, handles, locks, deadbolts, and hinges, reinstalling existing recess lights, switches, plugs, smoke detectors, and fans;

e.      3rd Bathroom (Upstairs) – refinish existing remodeling of the bathroom, installing the vanity, toilet, finishing tiles, drywalls, fans, door, drainage, faucets, and head shower;

f.      Application of epoxy to the garage flooring.

(Exhibit H)

52.     To avoid another Three-Day-Right-to-Cancel applies, SHAY YEFET required Plaintiff to back date the modified agreements as July 26, 2023, when the initial contract was signed.

53.     On August 14, 2023, Plaintiff made the third payment of $14,352.50 (Check #1060) and forth payment of $10,000 on August 18, 2023 (Check #1061) to PRIME CONSTRUCTION for total payment of $44,500 for the work provided by the HOME IMPROVEMENT CONTRACT, and its three amendments.

54.     On August 17, 2023, based on the recommendation by the PRIME CONSTRUCTION, Plaintiff purchased a tub to be installed in the guest bathroom at $382.16. Later on, it turned out that the tub was not suitable for the work causing Plaintiff to purchase another tub at much higher price including the expedited shipping to avoid any delay to the work. PRIME CONSTRUCTION failed to return the unused tub to store, but had agreed to credit Plaintiff $382.16 for its costs.

55.     PRIME CONSTRUCTION hired WE CARE DECK COATING as a subcontractor for the work on the balcony. When work was completed, on or about August 20, 2023, Plaintiff notified

11

COMPLIANT

PRIME CONSTRUCTION that the rain water rain water remains at the balcony because of defective slope. Plaintiff met with the owner of the WE CARE DECK COATING and showed the rain water that remained on the balcony. PRIME CONSTRUCTION and WE CARE DECK COATING refused to correct the work defect, but instead issued a justification (Exhibit I)

56.     On September 23, 2023, Plaintiff notified PRIME CONSTRUCTION regarding the issues and requested immediate action. The letter provided that:

**Loss of Rental Income due to delayed completion of the work** - The Owner entered into the Agreement [HOME IMPROVEMENT CONTRACT] and its subsequent amendments with the expectation that the work will be finished no later than 6 weeks from the start day of August 4, 2023, or September 15, 2023, which was a week ago.  It was made clear to The Agent, on multiple occasions and you and your partner David that the Property is for rent, and because time is of the essence, any delay of the completion would result in loss of income. As you can see from the attached pictures taken on Friday, September 22. 2023, little progress has been made so far despite receiving $44,000, or approximately 44% of the total amount. Please note that delayed completion of the work results in a loss of rental income of $666/day.  Please take notice that starting September 15, 2023, I will be demanding a credit of $666 per day to the remaining balance until the work is completed to my satisfaction under a reasonable standard used commonly in the home improvement industry.

**Subcontractor** – Earlier Julio was assigned as your subcontractor. As we discussed at length on the phone, there was a mismatch between not only the scope but also the quality of the work we agreed on under the agreements and what he agreed to do for the fee he was going to receive from you. I reported to Shay, you, and David that not only Julio is compromising the quality of the work, but also refuses to clean up the work from the trash and other materials created by the demolishing. In his words, his time was valuable and he was not making money to clean up after work was done on a daily basis. Carlos Siam replaced Julio on around August 31, 2023. Unfortunately, the problems did not go away though.

**No Work** - Since the early days of August, there have been many days on which no one is working on the Property. When there was someone there, it was only one or two workers. When I asked Carlos a couple of weeks ago why the work (plumbing, electrical, tiling, painting, etc.) is not done quicker, he stated that he and his 6–7-man crew were finishing up another three-bathroom project and he only could work with his crew only after he finished that project a few days later. Two weeks have passed and still, Carlos's crew members are not working on the Property.

12

COMPLIANT

Exhibit A, page 12

**Project Management** – As a licensed contractor, you are expected to have a licensed foreman to oversee the project for speedy progress and compliance with the terms of the agreement. The Agent was unlicensed, and you were expected to manage the project. In our telephonic conversation, you mentioned you cannot make any progress unless the plumbing passes inspection this Wednesday, September 20, 2023. The plumbing work must have been started timely for a full completion for a much earlier inspection. The plumbing in the bathrooms has been finalized in TAA as of August 8, 2023, or over seven weeks ago! Even as of September 22, 2022, as shown in the attached pictures, the plumbing has not been fully completed.

**Material** – Since the agreements required the Owner to purchase the tile as part of the Finished Materials, the tiles were purchased, along with faucets, vanities, and supplemental parts for the drainages in the bathrooms as early as August 8, 2023. The purchased tile was not the Owner's first option; however, the Owner purchased them after The Agent who accompanied the Owner at the Floor & Décor store stated that the start of tiling work could not be delayed 3-5 days to allow the arrival of the preferred tiles. After seven weeks, the purchased tiles have not been installed as of September 22, 2023.

**Missing Properties** – The tub that was originally installed in the 3rd Bathroom (Upstairs) is missing. The tub was never used and it needed to be returned to Home Depot for a refund. In addition, the whirlpool tub that was removed from the master bathroom with installed faucets and equipment (water pump) is missing as well. We never told any of your workers that the tubs must be taken out as trash. In fact, the Owner had told The Agent and Julio to help take them to the store for a refund.

**Balcony** – As you know, there was water damage in the garage due to water leaks from the balcony. The Owner had attempted to repair the leak by removing the old plywood, resealing, and installation of travertine tiles. The work was defective causing the rainwater to remain on the balcony because of an incorrect slope. You agreed to install a waterproof balcony after demolishing existing tiles down to the plywood, sealing up with waterproofing, patching, and painting of the stucco; painting the railing, and restoration of the double door with patching and painting.  You hired "WE CARE DECK COATING" as the subcontractor to do the work for you. After the completion, we noticed the rainwater remained on the balcony due to an incorrect slope. We notified you about the defect and requested for a proper slope so no rainwater remains on the surface. Despite of multiple requests, no fix has been made and as noticed during the last week's mild rain, water remains to stay on.

13

COMPLIANT

**Painting -** We had an agreement from a licensed painting contractor to paid the entire Property including the walls, ceilings, closets, doors, balcony, railings, and garage for $17,000. This was clearly communicated with The Agent on July 26, 2023. After we entered into the FAA, we cancelled our agreement with other painting contractor. The contractor who did the balcony started the painting as well, albeit not to our satisfaction. Please make sure the surfaces are properly patched, sanded before painting. Please make sur sure prime is used before two coats of paint is applied. The paint color for walls (eggshell), ceilings (matte), trims (semi gloss), baseboards (semi gloss), doors (semi gloss), and closets (semi gloss) are all Swiss Coffee. The paint for the railings inside the living room and in the balcony is in eggshell Venetian Bronze color matching the door levers.

**Door knobs, levers, hinges, locks, deadbolts** – The knobs, levers, hinges, locks, deadbolts material for all doors (interior, entry door, doors to yards, and balcony, garage have been purchased and are available for installation. Please make sure you take a proper sequence for painting the surface, i.e., door, and reinstallation of them, i.e., knobs, levers, hinges, locks, deadbolts. Since the material is in Oil Brushed Bronze (Venetian Bronze) color, special care must be taken for the installation on a white color door.

**Quality** – The overall costs of the project exceed $150,000 including the Finishing Materials. A high quality of work is expected to ensure the Owner's satisfaction is achieved under the commonly standards in the industry. Lack of proper supervision of the workers, has been and continue to be an issue. You have been stated in multiple time that all communications regarding the quality and progress of the work must be done with you instead of your subcontractors. Please make sure you monitor the work quality as closely and frequently as needed. I have communicated with you concerns about failing to use insulation material under the drywall, proper preparation of the floor underneath the tub on the 3rd bathroom (Upstairs), incorrect slop on the balcony, delayed completion of electrical, incomplete plumbing, and inadequate protection of wood flooring during the work. Please note that the Owner will not accept a claim of the completion of the work if not up to a reasonable satisfaction standard.

**Future Payments -** Please allow this letter to serve you with our good faith attempt requesting for an immediate correction of the issues stated above. The intent is to have you to cure the defect and improve the quality of the work without any unnecessary delay. As mentioned earlier, time is of the essence. The Owner loses rental income for any delay to the completion of the work. Please further note that the Owner loses the seasonal demand from the prospective tenants with K-12 school

14

COMPLIANT

children after the start of the Fall.

You have received $44,000 so far and are still demanding for a payment despite the lack of any progress on completion of the work. On September 22, 2023 you demanded payment for starting the paint under the contract. Let's look at the payment schedule and see why your demand is unwarranted:

| Down Payment | $1,000 |
| Upon start of job | $18,500 |
| Upon start of plumbing +electrical | $15,000 |
| Upon start of tile | $15,000 |
| Upon Balcony Demo + start water proofing | $10,000 |
| Upon hot mop | $10,000 |
| Upon start Paint | $15,000 |
| Upon fixtures installation | $11,300 |
| Upon Completion | $6,500 |

Your expectation of compensation "upon start" is unreasonable. It is a commonly accepted and used practice in construction and remodeling that the contractor is compensated after the completion and not the start of the job. The only exception is the initial down payment and the first payment to allow the contractor to purchase the materials and the initial payment to the subcontractor(s). You have received $19,500 for the Down Payment and for starting the job. In addition, from the $44,000 total payment, you have received additional $24,500 for plumbing, electrical, and tiling. As stated above not only electrical and plumbing have been completed, you have not even started any tiling work at all.

**Moving Forward** - No payment is due until the completion of all electrical as explained in our agreement, and all plumbing and tiling in all three bathrooms. Start does not allow the Owner to benefit from the work, the completion, however does.

57.    DAVID NMN ABITTAN called Plaintiff immediately acknowledging the issue and promised to address them immediately. However, once again, that was another empty promise that he never intended to fulfill.

58.    On October 5, 2023, Plaintiff sent another letter with pictures informing PRIME CONSTRUCTION and individual defendants DAVID NMN ABITTAN, ORON AHARON AVITAN and SHAY YEFET that it was evident that significant progress has not been made to complete the work, despite numerous assurances following the previous complaints.

59.    Plaintiff complained that instead of completing the work, defendants have been demanding additional funds despite the inadequate progress they have made thus far.

15

COMPLIANT

60. Plaintiff attached photographs taken from various areas of the property, clearly illustrating the lack of progress. Plaintiff once again reminded defendants that the situation rendered the property non-rentable, incurring approximately $666 in rent losses per day.

61. On the October 5, 2023 letter, Plaintiff provided the defendants with specific issues that previously raised but remained unresolved:

a.    Inconsistent worker attendance during workdays.

b.    Limited workforce engagement, often with only one or two individuals on site.

c.    Failure to maintain a clean and safe work environment, posing hazards.

d.    Absence of a dedicated project manager overseeing daily progress.

e.    Delays caused by attempts to secure additional payments for various project stages, which is not in accordance with the contractual terms. The agreed-upon $44,500 payment was intended to cover advance payments for the project's completion.

62. Plaintiff demanded fulfillment of the contractual obligations to complete the work promptly, or refund the sum of $44,500, allowing him to engage an alternative licensed contractor to expedite the project's completion and property listing for rent.

63. On October 26, 2023, not only defendants refused to refund $44,500 that Plaintiff had paid them, continuing the work for completion, but also give Plaintiff a Notice of Mechanics Lien for $10,000. (Exhibit J)

## FIRST CAUSE OF ACTION
### FRAUD - INTENTIONAL MISREPRESENTATION
### (Against All Contractor Defendants and DOES 1-30)

64. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

65. Plaintiff claims that Contractor Defendants made false representations that harmed him.

66. Defendant SHAY YEFET falsely represented to Plaintiff that he was a "Home improvement salesperson" under Bus & Prof C §7152(a), which required him to be registered under the California Business and Professions Code, Chapter 9. Contractors [Sections 7000 - 7191] in order to be engaged in the business of soliciting, selling, negotiating, or executing contracts for home improvements, for the sale, installation or furnishing of home improvement goods or services, on behalf of Defendant PRIME CONSTRUCTION.

67. Defendant SHAY YEFET falsely represented to Plaintiff that after making a down payment of $1,000, PRIME CONSTRUCTION will start the project by August 4, 2023 and complete it in entirely within 4 weeks but not later than 6 weeks approximately by September 15, 2023.

16

COMPLIANT

Exhibit A, page 16

68.     Defendant SHAY YEFET falsely represented to Plaintiff that PRIME CONSTRUCTION employs skilled crews who are experienced, and competent to satisfactorily do the work and finish it timely and properly.

69.     Defendant SHAY YEFET falsely represented to Plaintiff that inserting "upon start" for the itemized tasks was a common practice in the construction industry and has no material effect on Contractor Defendants' obligations to perform and will not be prejudicial to Plaintiff's rights.

70.     Defendant SHAY YEFET falsely represented to Plaintiff that PRIME CONSTRUCTION will use only licensed subcontractors for the remodeling projects.

71.     SHAY YEFET's representations were false, and he knew that the representations were false when he made them, or that he made the representations recklessly and without regard for its truth.

72.     SHAY YEFET intended that Plaintiff rely on the representations.

73.     Plaintiff] reasonably relied on SHAY YEFET's representations.

74.     Plaintiff was harmed; and his reliance on SHAY YEFET's representations was a substantial factor in causing him harm.

75.     All false representations made recklessly and without regard for their truth by SHAY YEFET were made in order to induce action by Plaintiff to hire PRIME CONSTRUCTION to do the remodeling work at the Property were the equivalent of misrepresentations knowingly and intentionally uttered.

76.     Plaintiff's actual and justifiable reliance on the SHAY YEFET's representations caused him to take a detrimental course of action to cancel the contract for painting job with another contractor, and hire PRIME CONSTRUCTION for the entire remodeling project in addition to the painting. The detrimental action taken by the Plaintiff caused lose rental income, expenditures for purchasing the material that either neither were used or became wasted due to the incompleteness of the work and the payments made to PRIME CONSTRUCTION without any benefits.

77.     Plaintiff is informed, believes and thereon alleges that Contractor Defendants' conducts as alleged in this Complaint were malicious, oppressive, and fraudulent justifying award of punitive damages under California Civil Code section 3294.

### SECOND CAUSE OF ACTION
### FRAUD - CONCEALMENT
### (Against All Contractor Defendants and DOES 1-30)

78.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

79.     Plaintiff claims that he was harmed because Contractor Defendants, and each and every of

17

COMPLIANT

1    concealed certain information that if were disclosed, Plaintiff would not agree to sign the HOME
2    IMPROVEMENT CONTRACT, make payments to them, purchase the materials to be used by
3    Contractor Defendants for the remodeling, and hire another contractor who would actually perform
4    timely.

5    80.    Contractor Defendants owed Plaintiff a duty to disclose material facts under the terms,
6    conditions, and covenants they voluntarily assumed by contractual undertaking by entering the
     HOME IMPROVEMENT CONTRACT on July 26, 2023.

7    81.    The relationship created between the parties is present because there was a transaction
8    between the parties. Under the owner/contractor relationship caused by the HOME
9    IMPROVEMENT CONTRACT. Contractor Defendants had a duty to disclose when parties
10   entered into HOME IMPROVEMENT CONTRACT.

11   82.    Defendant makes representations that PRIME CONSTRUCTION was a licensed contractor
     to do the work, but intentionally did not disclose facts that the SHAY YEFT, Julio, or Carlos Siam
12   who, is believed to be an unlicensed subcontractor working for PRIME CONSTRUCTION,
13   supervised the workers and were responsible for timely and properly performance of the workers
14   not only were not licensed, but also there will be no one from PRIME CONSTRUCTION would be
15   at the Property daily to ensure workers show up, work, or making the work as agreed under the
16   HOME IMPROVEMENT CONTRACT.

17   83.    Contractor Defendants did not disclose that they will not complete the project timely and
18   that they will be making demand for additional payments from Plaintiff prior to completing the
     work or even making substantial progress. Contractor Defendants' failure to materially qualify the
19   facts about timing of the completeness of the work was made to mislead Plaintiff.

20   84.    Contractor Defendants intentionally failed to disclose certain facts to Plaintiff that were
21   known or accessible only to Contractor Defendants, and Contractor Defendants knew Plaintiff did
22   not or could not know about how Contractor Defendants retain the service of their subcontractors
23   such as Julio, Carlos Siam or other individuals who worked at the Property on their behalf. These
24   material facts were not reasonably discoverable by the Plaintiff.

25   85.    Contractor Defendants actively conceals discovery from the Plaintiff not to learn about
     work schedules of Julio, Carlos Siam that they could not work at the Property because they were
26   already working at other projects for other customers of PRIME CONSTRUCTION.

27   86.    Plaintiff did not know of the concealed facts and Contractor Defendants intended to
28   deceive Plaintiff by concealing the facts. That had the omitted information been disclosed, Plaintiff

18

COMPLIANT

1    reasonably would have behaved differently by not making any payment to Contractor Defendants,

2    requesting to rescind the HOME IMPROVEMENT CONTRACT immediately before expiration of

3    three-day cancellation period, and hire another contractor instead.

4    87.    Plaintiff was harmed; and Contractor Defendants' concealment was a substantial factor in

     causing of Plaintiff's harm when Contractor Defendants failed to perform resulting to substantial

5    loss of rental income.

6    88.    Plaintiff is informed, believes and thereon alleges that Contractor Defendants' conducts as

7    alleged in this Complaint were malicious, oppressive, and fraudulent justifying award of punitive

8    damages under California Civil Code section 3294.

9                              **THIRD CAUSE OF ACTION**
                                 **FRAUD - FALSE PROMISE**
10                    **(Against All Contractor Defendants and DOES 1-30)**

11   89.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set

12   forth herein.

13   90.    "Under Civil Code section 1709, one is liable for fraudulent deceit if he 'deceives another

     with intent to induce him to alter his position to his injury or risk. Section 1710 of the Civil Code

14   defines deceit for the purposes of Civil Code section 1709 as, inter alia, '[a] promise, made without

15   any intention of performing it. The elements of fraud, which give rise to the tort action for deceit,

16   are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of

17   falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

18   resulting damage.

19   91.    On August 4, 2023, PRIME CONSTRUCTION assigned Julio as its subcontractor. After

20   Plaintiff complained to Contractor Defendants about the Julio's quality, the scope of the work, and

     refusal to clean up the work from the trash and other materials created by the demolishing, PRIME

21   CONSTRUCTION replaced Julio and replaced it with Carlos Siam on around August 31, 2023.

22   92.    Contractor Defendants promised that Carlos Siam and 6-7 of his crew would come to the

23   Property to finish the work as timely as possible to make up for the delayed caused previously.

24   Plaintiff alleges Contractor Defendants committed promissory fraud, a subspecies of fraud and

25   deceit. Contractor Defendants made promises to complete the remodeling work at the Property no

26   later than six weeks after the start date of August 4, 2023 or no later than September 15, 2023.

27   93.    SHAY YEFET on behalf of PRIME CONSTRUCTION promised that work would be

     completed no later than 4-6 from the start day of August 4, 2023.

28   94.    Contractor Defendants, however, made those promises without such intention, which is an

                                          19
                                      COMPLIANT

1    implied misrepresentation of fact that may be actionable fraud.

2    95.    Plaintiff was harmed because Contractor Defendants made false promises that did not

3    intend to perform this promise when they made it.

4    96.    Contractor Defendants intended that Plaintiff rely on these promises. In fact, Plaintiff
     reasonably relied on Contractor Defendants' promises.

5    97.    Contractor Defendants did not perform the promised act;

6    98.    Plaintiff was harmed; and his reliance on Contractor Defendants' promise was a substantial

7    factor in causing him harm.

8    99.    Plaintiff is informed, believes and thereon alleges that Contractor Defendants' conducts as

9    alleged in this Complaint were malicious, oppressive, and fraudulent justifying award of punitive

10   damages under California Civil Code section 3294.

11                                    **FOURTH CAUSE OF ACTION**
               **VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION**

12                    **(Against All Contractor Defendants and DOES 1-30)**

13   100.   Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set
     forth herein.

14
     101.   At all times relevant, Defendant wrongfully and unlawfully acted as described in this
15
     Complaint by rendering construction services without being duly licensed under the California
16   State license law of the state of California.

17   102.   Plaintiff is a consumer affected by Contractor Defendants' violations and seeks relief as

18   authorized by Business and Professions code sections 7028.4 and 7031, including restitution of

19   all sums that SHAY YEFET, DAVID NMN ABITTAN, and ORON AHARON AVITAN

20   directed Plaintiff to pay to PRIME CONSTRUCTION. In this regard, SHAY YEFET, DAVID
     NMN ABITTAN, and ORON AHARON AVITAN directed Plaintiff to make payment to
21
     PRIME CONSTRUCTION during the course of the construction for the construction services
22   that Julio, Carlos Siam rendered as an unlicensed contractor.

23   103.   Because said Contractor Defendants acted as contractors within the meaning of Business

24   and Professions code section 7026 at all times relevant to this action, but without holding a valid

25   contractor's license as required by Business and Professions code section 7028, Plaintiff is entitled

26   to treble damages and, if the court's discretion so determines, attorney's fees and costs incurred in
     connection with this action.

27   ///

28   ///

                                          20

                                     COMPLIANT

### FIFTH CAUSE OF ACTION
### NEGLIGENCE
#### (Against All Contractor Defendants and DOES 1-30)

104.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

105.    During and as part of their performance of each of their contracts, Contractor Defendants negligently advised Plaintiff on a number of issues relating to the construction and remodeling of bathrooms, balcony, painting, and including without limitation, regarding the estimated time for completion of the work, requiring Plaintiff to find and order the material during the construction ignoring the fact that Plaintiff had no knowledge, or experience of the technical specification of the correct material that resulted to requiring Plaintiff to unnecessarily spend additional money to purchase the material that were not used.

106.    Contractor Defendants, and each of them, failed to use the skill and care that a reasonably prudent professional would have used under similar circumstances.

107.    In this regard, Contractor Defendants should have known that the estimated time for completion of work would be substantially greater than 4-6 weeks, and the completion would not be feasible by September 15, 2023.

108.    But for Contractor Defendants' representation that the entire project as specified in the THIRD AMENDED HOME IMPROVEMENT CONTRACT will be finished within 4-6 weeks, Plaintiff would not agree to expand the project from the remodeling of the master bathroom to the Jack & Jill bathroom, balcony, garage, and installation of door knobs, levers, dead bolt locks, hinges, and recess lights and air ventilation fans.

109.    As a direct and proximate result of Contractor Defendants negligence, Plaintiff has suffered actual damages, including without limitation costs of repairing the defective construction, diminution in value of the property, loss of use, and loss of the rental income in an amount not yet known, but believed to be in excess of $250,000 and to be proven at trial.

### SIXTH CAUSE OF ACTION
### BREACH OF WRITTEN CONTRACT
#### (Against All Contractor Defendants and DOES 1-30)

110.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

111.    On July 26, 2023, Plaintiff entered onto a HOME IMPROVEMENT CONTRACT, orally and in writing, that contained in several documents, with Contractor Defendants for the

21

COMPLIANT

Exhibit A, page 21

performance of a home improvement as defined in Section 7151 that included all labor, services, and materials to be furnished and performed thereunder.

112.    The HOME IMPROVEMENT CONTRACT was between PRIME CONSTRUCTION signed by its salesperson, whether or not he was a home improvement salesperson, and Plaintiff, the owner of the Property for the installation, or furnishing of home improvement goods or services.

113.    Each of the Plaintiff's contracts with Contractor Defendants contained the implied term that Contractor Defendants would conform their work to all applicable building code requirements of the State of California, County of Los Angeles, and City of Los Angeles.

114.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by collecting payment for work not yet completed in addition to the $1,000 down payment.

115.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by requesting payments after receiving $1,000 down payment on August 2, 2023, $19,147.50 on August 4, 2023, $14,352.50 on August 14, 2023 (Check #1060), and $10,000 on August 18, 2023 (Check #1061)

116.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by refusing to perform to complete the work after not receiving additional payments.

117.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by failing to perform the work specified therein.

118.    Contractor Defendants' construction services and work did not conform to all applicable building code requirements of the State of California, County of Los Angeles, and City of Los Angeles.

119.    Because of Contractor Defendants' breach of contract, Plaintiff is damaged in a sum not yet known but believed to be in excess of $250,000 and in an amount to be proven at trial.

120.    Plaintiff also claims that PRIME CONSTRUCTION's breach of HOME IMPROVEMENT CONTRACT and its amendments caused harm to Plaintiff for loss of rental income in the amount of at least $20,000 per month from August 4, 2023.

121.    Plaintiff also claims that PRIME CONSTRUCTION's breach of HOME IMPROVEMENT CONTRACT and its amendments continues to cause harm to Plaintiff for the additional losses

COMPLIANT

1  resulting for redoing the defective work done by PRIME CONSTRUCTION and mitigation of the

2  defects caused by their sub-standard work needed from other contractors.

3  ## SEVENTH CAUSE OF ACTION
   ## BREACH OF ORAL CONTRACT

4  **(Against All Contractor Defendants and DOES 1-30)**

5  122.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set

   forth herein.
6
   123.    Under the HOME IMPROVEMENT CONTRACT, SHAY YEFET agreed to finish the
7
   work within 4-6 weeks no later than September 15, 2023.
8
   124.    Plaintiff claims that PRIME CONSTRUCTION. And SHAY YEFET breached HOME
9
   IMPROVEMENT CONTRACT and its three subsequent amendments by failing to complete the
10
   work by the promised date of September 15, 2023, or within 4-6 weeks from the start date of
11
   August 4, 2023.
12
   125.    Contractor Defendants were aware that the subject property is for lease. Contractor
13
   Defendants were told by Plaintiff that the Property was under the lease and Plaintiff needs to put
14
   the Property on the market for new lease agreements. Contractor Defendants became aware that
15
   time of the essence and any delay on the completion of the work directly results to harm to Plaintiff

   causing him loss of rental income at $20,000 per month.
16
   126.    Contractor Defendants breached the oral contract to compete the remodeling work at the
17
   Property as agreed by the HOME IMPROVEMENT CONTRACT and its amendments by failing
18
   to complete the work by September 15, 2023.

19  ## EIGHTH CAUSE OF ACTION
    ## BREACH OF COVENANT OF GOOD-FAITH AND FAIR DEALING

20  **(Against All Contractor Defendants and DOES 1-30)**

21  127.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set

    forth herein.
22
    128.    In every contract or agreement there is an implied promise of good faith and fair dealing.
23
    This implied promise means that each party will not do anything to unfairly interfere with the right
24
    of any other party to receive the benefits of the contract. Good faith means honesty of purpose
25
    without any intention to mislead or to take unfair advantage of another. Generally speaking, it
26
    means being faithful to one's duty or obligation.
27
    129.    Plaintiff and Contractor Defendants entered onto HOME IMPROVEMENT CONTRACT
28
    on July 26, 2023 and its amendments shortly thereafter.

23

COMPLIANT

130.    Plaintiff did all, or substantially all of the significant things that the contract required him to do including paying the down payment, making additional $43,500 payments, purchasing all furnished materials that were necessary for the Contractor Defendants to perform and was excused to make the payments for the remaining balance due to Contractor Defendants' failure to make sufficient performance.

131.    All conditions required for Contractor Defendants' performance had occurred.

132.    Contractor Defendants did not secure skilled workers to the work, did not supervise the workers at the job site, did not monitor that the workers were actually show up to work, did not ensure that the work is actually done under the terms of the contract, did not provide a licensed foreman to the job, did not advise Plaintiff to purchase the right finished materials, did not complete the work timely, did not do the work to Plaintiff's satisfaction under the commonly accepted standards in the industry, improperly demanded additional payments in order to continue the work, refused to continue the work, and abandoned the work short of completion.

133.    By doing so, Contractor Defendants did not act fairly and in good faith that caused Plaintiff to be harmed by their conducts.

134.    Contractor Defendants' breach of the covenant was more and separate from the breach of written and oral contracts by depriving Plaintiff to receive the full benefits of services promised by Contractor Defendants for remodeling the Property for lease with remodeled house.

135.    Plaintiff retained the services of Contractor Defendants under the reasonable belief that they are skilled, experienced, honest, and trustworthy for receiving the funds prior to the completion of the work, and expecting a timely completion as promised. Contractor Defendants breached the covenants by failing to satisfy both conditions.

136.    By failing to complete the work timely, Contractor Defendants unfairly frustrated Plaintiff from receiving the benefits of the agreement actually made, none were discretionary under the contract.

137.    By asserting the term "upon start" on the HOME IMPROVEMENT CONTRACT and its amendments, Contractor Defendants, acted in bad faith to make the demands for funds prior to actually performing the services justifiable as a contractual term. Contractor Defendants' use of the term "upon start" was in bad faith and solely was used to frustrate Plaintiff from receiving just benefits under the contract.

138.    Contractor Defendants' breach of the covenant undermined and prevented the Plaintiff from leasing the Property causing additional subsequent harm for loss of rental income.

24

COMPLIANT

### NINTH CAUSE OF ACTION
### NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
**(Against All Contractor Defendants and DOES 1-30)**

139.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

140.    Contractor Defendants negligently interfered with a relationship between Plaintiff and the prospective lessees that probably would have resulted in an economic benefit to the Plaintiff.

141.    Plaintiffs and prospective lessees were in an economic relationship by which Plaintiff could have received rental income from leasing the Property at least for $20,000 per month.

142.    Contractor Defendants knew that the Property is rental, has been leased recently and is going to be put back in the market for lease after the completion of the remodeling by Contractor Defendants.

143.    Contractor Defendants knew that the fair market lease value for the Property is at least $20,000 a month.

144.    Contractor Defendants knew or should have known that the relationship between Plaintiff and prospective lessees would be disrupted if they fail to act with reasonable care to finish the remodeling timely and properly as required by the HOME IMPROVEMENT CONTRACT and its amendments.

145.    Contractor Defendants failed to act with reasonable care to finish the remodeling timely and properly as required by the HOME IMPROVEMENT CONTRACT and its amendments.

146.    Contractor Defendants engaged in wrongful conduct through fraud, violation of statutes, breaching written and oral contracts, and acted in bad faith in breaching the covenant of the good faith and fair dealing as alleged in this complaint.

147.    The relationship between Plaintiff and prospective lessees were disrupted causing harm to Plaintiff.

148.    Contractor Defendants' wrongful conduct was a substantial factor in causing Plaintiff's harm.

### TENTH CAUSE OF ACTION
### CONVERSION
**(Against All Contractor Defendants and DOES 1-30)**

149.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

150.    Plaintiff claims that Contractor Defendants wrongfully exercised control over his personal property.

25

151.    Plaintiff owned an American Standard bathtub that he had purchased from Home Depot for $798) Bathtub $699 and Whirlpool Soak Drain for $99) on September 13, 2022 that was replaced with other bathtubs by the Contractor Defendants in 2023. After Contractor Defendants replaced the   American Standard tub, they took it without permission from the Property.

152.    Plaintiff also purchased ten Behr Premiums Plus 5 gallons #12 Swiss Coffee Semi-Gloss Enamel Low Oder Interior Paint and Primer at $1,900 from Home Depot that were taken by the Contractor Defendants without Plaintiff's permission. (Exhibit K)

153.    After removing a Kohler Whirlpool tub and its tub faucet sets from the master bathroom for making a tile bathtub, Contractor Defendants also took the Kohler Whirlpool tub and its tub faucet sets from the Property without the Plaintiff's permission.

154.    Contractor Defendants substantially interfered with Plaintiff's property by knowingly or intentionally taking possession of the bathtubs, faucets and paints, preventing the Plaintiff from having access to his items of personal property and refusing to return the items after demanding their return.

155.    Plaintiff did not consent, and he was harmed; and Contractor Defendants' conduct was a substantial factor in causing Plaintiff's harm.

**ELEVENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Contractor Defendants and DOES 1-30)**

156.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

157.    Contractor Defendants made certain representations with no reason to believe that they were true. (See Civ. Code, § 1710(2).) "Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit. 'Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.

158.    Plaintiff was harmed because Contractor Defendants negligently misrepresented material facts as true.

159.    Contractor Defendants' representations that they work at the Property for work specified under HOME IMPROVEMENT CONTRACT will be done by licensed contractors and subcontractors or licensed foreman, and that the work will be completed no later than six weeks from the start on July 26, 2023, and that PRIME CONSTRUCTION will make sure there will be a proper project management in place at the Property to ensure the workers show up for work and

26

1  actually do work were not true.

2  160.    Even if Contractor Defendants may have honestly believed that the representations were

3  true. Contractor Defendants had no reasonable grounds for believing the representations were true

4  when they made it. Defendants PRIME CONSTRUCTION, DAVID NMN ABITTAN, and ORON

   AHARON AVITAN, knew their work load, how many working subcontractor they had access to,

5  at what job site these subcontractors were working, how long these subcontractors were engaged at

6  those other job site, and when they are practically able to complete the work at the Property.

7  161.    On information and belief, Contractor Defendants negligently misrepresented several

8  material matters to Plaintiff, including without limitation that:

9  a.    The work will be done by licensed subcontractors;
   b.    The project will be supervised by a licensed foreman;

10 c.    The project will be completed within 4-6 weeks after the start;
   d.    Other than the down payment, Plaintiff will not be required to advance payments prior to

11 completion of work;

12 e.    SHAY YEFET, Julio and Carlos Siam were sufficiently knowledgeable, experienced,
   qualified and capable of providing construction services in compliance with the Business and

13 Professions Code;

14 162.    The representations made by Contractor Defendants were in fact false.  Among other

   things, the true facts were that:

15 f.    The work was not done by licensed subcontractors;

16 g.    The project was not supervised by a licensed foreman;
   h.    The project as not completed within 4-6 weeks after the start;

17 i.    Other than the down payment, Plaintiff was required to advance payments prior to
   completion of work;

18 j.    SHAY YEFET, Julio and Carlos Siam were not sufficiently knowledgeable, experienced,
   qualified and capable of providing construction services in compliance with the Business and

19 Professions Code;

20 163.    Contractor Defendants intended that Plaintiff rely on their representations. And in fact,

21 Plaintiff reasonably relied on Contractor Defendants' representations that resulted to his harm.

22 164.    Plaintiff's reliance on Contractor Defendants' representations was a substantial factor in

   causing his harm.

23 165.    As a direct and proximate result of Contractor Defendants negligent misrepresentation

24 Plaintiff has suffered actual damages, including without limitation costs of redoing the defective

25 work done by PRIME CONSTRUCTION and mitigation of the defects caused by their sub-

26 standard work needed from other contractors believed to be in excess of $250.000 and to be proven

27 at trial.

28 ///

27

COMPLIANT

## TWELFTH CAUSE OF ACTION
### BREACH OF THIRD PARTY BENEFICIARY CONTRACT
**(Against BUSINESS ALLIANCE INSURANCE COMPANY, and Does 1-30)**

166.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

167.    Plaintiff is informed and believes and thereupon alleges that BUSINESS ALLIANCE INSURANCE COMPANY issued a licensure surety bond to PRIME CONSTRUCTION pursuant to Business and Professions Code section 7071.6.

168.    Plaintiff is informed and believes and thereupon alleges that the licensure surety bonds were issued for the protection and benefit of each and every homeowner that contracted with PRIME CONSTRUCTION and Does 1-30 for home improvements at a personal residence.

169.    The contracts between Plaintiff and PRIME CONSTRUCTION and Does 1-30 were for improvements at the Plaintiff's personal residence.

170.    Plaintiff is authorized by Business and Professions Code section 7071.5 to pursue his bond claims against that BUSINESS ALLIANCE INSURANCE COMPANY and Defendant 1-30 for those damages caused by violations of Chapter 9 of the Contractors State License Law.

171.    It is a violation of section 7109 for a licensee to willfully depart from accepted trade standards for good and workmanlike construction. It is a violation of section 7110 for a licensee to willfully depart from building laws. It is a violation of section 7113 for a licensee to fail to complete a construction project in any material respect.

172.    Plaintiff is informed and believes and thereupon alleges at all times relevant herein, PRIME CONSTRUCTION and Does 1-30 violated sections 7109, 7110 and 7113, among others, of the Contractors State License Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Contractor Defendants and DOES 1-30 as follows:

1.    Actual damages according to proof;

2.    Past and Future economic loss, Past and Future noneconomic loss, including physical pain/mental suffering;

3.    For pre-judgment interest;

4.    Damages—Benefit of the Bargain Rule, or in the alternative damages Out of Pocket Rule;

5.    For punitive damages as allowed by law;

6.    For reasonable attorneys' fees; and for costs of suit incurred herein;

28

COMPLIANT

7.    For such other and further relief as the court deems just and proper.

As against BUSINESS ALLIANCE INSURANCE COMPANY and DOES 1-30 for:

    1.  The full amount available under the licensure bond;

    2.  Interest;

    3.  Costs of suit herein incurred; and,

    4.  For such other and further relief as the Court may deem just and proper.

Dated: November 13, 2023        **MOSTAFAVI LAW GROUP, APC**

*Amir Mostafavi*

By:_____
AMIR MOSTAFAVI, Esq.
Attorney for Plaintiff
NM Family Trust

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury for all claims.

Dated: November 13, 2023        **MOSTAFAVI LAW GROUP, APC**

*Amir Mostafavi*

By:_____
AMIR MOSTAFAVI, Esq.
Attorney for Plaintiff
NM Family Trust

29

COMPLIANT

# EXHIBIT A
# (Case No. 23SMCV05401)

STATE OF CALIFORNIA



# CONTRACTORS STATE LICENSE BOARD

Pursuant to Chapter 9 of Division 3 of the Business and Professions Code
and the Rules and Regulations of the Contractors State License Board,
the Registrar of Contractors does hereby issue this license to:

## YOUR PRIME CONTRACTOR INC
## DBA PRIME CONSTRUCTION

### License Number 1031676

to engage in the business or act in the capacity of a contractor in the following classifications:

B - GENERAL BUILDING CONTRACTOR
C54 - TILE (CERAMIC AND MOSAIC)

Witness my hand and seal this day

October 20, 2017

**Issued October 5, 2017**

CERTIFIED COPY

Kevin J. Albanese, Board Chair

This license is the property of the Registrar of Contractors,
is not transferable, and shall be returned to the Registrar
upon demand when suspended, revoked, or invalidated
for any reason. It becomes void if not renewed.

David R. Fogt, Registrar of Contractors

13L-24 (REV. 03/15)

OSP 15 135848
AUDIT NO: 838383

# EXHIBIT B
# (Case No. 23SMCV05401)

# HOME IMPROVEMENT CONTRACT

THIS AGREEMENT, DATED ___ 7/26/2023 ___, IS BETWEEN:

The Notice of Cancellation may be mailed to the address of the contractor as shown below:

Galaxy Your Your Prime Construction AND Amir Mostafavi, Truster of NY Family
(Contractor's Name) / (Owner's Name)

1231-696
(Contractor's License Number)

1407 Marte Grude Pl.
(Job Address)

23122 Chacmon Way
(Contractor's Address)

Pacific Palisades CA 70272
(City, State & Zip)

#101 Canoga Park ca 91303
(City, State & Zip)

(310) 849-2030
(Home Telephone)          (Work Telephone)

866-9093006
(Contractor's Telephone)

Same
(Cell Phone)          (Fax Number)

**Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed:**
Contractor will furnish all labor and materials to construct and complete in a good, workmanlike and substantial manner:
**SEE ATTACHED CONTINUATION/ADDENDUM FOR DESCRIPTION OF WORK**

**NOT INCLUDED: The following items are specifically excluded or are to be provided by Owner. NOTE: Entire agreement is contained herein. NO ORAL REPRESENTATION shall be considered part of this contract unless listed in writing.**

Approximate Start Date: _____    Approximate Completion Date: _____

All start and completion dates are approximate. (See additional terms and conditions on reverse side).
The work to be performed under this contract shall be commenced on approximate start date as long as any required building permits are received and any agreed upon funds are paid to Contractor. The project will be completed by approximate completion date subject to permissible delays.

CONTRACT PRICE: $ 25.000 .00        DOWN PAYMENT: $ 1000.00
(Owner agrees to pay Contractor total cash price)          (If any; if not applicable, put "none")

Contract price is subject to additions and deductions pursuant to changes agreed upon in writing by the parties and subject to allowances.
**THE DOWN PAYMENT MAY NOT EXCEED $1,000 OR 10% OF THE CONTRACT PRICE, WHICHEVER IS LESS.**
**SCHEDULE OF PROGRESS PAYMENTS: The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment.**
**IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWNPAYMENT.**

(Work or Services to be Performed or Materials to be Supplied)          AMOUNT

1. Apon Star of the Job       $ 12.500
2. Apon complition of tiling $ 8000
3. Apon Finish               $ 3500
4. _____           $
5. _____           $
6. _____           $

Upon satisfactory payment being made for any portion of the work performed, the contractor shall, prior to any further payment being made, furnish to the person contracting for the home improvement work a full and unconditional release from any claim or mechanic's lien pursuant to Section 3114 of the Civil Code for that portion of the work for which payment has been made.

Contractor may, if requested, refer owner to a finance company, but any negotiations or arrangements between owner and finance company is owners sole responsibility. Unless specifically stated above that this Agreement is subject to approval of financing, this Agreement is not subject to obtaining or securing of financing.

List of Documents to be Incorporated into the Contract: Notice Concerning Commercial General Liability Insurance (CGL); Notice Concerning Worker's Compensation Insurance; Arbitration of Disputes; Notice of Cancellation; Three-Day Right to Cancel; Mechanic's Lien Warning; Information about Contractors' State License Board, Checklist for Homeowners. A notice concerning Commercial General Liability Insurance is attached to this contract. A notice concerning Workers' Compensation Insurance is attached to this contract. (list any additional attachments): 

Owner acknowledges receipt of a fully completed copy of this agreement and all documents listed above: _____

| ARBITRATION | You (the owner or tenant) have the right to require the Contractor to have a performance and payment bond; however, the Contractor can charge you for the costs of procuring a bond. | RIGHT TO CANCEL |
|---|---|---|
| OWNER: Initial this box if you agree to arbitration. Review the "Arbitration of Disputes" section attached | | The law requires that the contractor give you a notice explaining your right to cancel. Initial the checkbox if the contractor has given you a "Notice of the Three-Day Right to Cancel |

**You are entitled to a completely filled in copy of this agreement, signed by both you and the contractor, before any work may be started.**

X _____       7/26/2023    X _____       7/26/23
(Owner's Signature)          (Date)        (Salesperson's Signature)          (Date)

X _____
(If more than one Owner, please Sign Here)          (Date)

State Registration Number _____

BY SIGNING BELOW, OWNER ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT AND ALL ATTACHED DOCUMENTS

NOTICE TO OWNER: THIS AGREEMENT IS SUBJECT TO HOME OFFICE APPROVAL BEFORE IT BECOMES EFFECTIVE

# ADDITIONAL TERMS AND CONDITIONS

**1. OWNER'S RESPONSIBILITIES.** The Owner is responsible to supply water, gas, sewer and electrical utilities unless otherwise agreed to in writing. Electricity and water to the site is necessary. Owner agrees to allow and provide Contractor and his equipment access to the property. The Owner is responsible for having sufficient funds to comply with this agreement. This is a cash transaction unless otherwise specified. The Owner is responsible to remove or protect any personal property and Contractor is not responsible for same or for any carpets, drapes, furniture,

driveways, lawns, shrubs, etc. The Owner shall point out and warrant the property lines to Contractor, and shall hold Contractor harmless for any disputes or errors in the property line or setback locations.

**2. DELAYS.** Contractor agrees to start and diligently pursue work through to completion, but shall not be responsible for delays for any of the following reasons: failure of the issuance of all necessary building permits within a reasonable length of time, funding of loans, disbursement of funds into control or escrow, acts of neglect or omission of Owner or Owner's employees or Owner's agent: acts of God, stormy or inclement weather, strikes, lockouts, boycotts or other labor union activities, extra work ordered by Owner, acts of public enemy, riots or civil commotion, inability to secure material through regular recognized channels, imposition of Government priority or allocation of materials, failure of Owner to make payments when due, or delays caused by inspection or changes ordered by the inspectors of authorized Governmental bodies, or for acts of independent Contractors, or other causes beyond Contractor's reasonable control.

**3. PLANS AND SPECIFICATIONS.** All plans and specifications are prepared for this job, they shall be attached to and become a part of this Agreement. Contractor will obtain all required building permits, but Owner will pay for permits, assessments and charges required by public bodies and utilities for financing or repaying the

cost of sewers, storm drains, water service, other utilities, water hook-up charges and the like.

**4. SUBCONTRACTS.** The Contractor may subcontract portions of this work to properly licensed and qualified subcontractors.

**5. COMPLETION AND OCCUPANCY.** Owner agrees to sign and record a notice of completion within five days after the project is complete and ready for occupancy. If the project passes final inspection by the public body but Owner fails to record Notice of Completion, then owner hereby appoints Contractor as Owner's agent to sign and record a Notice of Completion on behalf of Owner. This agency is irrevocable and is an agency coupled with an interest. In the event the Owner occupies the project or any part thereof before the Contractor has received all payment due under this contract, such occupancy shall constitute full and unqualified acceptance of all the Contractor's work by the Owner and the Owner agrees that such occupancy shall be a waiver of any and all claims against the Contractor.

**6. INSURANCE AND DEPOSITS.** Owner will procure at his own expense and before the commencement of any work hereunder, fire insurance with course of construction, vandalism and malicious mischief clauses attached, such insurance to be a sum at least equal to the contract price with loss, if any, payable to any beneficiary under any deed of trust covering the project, such insurance to name the Contractor and his subcontractors as additional insured and to protect Owner, Contractor and his subcontractors and construction lender as their interests may appear; should Owner fail to do so, Contractor may procure such insurance as agent for and at the expense of Owner, but is not required to do so. If the project is destroyed or damaged by disaster, accident or calamity, such as fire, storm, earthquake, flood, landslide, or by theft or vandalism, any work done by the Contractor rebuilding or restoring the project shall be paid by the Owner as extra work. Contractor shall carry Worker's Compensation Insurance for the protection of contractor's employees during the progress of the work. Owner shall obtain and pay for insurance against injury to his own employees and persons under Owner's discretion and persons on the job site at Owner's invitation.

**7. RIGHT TO STOP WORK.** Contractor shall have the right to stop work if any payment shall not be made, when due, to Contractor under this agreement: Contractor may keep the job idle until all payments due are received. Such failure to make payment, when due, is a material breach of this Agreement.

**8. CLEAN UP.** Contractor will remove from Owner's property debris and surplus material created by his operation and leave it in a neat and broom clean condition.

**9. LIMITATIONS.** No action of any character arising from or related to this contract or the performance thereof, shall be commenced by either party against the other more than two years after completion or cessation of work under this contract.

**10. VALIDITY AND DAMAGES.** In case one or more of the provisions of this Agreement or any application thereof shall be invalid, unenforceable or illegal, the validity, enforceability and legality of the remaining provisions and any other applications shall not in any way be impaired thereby. Any damages for which Contractor may be liable to Owner shall not, in any event, exceed the cash price of this contract.

**11. ASBESTOS, LEAD, MOLD, AND OTHER HAZARDOUS MATERIALS.** Owner hereby represents that Owner has no knowledge of the existence on or in any portion of the premises affected by the Project of any asbestos, lead paint, mold (including all types of microbial matter

or microbiological contamination, mildew or fungus), or other hazardous materials. Testing for the existence of mold and other hazardous materials shall only be performed as expressly stated in writing. Contractor shall not be testing or performing any work whatsoever in an area that is not identified in the Scope of Work. Unless the contract specifically calls for the removal, disturbance, or transportation of asbestos, polychlorinated biphenyl, (PCB), mold, lead paint, or other hazardous substances or materials, the parties acknowledge that such work requires special procedures, precautions, and/or licenses. Therefore, unless the contract specifically calls for same, if Contractor encounters such substances, Contractor shall immediately stop work and allow the Owner to obtain a duly qualified asbestos and/or hazardous material contractor to perform this work or Contractor may perform the work itself at Contractor's option. Said work will be treated as an extra under this contract, and the Contract Term setting forth the time for completion of the project may be delayed. In the event that mold or microbial contamination is removed by Contractor. Owner understands and agrees that due to the unpredictable characteristics of mold and microbial contamination, Contractor shall not be responsible for any recurring incidents of mold or microbial contamination appearing in the same or any adjacent location, subsequent to the completion of the work performed by Contractor. Owner agrees to hold Contractor harmless, and shall indemnify Contractor harmless for any recurrence of mold or microbial contamination. Owner also agrees that Contractor shall not be responsible, and agrees to hold Contractor harmless and indemnify Contractor for the existence of mold or microbial contamination in any area that Contractor was not contracted to test and/or remediate. Further, Owner is hereby informed, and hereby acknowledges, that most insurers expressly disclaim coverage for any actual or alleged damages arising from mold or microbial contamination. Contractor makes no representations whatsoever as to coverage for mold contamination, though at Owner's additional expense, if requested in writing, contractor will inquire as to the availability of additional coverage for such contamination or remediation, and if available, will obtain such coverage if the additional premium is paid for by Owner as an extra.

**12. STANDARDS OF MATERIALS AND WORKMANSHIP.** Contractor shall use and install "standard grade" or "builder's grade" materials on the project unless otherwise stated in the Scope of Work, the plans, and/or specifications provided to Contractor prior to the execution of this Agreement. Unless expressly stated in the Scope of Work, Contractor shall have no liability or responsibility to restore or repair the whole or any part of the existing premises affected by the work of Contractor to be performed herein or by any subsequently agreed-upon change order, including as an illustration and not as a limitation, any landscaping, sprinkler system, flooring and carpet, wall coverings, paint, tile, or decorator items.

**13. INTEREST.** Overdue payments will bear interest at the rate of 1½ % per month ( 18% per annum).

**14. CHANGE IN THE WORK.** Should the Owner, construction lender, or any public body or inspector direct any modification or addition to the work covered by this contract, the contract price shall be adjusted accordingly.

Modification or addition to the work shall be executed only when a Contract Change Order or Continuation/Addendum has been signed by both the Owner and the Contractor. The change in the Contract Price caused by such Contract Change shall be as agreed to in writing, or if the parties are not in agreement as to the change in Contract Price, the Contractor's actual cost of all labor, equipment subcontracts and materials, plus a Contractor's fee of 20% shall be the change in Contract Price.

The Contract Change Order may also increase the time within which the contract is to be completed.

**15. NOTE ABOUT EXTRA WORK AND CHANGE ORDERS.** Extra Work and Change Orders or Continuation/Addendums become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments. You, the buyer, may not require a contractor to perform extra or change-order work without providing written authorization prior to the commencement of any work covered by the new change order. Extra work or a change order is not enforceable

against a buyer unless the change order also identifies all of the following in writing prior to the commencement of any work covered by the new change order:

(I)The scope of work encompassed by the order; (II) The amount to be added or subtracted from the contract; and (III) The effect the order will make in the progress payments or the completion date. The contractor's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.

**16. EXISTING DEFECTS.** Contractor is not responsible for existing structural defects, defective soil conditions, or existing code violations. Despite the exercise of reasonable care during construction, conditions may be discovered, the repair of which are outside the scope of this Agreement. The cost to repair such defective conditions will be added as an extra charge to this Agreement by way of a change order or continuation/addendum.

② 

# CONTINUATION /ADDENDUM

Your Primes contactor

(Contractor's Name)

_____
(Type of Project)

**PROJECT:** Amir Mostabavi, Trustee

1407 Monte Grande Pl

Pacific Palisades, CA 90272
(City, State and Zip)

This is a Continuation or Addition to original Home Improvement Contract dated _____ 20 ___

(310) 849-2030

Home # _____   Work # _____   Cell #

## ATTENTION ALL HOMEOWNERS

It is illegal for any representatives to ask for checks to be issued in their names or to ask for cash.
Please contact the Company immediately should this happen to you.
We will accept no responsibility for any checks issued to others.
*NOTE: price does not include permit fees unless specified below.

_____
(Continue Contract Provision Here)

Scope of work

1. Clear area for start of Work and Preparation for Work

2. Demo Shower Wall and make it Up-to-Date.

3. Prepare the Flooring in the Shower, toilet and Vanif area For tiling and install tiles

4. Fix the Ceiling and update the recess lights, speakers, and relocate the fans and install the need fan.

5. Prepare Outlets/Switches and make it up to the Code   code

6. Install Toilet and Water and drainage Connection and follow the

7. Prepare the Vanif area and install the new Vanif, and mirrors

8. Prepare the Shower area and install shower door and Fixed glass

9. Install bathroom Faucets for the Vanif, shower and closet Topipota

Approximate Start Date: _____   Approximate Date of Completion: _____

10. Tiles around the Shower, bathroom and Vanif area on the Walls

TOTAL PRICE OF ABOVE: $ _____   Down Payment $ _____
(Includes Labor and Materials)

**Payment Schedule as Follows:**

Finish matirer up to $ 4000 contractor solve

$ _____ due upon cost of App

$ _____ due upon _____

$ _____ due upon 1028

$ Apon Start of due upon 12.500

$ Work due upon 8555

$ _____ due upon _____

*The above continuation /addendum is subject to company approval. Customer understands that project could be delayed due to plans, permits, city requirements and additional work added to original contract, thus,all start and completion dates are approximates. Customer further understands that entire agreement is contained herein. No oral representation shall be considered part of this contract unless listed in writing. All other terms and conditions stated in original contract to remain the same.

Contractor Initials _____

Customer's Signature _____   Date ____ / ____ / ____

Exhibit A, page 35

③

# CONTRACT CHANGE ORDER

☐ OWNER  ☐ ARCHITECT  ☐ CONTRACTOR  ☐ FIELD  ☐ OTHER

PROJECT:_____  CHANGE ORDER#_____  DATE:_____

Your Vision c it Center    Amir Mostakavi
_____    _____
(Company)                   (Customer's Name)

22222 .iCanage Wall      1407 Monte Grand, Pl
_____    _____
(Address)                   (Address)

Canoga Park CA 91303
_____    _____
(City, State, Zip)          (City, State, Zip)

816 709.006             (310) 869 - 7030
_____    _____
(Phone)        (Fax)        (Phone)

This contract change order modifies and amends the contract between the above named parties dated

Material Costs

1. Material will be Purchased by Owner and Paid by

the Contractor up to $4,000.⁰⁰ Br. The Total

Price of $25,000.⁰⁰ include all labor & Materials

for up to $4,000.⁰⁰

Any cost exceeding $4,000 for Shower Glass, Vanity

Mirror, toilet, Faucets and Tiles will be Paid by

the owner in addition to $25,000.⁰⁰

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by_____days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

_____        _____
(Contractor/Owner)               (Owner/Subcontractor)
_____        _____
(Date)    7  26/2023             7/26/2023  (Date)

# EXHIBIT C
# (Case No. 23SMCV05401)

# CHASE ◆ *for* BUSINESS®



Printed from Chase for Business

## CREDIT CARD (...2528)

### $1,000.00
Sale

**Aug 2, 2023**
Transaction date

**Aug 3, 2023**
Posted date

**YPC**

(866) 909-3006

| | |
|---|---|
| Description | YPC |
| Also known as | YPC |
| Merchant type | General contractors: residential and commercial |
| Method | Online, mail or phone |
| Card number | (...2528) |
| Category | Repair & maintenance |

**Rewards earned with this transaction**

| | |
|---|---|
| + 1 Point per $1 earned on all purchases | 1,000 |
| Total Ultimate Rewards® points | 1,000 |

Transaction details may be preliminary or incomplete and may not match the transaction as it appears on your
periodic statement, which is the official record of your account activity.

JPMorgan Chase Bank, N.A. Member FDIC            ©2023 JPMorgan Chase & Co.            Equal Housing Opportunity

Exhibit A, page 38

# EXHIBIT D
# (Case No. 23SMCV05401)

④  # HOME IMPROVEMENT CONTRACT

**THIS AGREEMENT, DATED** _July 26, 2023_ , **IS BETWEEN:**

The Notice of Cancellation may be mailed to the address of the contractor as shown below:

_Your Prime Contractor_ AND _NM Family Trust, Trustee Amir Mortazavi_
(Contractor's Name)                                    (Owner's Name)

_1031676_                                          _1407 Monte Grande Pl_
(Contractor's License Number)                      (Job Address)

_23333 Sherman Way #121_                           _Pacific Palisades_
(Contractor's Address)                             (City, State & Zip)

_Canoga Park CA 91303_
(City, State & Zip)                                _(310) 899-2030_
                                                   (Home Telephone)        (Work Telephone)

_866 909 7206_
(Contractor's Telephone)        (Cell Phone)        (Fax Number)

Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed:
Contractor will furnish all labor and materials to construct and complete in a good, workmanlike and substantial manner:
**SEE ATTACHED CONTINUATION/ADDENDUM FOR DESCRIPTION OF WORK**

_See Addendum_

**NOT INCLUDED:** The following items are specifically excluded or are to be provided by Owner. NOTE: Entire agreement is contained herein. NO ORAL REPRESENTATION shall be considered part of this contract unless listed in writing.
_Vanity & All finish Materials such as Vanity, faucets, Valves, floor tile, wall tiles, shower glass, door levers, locks, mirrors, toilets, tubs_

Approximate Start Date: _Friday August 4, 2023_ Approximate Completion Date: _____

All start and completion dates are approximate. (See additional terms and conditions on reverse side).
The work to be performed under this contract shall be commenced on approximate start date as long as any required building permits are received and any agreed upon funds are paid to Contractor. The project will be completed by approximate completion date subject to permissible delays.

**CONTRACT PRICE: $** _89,300_ .00            **DOWN PAYMENT: $** _2,000_ .00
(Owner agrees to pay Contractor total cash price)           (If any; if not applicable, put "none")

Contract price is subject to additions and deductions pursuant to changes agreed upon in writing by the parties and subject to allowances.
**THE DOWN PAYMENT MAY NOT EXCEED $1,000 OR 10% OF THE CONTRACT PRICE, WHICHEVER IS LESS.**
**SCHEDULE OF PROGRESS PAYMENTS:** The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment.
**IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWNPAYMENT.**

(Work or Services to be Performed or Materials to be Supplied)      AMOUNT

1. _Upon start of Job_                      $ _17,500_ .00      Upon satisfactory payment being made for any
2. _Electrical and Plumbing_                $ _10,000_ .00      portion of the work performed, the contractor
3. _Tiling_                                 $ _10,000_ .00      shall, prior to any further payment being made,
4. _Balcony_                                $ _10,000_ .00      furnish to the person contracting for the home
5. _Painting_                               $ _10,000_ .00      improvement work a full and unconditional
6. _Door Knobs, levers, locks, recess lights, switch_  $ _19,500_ .00   release from any claim or mechanic's lien pursu-
7. _Completion of Work in entry_            _10,300_ .00        ant to Section 3114 of the Civil Code for that

Contractor may, if requested, refer owner to a finance company, but any negotiations or arrangements between owner and finance company is owners sole responsibility. Unless specifically stated above that this Agreement is subject to approval of financing, this Agreement is not subject to obtaining or approval of financing.

List of Documents to be Incorporated into the Contract: Notice Concerning Commercial General Liability Insurance (CGL); Notice Concerning Worker's Compensation Insurance; Arbitration of Disputes; Notice of Cancellation; Three-Day Right to Cancel; Mechanic's Lien Warning; Information about Contractors' State License Board, Checklist for Homeowners. A notice concerning Commercial General Liability Insurance is attached to this contract. A notice concerning Workers' Compensation Insurance is attached to this contract. (list any additional attachements): _____

Owner acknowledges receipt of a fully completed copy of this agreement and all documents listed above: _____

| **ARBITRATION** OWNER: initial this box if you agree to arbitration. Review the "Arbitration of Disputes" section attached | You (the owner or tenant) have the right to require the Contractor to have a performance and payment bond; however, the Contractor can charge you for the costs of procuring a bond. | _AM_ **RIGHT TO CANCEL** The law requires that the contractor give you a notice explaining your right to cancel. Initial the checkbox if the contractor has given you a "Notice of the Three-Day Right to Cancel" |

You are entitled to a completely filled in copy of this agreement, signed by both you and the contractor, before any work may be started.

X _[signature]_  _7/26/2023_      X _[signature]_  _7/26/2023_
(Owner's Signature)   (Date)         (Salesperson's Signature)   (Date)

X _____        **State Registration Number** _____
(If more than one Owner, please Sign Here)   (Date)

BY SIGNING ABOVE, OWNER ACKNOWLEDGES RECEIPT OF A COPY OF     NOTICE TO OWNER: THIS AGREEMENT IS SUBJECT TO
THIS AGREEMENT AND ALL ATTACHED DOCUMENTS                    HOME OFFICE APPROVAL BEFORE IT BECOMES EFFECTIVE

Exhibit A, page 40

# ADDITIONAL TERMS AND CONDITIONS

**1. OWNER'S RESPONSIBILITIES.** The Owner is responsible to supply water, gas, sewer and electrical utilities unless otherwise agreed to in writing. Electricity and water to the site is necessary. Owner agrees to allow and provide Contractor and his equipment access to the property. The Owner is responsible for having sufficient funds to comply with this agreement. This is a cash transaction unless otherwise specified. The Owner is responsible to remove or protect any personal property and Contractor is not responsible for same or for any carpets, drapes, furniture,
driveways, lawns, shrubs, etc. The Owner shall point out and warrant the property lines to Contractor, and shall hold Contractor harmless for any disputes or errors in the property line or setback locations.

**2. DELAYS.** Contractor agrees to start and diligently pursue work through to completion, but shall not be responsible for delays for any of the following reasons: failure of the issuance of all necessary building permits within a reasonable length of time, funding of loans, disbursement of funds into control or escrow, acts of neglect or omission of Owner or Owner's employees or Owner's agent; acts of God, stormy or inclement weather, strikes, lockouts, boycotts or other labor union activities, extra work ordered by Owner, acts of public enemy, riots or civil commotion, inability to secure material through regular recognized channels, imposition of Government priority or allocation of materials, failure of Owner to make payments when due, or delays caused by inspection or changes ordered by the inspectors of authorized Governmental bodies, or for acts of independent Contractor's, or other causes beyond Contractor's reasonable control.

**3. PLANS AND SPECIFICATIONS.** If plans and specifications are prepared for this job, they shall be attached to and become a part of this Agreement. Contractor will obtain all required building permits, but Owner will pay for permits, assessments and charges required by public bodies and utilities for financing or repaying the
cost of sewers, storm drains, water service, other utilities, water hook-up charges and the like.

**4. SUBCONTRACTS.** The Contractor may subcontract portions of this work to properly licensed and qualified subcontractors.

**5. COMPLETION AND OCCUPANCY.** Owner agrees to sign and record a notice of completion within five days after the project is complete and ready for occupancy. If the project passes final inspection by the public body but Owner fails to record Notice of Completion, than owner hereby appoints Contractor as Owner's agent to sign and record a Notice of Completion on behalf of Owner. This agency is irrevocable and is an agency coupled with an interest. In the event the Owner occupies the project or any part thereof before the Contractor has received all payment due under this contract, such occupancy shall constitute full and unqualified acceptance of all the Contractor's work by the Owner and the Owner agrees that such occupancy shall be a waiver of any and all claims against the Contractor.

**6. INSURANCE AND DEPOSITS.** Owner will procure at his own expense and before the commencement of any work hereunder, fire insurance with course of construction, vandalism and malicious mischief clauses attached, such insurance to be a sum at least equal to the contract price with loss, if any, payable to any beneficiary under any deed of trust covering the project, such insurance to name the Contractor and his subcontractors as additional insured and to protect Owner, Contractor and his subcontractors and construction lender as their interests may appear; should Owner fail to do so. Contractor may procure such insurance as agent for and at the expense of Owner, but is not required to do so. If the project is destroyed or damaged by disaster, accident or calamity, such as fire, storm, earthquake, flood, landslide, or by theft or vandalism, any work done by the Contractor rebuilding or restoring the project shall be paid by the Owner as extra work. Contractor shall carry Worker's Compensation Insurance for the protection of contractor's employees during the progress of the work. Owner shall obtain and pay for insurance against injury to his own employees and persons under Owner's discretion and persons on the job site at Owner's invitation.

**7. RIGHT TO STOP WORK.** Contractor shall have the right to stop work if any payment shall not be made, when due, to Contractor under this agreement; Contractor may keep the job idle until all payments due are received. Such failure to make payment, when due, is a material breach of this Agreement.

**8. CLEAN UP.** Contractor will remove from Owner's property debris and surplus material created by his operation and leave it in a neat and broom clean condition.

**9. LIMITATIONS.** No action of any character arising from or related to this contract or the performance thereof, shall be commenced by either party against the other more than two years after completion or cessation of work under this contract.

**10. VALIDITY AND DAMAGES.** In case one or more of the provisions of this Agreement or any application thereof shall be invalid, unenforceable or illegal, the validity, enforceability and legality of the remaining provisions and any other applications shall not in any way be impaired thereby. Any damages for which Contractor may be liable to Owner shall not, in any event, exceed the cash price of this contract.

**11. ASBESTOS, LEAD, MOLD, AND OTHER HAZARDOUS MATERIALS.** Owner hereby represents that Owner has no knowledge of the existence on or in any portion of the premises affected by the Project of any asbestos, lead paint, mold (including all types of microbial matter

or microbiological contamination, mildew or fungus), or other hazardous materials. Testing for the existence of mold and other hazardous materials shall only be performed as expressly stated in writing. Contractor shall not be testing or performing any work whatsoever in an area that is not identified in the Scope of Work. Unless the contract specifically calls for the removal , disturbance, or transportation of asbestos, polychlorinated biphenyl . (PCB), mold, lead paint, or other hazardous substances or materials, the parties acknowledge that such work requires special procedures, precautions, and/or licenses. Therefore, unless the contract specifically calls for same, if Contractor encounters such substances, Contractor shall immediately stop work and allow the Owner to obtain a duly qualified asbestos and/or hazardous material contractor to perform the work or Contractor may perform the work itself at Contractor's option. Said work will be treated as an extra under this contract, and the Contract Term salling form the time for completion of the project may be delayed. In the event that mold or microbial contamination is removed by Contractor. Owner understands and agrees that due to the unpredictable characteristics of mold and microbial contamination, Contractor shall not be responsible for any recurring incidents of mold or microbial contamination appearing in the same or any adjacent location, subsequent to the completion of the work performed by Contractor. Owner agrees to hold Contractor harmless, and shall indemnify Contractor harmless for any recurrence of mold or microbial contamination. Owner also agrees that Contractor shall not be responsible, and agrees to hold Contractor harmless and indemnify Contractor for the existence of mold or microbial contamination in any area that Contractor was not contracted to test and/or remediate. Further, Owner is hereby informed, and hereby acknowledges, that most insurers expressly disclaim coverage for any actual or alleged damages arising from mold or microbial contamination. Contractor makes no representations whatsoever as to coverage for mold contamination, though at Owner's additional expense, if requested in writing, contractor will inquire as to the availability of additional coverage for such contamination or remediation, and if available, will obtain such coverage if the additional premium is paid for by Owner as an extra.

**12. STANDARDS OF MATERIALS AND WORKMANSHIP.** Contractor shall use and install "standard grade" or "builder's grade" materials on the project unless otherwise stated in the Scope of Work, the plans, and/or specifications provided to Contractor prior to the execution of this Agreement. Unless expressly stated in the Scope of Work, Contractor shall have no liability or responsibility to restore or repair the whole or any part of the existing premises affected by the work of Contractor to be performed herein or by any subsequently agreed-upon change order, including as an illustration and not as a limitation, any landscaping, sprinkler system, flooring and carpet, wall coverings, paint, tile, or decorator items.

**13. INTEREST.** Overdue payments will bear interest at the rate of 1½ % per month ( 18% per annum).

**14. CHANGE IN THE WORK.** Should the Owner, construction lender, or any public body or inspector direct any modification or addition to the work covered by this contract, the contract price shall be adjusted accordingly.
Modification or addition to the work shall be executed only when a Contract Change Order or Continuation/Addendum has been signed by both the Owner and the Contractor. The change in the Contract Price caused by such Contract Change shall be as agreed to in writing, or if the parties are not in agreement as to the change in Contract Price, the Contractor's actual cost of all labor, equipment subcontracts and materials, plus a Contractor's fee of 20% shall be the change in Contract Price.
The Contract Change Order may also increase the time within which the contract is to be completed.

**15. NOTE ABOUT EXTRA WORK AND CHANGE ORDERS.** Extra Work and Change Orders or Continuation/Addendums become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments. You, the buyer, may not require a contractor to perform extra or change-order work without providing written authorization prior to the commencement of any work covered by the new change order. Extra work or a change order is not enforceable against a buyer unless the change order also identifies all of the following in writing prior to the commencement of any work covered by the new change order:

(I) the scope of work encompassed by the order; (II) The amount to be added or subtracted from the contract; and (III) The effect the order will make in the progress payments or the completion date. The contractor's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.

**16. EXISTING DEFECTS.** Contractor is not responsible for existing structural defects, defective soil conditions, or existing code violations. Despite the exercise of reasonable care during construction, conditions may be discovered, the repair of which are outside the scope of this Agreement. The cost to repair such defective conditions will be added as an extra charge to this Agreement by way of a change order or continuation/addendum.

# EXHIBIT E
# (Case No. 23SMCV05401)

## CREDIT CARD AUTHORIZATION FORM

*** All information will remain Confidential ***

Card Holder Name: Amir MostaFavi          FILE No. #

Billing Address: 1407 Monte Grande Pl.

City Pacific Palisades  Zip  90272    DATE 8  4  2023

### CREDIT CARD INFORMATION

- Type of the Card (VISA) / AMEX / MASTERCARD / other:

- Credit card No.                    2528

- Expiration Date  06/28

- Card Identification Number (last 3 digits located on the back)  039

- Amount to charge $  18,500 .00

I authorize: ___Your Prime Contractor___ to charge the amount listed above my Credit Card provided herein. I agree to pay 3.5% for the transfer fee in accordance with issuing Bank card Holder agreement.

**Cardholder**: Please print your name, sign and date below.

Printed Name: Amir MostaFavi          Date: 8/4/2023

Signature:

Home Improvement Contract Dated July 26, 2023

Please return the Completed and Signed form to the following:

Your Prime Contractor , Shlomi Abitlau

22222 Sherman Way #101

Canoga Park, CA /91303



*#2*

### Client Credit Card Transaction Receipt

**Card Number: XXXXXXXXXXXX2528**

**Card Holder: AMIR MOSTARAVI**

**Card Brand: VISA**

**Payment on 8/4/2023**

**Amount of $18,500**

**Cc Fee $647.50**

**Total transaction amount $19,147.50**

# EXHIBIT F
# (Case No. 23SMCV05401)

⑤

# CONTRACT CHANGE ORDER

☑ OWNER    ☐ ARCHITECT    ☑ CONTRACTOR    ☐ FIELD    ☐ OTHER

PROJECT: _____    CHANGE ORDER# _____    DATE: 8/7/2023
Your Prime contractor          NM Family Trust Amir Moitabavi
_(Company)_                     _(Customer's Name)_
22222 Sherman way #101          1407 Monte Grande Pl
_(Address)_                     _(Address)_
Canoga Park CA 91303            Pac. Palisades CA 90272
_(City, State, Zip)_            _(City, State, Zip)_
818 792,006                     ( 310 )949-2030
_(Phone)_        _(Fax)_        _(Phone)_

This contract change order modifies and amends the contract between the above named parties dated
July 26 : 2023 :
Change of Schedule payment

1. Down payment:                      $ 1000
2. upon start of job:                 $ 18,500
3. upon Plumbing + electrical:        $ 10,000
4. upon Tile :                        $ 10,000
5. upon balcony demo:                 $ 10,000
6. upon that Mep:                     $ 10,000
7. upon paint:                        $ 16,000 AM
8. upon Fixtures installation:        $ 14,500
9. upon Completion:                   $ ~~6,800~~ 7,300 AM

Total : ~~89,300~~ 93,300.⁰⁰
                                              AM

Modification of Work

1. Changing Toilet area in JbJ Bathroom to shower
2. Relocate toilet to side of Vanity
3. Removing existing tub and replace it with new tub in the small bathroom. ~~But~~ Finish material not included
4. Add recess lights in the small bathroom

It is mutually agreed that the contract price is increased/decreased by $ _____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced by _____ days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

X _____          _____
    _(Contractor/Owner)_              _(Owner/Subcontractor)_

X  8/7/2023 _____         _____
    _(Date)_                          _(Date)_

Exhibit A, page 46

# EXHIBIT G
# (Case No. 23SMCV05401)

# CONTRACT CHANGE ORDER

⑥

☑ OWNER  ☐ ARCHITECT  ☑ CONTRACTOR  ☐ FIELD  ☐ OTHER

PROJECT: Your Prime Contractor _____ CHANGE ORDER# NM Family Trust Attn Mostafa _____ DATE: 8/8/2022
(Company)                                                          (Customer's Name)

22222 Sherman Way #131    1407 Monte Grande
(Address)                                                           (Address)

Canoga Park CA 91303
(City, State, Zip)                                                (City, State, Zip)

866 959 3036
(Phone)        (Fax)                        (810) 849 2030
                                                    (Phone)

This contract change order modifies and amends the contract between the above named parties dated

_____;  _____                    iRon 8/8 585 9878

✓ Down Payment $9000 AM AM
✓ Upon start of Job $18.500 AM
✓ Upon Start Plumbing + Electric $15,000 AM
✓ Upon start tile $15.000
   Upon Balcony Demo + start water Proofing $12,000
   Upon Hot Map $10,000                              (Apparall)
   Upon start Paint $16,000
   Upon Fixtures installation $11,300
   Upon completion $6,500

$13.000
total 102.300

Contractor install one tub and will creat framing
for 2 _____ tile tub + put tile installtin
for tile tub and shower for Master Bathroom
Jet Bathroom and guest Bathroom floor and walls

Finish matirials not included

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by_____ . _____ days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

_____                                        _____
(Contractor/Owner)                              (Owner/Subcontractor)

8/8/2022                                        8/8/22
(Date)                                          (Date)

# EXHIBIT H
# (Case No. 23SMCV05401)

# CONTRACT CHANGE ORDER

⑦

☑ OWNER    ☐ ARCHITECT    ☑ CONTRACTOR    ☐ FIELD    ☐ OTHER

PROJECT:_____    CHANGE ORDER#_____    DATE: 7/26/2023

NM Family Trust, Trustee Amir Moit____
_____
(Company)    (Customer's Name)

1407 Monte Grande Pl.
_____
(Address)    (Address)

Par.fic Palisades, CA 90272
_____
(City, State, Zip)    (City, State, Zip)

(310) 849-2030
_____
(Phone)    (Fax)    (Phone)

This contract change order modifies and amends the contract between the above named parties dated

① Additional Bathroom complete remodeling, demo bathroom
Contractor will clear and prepare area to start work
"      "      install tile in bathroom Toilet and Vanity
"      "      Upgrade electrical up to code including recess lights
fans replacement, switches, outlets in bathroom area
Contractor will install toilet and drainage and new Vanity and mirror
Contractor will install glass shower doors and bathroom faucets, and
tiles on bathroom walls up to ceiling. Material for Vanit, Faucets, shower
glass, shower head and tiles will be provided by the owner.
② All interior Painting for walls, ceilings, doors, windows, trim, railing
③ Install water proof balcony, demo tile down to plywood, sealing cap with
water proofing and cover stucco, patch and painting, paint railing, reshape
the chubb and patch and paint.
④ Replace and install door levers, handles, locks, deadbolts, install back
existing recess lights, switches, plugs, smoke detectors, fans
⑤ 3rd bathroom () refinish existing bathroom install Vanity, Toilets, Finish
tiles, dry walls, fans, doors, reconnect drainage and faucets and
head shower
⑥ Garage EPOXY

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by_____days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

_____    _____
(Contractor/Owner)    (Owner/Subcontractor)

_____    _____
(Date)    (Date)

Exhibit A, page 50

# EXHIBIT I
# (Case No. 23SMCV05401)



### WE CARE DECK COATING

**4051 S. Broadway, Los Angeles, CA 90037**
**Mailing Address: 1155 S. Harvard Blvd, Los Angeles, CA 90006**
Tel: (213)700-6462      Email: wecaredeck@gmail.com

## BID-PROPOSAL

**DATE:**      09/05/2023
**PROPOSAL SUBMIT TO:**                          **WORK TO BE PERFORMED AT:**

| | | | |
|---|---|---|---|
| NAME: | Shay, Your Prime Contractor | | |
| Address: | | Address: | 1407 Monte Grande Pl |
| City: | | City | Pacific Palisades, 90272 |
| Tel: | 646-378-8693 | Email: | Shaykenyc@gmail.com |
| | | | office@yourprimecontractor.com |

**Construction To Begin: Will follow up after signed**      **Contract Completion Date:**

## Job Description

We make a slope about at 3/4 inch per foot so the water slides down.

However, as construction is done by human hands, it won't be at a perfect degree.

And if we make the slope with more higher degree so no water puddle can stay on 1 area, it will create new water puddle on other areas

because raising a slope on 1 area means other place need to be lowered. It'll be a constant loop without resolving anything.

Also, if we make the entire slope too steep, it'll be danagerous for the people to use and can cause an accident like people slipping and falling down,

especially for elderly people. And it will become a liability issue.

This is why on the proposal we state;

**Less than 1/8 inch water puddle is not covered by warranty.**

When it's rains, it's natural for some water puddles to form but once rain stops, it'll eventually dry out and this is where our warranty is applied.

# EXHIBIT J
# (Case No. 23SMCV05401)

Recording Requested by Your Prime
Contractor
Please Return To:
Your Prime Contractor
c/o Mail Center
9450 SW Gemini Dr #7790
Beaverton, Oregon 97008-7105
Reference ID: BTJP8FZYR9TQ
APN: 4431-026-001

SPACE ABOVE FOR RECORDER'S USE

# CLAIM OF MECHANICS LIEN
## Cal. Civ. Code §8416

**Claimant**
Your Prime Contractor
23055 SHERMAN WAY #4028
WEST HILLS , California 91308
(866) 909-3006

**Property Owner** (Owner)

Amri Mostafavi Trustee of the NM Family Trust, dated
July 10, 2018
528 Palisades Dr # 220
Pacific Palisades, California 90272

Mostafavi Amir
1407 Monte Grande Place
Pacific Palisades, California 90272

**Property Liened** (Property)
County: Los Angeles County
1407 Monte Grande Place, Pacific Palisades,
California 90272

**Legal Property Description:**
Property located at the municipal address of 1407
MONTE GRANDE PL, PACIFIC PALISADES, CA
90272.In the county of Los Angeles County. APN
4431-026-001. Briefly described as *TR=41709*(EX
OF STS) LOT/SEC 1. Subdivision: 41709.
Municipality / Township of WEST /PAC PALISADES.
Legal Lot 1.

**The following exhibits are attached hereto and made a part hereof (if applicable):**

**Services:** The lien is claimed for the following labor,
services, equipment or materials: breach of contract ,
client refusing to pay per schedule payment , on
contract signed on 7/26/23

**Job Number (if any):** 2219

**Amount Due:** Amount due after deducting all just
credits and offsets: **$10,000.00**

**Hiring Party:** Name and Address of person or entity to
whom Claimant furnished labor, services, equipment
and/or materials:
Mostafavi Amir
1407 Monte Grande Place
Pacific Palisades, California 90272

Exhibit A, page 54

**NOTICE IS HEREBY GIVEN** that Claimant claims a lien for labor, service, equipment or materials under Section 8416 et seq. of the Civil Code of the State of California, upon the Property, above-described, and upon every estate or interest in such structures, improvements and premises held by any party holding any estate therein. The labor, service, equipment or materials were furnished for the construction of those certain buildings, improvements, or structures, now upon that certain parcel of land above-described as the Property.

I, the undersigned, as a disclosed and authorized agent of the Claimant, state that I have read the foregoing Claim of Lien, that I have been provided information regarding the facts and contents therein, and that based thereupon, **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

Name of Claimant:
Your Prime Contractor

Signed:

Signed:

Claimant, Your Prime Contractor
by authorized limited agent
Print Name: Jeremiah Gradine
Date: October 26, 2023
State of Louisiana
County of Orleans

Claimant, Your Prime Contractor
by authorized limited agent
Print Name: Jeremiah Gradine
Date: October 26, 2023
State of Louisiana
County of Orleans

## IMPORTANT INFORMATION ON THE FOLLOWING PAGE(S)

Affidavit of Delivery

Delivery on behalf of: Your Prime Contractor
Re: *1407 Monte Grande Place, Pacific Palisades , California 90272*
Item Delivered: Claim of Lien (Mechanics Lien)

Proof of Service Affidavit, California Civil Code § 8416(a)(7), and (c)
I, Jeremiah Gradine, declare that on October 26, 2023, I delivered copies of the attached Mechanic's Lien and Notice of Mechanic's Lien to the property owner identified thereon at the address provided below, and in the delivery manner provided below. In addition to this delivery, or in the alternative to said delivery pursuant to California Code §8416(c)(2) if delivery to the owner as required by §8416(c)(1) could not be performed, I served / also served copies of the Mechanic's Lien and Notice of Mechanic's Lien to the following parties at the following addresses, and through the following method of delivery:

**Property Owner / Public Entity**, Amri Mostafavi Trustee of the NM Family Trust, dated July 10, 2018
528 Palisades Dr # 220
Pacific Palisades, California 90272
**By**: US Certified with Return Receipt, **No.** 9314 8699 0430 0113 6013 10 **at** October 26, 2023
**Property Owner / Public Entity**, Mostafavi Amir
1407 Monte Grande Place
Pacific Palisades, California 90272
**By**: US Certified with Return Receipt, **No.** 9314 8699 0430 0113 6013 34 **at** October 26, 2023

I declare under penalty of perjury that the foregoing is true and correct.

Signature: _____
Agent for Claimant
Signed by: Jeremiah Gradine
October 26, 2023

## NOTICE OF MECHANICS LIEN
## ATTENTION!

Upon the recording of the enclosed MECHANICS LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanics lien is recorded.

The party identified in the enclosed mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEBSITE AT www.cslb.ca.gov.

Levelset mailing center
9450 SW Gemini Dr #7790
Beaverton, OR 97008-7105



**9314 8699 0430 0113 6013 10**

**RETURN RECEIPT (ELECTRONIC)**

Total Postage: $7.18

**AMRI MOSTAFAVI TRUSTEE OF THE NM FAMILY TRUST,
528 PALISADES DR PMB 220
PACIFIC PALISADES, CA 90272-2844**

Reference Number: 18835986

# EXHIBIT K
# (Case No. 23SMCV05401)

# Customer Receipt

9/13/2022, 3:31 PM PDT

**Store # 6611**

Sales Person AXB3HZJ    Store Phone # (310) 822-3330

Location 12975 W JEFFERSON BLVD, LOS ANGELES, CA 90066

## Customer Information

**AMIR MOSTAFAVI**

(310) 849-2030

AMIR@MOSTAFAVILAW.COM

3836 CASTLEROCK RD

MALIBU, CA 90265

Order # H6611-795863

Receipt # 6611 00097 36430

PO / Job Name 1407 Monte Grande Pl

## 🛒 Carryout

👤 Runner Name Fish

| | Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|---|
| 01 | Custom Building Products Polyblend Plus #09 Natural Gray 10 lb. Unsanded Grout | – | 1005401381 | $19.50 / each | 1 | $19.50 |
| 02 | Custom Building Products Polyblend Plus #19 Pewter 10 lb. Unsanded Grout | | 1005401387 | $19.50 / each | 1 | $19.50 |

## 🚚 Delivery

📍 **Delivery Address**
1407 Monte Grande Pl
Pacific Palisades , CA 90272

🚚 **Delivery Options**
Outside Delivery

📅 **Delivery Date**
Thursday, September 15
6:00 AM PDT - 10:00 AM PDT

| | Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|---|
| 01 | Custom Building Products VersaBond 50 lb. White Fortified Thinset Mortar 🏷️ DISCOUNT $1.97 OFF EACH | MTSW50 | 399775 | $19.70 / each $17.73 / each | 10 | $177.30 |
| 02 | Unbranded 2 in. x 4 in. x 104-1/4 in. Prime Green Douglas Fir Stud CA LBR FEE | 328939 | 328939 999735 | $6.98 / each $0.35 / each | 5 1 | $34.90 $0.35 |
| 03 | American Standard Deep Soak Whirlpool Drain | 1599.500.020 | 553243 | $99.00 / each | 1 | $99.00 |
| 04 | American Standard EverClean 60 in. Acrylic Left Drain Rectangular Alcove Whirlpool Bathtub in White | 2425LC-LHO.020 | 518305 | $699.00 / each | 1 | $699.00 |
| 05 | Mueller Streamline 1/2 in. x 10 ft. Copper Type L Pipe | LH04010 | 867926 | $23.26 / each | 2 | $46.52 |
| 06 | BEHR PREMIUM PLUS 5 gal.#12Swiss Coffee Semi-Gloss Enamel Low Odor Interior Paint & Primer 🏷️ DISCOUNT $38.00 OFF EACH GL RECY$ | 301205 | 927655 1008043615 | $190.00 / each $152.00 / each $1.50 / each | 10 10 | $1,900.00 $15.00 |
| 07 | James Hardie HardieBacker 0.42 in. x 3 ft. x 5 ft. Cement Backerboard 🏷️ DISCOUNT $1.69 OFF EACH | 220023 | 202225 | $16.88 / each $15.19 / each | 31 | $470.89 |
| 08 | Custom Building Products RedGard 1 Gal. Waterproofing and Crack Prevention Membrane | LQWAF1 | 755504 | $68.00 / each | 1 | $68.00 |
| 09 | Olympic WaterGuard 1 gal. Clear Exterior Wood Sealer 🏷️ DISCOUNT $3.50 OFF EACH GL RECYC$ | 55260XIA-01 | 1006106360 1008043510 | $17.98 / each $14.38 / each $0.65 / each | 2 2 | $35.96 $1.40 |

Page 1 of 2 | We reserve the right to limit the quantities of merchandise sold to customers.

Exhibit A, page 60



## Customer Receipt
9/13/2022, 3:31 PM PDT

**Store # 6611**

Sales Person AXB3HZJ        Store Phone # (310) 822-3330
Location 12975 W JEFFERSON BLVD, LOS ANGELES, CA 90066

**Order # H6611-795863        Receipt # 6611 00097 36430**

| | Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|---|
| 10 | Custom Building Products TileLab 1 Gal. Grout and Tile Sealer | TLPSRA1 | 124084 | $53.65 / each | 2 | $107.30 |
| | GL Recyc$ | | 999832 | $0.75 / each | 2 | $1.60 |
| 11 | TRIMACO Easy Mask 3 ft. x 167 ft. Red Rosin Medium Weight Paper | 35145 | 384815 | $13.97 / each | 4 | $55.88 |
| 12 | USG Sheetrock Brand 5/8 in. x 4 ft. x 8 ft. Firecode X Drywall | 14211011308 | 419109 | $17.83 / each | 5 | $89.15 |
| 13 | Unbranded 23/32 in. x 4 ft. x 8 ft. Fir Sheathing Plywood (Actual: 0.688 in. x 48 in. x 96 in.) | 439614 | 439614 | $50.66 / each | 8 | $405.28 |
| | CA LBR FEE | | 999735 | $4.05 / each | 1 | $4.05 |
| 14 | Outside Delivery | | 515663 | $109.00 / each | 1 | $109.00 |

**Delivery**

Delivery Address
1407 Monte Grande Pl
Pacific Palisades , CA 90272

Delivery Options
Priority Ground Shipping

Estimated Arrival
September 20 - September 23

| | Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|---|
| 01 | Acudor Products 15 in. x 15 in. Steel Wall or Ceiling Access Door<br>⊕ Delivered by Sep 20 - Sep 23 | | 1001208493 | $38.08 / each | 3 | $114.24 |
| 02 | Priority Ground Shipping | | | | 1 | $0.00 |

**90 DAY RETURN POLICY.** The Home Depot reserves the right to limit / deny returns. Please see the return policy sign in the stores for details.

**Payment Method**

Visa 0647        Charged $4,472.66

| | |
|---|---|
| Subtotal | $4,545.71 |
| Discounts | -$459.29 |
| Sales Tax | $386.24 |
| Order Total | $4,472.66 |

Take a short survey for a chance TO WIN A $5,000 Home Depot Gift Card. Entries must be completed within 14 days of purchase. Entrants must be 18 or older to enter. No Purchase Necessary. See complete rules on www.homedepot.com/survey

User ID: GVM3 79760 73246        Password: 22463 73149

**Page 2 of 2 |** We reserve the right to limit the quantities of merchandise sold to customers.

# EXHIBIT B

# EXHIBIT B



**Non Renewal Notice For Your** General Liability Policy

Hi Shlomi,

We are writing to inform you that while reviewing your account, we found that
This policy was declined for renewal.
Decline reason 1: Your business has had more than 2 claims in the last three years with a Next insurance policy.
Decline reason 2: Your business has had 2 or more claim occurrences in the last 180 days of a Next insurance policy.}
As a result, we are unfortunately non-renewing your policy with us effective 08/04/2023 at 12:01 AM standard time per California law.

Please consider this advance notice that your policy will end on 08/04/2023 at 12:01AM standard time. We are sending this notice ahead of the policy's expiration date so you have enough time to find coverage elsewhere.

If you believe this decision was made in error and wish to continue coverage with Next, please reach out to our support team at 855-222-5919.

We hope we are able to resolve this matter and continue partnering with your business. Until then, we wish you well on your journey.

Sincerely,
The Next Insurance
Team

Next Insurance, Inc. · PO Box 60787
Palo Alto, CA 94306
support@next-insurance.com
(855) 222-5919
Mon - Fri, 6:00 am - 5:00 pm PT

Exhibit B, page 1