AMIR MOSTAFAVI, ESQ. (SBN: 282372)
**MOSTAFAVI LAW GROUP, APC**
15243 La Cruz Dr., #67
Pacific Palisades, California 90272
Telephone: (310) 849-2030
Facsimile: (310) 473-2222
amir@mostafavilaw.com
*Attorneys for Plaintiff Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE NATIONAL INSURANCE COMPANY, a Texas corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AMIR MOSTAFAVI, TRUSTEE OF THE NMFT FAMILY TRUST, Dated July 10, 2018; and SHLOMI ABITTAN, individually and dba Your Prime Contractor; and DOES 1-50,<br><br>Defendants. | CASE NO. **2:25-CV-07863 SPG (SKx)**<br><br>*[Assigned to Judge Sherilyn Peace Garnett]*<br><br>**DECLARATION OF AMIR MOSTAFAVI ISO OF MOTION TO DISMISS BASED ON THE COLORADO RIVER ABSTENTION DOCTRINE**<br><br>*[filed concurrently with Memorandum of Points & Authorities, and [proposed] order]*<br><br>*Date: [To be set by Court]*<br>*Time: [To be set by Court]* |

1

**DECLARATION OF AMIR MOSTAFAVI IN SUPPORT OF MOTION TO DISMISS BASED ON THE COLORADO RIVER ABSTENTION DOCTRINE**

I, Amir Mostafavi, declare as follows:

1.    I am an attorney licensed to practice law in the State of California, State Bar Number 282372, and I serve as counsel for Defendant Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018 ("NMFT"), in this action. I am also the Trustee of the NM Family Trust. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to these facts.

2.    This declaration is submitted in support of Mostafavi's Motion to Dismiss this action without prejudice pursuant to the Colorado River abstention doctrine.

3.    On November 16, 2023, NMFT filed the suit against Your Prime Contractor, Inc. dba Prime Construction (Prime Construction), its owner David Abittan and two of his children Shlomi Abittan and Oron Avitan alleging claims raised in a construction/remodeling property in Pacific Palisades in 2023. (Case No. 23SMCV05401) Default was entered against the Prime Construction and David Abittan, while Shlomi Abittan and Oron Avitan denied liability on the ground that they had nothing to do with the defaulted parties or the alleged claims. Discovery showed David Abittan has been out of country since 2019, Prime Construction had no employees, and all financial transactions (debits and credits) were done by Shlomi Abittan using his personal checking account with Bank of America. The discovery also established that Shlomi Abittan was unlicensed but use the contractor license of Prime Construction for his contract work. Shlomi Abittan also took a liability insurance with Plaintiff SNIC individually and for his dba Your Prime Contractor (not the Your Prime Contractor, Inc, dba Prime Construction. Based on the bank record obtained by subpoena, during the July 2023-August 2024, Shlomi Abittan received over $2.1M from close to 100 homeowners in Southern California, leaving some if not most with incomplete, late, or defective unlicensed work.

4.    The Certificate of Insurance obtained from SNIC and its agent, Next Insurance Inc. created additional confusions. One COI shows David Abittan as the insured with Your Prime Contractor, Inc, dba Prime Construction as the business, and other shows Shlomi Abittan as the insured with Your Prime Contractor as the business. A true and accurate of COIs is attached hereto as **Exhibit A**.

5.      On July 28, 2025, NMFT filed the 25SMCV03852 action also in Superior Court of Los Angeles County alleging a single claim under California Insurance Code section 11580(B). A true and accurate copy of the 25SMCV03852 action in the State Court is attached hereto as **Exhibit B**.

6.      After service of process and summons, NMFT engaged in discussions with SNIC's counsel, Jason P. Tortorici from Schilleci & Tortorici, P.C. offering to amend the complaint by removing the section 11580(B) claim and replacing it with a declaratory relief claim instead. A true and accurate of my correspondences with Mr. Tortorici regarding amending the 25SMCV03852 complaint for a declaratory relief claim is attached hereto as **Exhibit C**.

7.      On August 21, 2025, SNIC filed this federal declaratory judgment action seeking a declaration of no coverage under Commercial General Liability Policy No. NXTYHC6TE9-01-GL (the "Policy") with respect to claims arising from construction work at the property located at 1407 Monte Grande Pl., Pacific Palisades, California 90272 (the "Property").

8.      On the following day on August 22, 2025, SNIC rejected NMFT's offer to amend the 25SMCV03852 by replacing the direct claim with a declaratory relief claim and filed a demurrer in the state court as well.

9.      On or about September 21, 2025, NMFT amended the 25SMCV03852 action (the "State Action"), against Shlomi Abittan and for a declaratory relief against SNIC. A true and correct copy of the First Amended Complaint in the State Action is attached hereto as **Exhibit D**.

10.      On September 24, 2025, the Hon. Mark H. Epstein, Superior Court, Dept. I, Judge presiding ordered both state cases related. A true and accurate of the Sept 24, 2025 minute order of Dept. I is attached hereto as **Exhibit E**.

11.      The State Action incorporates allegations from the earlier underlying state court action, Los Angeles County Superior Court Case No. 23SMCV05401, filed on November 11, 2023, which includes extensive discovery such as bank records, Contractors State License Board filings, and insurance documentation establishing Shlomi Abittan's unlicensed operations and the factual basis for coverage under the Policy.

12.      The State Action asserts claims against Shlomi Abittan for breach of contract, negligence, fraud, construction defects, and violations of California Business and Professions Code sections related to unlicensed contracting, and seeks declaratory relief against SNIC on the same coverage issues presented in this federal action, including whether negligent acts during the policy period

3

constitute "occurrences," the applicability of exclusions, policy timing, and SNIC's indemnification obligations under California Insurance Code § 11580.

13.    The factual allegations in the State Action, including details of defective work commencing on or about August 1, 2023, property damage amplified by a January 7, 2025 fire, and Shlomi Abittan's systematic unlicensed scheme evidenced by $2,188,763.42 in deposits into a personal bank account, directly support the parallelism and exceptional circumstances warranting abstention as argued in the motion.

14.    Resolution of the State Action will substantially resolve the issues in this federal case, as both proceedings involve the same parties, Policy, and underlying events.

15.    On October 1, 2025, I requested to meet and confer with SNIC's counsel pursuant to Local Rule 7-3 Pre-Filing Meet and Confer Requirement either by videoconference or in person. On October 3, 2025, at telephonically conferred with Ms. Tolson about the federal case, and intent to file a motion to dismiss based on the Colorado River, the pending state case, and requested for dismissal of the federal and SNIC from the pending state case.  During the call, Ms. Tolson did not agree to dismiss the federal case voluntarily. On October 6, 2025, I sent another email to Ms. Tolson inquiring about our recent telephonic conference. As of the time of this writing, I have not heard back from Ms. Tolson.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 1, 2025, at Pacific Palisades, California.


Dated: October 7, 2025

*Amir Mostafavi*

By:_____
AMIR MOSTAFAVI, Declarant

DECLARATION OF AMIR MOSTAFAVI ISO OF MOTION TO DISMISS BASED
ON THE COLORADO RIVER ABSTENTION DOCTRINE

# EXHIBIT A

 **ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 05/11/2022 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Next First Insurance Agency, Inc.<br>PO Box 60787<br>Palo Alto, CA 94306 | PHONE (A/C, No, Ext): (855) 222-5919 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | | |
| | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| | INSURER A : State National Insurance Company, Inc. | | 12831 |
| INSURED | INSURER B : | | |
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES            CERTIFICATE NUMBER: 3529443            REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X **COMMERCIAL GENERAL LIABILITY** | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | EACH OCCURRENCE | $1,000,000.00 |
| | ☐ CLAIMS-MADE  X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000.00 |
| | | | | | | | MED EXP (Any one person) | $15,000.00 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000.00 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000.00 |
| | X POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000.00 |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N | | | | | | ☐ PER STATUTE  ☐ OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | (Mandatory in NH) | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Contractors Errors and Omissions | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | Each Occurrence | $25,000.00 |
| | | | | | | | Aggregate: | $50,000.00 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

| CERTIFICATE HOLDER | | CANCELLATION |
|---|---|---|
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | **LIVE CERTIFICATE**<br><br>Click or scan to view | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)            The ACORD name and logo are registered marks of ACORD

NMFT186



# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 05/10/2023 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Next First Insurance Agency, Inc.<br>PO Box 60787<br>Palo Alto, CA 94306 | PHONE (A/C, No, Ext): (855) 222-5919 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : State National Insurance Company, Inc. | | 12831 |
| INSURED | INSURER B : | | |
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER: 891093544          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | EACH OCCURRENCE | $1,000,000.00 |
| | ☐ CLAIMS-MADE  X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000.00 |
| | | | | | | | MED EXP (Any one person) | $15,000.00 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000.00 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000.00 |
| | X POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000.00 |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y / N | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  N / A | | | | | | E.L. EACH ACCIDENT | $ |
| | (Mandatory in NH) | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Contractors Errors and Omissions | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | Each Occurrence: | $25,000.00 |
| | | | | | | | Aggregate: | $50,000.00 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

| CERTIFICATE HOLDER | | CANCELLATION |
|---|---|---|
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | LIVE CERTIFICATE<br>[QR code]<br>Click or scan to view | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | | AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

NMFT183

**ACORD®**  **CERTIFICATE OF PROPERTY INSURANCE**

| DATE (MM/DD/YYYY) |
|---|
| 05/10/2023 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER Next First Insurance Agency, Inc.<br>PO Box 60787<br>Palo Alto, CA 94306 | CONTACT NAME: | | |
|---|---|---|---|
| | PHONE (A/C, No, Ext): (855) 222-5919 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | | |
| | PRODUCER CUSTOMER ID: | | |

| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|---|
| INSURED Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | INSURER A : | State National Insurance Company, Inc. | 12831 |
| | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

**COVERAGES**    **CERTIFICATE NUMBER:** 891093544    **REVISION NUMBER:**

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|---|---|
| A | X  PROPERTY | | NXT7I6AULC-01-CP | 08/04/2022 | 08/04/2023 | | BUILDING | $ |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | X | PERSONAL PROPERTY | $ 15,000.00 |
| | BASIC | BUILDING | | | | X | BUSINESS INCOME | $ Included |
| | BROAD | CONTENTS | | | | X | EXTRA EXPENSE | $ Included |
| | X  SPECIAL | $500.00 | | | | | RENTAL VALUE | $ |
| | EARTHQUAKE | | | | | | BLANKET BUILDING | $ |
| | WIND | | | | | | BLANKET PERS PROP | $ |
| | FLOOD | | | | | | BLANKET BLDG & PP | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | INLAND MARINE | | TYPE OF POLICY | | | | EQUIPMENT | $ |
| | CAUSES OF LOSS | | | | | | MISC TOOLS | $ |
| | NAMED PERILS | | POLICY NUMBER | | | | BORROWED TOOLS | $ |
| | OPEN PERILS | | | | | | | $ |
| | CRIME | | | | | | | $ |
| | TYPE OF POLICY | | | | | | | $ |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |

SPECIAL CONDITIONS / OTHER COVERAGES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

| CERTIFICATE HOLDER | | CANCELLATION |
|---|---|---|
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | LIVE CERTIFICATE<br><br>Click or scan to view | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

© 1995-2015 ACORD CORPORATION. All rights reserved.

ACORD 24 (2016/03)    The ACORD name and logo are registered marks of ACORD

NMFT184

ACORD® **CERTIFICATE OF PROPERTY INSURANCE**

DATE (MM/DD/YYYY)
08/04/2023

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER Next First Insurance Agency, Inc.<br>PO Box 60787<br>Palo Alto, CA 94306 | CONTACT NAME: | |
|---|---|---|
| | PHONE (A/C, No. Ext): (855) 222-5919 | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | |
| | PRODUCER CUSTOMER ID: | |

| | | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|---|
| INSURED Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | INSURER A : | State National Insurance Company, Inc. | 12831 |
| | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

**COVERAGES**          CERTIFICATE NUMBER: 698739405          REVISION NUMBER:

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | | LIMITS |
|---|---|---|---|---|---|---|---|---|
| A | X PROPERTY | | NXT7I6AULC-02-CP | 08/04/2023 | 08/04/2024 | | BUILDING | $ |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | X | PERSONAL PROPERTY | $16,500.00 |
| | BASIC | BUILDING | | | | X | BUSINESS INCOME | $Included |
| | BROAD | | | | | X | EXTRA EXPENSE | $Included |
| | X SPECIAL | CONTENTS $500.00 | | | | | RENTAL VALUE | $ |
| | EARTHQUAKE | | | | | | BLANKET BUILDING | $ |
| | WIND | | | | | | BLANKET PERS PROP | $ |
| | FLOOD | | | | | | BLANKET BLDG & PP | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | INLAND MARINE | | TYPE OF POLICY | | | | EQUIPMENT | $ |
| | CAUSES OF LOSS | | | | | | MISC TOOLS | $ |
| | NAMED PERILS | | POLICY NUMBER | | | | BORROWED TOOLS | $ |
| | OPEN PERILS | | | | | | | $ |
| | CRIME | | | | | | | $ |
| | TYPE OF POLICY | | | | | | | $ |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |

SPECIAL CONDITIONS / OTHER COVERAGES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| LIVE CERTIFICATE  Click or scan to view | AUTHORIZED REPRESENTATIVE |

© 1995-2015 ACORD CORPORATION. All rights reserved.

ACORD 24 (2016/03)          The ACORD name and logo are registered marks of ACORD

NMFT185

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
07/15/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**IMPORTANT:**  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Next First Insurance Agency, Inc. | PHONE (A/C, No. Ext): (855) 222-5919 | | FAX (A/C, No): |
| PO Box 60787 | E-MAIL ADDRESS: support@nextinsurance.com | | |
| Palo Alto, CA 94306 | | | |
| | **INSURER(S) AFFORDING COVERAGE** | | **NAIC #** |
| | INSURER A : State National Insurance Company, Inc. | | 12831 |
| **INSURED** | INSURER B : | | |
| David Abittan | INSURER C : | | |
| Your Prime Contractor Inc. DBA Prime Construction | INSURER D : | | |
| 22222 Sherman Way Ste 101 | INSURER E : | | |
| Canoga Park, CA 91303 | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER: 856773255          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X | **COMMERCIAL GENERAL LIABILITY** | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | EACH OCCURRENCE | $1,000,000.00 |
| | | CLAIMS-MADE [X] OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000.00 |
| | | | | | | | | MED EXP (Any one person) | $15,000.00 |
| | | | | | | | | PERSONAL & ADV INJURY | $1,000,000.00 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000.00 |
| | X | POLICY [ ] PROJECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000.00 |
| | | OTHER: | | | | | | | $ |
| | | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | | OWNED AUTOS ONLY    SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | | HIRED AUTOS ONLY    NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | | $ |
| | | **UMBRELLA LIAB**    OCCUR | | | | | | EACH OCCURRENCE | $ |
| | | **EXCESS LIAB**    CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | | DED [ ] RETENTION $ | | | | | | | $ |
| | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**    Y/N | | | | | | PER STATUTE    OTHER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | | Contractors Errors and Omissions | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | Each Occurrence: | $25,000.00 |
| | | | | | | | | Aggregate: | $50,000.00 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Proof of Insurance.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| David Abittan | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Your Prime Contractor Inc. DBA Prime Construction | |
| 22222 Sherman Way Ste 101 | |
| Canoga Park, CA 91303 | AUTHORIZED REPRESENTATIVE |
| | *Ann Ryan* |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD

# ACORD® CERTIFICATE OF PROPERTY INSURANCE

**DATE (MM/DD/YYYY)** 07/15/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER Next First Insurance Agency, Inc.<br>PO Box 60787<br>Palo Alto, CA 94306 | CONTACT NAME: | | |
|---|---|---|---|
| | PHONE (A/C, No, Ext): (855) 222-5919 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | | |
| | PRODUCER CUSTOMER ID: | | |
| | **INSURER(S) AFFORDING COVERAGE** | | **NAIC #** |
| INSURED David Abittan<br>Your Prime Contractor Inc. DBA Prime Construction<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | INSURER A : State National Insurance Company, Inc. | | 12831 |
| | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES CERTIFICATE NUMBER: 856773255 REVISION NUMBER:

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | | LIMITS |
|---|---|---|---|---|---|---|---|---|
| A | X **PROPERTY** | | NXT7I6AULC-02-CP | 08/04/2023 | 07/15/2024 | | BUILDING | $ |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | X | PERSONAL PROPERTY | $16,500.00 |
| | BASIC | BUILDING | | | | X | BUSINESS INCOME | $Included |
| | BROAD | CONTENTS | | | | X | EXTRA EXPENSE | $Included |
| | X SPECIAL | $500.00 | | | | | RENTAL VALUE | $ |
| | EARTHQUAKE | | | | | | BLANKET BUILDING | $ |
| | WIND | | | | | | BLANKET PERS PROP | $ |
| | FLOOD | | | | | | BLANKET BLDG & PP | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | **INLAND MARINE** | | TYPE OF POLICY | | | | EQUIPMENT | $ |
| | CAUSES OF LOSS | | | | | | MISC TOOLS | $ |
| | NAMED PERILS | | POLICY NUMBER | | | | BORROWED TOOLS | $ |
| | OPEN PERILS | | | | | | | $ |
| | **CRIME** | | | | | | | $ |
| | TYPE OF POLICY | | | | | | | $ |
| | **BOILER & MACHINERY / EQUIPMENT BREAKDOWN** | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |

SPECIAL CONDITIONS / OTHER COVERAGES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| David Abittan<br>Your Prime Contractor Inc. DBA Prime Construction<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE *Ann Ryan* |

© 1995-2015 ACORD CORPORATION. All rights reserved.

ACORD 24 (2016/03)    The ACORD name and logo are registered marks of ACORD

# EXHIBIT B

AMIR MOSTAFAVI, ESQ. (SBN: 282372)
**MOSTAFAVI LAW GROUP, APC**
15243 La Cruz Dr., #67
Pacific Palisades, California 90272
Telephone: (310) 849-2030
Facsimile: (310) 473-2222
amir@mostafavilaw.com

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/28/2025 12:00 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Ilieva, Deputy Clerk

*Attorneys for Plaintiff Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION

| | |
|---|---|
| AMIR MOSTAFAVI, TRUSTEE OF THE NM FAMILY TRUST, Dated July 10, 2018,<br><br>Plaintiff,<br><br>vs.<br><br>STATE NATIONAL INSURANCE CO., INC., a Texas corporation, and DOES 1–10, inclusive,<br><br>Defendants. | **COMPLIANT FOR:** 25SMCV03852<br><br>**DIRECT ACTION TO RECOVER ON JUDGMENT AGAINST INSURED (INS. CODE § 11580(B)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

    Plaintiff Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018 ("Plaintiff"), hereby brings this Complaint against Defendant State National Insurance Company, Inc., and DOES 1–10, inclusive, and alleges as follows:

### NATURE OF THE ACTION

1.    This action arises from Defendant State National Insurance Company, Inc.'s denial of claim to satisfy damages suffered by Plaintiff as the direct and proximate results of the wrongs by Your Prime Contractor, Inc. dba Prime Construction ("YPC"), David Abittan, Shlomi Abittan, Oron Avitan and Shay Yefet, the defendants in the underlying action (Case No. 23SMCV05401, Dept. I, Superior Court of California, County of Los Angeles, filed November 11, 2023), pursuant to a commercial general liability insurance policy issued by State National to YPC and Shlomi Abittan under the policy number NXT7I6AULC-01-CP.

2.      Plaintiff, a homeowner, contracted with YPC for home improvement work at Plaintiff's property, which YPC and its agents performed negligently, fraudulently, and in breach of contract, causing substantial damages.

3.      YPC, David Abittan and Shay Yefet failed to answer to the underlying action and defaults were entered against them on March 5, 2024. (Exhibit C)

4.      Plaintiff alleges that judgments against YPC, David Abittan, and Shlomi Abittan (the INSURED) are covered under the NXT7I6AULC-01-CP liability policy. Plaintiff seeks to recover the judgment amount against YPC, David Abittan and Shlomi Abittan from State National under California Insurance Code § 11580(b)(2).

## THE PARTIES

2.      Plaintiff Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018, is an individual residing in Los Angeles County, California, and the legal owner of the real property located at 1407 Monte Grande Pl., Pacific Palisades, California 90272 ("the Property").

3.      Defendant State National Insurance Company, Inc. ("State National") is, on information and belief, a Texas corporation with its principal place of business in Texas, authorized to transact liability insurance in California as part of the Markel Corp Group (NAIC Group 0785), as confirmed by the California Department of Insurance. State National issued a commercial general liability insurance policy to YPC, License No. 1031676, effective during the period of the Home Improvement Contract, covering liabilities arising from YPC's construction activities.

4.      The true names and capacities of defendants named herein as DOES 1 through 10 are unknown to Plaintiff at this time. Plaintiff sues said defendants by such fictitious names pursuant to California Code of Civil Procedure § 474 and will seek leave to amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes that each DOE defendant is in some manner liable for the events and actions alleged herein.

## JURISDICTION AND VENUE

5.   Subject matter jurisdiction is proper in the Superior Court of California, County of Los Angeles, pursuant to Article VI, § 10 of the California Constitution, as the claims arise under California law and the amount in controversy exceeds $25,000.

6.   Venue is proper in the Superior Court of California, County of Los Angeles, pursuant to California Code of Civil Procedure § 395, as the underlying contract was performed in Los Angeles County, the Property is located in Los Angeles County, and State National transacts business in Los Angeles County.

COMPLIANT

**PROCEDURAL HISTORY**

7.   On November 11, 2023, Plaintiff filed a complaint in the Superior Court of California, County of Los Angeles (Case No. 23SMCV05401), against YPC, David Abittan, Shlomi Abittan, Oron Aharon Avitan, Shay Yefet, Business Alliance Insurance Company, and DOES 1–30, alleging twelve causes of action: (1) fraud – intentional misrepresentation; (2) fraud – concealment; (3) fraud – false promise; (4) violation of Business and Professions Code; (5) negligence; (6) breach of written contract; (7) breach of oral contract; (8) breach of covenant of good faith and fair dealing; (9) negligent interference with prospective economic relations; (10) conversion; (11) negligent misrepresentation; and (12) breach of third-party beneficiary contract.

8.   The underlying complaint arose from a Home Improvement Contract dated July 26, 2023, and its three amendments, between Plaintiff and YPC for remodeling work at the Property, including the master bathroom, Jack & Jill bathroom, guest bathroom, balcony, interior painting, and other improvements, for a total contract price of $102,300. Plaintiff paid YPC $44,500 for work that was incomplete, defective, or abandoned.

9.   The underlying complaint alleged that YPC, David Abittan, Shlomi Abittan, Oron Avitan and its agent Shay Yefet engaged in wrongful conducts, as shown in Exhibit A (Case No. 23SMCV05401)

**GENERAL ALLEGATIONS**

12. On or about July 26, 2023, Plaintiff entered into the Home Improvement Contract with YPC, as detailed in the underlying complaint. The contract was amended three times, increasing the total price to $102,300, with Plaintiff paying $44,500 to YPC for work that was incomplete, defective, or abandoned.

13. Plaintiff is informed and believes that State National issued a commercial general liability insurance policy (NXT7I6AULC-01-CP) to YPC, effective August 4, 2022 until August 4, 2023, during the period of the Home Improvement Contract (July 26, 2023, to October 26, 2023), covering liabilities for property damage, loss of use, and other damages caused by the negligent or wrongful conducts of the INSURED in the construction activities. (Exhibit B for the NXT7I6AULC-01-CP policy)

14. The NXT7I6AULC-01-CP policy complies with California Insurance Code § 11580(b)(2), allowing a judgment creditor to sue State National directly to recover on a judgment against the INSURED for covered liabilities.

15. The default against YPC and David Abittan entered on March 5, 2024, establish their liability for damages caused by covered acts, including:

3

COMPLIANT

a.      Negligent construction work resulting in property damage, *inter alia*, such as an improperly sloped balcony causing water pooling; defecting hot mopping of bathrooms, and damages to the hardwood flooring.

b.      Loss of use of the Property, resulting in lost rental income of up to $20,000 per month since September 15, 2023;

c.      Conversion of Plaintiff's personal property, including bathtubs and paint valued at approximately $2,698.

16.      Plaintiff suffered damages as a direct result of YPC's covered acts, including but not limited to:

a.   Payments of $44,500 to YPC for incomplete or defective work;

b.   Loss of rental income at approximately $20,000 per month since September 15, 2023, due to the Property's non-rentable condition;

c.   Costs to repair defective work, such as the improperly sloped balcony;

d.   Costs to complete the abandoned project, estimated to exceed $250,000;

e.   Diminution in the Property's value due to substandard work;

f.   Conversion of personal property valued at approximately $2,698.

17. In the underlaying action, Plaintiff alleges that YPC and Shlomi Abittan are alter ego of each other and Shlomi Abittan is personally liable for damages caused by wrongs done by YPC and his father David Abittan.  The NXT7I6AULC-01-CP policy provides Shlomi Abittan as the insured.

**FIRST CAUSE OF ACTION**

**DIRECT ACTION TO RECOVER ON JUDGMENT (Ins. Code § 11580(b)(2))**

**(Against State National Insurance Company, Inc., and DOES 1–10)**

18. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 17 as though fully set forth herein.

19.      Pursuant to California Insurance Code § 11580(b)(2), a liability insurance policy issued in California must permit a judgment creditor to maintain a direct action against the insurer to recover on a judgment against the INSURED for damages covered by the policy.

20.      State National issued a commercial general liability insurance policy to YPC, effective during the period of the Home Improvement Contract, covering liabilities for property damage, loss of use, and other damages caused by YPC's negligent or wrongful conduct in its construction activities. The policy complies with Ins. Code § 11580(b)(2), permitting Plaintiff, as a judgment creditor, to sue State National directly.

4

COMPLIANT

21.     The default entered against YPC and David Abittan in Case No. 23SMCV05401 establish their liability for damages caused by covered acts, including negligence, breach of contract, and conversion, as alleged in the underlying complaint as shown in Exhibit A. These damages, including property damage, loss of rental income, and converted property, fall within the scope of State National's liability policy (NXTYHC6TE9-01-GL).

22.     Plaintiff, as a judgment creditor of the INSURED, is entitled to recover the judgment amount from State National, up to the policy limits, pursuant to Ins. Code § 11580(b)(2). Plaintiff's damages, including $44,500 in payments, $20,000 per month in lost rental income, repair and completion costs exceeding $250,000, and converted property valued at $2,698, exceed the policy limits.

23.     Plaintiff submitted a claim against the INSURED under claim No. NXTC-CAGL-YTL4HF to State National to its Authorized selling agent, Next First Insurance Agency, Inc. in or about April 2024, which was denied on April 24, 2024. (Exhibit D)

24.     State National breached its obligations under the liability policy by denial of Plaintiff's claim to pay for damages Plaintiff suffered as the result of the INSURED's wrongful acts.

25.     As a direct and proximate result of State National's breach, Plaintiff has suffered damages in an amount equal to the judgment, to be proven at trial, but not less than the policy limits of the commercial general liability policy issued to the INSURED under the NXTYHC6TE9-01-GL policy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant State National Insurance Company, Inc., and DOES 1–10 as follows:

1. For damages in the amount of the judgment against the INSURED, to be proven at trial, but not less than the policy limits of the commercial general liability NXTYHC6TE9-01-GL policy;

2. For prejudgment interest pursuant to California Civil Code § 1713;

3. For costs of suit incurred herein and For such other and further relief as the court deems just and proper.

Dated: July 26, 2025          **MOSTAFAVI LAW GROUP, APC**

*Amir Mostafavi*

By:_____
AMIR MOSTAFAVI, Esq.
Attorney for Plaintiff
NM Family Trust

5

COMPLIANT

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury for all claims.

Dated: July 26, 2025              **MOSTAFAVI LAW GROUP, APC**

                                   *Amir Mostafavi*

                                   By:_____
                                   AMIR MOSTAFAVI, Esq.
                                   Attorney for Plaintiff
                                   NM Family Trust

6

COMPLIANT

# EXHIBIT A

## (State National Insurance Company, Inc. )

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

YOUR PRIME CONTRACTOR, INC. DBA PRIME
CONSTRUCTION; a corporation; DAVID NMN ABITTAN,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

AMIR MOSTAFAVI, TRUSTEE OF THE NM FAMILY TRUST,
Dated July 10, 2018,

**Electronically FILED by
Superior Court of California,
County of Los Angeles
11/16/2023 11:33 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Mejia, Deputy Clerk**

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Santa Monica Courthouse
1725 Main Street
Santa Monica, CA 9040

**CASE NUMBER:**
*(Número del Caso):*

**23SMCV05401**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Amir Mostafavi (SBN 282372); 528 Palisades Dr., Suite 220, Pacific Palisades, CA 90272 (310) 849-2030

**DATE:** 11/13/2023
*(Fecha)* 11/16/2023

Clerk, by David W. Slayton, Executive Officer/Clerk of Court, Deputy
*(Secretario)* A. Mejia                                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A )

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| NM Family Trust v. Your Prime Contractor, Inc., et al. | 23SM CV05401 |

**INSTRUCTIONS FOR USE**

+ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
+ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

an individual, SHLOMI ABITTAN, an individual; ORON AHARON AVITAN, an individual; SHAY YEFET, an individual, BUSINESS ALLIANCE INSURANCE COMPANY, DOES 1-30; inclusive,

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**Electronically FILED by**
**Superior Court of California,**
**County of Los Angeles**
**11/15/2023 11:10 AM**
**David W. Slayton,**
**Executive Officer/Clerk of Court,**
**By I. Valencia, Deputy Clerk**

AMIR MOSTAFAVI, ESQ. (SBN: 282372)
**MOSTAFAVI LAW GROUP, APC**
528 Palisades Dr., Suite 220
Pacific Palisades, CA 90272
Telephone: (310) 849-2030
Facsimile: (310) 473-2222
amir@mostafavilaw.com

*Attorneys for Plaintiff Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION

| | |
|---|---|
| AMIR MOSTAFAVI, TRUSTEE OF THE NM FAMILY TRUST, Dated July 10, 2018,<br><br>Plaintiff,<br><br>vs.<br><br>YOUR PRIME CONTRACTOR, INC. DBA PRIME CONSTRUCTION; a corporation; DAVID NMN ABITTAN, an individual, SHLOMI ABITTAN, an individual; ORON AHARON AVITAN, an individual; SHAY YEFET, an individual, BUSINESS ALLIANCE INSURANCE COMPANY. DOES 1-30; inclusive,<br><br>Defendants. | COMPLIANT FOR: 23SMCV05401<br><br>1. **FRAUD - INTENTIONAL MISREPRESENTATION**<br>2. **FRAUD - CONCEALMENT**<br>3. **FRAUD - FALSE PROMISE**<br>4. **VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION**<br>5. **NEGLIGENCE**<br>6. **BREACH OF WRITTEN CONTRACT**<br>7. **BREACH OF ORAL CONTRACT**<br>8. **BREACH OF COVENANT OF GOOD-FAITH AND FAIR DEALING**<br>9. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br>10. **CONVERSION**<br>11. **NEGLIGENT MISREPRESENTATION**<br>12. **BREACH OF THIRD PARTY BENEFICIARY CONTRACT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018, ("Plaintiff"), hereby brings this Complaint against defendants YOUR PRIME CONTRACTOR, INC. DBA PRIME CONSTRUCTION; a corporation; DAVID NMN ABITTAN, an individual; ORON AHARON AVITAN, an individual; SHAY YEFET, an individual; BUSINESS ALLIANCE INSURANCE COMPANY and DOES 1-30, inclusive, on information and belief alleges as follows:

COMPLIANT

## NATURE OF THE ACTION

1.      This action is between the plaintiff homeowner one hand, and the home improvement contactor, its owners and its employees on the other hand who, *inter alia*, fraudulently induced the plaintiff into a home improvement contract, increased the contract price in multiple times, failed to complete the work as promised after receiving $44,500.00, and abandoned the work when the homeowner refused to pay more before they finish the work causing substantial damages including but limited to loss of rental income. The demand of additional payment was not only was unjust and unlawful, but also was prohibited under the terms of the home improvement contract that provided:

**IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NIT YET COMPLETED OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWN PAYMENT.**

Plaintiff seeks to hold Contractor Defendants accountable for their bad advice and construction services and the Plaintiff seek, among other things, the cost of completion of the work abandoned by Contractor Defendants, restitution of the money they received, and payment of loss of rental income, and the diminished value of their property as the result of their defective work.

## THE PARTIES

2.      Plaintiff NM Family Trust, through and by its trustee Amir Mostafavi, who is 65 years of age or older and is considered as a "Senior citizen" under Business & Professional Code Section 7150(b) and is the legal owner of the property located at 1407 Monte Grande Pl., Pacific Palisades, California 90272. (the "PROPERTY")

3.      On information and belief, Defendant YOUR PRIME CONTRACTOR, INC. DBA PRIME CONSTRUCTION, ("PRIME CONSTRUCTION") is a construction company engaged, as a home improvement contractor as defined under Business & Professional Code Section 7150.1 a home improvement contractor shall satisfy all requirements imposed by this article. in the County of Los Angeles and State of California, a CONTRACTOR under Bus & Prof C §§7026, and 7026.1 possessing a B - General Building Contractor and C-54 - Ceramic and Mosaic Tile Contractor licenses under the License # 1031676.  (Exhibit A)

4.      On information and belief, Defendant DAVID NMN ABITTAN, is the PRIME CONSTRUCTION's CEO, Secretary, CFO, Director, and Agent for Service of Process, is an individual who, under Bus & Prof C §7026, as a CONTRACTOR is at all times relevant, resided and did business in the County of Los Angeles and State of California who undertakes to or offers

to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, or the cleaning of grounds or structures in connection therewith, or the preparation and removal of roadway construction zones, lane closures, flagging, or traffic diversions, or the installation, repair, maintenance, or calibration of monitoring equipment for underground storage tanks, and whether or not the performance of work herein described involves the addition to, or fabrication into, any structure, project, development or improvement herein described of any material or article of merchandise. "Contractor" includes subcontractor and specialty contractor.

5.     On information and belief, Defendant SHLOMI ABITTAN is an individual who, at all times relevant, resided and did business in the County of Los Angeles and State of California. On information and belief, SHLOMI ABITTAN and DAVID NMN ABITTAN are related, separate individuals, or might be the same individuals.

6.     On information and belief, Defendant ORON AHARON AVITAN, is an individual who, at all times relevant, resided and did business in the County of Los Angeles and State of California, who is also a CONTRACTOR under Bus & Prof C §7026.

7.     On information and belief, Defendant SHAY YEFET, is an individual who, at all times relevant, resided and did business in the County of Los Angeles and State of California, who worked for PRIME CONSTRUCTION, DAVID NMN ABITTAN, and ORON AHARON AVITAN as a "Home improvement salesperson" under Bus & Prof C §7152(a), which required him to be registered under the California Business and Professions Code, Chapter 9. Contractors [Sections 7000 - 7191] in order to be engaged in the business of soliciting, selling, negotiating, or executing contracts for home improvements, for the sale, installation or furnishing of home improvement goods or services, on behalf of Defendant PRIME CONSTRUCTION.

8.     Plaintiff is informed and believes and thereupon alleges that Defendant BUSINESS ALLIANCE INSURANCE COMPANY was, at times relevant herein, a California corporation with its principle place of business in the State of California.  Plaintiff is further informed and believes and thereupon alleges that Defendant BUSINESS ALLIANCE INSURANCE COMPANY was the license bonding company for Defendant PRIME CONSTRUCTION as it acted as described herein.

COMPLIANT

9.      Plaintiff is informed, believes, and thereon alleges that the true names and capacities, whether individual, corporate, associate, or otherwise of all defendants named herein as DOES 1 through 30 are unknown to Plaintiff at this time.  Plaintiff, therefore, sues said defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1-30 when their names are ascertained.

10.     Plaintiff is informed, believes, and thereon alleges that each of the DOE defendants is in some manner liable to Plaintiff for the events and actions alleged herein. Unless otherwise specified by name, Defendants PRIME CONSTRUCTION, DAVID NMN ABITTAN, ORON AHARON AVITAN, SHAY YEFET and DOES 1 through 30, will be collectively referred to "Contractor Defendants".

11.     Plaintiffs Plaintiff is informed, believes, and thereon alleges that at all times, defendants were acting as an agent, joint venture, integrated enterprise, and/or alter ego for each of the other defendants and each was a co-conspirator with respect to the acts and the wrongful conduct alleged herein so that each is responsible for the acts of the other in connection with the conspiracy in such wrongful acts in connection with the other defendants.

12.     Plaintiff is informed, believes, and thereon alleges that defendants were acting partly within and partly without the scope and course of their employment, and were acting with the knowledge, permission, consent, and ratification of every other Defendant.

## AGENCY ALLEGATIONS

13.     Plaintiff is informed, believes and thereon alleges that that at all relevant times herein, each named defendant and DOES 1-30, were the partner, officer, director, agent, employee, servant and/or representative of other defendant and DOES 1-30, and in doing the things as alleged in this Complaint were acting within the course, scope, and/or authority of such agency, service, employment, partnership and/or joint venture, and with the consent, knowledge, approval and ratification of defendants.

14.     Plaintiff is informed, believes and thereon alleges that defendants at all relevant times herein:

a.      Defendant PRIME CONSTRUCTION is a corporation under the Entity (File) Number: C4048081 with the California Secretary of State.

b.      Defendant DAVID NMN ABITTAN is the co-owner and co-managing operator of PRIME CONSTRUCTION and a contractor as defined in Bus & Prof C §7026.

4

COMPLIANT

c.    Defendant ORON AHARON AVITAN is the co-owner and co-managing operator of PRIME CONSTRUCTION.

d.    Defendant SHAY YEFET is a Home improvement salesperson under Bus & Prof C §7152(a) for PRIME CONSTRUCTION, DAVID NMN ABITTAN, and ORON AHARON AVITAN.

e.    Each Defendant exercised and/or employed indirect control over the hiring, supervision, compliancy with California laws and regulations, and overall performance of terms and conditions of the HOME IMPROVEMENT CONTRACT. (*infra*)

f.    Authorized, directed, sanctioned, consented, cooperated, approved, aided, instigated, assisted, participated in, made the decision to, and/or voted for hiring, retaining, firing, supervising, and controlling the operations of the contractors, subcontractors, employees, and service providers, regardless whether directly employed or retained as independent contractors for purposes of compliance with California law in general and California Department Of Consumer Affairs Contractors State License Board.

g.    Authorized, directed, sanctioned, consented, cooperated, approved, aided, instigated, assisted, participated in, made the decision to, and/or voted for the acts, or omission of acts, as alleged in this Complaint, and incorporated herein by reference;

h.    Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control was in violation of the applicable laws and applicable regulations, and he/she/it failed to take or order appropriate action to remedy and/or avoid the violation of the applicable ordinance(s) as alleged in this Complaint, and incorporated herein by reference;

i.    Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control caused defendants and DOES 1-30 to violate the applicable laws, and he/she/it failed to take or order appropriate action to remedy and/or avoid the violation of the applicable laws by defendants and DOES 1-30 as alleged in this Complaint, and incorporated herein by reference;

j.    Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control was injuring Plaintiff and he/she/it failed to take or order appropriate action to avoid harm;

k.    Furthered the conspiracy by cooperation with *or* lent aid and encouragement to or ratified and adopted the acts of defendants and DOES 1-30 including, but not limited to, their refusal and failure to perform as required by the HOME IMPROVEMENT CONTRACT. (*infra*)

5

**ALTER EGO ALLEGATIONS**

15.     Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned, defendants and DOES 1-30 were the alter ego of the remaining defendants and DOES 1-30, and as hereinafter alleged, were acting for their own benefit and/or the benefit of one or more of the remaining defendants.

16.     Plaintiff is informed, believes and thereon alleges that there exists a unity of ownership and interest, between one or more defendants and DOES 1-30 herein, such that any individuality and separateness between said defendants has ceased, and the said other defendants, and each of them, was at all times relevant to Plaintiff's claims, the alter ego of and all other defendants.

17.     Plaintiff is informed, believes and thereon alleges that the Court's adherence to the fiction of the separate existence of any or all defendants and DOES 1-30 as entities distinct from the other defendants and DOES 1-30 would permit an abuse of the corporate privilege, would sanction fraud and/or promote injustice in that said defendants and DOES 1-30 have defaulted on their individual and collective obligations to Plaintiff under California law.

18.     Plaintiff is informed, believes and thereon alleges that defendants and DOES 1-30 herein were an entity which is, and at all times herein mentioned was, controlled, dominated, and operated by one or more of the other defendants and in that the activities and business of the other Defendants was carried on without or with the holding of directors and/or shareholders meetings and records or no records and/or minutes of any corporate preceding were maintained.

19.     Plaintiff is informed, believes and thereon alleges that one or more of defendants and DOES 1-30 herein, and all other business entity defendants herein, is and at all times herein mentioned was a mere shell and sham without the requisite capital and assets. Thus, said all other business entity defendants herein, is and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by defendants and DOES 1-30, said capitalization was inadequate to do business properly and legally under California law.

20.     On information and belief, at all relevant times herein, defendants and DOES 1-30 were subject to the laws of the State of California.

**JURISDICTION AND VENUE**

21.     Pursuant to Article VI § 10 of the California Constitution, Subject Matter Jurisdiction is proper in the Superior Court of California, County of Los Angeles, State of California.

22.     Pursuant to California Code of Civil Procedure § 395, venue is proper in the Superior Court of California for the County of Los Angeles, State of California, because this is where defendants'

COMPLIANT

headquarters and principal place of business is located, and it is where the wrongful misconduct alleged herein originated.

**GENERAL ALLEGATIONS**

23.    Plaintiff purchased the PROPERTY, a two-story property in Pacific Palisades Highland, an affluent neighbored Los Angeles, California in or about June 3, 2021 as a rental property. Plaintiff leased the PROPERTY shortly on June 25, 2021.

24.    Plaintiff is informed, believes and thereon alleges that the PROPERTY was assessed with fair market monthly lease amount of $20,000 by the real estate professionals in July 2022.

25.    Plaintiff is informed, believes and thereon alleges that in December 2022, the PROPERTY suffered damages from the water leaks caused by soft blockage in master bathroom on the second floor of the PROPERTY.

26.    Plaintiff is informed, believes and thereon alleges that after performing cleanup & dry out and water mitigation in accordance with standards & guidelines (IICRC S-500/520) including, but not limited to, the removal of the affected/damaged building materials in master bathroom and kitchen, Plaintiff desired to to restore the master bathroom and kitchen to its original conditions before the water damages.

27.    Plaintiff is informed, believes and thereon alleges that on or about July 23, 2023, Plaintiff entered onto a service contract with a licensed contractor for a complete painting of the PROPERTY starting August 3, 2023 for $17,000 in total including labor and material with a down payment of $1,000.

28.    In or about July 2023, Plaintiff learnt about PRIME CONSTRUCTION through their online advertising and marketing campaigns promoting itself as a general contractor for home, bathroom, and kitchen remodeling under www.remoelingforless.com website.

29.    On or about July 26, 2023, Plaintiff met with PRIME CONSTRUCTION's sales person SHAY YEFET when he visited the PROPERTY, where Plaintiff told him that the PROPERTY is rental property and discussed with him his desire to remodel the Property and that the time of the essence and the work must be completed with maximum exigency to avoid the loss of rental income.

30.    SHAY YEFET told Plaintiff about a variety of remodeling options, however, Plaintiff informed him that he needs only remodeling of the master bathroom and nothing else. During the same visit, Plaintiff explicitly informed SHAY YEFET that a painting contractor has been already retained and remodeling of the master bathroom is the only work that is needed.

COMPLIANT

31.    SHAY YEFET presented to Plaintiff that if PRIME CONSTRUCTION is retained for the remodeling of the bathroom, PRIME CONSTRUCTION essentially act as a contractor, designer, and project manager rolled into one.

32.    SHAY YEFET also presented himself as knowledgeable and experienced based on other projects that he had built so that Plaintiff would believe that he was capable of providing such services and acting in such capacity. In this regard, SHAY YEFET stated that PRIME CONSTRUCTION had many years of experience and that it had a crew of excellent, licensed subcontractors who he would have work on the project.

33.    DAVID NMN ABITTAN and ORON AHARON AVITAN never said anything to contradict SHAY YEFET's statements and representations regarding PRIME CONSTRUCTION's knowledge, experience, or qualifications.

34.    Based on SHAY YEFET's statements, representations, and omissions, Plaintiff entered into written agreements with PRIME CONSTRUCTION for them to remodel the master bathroom.

35.     Plaintiff is informed, believes and thereon alleges that on behalf of Defendant, SHAY YEFET signed a home improvement contract ("HOME IMPROVEMENT CONTRACT") under B&P §7151.2 for the repairing, remodeling, altering, converting, or modernizing of the master bathroom on July 26, 2023.

36.    Plaintiff is informed, believes and thereon alleges that the HOME IMPROVEMENT CONTRACT provided for remodeling the master bathroom for $25,000. The CONTINUATION/ADDENDUM page described the work as:
a.    Clear area for the start of work and preparation for work;
b.    Demo shower wall and make it up-to-date;
c.    Prepare the flooring in the shower, toilet, and vanity area for tiling, and install tiles;
d.    Fix the ceiling and update the recess lights, speakers, and relocate the fans, and install new fans;
e.    Prepare outlets/switches and make them up-to-date with the code;
f.    Install toilet water and drainage connections and follow the code;
g.    Prepare the vanity area and install the new vanity and mirrors;
h.    Prepare the shower area and install the shower door and fixed glass;
i.    Install bathroom faucets for the vanity, shower, and the tub;
j.    Tiles around the shower, bathroom, and vanity areas on the wall.

37.    THE CONTRACT CHANGE ORDER page of the HOME IMPROVEMENT CONTRACT provided that materials will be purchased by the owner and paid by the contractor up to $4,000. The total price of $25,000 includes all labor and materials for up to $4,000. Any cost exceeding

8

COMPLIANT

$4,000 for shower glass, vanity, mirror, toilet, faucets and tiles ("FINISHED MATERIALS"), will be paid by the owner in addition to $25,000. (Exhibit B)

38.    After expiration of the Three-Day Cancellation Notice, Plaintiff made the down payment of $1,000 on August 2, 2023. (Exhibit C)

39.    On August 1, 2023, Plaintiff met with SHAY YEFET and Julio (Last name unknown, an individual brought, who is believed to be an unlicensed sub-contractor working for PRIME CONSTRUCTION again at the PROPERTY to review the work as specified in the HOME IMPROVEMENT CONTRACT before the start.

40.    During the walk-through, SHAY YEFET induced Plaintiff to cancel the contract with other painting contractor and replaced with PRIME CONSTRUCTION instead.

41.     SHAY YEFET demanded to increase the contract price by $68,300 from $21,000 labor (excluding $4,000 allocated for the FINISHED MATERIALS) to $89,300 claiming that expanded scope of the work beyond the remodeling of the master bathroom requires the increase of the contract price and shorten the time to complete the work if PRIME CONSTRUCTION does all the work instead of multiple contractors.

42.    In reliance to the representations by SHAY YEFET on behalf of the PRIME CONSTRUCTION, Plaintiff agreed to amend the HOME IMPROVEMENT CONTRACT that included higher price for additional work. ("FIRST AMENDED HOME IMPROVEMENT CONTRACT") (Exhibit D)

43.    Under the FIRST AMENDED HOME IMPROVEMENT CONTRACT, it was also agreed that the finished material remain limited to vanity, faucets, valves, floor tiles, wall tiles, shower glass, door levers, locks, mirrors, toilets, and tubs.

44.    On behalf of PRIME CONSTRUCTION, SHAY YEFET agreed the work starts by August 4, 2023. SHAY YEFET verbally promised that if Plaintiff give PRIME CONSTRUCTION the additional work, PRIME CONSTRUCTION would complete the entire work within 4-6 weeks, but no later than September 15, 2023.

45.    The FIRST AMENDED HOME IMPROVEMENT CONTRACT also itemized prices for work or services to be perform provided with the following payment schedule:

a.    Down payment: $2,000, which exceeded the lesser of $1,000 or 10% of the contract price of $89,300.

a.    Upon Start of job: $17,500
b.    Electrical and Plumbing: $10,000

9

COMPLIANT

c.      Tiling: $10,000
d.      Balcony: $10,000
e.      Painting: $10,000
f.      Door knobs, levers, recess lights. switches: $19,500
g.      Completion of work in entirely: $10,300
46.    On August 4, 2023, Plaintiff authorized the payment of $18,500 with a credit card. PRIME CONSTRUCTION charged $19,147.50, which was more than authorized amount. (Exhibit E)

47.     On August 7, 2023, PRIME CONSTRUCTION through its home improvement salesperson, SHAY YEFET, demanded the second increase to the contract price by $10,000 from $89,300 to $93,300 for changing the toilet area in the Jack & Jail Bathroom to shower, relocating toilet to the side of vanity, removing the existing tub and replace it with new tub in the small bathroom, and add recess lights in the small bathroom. ("SECOND AMENDED HOME IMPROVEMENT CONTRACT") (Exhibit F)

48.    Under SECOND AMENDED HOME IMPROVEMENT CONTRACT, the payment schedule was changed as shown in Exhibit F:

a.      down payment: $1,000
b.      upon the start of job: $18,500
c.      upon plumbing and electrical: $10,000
d.      upon tile: $10,000
e.      upon balcony demo: $10,000
f.      upon hot mop: $10,000
g.      upon paint: $16,000
h.      upon fixtures installation: $14,500
i.      upon completion: $7,300

49.    On August 8, 2023, SHAY YEFET demanded another increase to the contract price by $9,000 from $93,300 to $102,300 to install one tub and to create framing for two tile tubs, installation of tiles for tile tubs and shower for the master bathroom, Jack & Jill bathroom, and guest bathroom on floors and walls. ("THIRD AMENDED HOME IMPROVEMENT CONTRACT) (Exhibit G)

50.    The payment schedule for the THIRD AMENDED HOME IMPROVEMENT CONTRACT) was modified to show:

a.      down payment: $1,000
b.      upon the start of job: $18,500
c.      upon plumbing and electrical: $15,000
d.      upon start tile: $15,000
e.      upon balcony demo + start uator proofing: $10,000

COMPLIANT

f.        upon hot mop: $10,000

g.        upon start paint: $15,000

h.        upon fixtures installation: $11,300

i.        upon completion: $6,500

51.        Under the THIRD AMENDED HOME IMPROVEMENT CONTRACT, PRIME CONSTRUCTION agreed that for $102,300 to complete the followings:

a.        Complete Remodeling of the Jack & Jill Bathroom (J&J) – similar to the master bathroom including demolition of old tiles, clearing and preparing the area to start the work; installing tiles in the bathroom, installing faucets and vanity; upgrading the electrical to the code including recess lights, replacement of the fans, electrical switches, plugs, outlets in the bathroom area; installation of toilet, drainage pipes, installation of the new vanity and mirrors, glass shower doors, bathroom faucets and tiles on bathroom walls up to ceiling. The agreement provided the Owner is responsible for supplying the vanity, faucets, shower glass, shower head, and tiles for the remodeling of the J&J bathroom.

b.        All interior painting for walls, ceilings, doors, windows, balcony, and railings;

c.        Install waterproof balcony after demolishing existing tiles down to the plywood, sealing up with waterproofing, patching, and painting of the stucco; painting the railing, and restoration of the double door with patching and painting;

d.         Replace and install all door levers, handles, locks, deadbolts, and hinges, reinstalling existing recess lights, switches, plugs, smoke detectors, and fans;

e.        3rd Bathroom (Upstairs) – refinish existing remodeling of the bathroom, installing the vanity, toilet, finishing tiles, drywalls, fans, door, drainage, faucets, and head shower;

f.        Application of epoxy to the garage flooring.

(Exhibit H)

52.        To avoid another Three-Day Right to Cancel applies, SHAY YEFET required Plaintiff to back date the modified agreements as July 26, 2023, when the initial contract was signed.

53.         On August 14, 2023, Plaintiff made the third payment of $14,352.50 (Check #1060) and forth payment of $10,000 on August 18, 2023 (Check #1061)  to PRIME CONSTRUCTION for total payment of $44,500 for the work provided by the HOME IMPROVEMENT CONTRACT, and its three amendments.

54.        On August 17, 2023, based on the recommendation by the PRIME CONSTRUCTION, Plaintiff purchased a tub to be installed in the guest bathroom at $382.16. Later on, it turned out that the tub was not suitable for the work causing Plaintiff to purchase another tub at much higher price including the expedited shipping to avoid any delay to the work. PRIME CONSTRUCTION failed to return the unused tub to store, but had agreed to credit Plaintiff $382.16 for its costs.

55.        PRIME CONSTRUCTION hired WE CARE DECK COATING as a subcontractor for the work on the balcony. When work was completed, on or about August 20, 2023, Plaintiff notified

COMPLIANT

PRIME CONSTRUCTION that the rain water rain water remains at the balcony because of defective slope. Plaintiff met with the owner of the WE CARE DECK COATING and showed the rain water that remained on the balcony. PRIME CONSTRUCTION and WE CARE DECK COATING refused to correct the work defect, but instead issued a justification (Exhibit I)

56.     On September 23, 2023, Plaintiff notified PRIME CONSTRUCTION regarding the issues and requested immediate action. The letter provided that:

**Loss of Rental Income due to delayed completion of the work** - The Owner entered into the Agreement [HOME IMPROVEMENT CONTRACT] and its subsequent amendments with the expectation that the work will be finished no later than 6 weeks from the start day of August 4, 2023, or September 15, 2023, which was a week ago.  It was made clear to The Agent, on multiple occasions and you and your partner David that the Property is for rent, and because time is of the essence, any delay of the completion would result in loss of income. As you can see from the attached pictures taken on Friday, September 22, 2023, little progress has been made so far despite receiving $44,000, or approximately 44% of the total amount. Please note that delayed completion of the work results in a loss of rental income of $666/day.  Please take notice that starting September 15, 2023, I will be demanding a credit of $666 per day to the remaining balance until the work is completed to my satisfaction under a reasonable standard used commonly in the home improvement industry.

**Subcontractor** – Earlier Julio was assigned as your subcontractor. As we discussed at length on the phone, there was a mismatch between not only the scope but also the quality of the work we agreed on under the agreements and what he agreed to do for the fee he was going to receive from you. I reported to Shay, you, and David that not only Julio is compromising the quality of the work, but also refuses to clean up the work from the trash and other materials created by the demolishing. In his words, his time was valuable and he was not making money to clean up after work was done on a daily basis. Carlos Siam replaced Julio on around August 31, 2023. Unfortunately, the problems did not go away though.

**No Work** - Since the early days of August, there have been many days on which no one is working on the Property. When there was someone there, it was only one or two workers. When I asked Carlos a couple of weeks ago why the work (plumbing, electrical, tiling, painting, etc.) is not done quicker, he stated that he and his 6–7-man crew were finishing up another three-bathroom project and he only could work with his crew only after he finished that project a few days later. Two weeks have passed and still, Carlos's crew members are not working on the Property.

12

COMPLIANT

**Project Management** – As a licensed contractor, you are expected to have a licensed foreman to oversee the project for speedy progress and compliance with the terms of the agreement. The Agent was unlicensed, and you were expected to manage the project. In our telephonic conversation, you mentioned you cannot make any progress unless the plumbing passes inspection this Wednesday, September 20, 2023. The plumbing work must have been started timely for a full completion for a much earlier inspection. The plumbing in the bathrooms has been finalized in TAA as of August 8, 2023, or over seven weeks ago! Even as of September 22, 2022, as shown in the attached pictures, the plumbing has not been fully completed.

**Material** – Since the agreements required the Owner to purchase the tile as part of the Finished Materials, the tiles were purchased, along with faucets, vanities, and supplemental parts for the drainages in the bathrooms as early as August 8, 2023. The purchased tile was not the Owner's first option; however, the Owner purchased them after The Agent who accompanied the Owner at the Floor & Décor store stated that the start of tiling work could not be delayed 3-5 days to allow the arrival of the preferred tiles. After seven weeks, the purchased tiles have not been installed as of September 22, 2023.

**Missing Properties** – The tub that was originally installed in the 3rd Bathroom (Upstairs) is missing. The tub was never used and it needed to be returned to Home Depot for a refund. In addition, the whirlpool tub that was removed from the master bathroom with installed faucets and equipment (water pump) is missing as well. We never told any of your workers that the tubs must be taken out as trash. In fact, the Owner had told The Agent and Julio to help take them to the store for a refund.

**Balcony –** As you know, there was water damage in the garage due to water leaks from the balcony. The Owner had attempted to repair the leak by removing the old plywood, resealing, and installation of travertine tiles. The work was defective causing the rainwater to remain on the balcony because of an incorrect slope. You agreed to install a waterproof balcony after demolishing existing tiles down to the plywood, sealing up with waterproofing, patching, and painting of the stucco; painting the railing, and restoration of the double door with patching and painting.  You hired "WE CARE DECK COATING" as the subcontractor to do the work for you. After the completion, we noticed the rainwater remained on the balcony due to an incorrect slope. We notified you about the defect and requested for a proper slope so no rainwater remains on the surface. Despite of multiple requests, no fix has been made and as noticed during the last week's mild rain, water remains to stay on.

13

COMPLIANT

**Painting -** We had an agreement from a licensed painting contractor to paid the entire Property including the walls, ceilings, closets, doors, balcony, railings, and garage for $17,000. This was clearly communicated with The Agent on July 26, 2023.  After we entered into the FAA, we cancelled our agreement with other painting contractor. The contractor who did the balcony started the painting as well, albeit not to our satisfaction. Please make sure the surfaces are properly patched, sanded before painting. Please make sur sure prime is used before two coats of paint is applied.  The paint color for walls (eggshell), ceilings (matte), trims (semi gloss), baseboards (semi gloss), doors (semi gloss), and closets (semi gloss) are all Swiss Coffee. The paint for the railings inside the living room and in the balcony is in eggshell Venetian Bronze color matching the door levers.

**Door knobs, levers, hinges, locks, deadbolts** – The knobs, levers, hinges, locks, deadbolts material for all doors (interior, entry door, doors to yards, and balcony, garage have been purchased and are available for installation. Please make sure you take a proper sequence for painting the surface, i.e., door, and reinstallation of them, i.e., knobs, levers, hinges, locks, deadbolts. Since the material is in Oil Brushed Bronze (Venetian Bronze) color, special care must be taken for the installation on a white color door.

**Quality –** The overall costs of the project exceed $150,000 including the Finishing Materials. A high quality of work is expected to ensure the Owner's satisfaction is achieved under the commonly standards in the industry. Lack of proper supervision of the workers, has been and continue to be an issue. You have been stated in multiple time that all communications regarding the quality and progress of the work must be done with you instead of your subcontractors. Please make sure you monitor the work quality as closely and frequently as needed. I have communicated with you concerns about failing to use insulation material under the drywall, proper preparation of the floor underneath the tub on the 3rd bathroom (Upstairs), incorrect slop on the balcony, delayed completion of electrical, incomplete plumbing, and inadequate protection of wood flooring during the work. Please note that the Owner will not accept a claim of the completion of the work if not up to a reasonable satisfaction standard.

**Future Payments -** Please allow this letter to serve you with our good faith attempt requesting for an immediate correction of the issues stated above. The intent is to have you to cure the defect and improve the quality of the work without any unnecessary delay. As mentioned earlier, time is of the essence. The Owner loses rental income for any delay to the completion of the work. Please further note that the Owner loses the seasonal demand from the prospective tenants with K-12 school

children after the start of the Fall.

You have received $44,000 so far and are still demanding for a payment despite the lack of any progress on completion of the work. On September 22, 2023 you demanded payment for starting the paint under the contract. Let's look at the payment schedule and see why your demand is unwarranted:

| Down Payment | $1,000 |
|---|---|
| Upon start of job | $18,500 |
| Upon start of plumbing +electrical | $15,000 |
| Upon start of tile | $15,000 |
| Upon Balcony Demo + start water proofing | $10,000 |
| Upon hot mop | $10,000 |
| Upon start Paint | $15,000 |
| Upon fixtures installation | $11,300 |
| Upon Completion | $6,500 |

Your expectation of compensation "upon start" is unreasonable. It is a commonly accepted and used practice in construction and remodeling that the contractor is compensated after the completion and not the start of the job. The only exception is the initial down payment and the first payment to allow the contractor to purchase the materials and the initial payment to the subcontractor(s). You have received $19,500 for the Down Payment and for starting the job. In addition, from the $44,000 total payment, you have received additional $24,500 for plumbing, electrical, and tiling. As stated above not only electrical and plumbing have been completed, you have not even started any tiling work at all.

**Moving Forward -** No payment is due until the completion of all electrical as explained in our agreement, and all plumbing and tiling in all three bathrooms. Start does not allow the Owner to benefit from the work, the completion, however does.

57.    DAVID NMN ABITTAN called Plaintiff immediately acknowledging the issue and promised to address them immediately. However, once again, that was another empty promise that he never intended to fulfill.

58.    On October 5, 2023, Plaintiff sent another letter with pictures informing PRIME CONSTRUCTION and individual defendants DAVID NMN ABITTAN, ORON AHARON AVITAN and SHAY YEFET that it was evident that significant progress has not been made to complete the work, despite numerous assurances following the previous complaints.

59.    Plaintiff complained that instead of completing the work, defendants have been demanding additional funds despite the inadequate progress they have made thus far.

15

60.    Plaintiff attached photographs taken from various areas of the property, clearly illustrating the lack of progress. Plaintiff once again reminded defendants that the situation rendered the property non-rentable, incurring approximately $666 in rent losses per day.

61.    On the October 5, 2023 letter, Plaintiff provided the defendants with specific issues  that previously raised but remained unresolved:

a.    Inconsistent worker attendance during workdays.
b.    Limited workforce engagement, often with only one or two individuals on site.
c.    Failure to maintain a clean and safe work environment, posing hazards.
d.    Absence of a dedicated project manager overseeing daily progress.
e.    Delays caused by attempts to secure additional payments for various project stages, which is not in accordance with the contractual terms. The agreed-upon $44,500 payment was intended to cover advance payments for the project's completion.

62.    Plaintiff demanded fulfillment of the contractual obligations to complete the work promptly, or refund the sum of $44,500, allowing him to engage an alternative licensed contractor to expedite the project's completion and property listing for rent.

63.    On October 26, 2023, not only defendants refused to refund $44,500 that Plaintiff had paid them, continuing the work for completion, but also give Plaintiff a Notice of Mechanics Lien for $10,000. (Exhibit J)

**<u>FIRST CAUSE OF ACTION</u>**
**FRAUD - INTENTIONAL MISREPRESENTATION**
**(Against All Contractor Defendants and DOES 1-30)**

64.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

65.    Plaintiff claims that Contractor Defendants made false representations that harmed him.

66.    Defendant SHAY YEFET falsely represented to Plaintiff that he was a "Home improvement salesperson" under Bus & Prof C §7152(a), which required him to be registered under the California Business and Professions Code, Chapter 9. Contractors [Sections 7000 - 7191] in order to be engaged in the business of soliciting, selling, negotiating, or executing contracts for home improvements, for the sale, installation or furnishing of home improvement goods or services, on behalf of Defendant PRIME CONSTRUCTION.

67.    Defendant SHAY YEFET falsely represented to Plaintiff that after making a down payment of $1,000, PRIME CONSTRUCTION will start the project by August 4, 2023 and complete it in entirely within 4 weeks but not later than 6 weeks approximately by September 15, 2023.

16

68.     Defendant SHAY YEFET falsely represented to Plaintiff that PRIME CONSTRUCTION employs skilled crews who are experienced, and competent to satisfactorily do the work and finish it timely and properly.

69.     Defendant SHAY YEFET falsely represented to Plaintiff that inserting "upon start" for the itemized tasks was a common practice in the construction industry and has no material effect on Contractor Defendants' obligations to perform and will not be prejudicial to Plaintiff's rights.

70.     Defendant SHAY YEFET falsely represented to Plaintiff that PRIME CONSTRUCTION will use only licensed subcontractors for the remodeling projects.

71.     SHAY YEFET's representations were false, and he knew that the representations were false when he made them, or that he made the representations recklessly and without regard for its truth.

72.      SHAY YEFET intended that Plaintiff rely on the representations.

73.     Plaintiff] reasonably relied on SHAY YEFET's representations.

74.     Plaintiff was harmed; and his reliance on SHAY YEFET's representations was a substantial factor in causing him harm.

75.     All false representations made recklessly and without regard for their truth by SHAY YEFET were made in order to induce action by Plaintiff to hire PRIME CONSTRUCTION to do the remodeling work at the Property were the equivalent of misrepresentations knowingly and intentionally uttered.

76.     Plaintiff's actual and justifiable reliance on the SHAY YEFET's representations caused him to take a detrimental course of action to cancel the contract for painting job with another contractor, and hire PRIME CONSTRUCTION for the entire remodeling project in addition to the painting. The detrimental action taken by the Plaintiff caused lose rental income, expenditures for purchasing the material that either neither were used or became wasted due to the incompleteness of the work and the payments made to PRIME CONSTRUCTION without any benefits.

77.     Plaintiff is informed, believes and thereon alleges that Contractor Defendants' conducts as alleged in this Complaint were malicious, oppressive, and fraudulent justifying award of punitive damages under California Civil Code section 3294.

## **SECOND CAUSE OF ACTION**
### **FRAUD - CONCEALMENT**
### **(Against All Contractor Defendants and DOES 1-30)**

78.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

79.     Plaintiff claims that he was harmed because Contractor Defendants, and each and every of

COMPLIANT

concealed certain information that if were disclosed, Plaintiff would not agree to sign the HOME IMPROVEMENT CONTRACT, make payments to them, purchase the materials to be used by Contractor Defendants for the remodeling, and hire another contractor who would actually perform timely.

80. Contractor Defendants owed Plaintiff a duty to disclose material facts under the terms, conditions, and covenants they voluntarily assumed by contractual undertaking by entering the HOME IMPROVEMENT CONTRACT on July 26, 2023.

81. The relationship created between the parties is present because there was a transaction between the parties. Under the owner/contractor relationship caused by the HOME IMPROVEMENT CONTRACT. Contractor Defendants had a duty to disclose when parties entered into HOME IMPROVEMENT CONTRACT.

82. Defendant makes representations that PRIME CONSTRUCTION was a licensed contractor to do the work, but intentionally did not disclose facts that the SHAY YEFT, Julio, or Carlos Siam who, is believed to be an unlicensed subcontractor working for PRIME CONSTRUCTION, supervised the workers and were responsible for timely and properly performance of the workers not only were not licensed, but also there will be no one from PRIME CONSTRUCTION would be at the Property daily to ensure workers show up, work, or making the work as agreed under the HOME IMPROVEMENT CONTRACT.

83. Contractor Defendants did not disclose that they will not complete the project timely and that they will be making demand for additional payments from Plaintiff prior to completing the work or even making substantial progress. Contractor Defendants' failure to materially qualify the facts about timing of the completeness of the work was made to mislead Plaintiff.

84. Contractor Defendants intentionally failed to disclose certain facts to Plaintiff that were known or accessible only to Contractor Defendants, and Contractor Defendants knew Plaintiff did not or could not know about how Contractor Defendants retain the service of their subcontractors such as Julio, Carlos Siam or other individuals who worked at the Property on their behalf. These material facts were not reasonably discoverable by the Plaintiff.

85. Contractor Defendants actively conceals discovery from the Plaintiff not to learn about work schedules of Julio, Carlos Siam that they could not work at the Property because they were already working at other projects for other customers of PRIME CONSTRUCTION.

86. Plaintiff did not know of the concealed facts and Contractor Defendants intended to deceive Plaintiff by concealing the facts. That had the omitted information been disclosed, Plaintiff

18

reasonably would have behaved differently by not making any payment to Contractor Defendants, requesting to rescind the HOME IMPROVEMENT CONTRACT immediately before expiration of three-day cancellation period, and hire another contractor instead.

87.    Plaintiff was harmed; and Contractor Defendants' concealment was a substantial factor in causing of Plaintiff's harm when Contractor Defendants failed to perform resulting to substantial loss of rental income.

88.    Plaintiff is informed, believes and thereon alleges that Contractor Defendants' conducts as alleged in this Complaint were malicious, oppressive, and fraudulent justifying award of punitive damages under California Civil Code section 3294.

### THIRD CAUSE OF ACTION
### FRAUD - FALSE PROMISE
### (Against All Contractor Defendants and DOES 1-30)

89.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

90.    "Under Civil Code section 1709, one is liable for fraudulent deceit if he 'deceives another with intent to induce him to alter his position to his injury or risk. Section 1710 of the Civil Code defines deceit for the purposes of Civil Code section 1709 as, inter alia, '[a] promise, made without any intention of performing it. The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.

91.    On August 4, 2023, PRIME CONSTRUCTION assigned Julio as its subcontractor. After Plaintiff complained to Contractor Defendants about the Julio's quality, the scope of the work, and refusal to clean up the work from the trash and other materials created by the demolishing, PRIME CONSTRUCTION replaced Julio and replaced it with Carlos Siam on around August 31, 2023.

92.    Contractor Defendants promised that Carlos Siam and 6-7 of his crew would come to the Property to finish the work as timely as possible to make up for the delayed caused previously. Plaintiff alleges Contractor Defendants committed promissory fraud, a subspecies of fraud and deceit. Contractor Defendants made promises to complete the remodeling work at the Property no later than six weeks after the start date of August 4, 2023 or no later than September 15, 2023.

93.    SHAY YEFET on behalf of PRIME CONSTRUCTION promised that work would be completed no later than 4-6 from the start day of August 4, 2023.

94.    Contractor Defendants, however, made those promises without such intention, which is an

19

1    implied misrepresentation of fact that may be actionable fraud.

2    95.    Plaintiff was harmed because Contractor Defendants made false promises that did not

3    intend to perform this promise when they made it.

4    96.    Contractor Defendants intended that Plaintiff rely on these promises. In fact, Plaintiff

     reasonably relied on Contractor Defendants' promises.

5    97.    Contractor Defendants did not perform the promised act;

6    98.    Plaintiff was harmed; and his reliance on Contractor Defendants' promise was a substantial

7    factor in causing him harm.

8    99.    Plaintiff is informed, believes and thereon alleges that Contractor Defendants' conducts as

9    alleged in this Complaint were malicious, oppressive, and fraudulent justifying award of punitive

10   damages under California Civil Code section 3294.

11   **FOURTH CAUSE OF ACTION**
     **VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION**

12   **(Against All Contractor Defendants and DOES 1-30)**

13   100.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set

     forth herein.

14   101.    At all times relevant, Defendant wrongfully and unlawfully acted as described in this

15   Complaint by rendering construction services without being duly licensed under the California

16   State license law of the state of California.

17   102.    Plaintiff is a consumer affected by Contractor Defendants' violations and seeks relief as

18   authorized by Business and Professions code sections 7028.4 and 7031, including restitution of

19   all sums that SHAY YEFET, DAVID NMN ABITTAN, and ORON AHARON AVITAN

20   directed Plaintiff to pay to PRIME CONSTRUCTION.  In this regard, SHAY YEFET, DAVID

     NMN ABITTAN, and ORON AHARON AVITAN directed Plaintiff to make payment to

21   PRIME CONSTRUCTION during the course of the construction for the construction services

22   that Julio, Carlos Siam rendered as an unlicensed contractor.

23   103.    Because said Contractor Defendants acted as contractors within the meaning of Business

24   and Professions code section 7026 at all times relevant to this action, but without holding a valid

25   contractor's license as required by Business and Professions code section 7028, Plaintiff is entitled

26   to treble damages and, if the court's discretion so determines, attorney's fees and costs incurred in

     connection with this action.

27   ///

28   ///

COMPLIANT

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Contractor Defendants and DOES 1-30)**

104.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

105.    During and as part of their performance of each of their contracts, Contractor Defendants negligently advised Plaintiff on a number of issues relating to the construction and remodeling of bathrooms, balcony, painting, and including without limitation, regarding the estimated time for completion of the work, requiring Plaintiff to find and order the material during the construction ignoring the fact that Plaintiff had no knowledge, or experience of the technical specification of the correct material that resulted to requiring Plaintiff to unnecessarily spend additional money to purchase the material that were not used.

106.    Contractor Defendants, and each of them, failed to use the skill and care that a reasonably prudent professional would have used under similar circumstances.

107.    In this regard, Contractor Defendants should have known that the estimated time for completion of work would be substantially greater than 4-6 weeks, and the completion would not be feasible by September 15, 2023.

108.    But for Contractor Defendants' representation that the entire project as specified in the THIRD AMENDED HOME IMPROVEMENT CONTRACT will be finished within 4-6 weeks, Plaintiff would not agree to expand the project from the remodeling of the master bathroom to the Jack & Jill bathroom, balcony, garage, and installation of door knobs, levers, dead bolt locks, hinges, and recess lights and air ventilation fans.

109.    As a direct and proximate result of Contractor Defendants negligence, Plaintiff has suffered actual damages, including without limitation costs of repairing the defective construction, diminution in value of the property, loss of use, and loss of the rental income in an amount not yet known, but believed to be in excess of $250,000 and to be proven at trial.

**SIXTH CAUSE OF ACTION**
**BREACH OF WRITTEN CONTRACT**
**(Against All Contractor Defendants and DOES 1-30)**

110.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

111.    On July 26, 2023, Plaintiff entered onto a HOME IMPROVEMENT CONTRACT, orally and in writing, that contained in several documents, with Contractor Defendants for the

21

COMPLIANT

performance of a home improvement as defined in Section 7151 that included all labor, services, and materials to be furnished and performed thereunder.

112.    The HOME IMPROVEMENT CONTRACT was between PRIME CONSTRUCTION signed by its salesperson, whether or not he was a home improvement salesperson, and Plaintiff, the owner of the Property for the installation, or furnishing of home improvement goods or services.

113.    Each of the Plaintiff's contracts with Contractor Defendants contained the implied term that Contractor Defendants would conform their work to all applicable building code requirements of the State of California, County of Los Angeles, and City of Los Angeles.

114.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by collecting payment for work not yet completed in addition to the $1,000 down payment.

115.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by requesting payments after receiving $1,000 down payment on August 2, 2023, $19,147.50 on August 4, 2023, $14,352.50 on August 14, 2023 (Check #1060), and $10,000 on August 18, 2023 (Check #1061)

116.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by refusing to perform to complete the work after not receiving additional payments.

117.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by failing to perform the work specified therein.

118.    Contractor Defendants' construction services and work did not conform to all applicable building code requirements of the State of California, County of Los Angeles, and City of Los Angeles.

119.    Because of Contractor Defendants' breach of contract, Plaintiff is damaged in a sum not yet known but believed to be in excess of $250,000 and in an amount to be proven at trial.

120.    Plaintiff also claims that PRIME CONSTRUCTION's breach of HOME IMPROVEMENT CONTRACT and its amendments caused harm to Plaintiff for loss of rental income in the amount of at least $20,000 per month from August 4, 2023.

121.    Plaintiff also claims that PRIME CONSTRUCTION's breach of HOME IMPROVEMENT CONTRACT and its amendments continues to cause harm to Plaintiff for the additional losses

COMPLIANT

resulting for redoing the defective work done by PRIME CONSTRUCTION and mitigation of the defects caused by their sub-standard work needed from other contractors.

**SEVENTH CAUSE OF ACTION**
**BREACH OF ORAL CONTRACT**
**(Against All Contractor Defendants and DOES 1-30)**

122.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

123.    Under the HOME IMPROVEMENT CONTRACT, SHAY YEFET agreed to finish the work within 4-6 weeks no later than September 15, 2023.

124.    Plaintiff claims that PRIME CONSTRUCTION. And SHAY YEFET breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by failing to complete the work by the promised date of September 15, 2023, or within 4-6 weeks from the start date of August 4, 2023.

125.    Contractor Defendants were aware that the subject property is for lease. Contractor Defendants were told by Plaintiff that the Property was under the lease and Plaintiff needs to put the Property on the market for new lease agreements. Contractor Defendants became aware that time of the essence and any delay on the completion of the work directly results to harm to Plaintiff causing him loss of rental income at $20,000 per month.

126.    Contractor Defendants breached the oral contract to compete the remodeling work at the Property as agreed by the HOME IMPROVEMENT CONTRACT and its amendments by failing to complete the work by September 15, 2023.

**EIGHTH CAUSE OF ACTION**
**BREACH OF COVENANT OF GOOD-FAITH AND FAIR DEALING**
**(Against All Contractor Defendants and DOES 1-30)**

127.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

128.    In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation.

129.    Plaintiff and Contractor Defendants entered onto HOME IMPROVEMENT CONTRACT on July 26, 2023 and its amendments shortly thereafter.

23

130.    Plaintiff did all, or substantially all of the significant things that the contract required him to do including paying the down payment, making additional $43,500 payments, purchasing all furnished materials that were necessary for the Contractor Defendants to perform and was excused to make the payments for the remaining balance due to Contractor Defendants' failure to make sufficient performance.

131.    All conditions required for Contractor Defendants' performance had occurred.

132.    Contractor Defendants did not secure skilled workers to the work, did not supervise the workers at the job site, did not monitor that the workers were actually show up to work, did not ensure that the work is actually done under the terms of the contract, did not provide a licensed foreman to the job, did not advise Plaintiff to purchase the right finished materials, did not complete the work timely, did not do the work to Plaintiff's satisfaction under the commonly accepted standards in the industry, improperly demanded additional payments in order to continue the work, refused to continue the work, and abandoned the work short of completion.

133.    By doing so, Contractor Defendants did not act fairly and in good faith that caused Plaintiff to be harmed by their conducts.

134.     Contractor Defendants' breach of the covenant was more and separate from the breach of written and oral contracts by depriving Plaintiff to receive the full benefits of services promised by Contractor Defendants for remodeling the Property for lease with remodeled house.

135.    Plaintiff retained the services of Contractor Defendants under the reasonable belief that they are skilled, experienced, honest, and trustworthy for receiving the funds prior to the completion of the work, and expecting a timely completion as promised. Contractor Defendants breached the covenants by failing to satisfy both conditions.

136.    By failing to complete the work timely, Contractor Defendants unfairly frustrated Plaintiff from receiving the benefits of the agreement actually made, none were discretionary under the contract.

137.    By asserting the term "upon start" on the HOME IMPROVEMENT CONTRACT and its amendments, Contractor Defendants, acted in bad faith to make the demands for funds prior to actually performing the services justifiable as a contractual term. Contractor Defendants' use of the term "upon start" was in bad faith and solely was used to frustrate Plaintiff from receiving just benefits under the contract.

138.    Contractor Defendants' breach of the covenant undermined and prevented the Plaintiff from leasing the Property causing additional subsequent harm for loss of rental income.

COMPLIANT

## NINTH CAUSE OF ACTION
## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
### (Against All Contractor Defendants and DOES 1-30)

139.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

140.    Contractor Defendants negligently interfered with a relationship between Plaintiff and the prospective lessees that probably would have resulted in an economic benefit to the Plaintiff.

141.    Plaintiffs and prospective lessees were in an economic relationship by which Plaintiff could have received rental income from leasing the Property at least for $20,000 per month.

142.    Contractor Defendants knew that the Property is rental, has been leased recently and is going to be put back in the market for lease after the completion of the remodeling by Contractor Defendants.

143.    Contractor Defendants knew that the fair market lease value for the Property is at least $20,000 a month.

144.    Contractor Defendants knew or should have known that the relationship between Plaintiff and prospective lessees would be disrupted if they fail to act with reasonable care to finish the remodeling timely and properly as required by the HOME IMPROVEMENT CONTRACT and its amendments.

145.    Contractor Defendants failed to act with reasonable care to finish the remodeling timely and properly as required by the HOME IMPROVEMENT CONTRACT and its amendments.

146.    Contractor Defendants engaged in wrongful conduct through fraud, violation of statutes, breaching written and oral contracts, and acted in bad faith in breaching the covenant of the good faith and fair dealing as alleged in this complaint.

147.    The relationship between Plaintiff and prospective lessees were disrupted causing harm to Plaintiff.

148.    Contractor Defendants' wrongful conduct was a substantial factor in causing Plaintiff's harm.

## TENTH CAUSE OF ACTION
## CONVERSION
### (Against All Contractor Defendants and DOES 1-30)

149.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

150.    Plaintiff claims that Contractor Defendants wrongfully exercised control over his personal property.

25

151.     Plaintiff owned an American Standard bathtub that he had purchased from Home Depot for $798) Bathtub $699 and Whirlpool Soak Drain for $99) on September 13, 2022 that was replaced with other bathtubs by the Contractor Defendants in 2023. After Contractor Defendants replaced the   American Standard tub, they took it without permission from the Property.

152.     Plaintiff also purchased ten Behr Premiums Plus 5 gallons #12 Swiss Coffee Semi-Gloss Enamel Low Oder Interior Paint and Primer at $1,900 from Home Depot that were taken by the Contractor Defendants without Plaintiff's permission. (Exhibit K)

153.     After removing a Kohler Whirlpool tub and its tub faucet sets from the master bathroom for making a tile bathtub, Contractor Defendants also took the Kohler Whirlpool tub and its tub faucet sets from the Property without the Plaintiff's permission.

154.     Contractor Defendants substantially interfered with Plaintiff's property by knowingly or intentionally taking possession of the bathtubs, faucets and paints, preventing the Plaintiff from having access to his items of personal property and refusing to return the items after demanding their return.

155.     Plaintiff did not consent, and he was harmed; and Contractor Defendants' conduct was a substantial factor in causing Plaintiff's harm.

**ELEVENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**(Against All Contractor Defendants and DOES 1-30)**

156.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

157.     Contractor Defendants made certain representations with no reason to believe that they were true. (See Civ. Code, § 1710(2).) "Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit. 'Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.

158.     Plaintiff was harmed because Contractor Defendants negligently misrepresented material facts as true.

159.     Contractor Defendants' representations that they work at the Property for work specified under HOME IMPROVEMENT CONTRACT will be done by licensed contractors and subcontractors or licensed foreman, and that the work will be completed no later than six weeks from the start on July 26, 2023, and that PRIME CONSTRUCTION will make sure there will be a proper project management in place at the Property to ensure the workers show up for work and

26

actually do work were not true.

160.    Even if Contractor Defendants may have honestly believed that the representations were true. Contractor Defendants had no reasonable grounds for believing the representations were true when they made it. Defendants PRIME CONSTRUCTION, DAVID NMN ABITTAN, and ORON AHARON AVITAN, knew their work load, how many working subcontractor they had access to, at what job site these subcontractors were working, how long these subcontractors were engaged at those other job site, and when they are practically able to complete the work at the Property.

161.    On information and belief, Contractor Defendants negligently misrepresented several material matters to Plaintiff, including without limitation that:

a.    The work will be done by licensed subcontractors;
b.    The project will be supervised by a licensed foreman;
c.    The project will be completed within 4-6 weeks after the start;
d.    Other than the down payment, Plaintiff will not be required to advance payments prior to completion of work;
e.    SHAY YEFET, Julio and Carlos Siam were sufficiently knowledgeable, experienced, qualified and capable of providing construction services in compliance with the Business and Professions Code;

162.    The representations made by Contractor Defendants were in fact false.  Among other things, the true facts were that:

f.    The work was not done by licensed subcontractors;
g.    The project was not supervised by a licensed foreman;
h.    The project as not completed within 4-6 weeks after the start;
i.    Other than the down payment, Plaintiff was required to advance payments prior to completion of work;
j.    SHAY YEFET, Julio and Carlos Siam were not sufficiently knowledgeable, experienced, qualified and capable of providing construction services in compliance with the Business and Professions Code;

163.    Contractor Defendants intended that Plaintiff rely on their representations. And in fact, Plaintiff reasonably relied on Contractor Defendants' representations that resulted to his harm.

164.    Plaintiff's reliance on Contractor Defendants' representations was a substantial factor in causing his harm.

165.    As a direct and proximate result of Contractor Defendants negligent misrepresentation Plaintiff has suffered actual damages, including without limitation costs of redoing the defective work done by PRIME CONSTRUCTION and mitigation of the defects caused by their sub-standard work needed from other contractors believed to be in excess of $250.000 and to be proven at trial.

///

COMPLIANT

## TWELFTH CAUSE OF ACTION
### BREACH OF THIRD PARTY BENEFICIARY CONTRACT
**(Against BUSINESS ALLIANCE INSURANCE COMPANY, and Does 1-30)**

166.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

167.     Plaintiff is informed and believes and thereupon alleges that BUSINESS ALLIANCE INSURANCE COMPANY issued a licensure surety bond to PRIME CONSTRUCTION pursuant to Business and Professions Code section 7071.6.

168.     Plaintiff is informed and believes and thereupon alleges that the licensure surety bonds were issued for the protection and benefit of each and every homeowner that contracted with PRIME CONSTRUCTION and Does 1-30 for home improvements at a personal residence.

169.     The contracts between Plaintiff and PRIME CONSTRUCTION and Does 1-30 were for improvements at the Plaintiff's personal residence.

170.     Plaintiff is authorized by Business and Professions Code section 7071.5 to pursue his bond claims against that BUSINESS ALLIANCE INSURANCE COMPANY and Defendant 1-30 for those damages caused by violations of Chapter 9 of the Contractors State License Law.

171.     It is a violation of section 7109 for a licensee to willfully depart from accepted trade standards for good and workmanlike construction.  It is a violation of section 7110 for a licensee to willfully depart from building laws.  It is a violation of section 7113 for a licensee to fail to complete a construction project in any material respect.

172.     Plaintiff is informed and believes and thereupon alleges at all times relevant herein, PRIME CONSTRUCTION and Does 1-30 violated sections 7109, 7110 and 7113, among others, of the Contractors State License Law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Contractor Defendants and DOES 1-30 as follows:

1.     Actual damages according to proof;

2.     Past and Future economic loss, Past and Future noneconomic loss, including physical pain/mental suffering;

3.     For pre-judgment interest;

4.     Damages—Benefit of the Bargain Rule, or in the alternative damages Out of Pocket Rule;

5.     For punitive damages as allowed by law;

6.     For reasonable attorneys' fees; and for costs of suit incurred herein;

28

COMPLIANT

7.      For such other and further relief as the court deems just and proper.

As against BUSINESS ALLIANCE INSURANCE COMPANY and DOES 1-30 for:

    1.   The full amount available under the licensure bond;

    2.   Interest;

    3.   Costs of suit herein incurred; and,

    4.   For such other and further relief as the Court may deem just and proper.

Dated: November 13, 2023          **MOSTAFAVI LAW GROUP, APC**

*Amir Mostafavi*

By:_____
AMIR MOSTAFAVI, Esq.
Attorney for Plaintiff
NM Family Trust


### **DEMAND FOR JURY TRIAL**

    Plaintiff hereby requests a trial by jury for all claims.


Dated: November 13, 2023          **MOSTAFAVI LAW GROUP, APC**

*Amir Mostafavi*

By:_____
AMIR MOSTAFAVI, Esq.
Attorney for Plaintiff
NM Family Trust

COMPLIANT

# EXHIBIT A
# (Case No. 23SMCV05401)

S T A T E   O F   C A L I F O R N I A



# CONTRACTORS STATE LICENSE BOARD

Pursuant to Chapter 9 of Division 3 of the Business and Professions Code

and the Rules and Regulations of the Contractors State License Board,

the Registrar of Contractors does hereby issue this license to:

## YOUR PRIME CONTRACTOR INC
## DBA PRIME CONSTRUCTION

### License Number 1031676

to engage in the business or act in the capacity of a contractor in the following classifications:

B - GENERAL BUILDING CONTRACTOR
C54 - TILE (CERAMIC AND MOSAIC)

Witness my hand and seal this day

October 20, 2017

### Issued October 5, 2017

CERTIFIED COPY

Kevin J. Albanese, Board Chair

This license is the property of the Registrar of Contractors,
is not transferable, and shall be returned to the Registrar
upon demand when suspended, revoked, or invalidated
for any reason. It becomes void if not renewed.

David R. Fogt, Registrar of Contractors

OSP 15 136846
AUDIT NO: 638393

13L-24 (REV. 03/15)

# EXHIBIT B
# (Case No. 23SMCV05401)

## HOME IMPROVEMENT CONTRACT

**THIS AGREEMENT, DATED** ~~7/6~~ 7/26/2023 **, IS BETWEEN:**

The Notice of Cancellation may be mailed to the address of the contractor as shown below:

Galaxy Kart / Your Prime Construction **AND** Amir Mortafavi Trustee of NY Family Trust
<br>(Contractor's Name)                                          (Owner's Name)

1031676                                          1407 Monte Grande Pl.
<br>(Contractor's License Number)                (Job Address)

23222 Sherman Way                                Pacific Palisades CA 90272
<br>(Contractor's Address)                        (City, State & Zip)

#1016 canoga Park cd 91303                       (310) 849-2030
<br>(City, State & Zip)        (Home Telephone)                        (Work Telephone)

866-909-3006                                     Same
<br>(Contractor's Telephone)      (Cell Phone)                        (Fax Number)

**Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed:**
Contractor will furnish all labor and materials to construct and complete in a good, workmanlike and substantial manner:
**SEE ATTACHED CONTINUATION/ADDENDUM FOR DESCRIPTION OF WORK**

**NOT INCLUDED:** The following items are specifically excluded or are to be provided by Owner. NOTE: Entire agreement is contained herein. NO ORAL REPRESENTATION shall be considered part of this contract unless listed in writing.

Approximate Start Date: _____        Approximate Completion Date: _____
**All start and completion dates are approximate. (See additional terms and conditions on reverse side).**
**The work to be performed under this contract shall be commenced on approximate start date as long as any required building permits are received and any agreed upon funds are paid to Contractor. The project will be completed by approximate completion date subject to permissible delays.**

**CONTRACT PRICE: $** 25,000.00                **DOWN PAYMENT: $** 1000.00
<br>(Owner agrees to pay Contractor total cash price)        (If any; if not applicable, put "none")

Contract price is subject to additions and deductions pursuant to changes agreed upon in writing by the parties and subject to allowances.
**THE DOWN PAYMENT MAY NOT EXCEED $1,000 OR 10% OF THE CONTRACT PRICE, WHICHEVER IS LESS.**
**SCHEDULE OF PROGRESS PAYMENTS: The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment.**
**IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWNPAYMENT.**

(Work or Services to be Performed or Materials to be Supplied)        **AMOUNT**

| # | Work / Services | Amount |
|---|---|---|
| 1. | Apon Star of the Job | $ 12,500 |
| 2. | Apon complition of tiling part | $ 8000 |
| 3. | Apon Finish | $ 3500 |
| 4. | _____ | $ _____ |
| 5. | _____ | $ _____ |
| 6. | _____ | $ _____ |

Upon satisfactory payment being made for any portion of the work performed, the contractor shall, prior to any further payment being made, furnish to the person contracting for the home improvement work a full and unconditional release from any claim or mechanic's lien pursuant to Section 3114 of the Civil Code for that portion of the work for which payment has been made.

Contractor may, if requested, refer owner to a finance company, but any negotiations or arrangements between owner and finance company is owners sole responsibility. Unless specifically stated above that this Agreement is subject to approval of financing, this Agreement is not subject to obtaining or approval of financing.

**List of Documents to be incorporated into the Contract:** Notice Concerning Commercial General Liability Insurance (CGL); Notice Concerning Worker's Compensation Insurance; Arbitration of Disputes; Notice of Cancellation; Three-Day Right to Cancel; Mechanic's Lien Warning; Information about Contractors' State License Board; Checklist for Homeowners. A notice concerning Commercial General Liability Insurance is attached to this contract. A notice concerning Workers' Compensation Insurance is attached to this contract. (list any additional attachements):

Owner acknowledges receipt of a fully completed copy of this agreement and all documents listed above: _____

| **A R B I T R A T I O N** | **You (the owner or tenant) have the right to require the Contractor to have a performance and payment bond; however, the Contractor can charge you for the costs of procuring a bond.** | **R I G H T   T O   C A N C E L** |
|---|---|---|
| OWNER: Initial this box if you agree to arbitration. Review the "Arbitration of Disputes" section attached | | The law requires that the contractor give you a notice explaining your right to cancel. Initial the checkbox if the contractor has given you a "Notice of the Three-Day Right to Cancel" |

**You are entitled to a completely filled in copy of this agreement, signed by both you and the contractor, before any work may be started.**

X _____  7/26/2023        X _____  7/26/23
<br>(Owner's Signature)                (Date)                (Salesperson's Signature)                (Date)

X _____  _____        State Registration Number _____
<br>(If more than one Owner, please Sign Here)        (Date)

BY SIGNING ABOVE, OWNER ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT AND ALL ATTACHED DOCUMENTS        **NOTICE TO OWNER:** THIS AGREEMENT IS SUBJECT TO HOME OFFICE APPROVAL BEFORE IT BECOMES EFFECTIVE

# ADDITIONAL TERMS AND CONDITIONS

1. **OWNER'S RESPONSIBILITIES.** The Owner is responsible to supply water, gas, sewer and electrical utilities unless otherwise agreed to in writing. Electricity and water to the site is necessary. Owner agrees to allow and provide Contractor and his equipment access to the property. The Owner is responsible for having sufficient funds to comply with this agreement. This is a cash transaction unless otherwise specified. The Owner is responsible to remove or protect any personal property and Contractor is not responsible for same or for any carpets, drapes, furniture,

driveways, lawns, shrubs, etc. The Owner shall point out and warrant the property lines to Contractor, and shall hold Contractor harmless for any disputes or errors in the property line or setback locations.

2. **DELAYS.** Contractor agrees to start and diligently pursue work through to completion, but shall not be responsible for delays for any of the following reasons: failure of the issuance of all necessary building permits within a reasonable length of time, funding of loans, disbursement of funds into control or escrow, acts of neglect or omission of Owner or Owner's employees or Owner's agent: acts of God, stormy or inclement weather, strikes, lockouts, boycotts or other labor union activities, extra work ordered by Owner, acts of public enemy, riots or civil commotion, inability to secure material through regular recognized channels, imposition of Government priority or allocation of materials, failure of Owner to make payments when due, or delays caused by inspection or changes ordered by the inspectors of authorized Governmental bodies, or for acts of independent Contractor's, or other causes beyond Contractor's reasonable control.

3. **PLANS AND SPECIFICATIONS.** If plans and specifications are prepared for this job, they shall be attached to and become a part of the Agreement. Contractor will obtain all required building permits, but Owner will pay for permits, assessments and charges required by public bodies and utilities for financing or repaying the cost of sewers, storm drains, water service, other utilities, water hook-up charges and the like.

4. **SUBCONTRACTS.** The Contractor may subcontract portions of this work to properly licensed and qualified subcontractors.

5. **COMPLETION AND OCCUPANCY.** Owner agrees to sign and record a notice of completion within five days after the project is complete and ready for occupancy. If the project passes final inspection by the public body but Owner fails to record Notice of Completion, then owner hereby appoints Contractor as Owner's agent to sign and record a Notice of Completion on behalf of Owner. This agency is irrevocable and is an agency coupled with an interest. In the event the Owner occupies the project or any part thereof before the Contractor has received all payment due under this contract, such occupancy shall constitute full and unqualified acceptance of all the Contractor's work by the Owner and the Owner agrees that such occupancy shall be a waiver of any and all claims against the Contractor.

6. **INSURANCE AND DEPOSITS.** Owner will procure at his own expense and before the commencement of any work hereunder, fire insurance with course of construction, vandalism and malicious mischief clauses attached, such insurance to be a sum at least equal to the contract price with loss, if any, payable to any beneficiary under any deed of trust covering the project, such insurance to name the Contractor and his subcontractors as additional insured and to protect Owner, Contractor and his subcontractors and construction lender as their interests may appear; should Owner fail to do so, Contractor may procure such insurance as agent for and at the expense of Owner, but is not required to do so. If the project is destroyed or damaged by disaster, accident or calamity, such as fire, storm, earthquake, flood, landslide, or by theft or vandalism, any work done by the Contractor rebuilding or restoring the project shall be paid by the Owner as extra work. Contractor shall carry Worker's Compensation Insurance for the protection of contractor's employees during the progress of the work. Owner shall obtain and pay for insurance against injury to his own employees and persons under Owner's discretion and persons on the job site at Owner's invitation.

7. **RIGHT TO STOP WORK.** Contractor shall have the right to stop work if any payment shall not be made, when due, to Contractor under this agreement: Contractor may keep the job idle until all payments due are received. Such failure to make payment, when due, is a material breach of this Agreement.

8. **CLEAN UP.** Contractor will remove from Owner's property debris and surplus material created by his operation and leave it in a neat and broom clean condition.

9. **LIMITATIONS.** No action of any character arising from or related to this contract or the performance thereof, shall be commenced by either party against the other more than two years after completion or cessation of work under this contract.

10. **VALIDITY AND DAMAGES.** In case one or more of the provisions of this Agreement or any application thereof shall be invalid, unenforceable or illegal, the validity, enforceability and legality of the remaining provisions and any other applications shall not in any way be impaired thereby. Any damages for which Contractor may be liable to Owner shall not, in any event, exceed the cash price of this contract.

11. **ASBESTOS, LEAD, MOLD, AND OTHER HAZARDOUS MATERIALS.** Owner hereby represents that Owner has no knowledge of the existence on or in any portion of the premises affected by the Project of any asbestos, lead paint, mold (including all types of microbial matter or microbiological contamination, mildew or fungus), or other hazardous materials. Testing for the existence of mold and other hazardous materials shall only be performed as expressly stated in writing. Contractor shall not be testing or performing any work whatsoever in an area that is not identified in the Scope of Work. Unless the contract specifically calls for the removal , disturbance, or transportation of asbestos, polychlorinated biphenyl , (PCB), mold, lead paint, or other hazardous substances or materials, the parties acknowledge that such work requires special procedures, precautions, and/or licenses. Therefore, unless the contract specifically calls for same, if Contractor encounters such substances, Contractor shall immediately stop work and allow the Owner to obtain a duly qualified asbestos and/or hazardous material  contractor to perform the work or Contractor may perform the work itself at Contractor's option. Said work will be treated as an extra under this contract, and the Contract Term setting forth the time for completion of the project may be delayed. In the event that mold or microbial contamination is removed by Contractor. Owner understands and agrees that due to the unpredictable characteristics of mold and microbial contamination, Contractor shall not be responsible for any recurring incidents of mold or microbial contamination appearing in the same or any adjacent location, subsequent to the completion of the work performed by Contractor. Owner agrees to hold Contractor harmless, and shall indemnify Contractor harmless for any recurrence of mold or microbial contamination. Owner also agrees that Contractor shall not be responsible, and agrees to hold Contractor harmless and indemnify Contractor for the existence of mold or microbial contamination in any area that Contractor was not contracted to test and/or remediate. Further, Owner is hereby informed, and hereby acknowledges, that most insurers expressly disclaim coverage for any actual or alleged damages arising from mold or microbial contamination. Contractor makes no representations whatsoever as to coverage for mold contamination, though at Owner's additional expense, if requested in writing, contractor will inquire as to the availability of additional coverage for such contamination or remediation, and if available, will obtain such coverage if the additional premium is paid for by Owner as an extra.

12. **STANDARDS OF MATERIALS AND WORKMANSHIP.** Contractor shall use and install "standard grade" or "builder's grade" materials on the project unless otherwise stated in the Scope of Work, the plans, and/or specifications provided to Contractor prior to the execution of this Agreement. Unless expressly stated in the Scope of Work, Contractor shall have no liability or responsibility to restore or repair the whole or any part of the existing premises affected by' the work of Contractor to be performed herein or by any subsequently agreed-upon change order, including as an illustration and not as a limitation, any landscaping, sprinkler system, flooring and carpet, wall coverings, paint, tile, or decorator items.

13. **INTEREST.** Overdue payments will bear interest at the rate of 1½ % per month ( 18% per annum).

14. **CHANGE IN THE WORK.** Should the Owner, construction lender, or any public body or inspector direct any modification or addition to the work covered by this contract, the contract price shall be adjusted accordingly.
Modification or addition to the work shall be executed only when a Contract Change Order or Continuation/Addendum has been signed by both the Owner and the Contractor. The change in the Contract Price caused by such Contract Change shall be as agreed to in writing, or if the parties are not in agreement as to the change in Contract Price, the Contractor's actual cost of all labor, equipment subcontracts and materials, plus a Contractor's fee of 20% shall be the change in Contract Price.
The Contract Change Order may also increase the time within which the contract is to be completed.

15. **NOTE ABOUT EXTRA WORK AND CHANGE ORDERS.** Extra Work and Change Orders or Continuation/Addendums become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments. You, the buyer, may not require a contractor to perform extra or change-order work without providing written authorization prior to the commencement of any work covered by the new change order. Extra work or a change order is not enforceable
against a buyer unless the change order also identifies all of the following in writing prior to the commencement of any work covered by the new change order:

(I)the scope of work encompassed by the order; (II) The amount to be added or subtracted from the contract; and (III) The effect the order will make in the progress payments or the completion date. The contractor's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.

16. **EXISTING DEFECTS.** Contractor Is not responsible for existing structural defects, defective soil conditions, or existing code violations. Despite the exercise of reasonable care during construction, conditions may be discovered, the repair of which are outside the scope of this Agreement. The cost to repair such defective conditions will be added as an extra charge to this Agreement by way of a change order or continuation/addendum.

# CONTINUATION /ADDENDUM

_Your Prime contractor_

**(Contractor's Name)**

**PROJECT:** _Amir Mostakavi, Trustee_

**(Customer Name)**

_1407 Monte Grande Pl._

**(Address)**

**(Type of Project)**

_Pacific Palisades, CA 90272_

**(City, State and Zip)**

This is a Continuation or Addition to original Home Improvement Contract dated _____ , 20 ___

Home # _____    Work # _____    Cell # _(310) 849-2030_

## ATTENTION ALL HOMEOWNERS

It is illegal for any representatives to ask for checks to be issued in their names or to ask for cash.
Please contact the Company immediately should this happen to you.
We will accept no responsibility for any checks issued to others.
*NOTE: price does not include permit fees unless specified below.

_____

**(Continue Contract Provision Here)**

_Scoop of work_

1. _Clear area for start of Work and Preparation for Work_

2. _Demo Shower Wall and make it Up-to-Date._

3. _Prepare th Flooring in th Shower, toilet and Vanity area for Tilling and install tiles_

4. _Fix th Ceiling and update th recess lights, speakers, and relocate th fans and install th new fan._

5. _Prepare outlets/switches and make it up to th Code._

6. _Install Toilet and Water and drainage connection and follow th_

7. _Prepare th Vanity area and install th new Vanity and mirrors_

8. _Prepare th shower area and install shower door and fixed glass_

9. _Install bathroom faucets for th vanity, shower and closet_

10. _Tiles around th shower, bathroom and Vanity area, on th Walls_

Approximate Start Date: _____    Approximate Date of Completion: _____

TOTAL PRICE OF ABOVE: $ _____    Down Payment $ _____
(Includes Labor and Materials)

**Payment Schedule as Follows:**    _Finish matirer Up to $4000_
_contractor cover_

$ _____ due upon _cost of mg_

$ _____ due upon _____

$ _____ due upon _1000_

$ _____ due upon _12.500_

$ _____ due upon _____

$ _____ due upon _____

*The continuation /addendum is subject to company approval. Customer understands that project could be delayed due to plans, permits. city requirements and additional work added to original contract, thus,all start and completion dates are approximate. Customer further understands that entire agreement is contained herein. No oral representation shall be considered part of this contract unless listed in writing. All other terms and conditions stated in original contract to remain the same.

Contractor Initials _____

Customer's Signature _____    Date ___ / ___ / ___

# CONTRACT CHANGE ORDER

☐ OWNER    ☐ ARCHITECT    ☐ CONTRACTOR    ☐ FIELD    ☐ OTHER

PROJECT:_____ CHANGE ORDER#_____ DATE:_____

Your Prime contractor    Amir MostaKavi
_____    _____
(Company)    (Customer's Name)

22222 Sherman Way    1407 Monte Grande Pl
_____    _____
(Address)    (Address)

Canoga Park CA 91303    _____
(City, State, Zip)    (City, State, Zip)

866 909 3006    (310) 849-7030
_____    _____
(Phone)    (Fax)    (Phone)

This contract change order modifies and amends the contract between the above named parties dated

_____; _____:

Material Costs

1. Material will be Purchased by Owner and Paid by
the Contractor up to $4,000.00 & The Total
Price of $25,000.00 include all labor & Matrials
for up to $4,000.00

Any Cost exceeding $4,000 for Shower glass, Vanity
Mirror, toilet, faucets and Tiles will be Paid by
the owner in addition to $25,000.00

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by_____days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

_____    _____
(Contractor/Owner)    (Owner/Subcontractor)

_____    _____
(Date) 7/26/2023    (Date) 7/26/2023

# EXHIBIT C
# (Case No. 23SMCV05401)

**CHASE** **◯** BUSINESS

Printed from Chase for Business

---

## CREDIT CARD (...2528)

### $1,000.00
Sale

Aug 2, 2023
Transaction date

Aug 3, 2023
Posted date

YPC

(866) 909-3006

---

| | |
|---:|:---|
| Description | YPC |
| Also known as | YPC |
| Merchant type | General contractors: residential and commercial |
| Method | Online, mail or phone |
| Card number | (...2528) |
| Category | Repair & maintenance |

---

Rewards earned with this transaction

| | |
|:---|---:|
| + 1 Point per $1 earned on all purchases | 1,000 |
| Total Ultimate Rewards® points | 1,000 |

---

Transaction details may be preliminary or incomplete and may not match the transaction as it appears on your periodic statement, which is the official record of your account activity.

---

JPMorgan Chase Bank, N.A. Member FDIC          ©2023 JPMorgan Chase & Co.          Equal Housing Opportunity

# EXHIBIT D
# (Case No. 23SMCV05401)

④

# HOME IMPROVEMENT CONTRACT

**THIS AGREEMENT, DATED** _July 26, 2023_ , **IS BETWEEN:**

The Notice of Cancellation may be mailed to the address of the contractor as shown below:

_Your Prime Contractor_ **AND** _NM Family Trust, Trustee Amir Mostafavi_
(Contractor's Name)      (Owner's Name)

_1031696_      _1407 Monte Grande Pl._
(Contractor's License Number)      (Job Address)

_22222 Sherman Way #101_      _Pacific Palisades_
(Contractor's Address)      (City, State & Zip)

_Canoga Park CA 91303_     
(City, State & Zip)      (Home Telephone)      (Work Telephone)

_866 909 3006_      _(310) 849-2030_
(Contractor's Telephone)      (Cell Phone)      (Fax Number)

**Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed:**
Contractor will furnish all labor and materials to construct and complete in a good, workmanlike and substantial manner:
**SEE ATTACHED CONTINUATION/ADDENDUM FOR DESCRIPTION OF WORK**

_See Addendum_

**NOT INCLUDED:** The following items are specifically excluded or are to be provided by Owner. NOTE: Entire agreement is contained herein. NO ORAL REPRESENTATION shall be considered part of this contract unless listed in writing.

_Vanity, Finish Materials such as Vanity, faucets, valves, floor tile, Wall tiles, shower glass, door levers, locks, mirrors, toilets, tubs_

**Approximate Start Date:** _Friday August 4, 2023_ **Approximate Completion Date:** _____

**All start and completion dates are approximate. (See additional terms and conditions on reverse side).**
**The work to be performed under this contract shall be commenced on approximate start date as long as any required building permits are received and any agreed upon funds are paid to Contractor. The project will be completed by approximate completion date subject to permissible delays.**

**CONTRACT PRICE: $** _89,300_ .⁰⁰      **DOWN PAYMENT: $** _2,000_ .⁰⁰
(Owner agrees to pay Contractor total cash price)      (If any; if not applicable, put "none")

Contract price is subject to additions and deductions pursuant to changes agreed upon in writing by the parties and subject to allowances.
**THE DOWN PAYMENT MAY NOT EXCEED $1,000 OR 10% OF THE CONTRACT PRICE, WHICHEVER IS LESS.**
**SCHEDULE OF PROGRESS PAYMENTS: The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment.**
**IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWNPAYMENT.**

(Work or Services to be Performed or Materials to be Supplied)      **AMOUNT**

1. _Upon start of job_      $ _17,500_ .⁰⁰
2. _Electrical and Plumbing_      $ _10,000_ .⁰⁰
3. _Tiling_      $ _10,000_ .⁰⁰
4. _Balcony_      $ _10,000_ .⁰⁰
5. _Painting_      $ _10,000_ .⁰⁰
6. _Door knobs, levers, locks, recess, light, switch_      $ _19,500_ .⁰⁰
7. _Completion of Work in Entirety_      _10,300_ .⁰⁰

Upon satisfactory payment being made for any portion of the work performed, the contractor shall, prior to any further payment being made, furnish to the person contracting for the home improvement work a full and unconditional release from any claim or mechanic's lien pursuant to Section 3114 of the Civil Code for that portion of the work for which payment has been made.

Contractor may, if requested, refer owner to a finance company, but any negotiations or arrangements between owner and finance company is owners sole responsibility. Unless specifically stated above that this Agreement is subject to approval of financing, this Agreement is not subject to obtaining or approval of financing.

**List of Documents to be incorporated into the Contract:** Notice Concerning Commercial General Liability Insurance (CGL); Notice Concerning Worker's Compensation Insurance; Arbitration of Disputes; Notice of Cancellation; Three-Day Right to Cancel; Mechanic's Lien Warning; Information about Contractors' State License Board, Checklist for Homeowners. A notice concerning Commercial General Liability Insurance is attached to this contract. A notice concerning Workers' Compensation Insurance is attached to this contract. (list any additional attachments):

Owner acknowledges receipt of a fully completed copy of this agreement and all documents listed above:

| **ARBITRATION** | **You (the owner or tenant) have the right to require the Contractor to have a performance and payment bond; however, the Contractor can charge you for the costs of procuring a bond.** | _AM_ **RIGHT TO CANCEL** |
|---|---|---|
| OWNER: Initial this box if you agree to arbitration. Review the "Arbitration of Disputes" section attached | | The law requires that the contractor give you a notice explaining your right to cancel. Initial the checkbox if the contractor has given you a "Notice of the Three-Day Right to Cancel |

**You are entitled to a completely filled in copy of this agreement, signed by both you and the contractor, before any work may be started.**

X _NM_   _7/26/2023_      X _SM_   _7/26/2023_
     (Owner's Signature)    (Date)      (Salesperson's Signature)    (Date)

X _____      **State Registration Number**
     (If more than one Owner, please Sign Here)    (Date)

BY SIGNING ABOVE, OWNER ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT AND ALL ATTACHED DOCUMENTS      **NOTICE TO OWNER:** THIS AGREEMENT IS SUBJECT TO HOME OFFICE APPROVAL BEFORE IT BECOMES EFFECTIVE

# ADDITIONAL TERMS AND CONDITIONS

**1. OWNER'S RESPONSIBILITIES.** The Owner is responsible to supply water, gas, sewer and electrical utilities unless otherwise agreed to in writing. Electricity and water to the site is necessary. Owner agrees to allow and provide Contractor and his equipment access to the property. The Owner is responsible for having sufficient funds to comply with this agreement. This is a cash transaction unless otherwise specified. The Owner is responsible to remove or protect any personal property and Contractor is not responsible for same or for any carpets, drapes, furniture, driveways, lawns, shrubs, etc. The Owner shall point out and warrant the property lines to Contractor, and shall hold Contractor harmless for any disputes or errors in the property line or setback locations.

**2. DELAYS.** Contractor agrees to start and diligently pursue work through to completion, but shall not be responsible for delays for any of the following reasons: failure of the issuance of all necessary building permits within a reasonable length of time, funding of loans, disbursement of funds into control or escrow, acts of neglect or omission of Owner or Owner's employees or Owner's agent: acts of God, stormy or inclement weather, strikes, lockouts, boycotts or other labor union activities, extra work ordered by Owner, acts of public enemy, riots or civil commotion, inability to secure material through regular recognized channels, imposition of Government priority or allocation of materials, failure of Owner to make payments when due, or delays caused by inspection or changes ordered by the inspectors of authorized Governmental bodies, or for acts of independent Contractor's, or other causes beyond Contractor's reasonable control.

**3. PLANS AND SPECIFICATIONS.** If plans and specifications are prepared for this job, they shall be attached to and become a part of this Agreement. Contractor will obtain all required building permits, but Owner will pay for permits, assessments and charges required by public bodies and utilities for financing or repaying the cost of sewers, storm drains, water service, other utilities, water hook-up charges and the like.

**4. SUBCONTRACTS.** The Contractor may subcontract portions of this work to properly licensed and qualified subcontractors.

**5. COMPLETION AND OCCUPANCY.** Owner agrees to sign and record a notice of completion within five days after the project is complete and ready for occupancy. If the project passes final inspection by the public body but Owner fails to record Notice of Completion, then owner hereby appoints Contractor as Owner's agent to sign and record a Notice of Completion on behalf of Owner. This agency is irrevocable and is an agency coupled with an interest. In the event the Owner occupies the project or any part thereof before the Contractor has received all payment due under this contract, such occupancy shall constitute full and unqualified acceptance of all the Contractor's work by the Owner and the Owner agrees that such occupancy shall be a waiver of any and all claims against the Contractor.

**6. INSURANCE AND DEPOSITS.** Owner will procure at his own expense and before the commencement of any work hereunder, fire insurance with course of construction, vandalism and malicious mischief clauses attached, such insurance to be a sum at least equal to the contract price with loss, if any, payable to any beneficiary under any deed of trust covering the project, such insurance to name the Contractor and his subcontractors as additional insured and to protect Owner, Contractor and his subcontractors and construction lender as their interests may appear; should Owner fail to do so. Contractor may procure such insurance as agent for and at the expense of Owner, but is not required to do so. If the project is destroyed or damaged by disaster, accident or calamity, such as fire, storm, earthquake, flood, landslide, or by theft or vandalism, any work done by the Contractor rebuilding or restoring the project shall be paid by the Owner as extra work. Contractor shall carry Worker's Compensation Insurance for the protection of contractor's employees during the progress of the work. Owner shall obtain and pay for insurance against injury to his own employees and persons under Owner's discretion and persons on the job site at Owner's invitation.

**7. RIGHT TO STOP WORK.** Contractor shall have the right to stop work if any payment shall not be made, when due, to Contractor under this agreement: Contractor may keep the job idle until all payments due are received. Such failure to make payment, when due, is a material breach of this Agreement.

**8. CLEAN UP.** Contractor will remove from Owner's property debris and surplus material created by his operation and leave it in a neat and broom clean condition.

**9. LIMITATIONS.** No action of any character arising from or related to this contract or the performance thereof, shall be commenced by either party against the other more than two years after completion or cessation of work under this contract.

**10. VALIDITY AND DAMAGES.** In case one or more of the provisions of this Agreement or any application thereof shall be invalid, unenforceable or illegal, the validity, enforceability and legality of the remaining provisions and any other applications shall not in any way be impaired thereby. Any damages for which Contractor may be liable to Owner shall not, in any event, exceed the cash price of this contract.

**11. ASBESTOS, LEAD, MOLD, AND OTHER HAZARDOUS MATERIALS.** Owner hereby represents that Owner has no knowledge of the existence on or in any portion of the premises affected by the Project of any asbestos, lead paint, mold (including all types of microbial matter

or microbiological contamination, mildew or fungus), or other hazardous materials. Testing for the existence of mold and other hazardous materials shall only be performed as expressly stated in writing. Contractor shall not be testing or performing any work whatsoever in an area that is not identified in the Scope of Work. Unless the contract specifically calls for the removal , disturbance , or transportation of asbestos, polychlorinated biphenyl , (PCB), mold, lead paint, or other hazardous substances or materials, the parties acknowledge that such work requires special procedures, precautions, and/or licenses. Therefore, unless the contract specifically calls for same, if Contractor encounters such substances, Contractor shall immediately stop work and allow the Owner to obtain a duly qualified asbestos and/or hazardous material contractor to perform the work or Contractor may perform the work itself at Contractor's option. Said work will be treated as an extra under this contract, and the Contract Term setting forth the time for completion of the project may be delayed. In the event that mold or microbial contamination is removed by Contractor. Owner understands and agrees that due to the unpredictable characteristics of mold and microbial contamination, Contractor shall not be responsible for any recurring incidents of mold or microbial contamination appearing in the same or any adjacent location, subsequent to the completion of the work performed by Contractor. Owner agrees to hold Contractor harmless, and shall indemnify Contractor harmless for any recurrence of mold or microbial contamination. Owner also agrees that Contractor shall not be responsible, and agrees to hold Contractor harmless and indemnify Contractor for the existence of mold or microbial contamination in any area that Contractor was not contracted to test and/or remediate. Further, Owner is hereby informed, and hereby acknowledges, that most insurers expressly disclaim coverage for any actual or alleged damages arising from mold or microbial contamination. Contractor makes no representations whatsoever as to coverage for mold contamination, though at Owner's additional expense, if requested in writing, contractor will inquire as to the availability of additional coverage for such contamination or remediation, and if available, will obtain such coverage if the additional premium is paid for by Owner as an extra.

**12. STANDARDS OF MATERIALS AND WORKMANSHIP.** Contractor shall use and install "standard grade" or "builder's grade" materials on the project unless otherwise stated in the Scope of Work, the plans, and/or specifications provided to Contractor prior to the execution of this Agreement. Unless expressly stated in the Scope of Work, Contractor shall have no liability or responsibility to restore or repair the whole or any part of the existing premises affected by the work of Contractor to be performed herein or by any subsequently agreed-upon change order, including as an illustration and not as a limitation, any landscaping, sprinkler system, flooring and carpet, wall coverings, paint, tile, or decorator items.

**13. INTEREST.** Overdue payments will bear interest at the rate of 1½ % per month ( 18% per annum).

**14. CHANGE IN THE WORK.** Should the Owner, construction lender, or any public body or inspector direct any modification or addition to the work covered by this contract, the contract price shall be adjusted accordingly.
Modification or addition to the work shall be executed only when a Contract Change Order or Continuation/Addendum has been signed by both the Owner and the Contractor. The change in the Contract Price caused by such Contract Change shall be as agreed to in writing, or if the parties are not in agreement as to the change in Contract Price, the Contractor's actual cost of all labor, equipment subcontracts and materials, plus a Contractor's fee of 20% shall be the change in Contract Price.
The Contract Change Order may also increase the time within which the contract is to be completed.

**15. NOTE ABOUT EXTRA WORK AND CHANGE ORDERS.** Extra Work and Change Orders or Continuation/Addendums become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments. You, the buyer, may not require a contractor to perform extra or change-order work without providing written authorization prior to the commencement of any work covered by the new change order. Extra work or a change order is not enforceable against a buyer unless the change order also identifies all of the following in writing prior to the commencement of any work covered by the new change order:

(I)The scope of work encompassed by the order; (II) The amount to be added or subtracted from the contract; and (III) The effect the order will make in the progress payments or the completion date. The contractor's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.

**16. EXISTING DEFECTS.** Contractor Is not responsible for existing structural defects, defective soil conditions, or existing code violations. Despite the exercise of reasonable care during construction, conditions may be discovered, the repair of which are outside the scope of this Agreement. The cost to repair such defective conditions will be added as an extra charge to this Agreement by way of a change order or continuation/addendum.

# EXHIBIT E
# (Case No. 23SMCV05401)

# CREDIT CARD AUTHORIZATION FORM
*** All information will remain confidential ***

Card Holder Name: **Amir Mostafavi**

Billing Address: **1407 Monte Grande Pl.**  Tel No #

City: **Pacific Palisades** Zip: **90272**   Date: **8 4 2023**

## CREDIT CARD INFORMATION

- Type of the Card (VISA) / AMEX / MASTERCARD /

- Credit card No. **2528**

- Expiration Date: **06/28**

- Card Identification Number (last 3 digits located on the back): **039**

- Amount to charge $ **18,500.00**

I authorize ___**Your Prime Contractor**___ to charge the amount listed above to the Credit Card provided herein. I agree to pay 3.5 % for this transaction in accordance with issuing Bank card Holder agreement.

**Cardholder**: Please print your name, sign and date below:

Printed Name: **Amir Mostafavi**     Date **8/4/2023**

Signature: _(signature)_

**Home Improvement Contract Dated July 26, 2023**

Please return the Completed and Signed form to the following:

**Your Prime Contractor, Shlomi Abittan**
**22222 Sherman Way #101**
**Canoga Park, CA 91303**

#2



## Client Credit Card Transaction Receipt

Card Number: XXXXXXXXXXXX2528

Card Holder: AMIR MOSTARAVI

Card Brand: VISA

Payment on 8/4/2023

Amount of $18,500

Cc Fee $647.50

Total transaction amount $19,147.50

# EXHIBIT F
# (Case No. 23SMCV05401)

# CONTRACT CHANGE ORDER

☑ OWNER    ☐ ARCHITECT    ☑ CONTRACTOR    ☐ FIELD    ☐ OTHER

PROJECT: _____    CHANGE ORDER# _____    DATE: 8/7/2023

Your Prime contractor        NM Family Trust, Amir Mostafavi
(Company)                     (Customer's Name)

22222 Sherman Way #101       1407 Monte Grande Pl
(Address)                     (Address)

canoga park CA 91303         Pacific Palisades CA 90272
(City, State, Zip)            (City, State, Zip)

866 909 006                  (310) 849-7030
(Phone)        (Fax)          (Phone)

This contract change order modifies and amends the contract between the above named parties dated

July 26 ; 2023 :

Change of Schedule payment

1. Down payment:                           $1000
2. upon start of job:                      $18,500
3. upon Plumbing + electrical:             $10,000
4. upon Tile :                             $10,000
5. upon balcony demo:                      $10,000
6. upon Hot Mop:                           $10,000
7. upon paint:                             $16,000 AM
8. upon fixtures installation:             $14,500
9. upon completion:                        $5,800  7,300 AM

Total: ~~89,300~~ 93,300.00 AM

Modification of Work

1. Changing Toilet area in J&J Bathroom to shower

2. Relocate toilet to Side of Vanity

3. Removing existing tub and replace it with new tub in the small bathroom. ~~Fix~~ Finish Material not included

4. Add recess lights in the small bathroom

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by_____ days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

_____        _____
(Contractor/Owner)                (Owner/Subcontractor)

8/7/2023
_____        _____
(Date)                            (Date)

# EXHIBIT G
# (Case No. 23SMCV05401)

# CONTRACT CHANGE ORDER

(6)

☑ OWNER    ☐ ARCHITECT    ☑ CONTRACTOR    ☐ FIELD    ☐ OTHER

PROJECT: _____    CHANGE ORDER# _____    DATE: 8/8/2023

Your prime contractor            NM Family Tree      Amir Mostafavi
_____(Company)_____          _____(Customer's Name)_____

22222 Sherman Way #101    1407 Monte Grande
_____(Address)_____          _____(Address)_____

Canoga Park CA 91303
_____(City, State, Zip)_____    _____(City, State, Zip)_____

866 909 3006                 (810) 840 2036
(Phone)        (Fax)                    (Phone)

This contract change order modifies and amends the contract between the above named parties dated

_____ ; _____ :

Amir 818 585 8878

✓    Down payment $7000 AM AM
✓    Upon start of Job $18.500 AM
✓    Upon start Plumbing + Electric $15000 AMR
     Upon start tile $15.000
✓    Upon Balcony Demo + Start water Proofing $12.000
     Upon Hot mop $10.000                        (App?
     Upon start Paint $15.000
     Upon Fixtures installation $11.300
     Upon completion $6.500

$13.000
+total 102.300
Contractor install one tub and will creat framing
for 2 ~~work~~ tile, tub + cut tile installtin
for tile, tub and shower for master bathroom
J & J bathroom and guest bathroom Floor and walls

Finish matirials not included

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by_____ days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

_____    _____
(Contractor/Owner)            (Owner/Subcontractor)

8/8/2023                      8/8/23
(Date)                        (Date)

# EXHIBIT H
# (Case No. 23SMCV05401)

# CONTRACT CHANGE ORDER

⑦

☑ OWNER   ☐ ARCHITECT   ☑ CONTRACTOR   ☐ FIELD   ☐ OTHER

PROJECT:_____     CHANGE ORDER#_____   DATE: 7/26/2023

_____   NM Family Trust, Trustee Amir Moitafari D.
(Company)                          (Customer's Name)

_____   1407 Monte Grande Pl.
(Address)                          (Address)

_____   Pacific Palisades, CA 90272
(City, State, Zip)                 (City, State, Zip)

_____   (310) 849-2030
(Phone)        (Fax)               (Phone)

This contract change order modifies and amends the contract between the above named parties dated

_____;_____:

① Additional Bathroom Complete remodeling, demo bathroom
Contractor will clear and Prepare area to start work
"     "     install tile in bathroom, Toilet and Vanity
"     "     upgrade electrical up to code including recess lights
Fans replacement, switches, outlets in bathroom area,
Contractor will install toilet and drainage and new Vanity and mirror
Contractor will install glass shower doors and bathroom faucets and
tiles on bathroom walls up to ceiling. Material for Vanity, Faucets, shower
Glass, shower head and tiles will be provided by the owner.
② All interior Painting for Walls ceilling's, doors, Windows, baron, railling
③ Install Water Proof Balcony, demo tile down to Plywood, Sealing up with
Water Proofing and cover stucco, Patch and Painting, Painting railling, reshape
it double that Patch and Paint.
④ Replace and install door levers, handles, locks, deadbolts, install back
existing recess lights, switches, plugs, Smoke detectors, Fans
⑤ 2nd Bathroom, refinish existing bathroom, installing Vanity, Toilets, finish
tiles, dry walls, fans, doors, reconnect drainage and faucets and
head shower
⑥ Garage EPOXY

_____

_____

_____

_____

_____

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by_____days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

_____        _____
(Contractor/Owner)                      (Owner/Subcontractor)

_____        _____
(Date)                                  (Date)

# EXHIBIT I
# (Case No. 23SMCV05401)

# WE CARE DECK COATING

### 4051 S. Broadway, Los Angeles, CA 90037
### Mailing Address: 1155 S. Harvard Blvd, Los Angeles, CA 90006
### Tel: (213)700-6462        Email: wecaredeck@gmail.com

## BID-PROPOSAL

**DATE:**        09/05/2023
**PROPOSAL SUBMIT TO:**                          **WORK TO BE PERFORMED AT:**

NAME:    Shay, Your Prime Contractor
Address:                                          Address:    1407 Monte Grande Pl
City:                                             City        Pacific Palisades, 90272
                                                  Email:      Shaykenyc@gmail.com
Tel:     646-378-8693                                         office@yourprimecontractor.com

**Construction To Begin: Will follow up after signed**        **Contract Completion Date:**

## Job Description

We make a slope about at 3/4 inch per foot so the water slides down.

However, as construction is done by human hands, it won't be at a perfect degree.

And if we make the slope with more higher degree so no water puddle can stay on 1 area, it will create new water puddle on other areas

because raising a slope on 1 area means other place need to be lowered. It'll be a constant loop without resolving anything.

Also, if we make the entire slope too steep, it'll be danagerous for the people to use and can cause an accident like people slipping and falling down,

especially for elderly people. And it will become a liability issue.

This is why on the proposal we state;

**Less than 1/8 inch water puddle is not covered by warranty.**

When it's rains, it's natural for some water puddles to form but once rain stops, it'll eventually dry out and this is where our warranty is applied.

# EXHIBIT J
# (Case No. 23SMCV05401)

Recording Requested by Your Prime
Contractor
Please Return To:
Your Prime Contractor
c/o Mail Center
9450 SW Gemini Dr #7790
Beaverton, Oregon 97008-7105
Reference ID: BTJP8FZYR9TQ
APN: 4431-026-001

SPACE ABOVE FOR RECORDER'S USE

## CLAIM OF MECHANICS LIEN
### Cal. Civ. Code §8416

**Claimant**
Your Prime Contractor
23055 SHERMAN WAY #4028
WEST HILLS , California 91308
(866) 909-3006

**Property Owner** (Owner)

Amri Mostafavi Trustee of the NM Family Trust, dated
July 10, 2018
528 Palisades Dr # 220
Pacific Palisades, California 90272

Mostafavi Amir
1407 Monte Grande Place
Pacific Palisades, California 90272

**Property Liened** (Property)
County: Los Angeles County
1407 Monte Grande Place, Pacific Palisades,
California 90272

**Legal Property Description:**
Property located at the municipal address of 1407
MONTE GRANDE PL, PACIFIC PALISADES, CA
90272.In the county of Los Angeles County. APN
4431-026-001. Briefly described as *TR=41709*(EX
OF STS) LOT/SEC 1. Subdivision: 41709.
Municipality / Township of WEST /PAC PALISADES.
Legal Lot 1.

**Services:** The lien is claimed for the following labor,
services, equipment or materials: breach of contract ,
client refusing to pay per schedule payment , on
contract signed on 7/26/23

**Job Number (if any):** 2219

**Amount Due:** Amount due after deducting all just
credits and offsets: **$10,000.00**

**Hiring Party:** Name and Address of person or entity to
whom Claimant furnished labor, services, equipment
and/or materials:
Mostafavi Amir
1407 Monte Grande Place
Pacific Palisades, California 90272

**The following exhibits are attached hereto and made a part hereof (if applicable):**

**NOTICE IS HEREBY GIVEN** that Claimant claims a lien for labor, service, equipment or materials under Section 8416 et seq. of the Civil Code of the State of California, upon the Property, above-described, and upon every estate or interest in such structures, improvements and premises held by any party holding any estate therein. The labor, service, equipment or materials were furnished for the construction of those certain buildings, improvements, or structures, now upon that certain parcel of land above-described as the Property.

I, the undersigned, as a disclosed and authorized agent of the Claimant, state that I have read the foregoing Claim of Lien, that I have been provided information regarding the facts and contents therein, and that based thereupon, **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

Name of Claimant:
Your Prime Contractor

Signed:

Signed:

Claimant, Your Prime Contractor
by authorized limited agent
Print Name: Jeremiah Gradine
Date: October 26, 2023
State of Louisiana
County of Orleans

Claimant, Your Prime Contractor
by authorized limited agent
Print Name: Jeremiah Gradine
Date: October 26, 2023
State of Louisiana
County of Orleans

---

**IMPORTANT INFORMATION ON THE FOLLOWING PAGE(S)**

Affidavit of Delivery

Delivery on behalf of:  Your Prime Contractor
Re:  *1407 Monte Grande Place, Pacific Palisades , California 90272*
Item Delivered:  Claim of Lien (Mechanics Lien)

Proof of Service Affidavit, California Civil Code § 8416(a)(7), and (c)
I, Jeremiah Gradine, declare that on October 26, 2023, I delivered copies of the attached Mechanic's Lien and Notice of Mechanic's Lien to the property owner identified thereon at the address provided below, and in the delivery manner provided below.  In addition to this delivery, or in the alternative to said delivery pursuant to California Code §8416(c)(2) if delivery to the owner as required by §8416(c)(1) could not be performed, I served / also served copies of the Mechanic's Lien and Notice of Mechanic's Lien to the following parties at the following addresses, and through the following method of delivery:

**Property Owner / Public Entity**, Amri Mostafavi Trustee of the NM Family Trust, dated July 10, 2018
528 Palisades Dr # 220
Pacific Palisades, California 90272
**By**: US Certified with Return Receipt, **No.** 9314 8699 0430 0113 6013 10 **at** October 26, 2023
**Property Owner / Public Entity**, Mostafavi Amir
1407 Monte Grande Place
Pacific Palisades, California 90272
**By**: US Certified with Return Receipt, **No.** 9314 8699 0430 0113 6013 34 **at** October 26, 2023


I declare under penalty of perjury that the foregoing is true and correct.

Signature: _____
Agent for Claimant
Signed by: Jeremiah Gradine
October 26, 2023

## NOTICE OF MECHANICS LIEN
## ATTENTION!

**Upon the recording of the enclosed MECHANICS LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanics lien is recorded.**

**The party identified in the enclosed mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.**

**BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEBSITE AT www.cslb.ca.gov.**

Levelset mailing center
9450 SW Gemini Dr #7790
Beaverton, OR 97008-7105



**9314 8699 0430 0113 6013 10**

RETURN RECEIPT (ELECTRONIC)

Total Postage: $7.18

AMRI MOSTAFAVI TRUSTEE OF THE NM FAMILY TRUST,
528 PALISADES DR PMB 220
PACIFIC PALISADES, CA 90272-2844

Reference Number: 18835986

# EXHIBIT K
# (Case No. 23SMCV05401)

# Customer Receipt

9/13/2022, 3:31 PM PDT

Store # 6611

Sales Person AXB3HZJ          Store Phone # (310) 822-3330

Location 12975 W JEFFERSON BLVD, LOS ANGELES, CA 90066

## Customer Information

**AMIR MOSTAFAVI**
(310) 849-2030
AMIR@MOSTAFAVILAW.COM

3836 CASTLEROCK RD
MALIBU, CA 90265

**Order #** H6611-795863

**Receipt #** 6611 00097 36430

**PO / Job Name** 1407 Monte Grande Pl

## 🛒 Carryout

**Runner Name**
Fish

| Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|
| 01 Custom Building Products Polyblend Plus #09 Natural Gray 10 lb. Unsanded Grout | | 1005401381 | $19.50 / each | 1 | $19.50 |
| 02 Custom Building Products Polyblend Plus #19 Pewter 10 lb. Unsanded Grout | | 1005401387 | $19.50 / each | 1 | $19.50 |

## 🚚 Delivery

**Delivery Address**
1407 Monte Grande Pl
Pacific Palisades , CA 90272

**Delivery Options**
Outside Delivery

**Delivery Date**
Thursday, September 15
6:00 AM PDT - 10:00 AM
PDT

| Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|
| 01 Custom Building Products VersaBond 50 lb. White Fortified Thinset Mortar 🏷 DISCOUNT $1.97 OFF EACH | MTSW50 | 399775 | $19.70 / each $17.73 / each | 10 | $177.30 |
| 02 Unbranded 2 in. x 4 in. x 104-1/4 in. Prime Green Douglas Fir Stud CA LBR FEE | 328939 | 328939 999735 | $6.98 / each $0.35 / each | 5 1 | $34.90 $0.35 |
| 03 American Standard Deep Soak Whirlpool Drain | 1599.500.020 | 553243 | $99.00 / each | 1 | $99.00 |
| 04 American Standard EverClean 60 in. Acrylic Left Drain Rectangular Alcove Whirlpool Bathtub in White | 2425LC-LHO.020 | 518305 | $699.00 / each | 1 | $699.00 |
| 05 Mueller Streamline 1/2 in. x 10 ft. Copper Type L Pipe | LH04010 | 867926 | $23.26 / each | 2 | $46.52 |
| 06 BEHR PREMIUM PLUS 5 gal.#12Swiss Coffee Semi-Gloss Enamel Low Odor Interior Paint & Primer 🏷 DISCOUNT $38.00 OFF EACH GL RECY$ | 301205 | 927655 1008043615 | $190.00 / each $152.00 / each $1.50 / each | 10 10 | $1,900.00 $15.00 |
| 07 James Hardie HardieBacker 0.42 in. x 3 ft. x 5 ft. Cement Backerboard 🏷 DISCOUNT $1.69 OFF EACH | 220023 | 202225 | $16.88 / each $15.19 / each | 31 | $470.89 |
| 08 Custom Building Products RedGard 1 Gal. Waterproofing and Crack Prevention Membrane | LQWAF1 | 755504 | $68.00 / each | 1 | $68.00 |
| 09 Olympic WaterGuard 1 gal. Clear Exterior Wood Sealer 🏷 DISCOUNT $3.60 OFF EACH GL RECYC$ | 55260XIA-01 | 1006106360 1008043510 | $17.98 / each $14.38 / each $0.65 / each | 2 2 | $35.96 $1.40 |

## Customer Receipt

9/13/2022, 3:31 PM PDT

Sales Person AXB3HZJ
Store Phone # (310) 822-3330

Store # 6611

Location 12975 W JEFFERSON BLVD, LOS ANGELES, CA 90066

**Order # H6611-795863     Receipt # 6611 00097 36430**

| | Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|---|
| 10 | Custom Building Products TileLab 1 Gal. Grout and Tile Sealer | TLPSRA1 | 124084 | $53.65 / each | 2 | $107.30 |
| | GL Recyc$ | | 999832 | $0.75 / each | 2 | $1.60 |
| 11 | TRIMACO Easy Mask 3 ft. x 167 ft. Red Rosin Medium Weight Paper | 35145 | 384815 | $13.97 / each | 4 | $55.88 |
| 12 | USG Sheetrock Brand 5/8 in. x 4 ft. x 8 ft. Firecode X Drywall | 14211011308 | 419109 | $17.83 / each | 5 | $89.15 |
| 13 | Unbranded 23/32 in. x 4 ft. x 8 ft. Fir Sheathing Plywood (Actual: 0.688 in. x 48 in. x 96 in.) | 439614 | 439614 | $50.66 / each | 8 | $405.28 |
| | CA LBR FEE | | 999735 | $4.05 / each | 1 | $4.05 |
| 14 | Outside Delivery | | 515663 | $109.00 / each | 1 | $109.00 |

### Delivery

Delivery Address
1407 Monte Grande Pl
Pacific Palisades , CA 90272

Delivery Options
Priority Ground Shipping

Estimated Arrival
September 20 - September 23

| | Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|---|
| 01 | Acudor Products 15 in. x 15 in. Steel Wall or Ceiling Access Door | | 1001208493 | $38.08 / each | 3 | $114.24 |
| | ⊙ Delivered by Sep 20 - Sep 23 | | | | | |
| 02 | Priority Ground Shipping | | | | 1 | $0.00 |

**90 DAY RETURN POLICY.** The Home Depot reserves the right to limit / deny returns. Please see the return policy sign in the stores for details.

**Payment Method**

Visa 0647                    Charged $4,472.66

| Subtotal | $4,545.71 |
|---|---|
| Discounts | -$459.29 |
| Sales Tax | $386.24 |
| **Order Total** | **$4,472.66** |

**Take a short survey for a chance TO WIN A $5,000 Home Depot Gift Card.** Entries must be completed within 14 days of purchase. Entrants must be 18 or older to enter. No Purchase necessary. See complete rules on www.homedepot.com/survey

User ID: GVM3 79760 73246            Password: 22463 73149

# EXHIBIT B

## (State National Insurance Company, Inc. )

# ACORD®  CERTIFICATE OF PROPERTY INSURANCE

**DATE (MM/DD/YYYY)** 05/10/2023

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER Next First Insurance Agency, Inc. PO Box 60787 Palo Alto, CA 94306 | CONTACT NAME: | |
|---|---|---|
| | PHONE (A/C, No, Ext): (855) 222-5919 | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | |
| | PRODUCER CUSTOMER ID: | |
| | **INSURER(S) AFFORDING COVERAGE** | **NAIC #** |
| INSURED Shlomi Abittan Your Prime Contractor 22222 Sherman Way Ste 101 Canoga Park, CA 91303 | INSURER A : State National Insurance Company, Inc. | 12831 |
| | INSURER B : | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES    CERTIFICATE NUMBER: 891093544    REVISION NUMBER:

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | | LIMITS |
|---|---|---|---|---|---|---|---|---|
| A | X PROPERTY | | NXT7I6AULC-01-CP | 08/04/2022 | 08/04/2023 | | BUILDING | $ |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | X | PERSONAL PROPERTY | $15,000.00 |
| | BASIC | BUILDING | | | | X | BUSINESS INCOME | $Included |
| | BROAD | CONTENTS | | | | X | EXTRA EXPENSE | $Included |
| | X SPECIAL | $500.00 | | | | | RENTAL VALUE | $ |
| | EARTHQUAKE | | | | | | BLANKET BUILDING | $ |
| | WIND | | | | | | BLANKET PERS PROP | $ |
| | FLOOD | | | | | | BLANKET BLDG & PP | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | INLAND MARINE | | TYPE OF POLICY | | | | EQUIPMENT | $ |
| | CAUSES OF LOSS | | | | | | MISC TOOLS | $ |
| | NAMED PERILS | | POLICY NUMBER | | | | BORROWED TOOLS | $ |
| | OPEN PERILS | | | | | | | $ |
| | CRIME | | | | | | | $ |
| | TYPE OF POLICY | | | | | | | $ |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |

SPECIAL CONDITIONS / OTHER COVERAGES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

## CERTIFICATE HOLDER

Shlomi Abittan
Your Prime Contractor
22222 Sherman Way Ste 101
Canoga Park, CA 91303

**LIVE CERTIFICATE**



Click or scan to view

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

© 1995-2015 ACORD CORPORATION.  All rights reserved.

ACORD 24 (2016/03)    The ACORD name and logo are registered marks of ACORD

# EXHIBIT C

## (State National Insurance Company, Inc. )

CIV-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 282372 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Amir Mostafavi, Esq. | | |

FIRM NAME: Mostafavi Law Group, APC
STREET ADDRESS: 528 Palisades Dr., Suite 220
CITY: Pacific Palisades     STATE: CA     ZIP CODE: 90272
TELEPHONE NO.: (310) 849-2030     FAX NO.: (310) 473-2222
E-MAIL ADDRESS: amir@mostafavilaw.com
ATTORNEY FOR (name): NM FAMILY TRUST, Dated July 10, 2018

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/05/2024 11:19 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By K. Parenteau, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica, CA 90401
BRANCH NAME: West Judicial District - Santa Monica Courthouse

Plaintiff/Petitioner: NM FAMILY TRUST, Dated July 10, 2018
Defendant/Respondent: YOUR PRIME CONTRACTOR, INC., ET AL.

| **REQUEST FOR** (Application) | **☒ Entry of Default** ☐ **Court Judgment** | ☐ **Clerk's Judgment** | CASE NUMBER: 23SMCV0S401 |
|---|---|---|---|

**Not for use in actions under the Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.);** (see form CIV-105)

1. TO THE CLERK: On the complaint or cross-complaint filed
   a. on *(date):* November 15, 2023
   b. by *(name):* Amir Mostafavi, Trustee of The NM Family Trust, Dated July 10, 2018
   c. ☒ Enter default of defendant *(names):*
      YOUR PRIME CONTRACTOR, INC. DBA PRIME CONSTRUCTION

   d. ☐ I request a court judgment under Code of Civil Procedure sections 585(b), 585(c), 989, etc., against defendant *(names):*

      *(Testimony required. Apply to the clerk for a hearing date, unless the court will enter a judgment on an affidavit under Code Civ. Proc., § 585(d).)*
   e. ☐ Enter clerk's judgment
      (1) ☐ for restitution of the premises only and issue a writ of execution on the judgment. Code of Civil Procedure section 1174(c) does not apply. (Code Civ. Proc., § 1169.)
         ☐ Include in the judgment all tenants, subtenants, named claimants, and other occupants of the premises. The *Prejudgment Claim of Right to Possession* was served in compliance with Code of Civil Procedure section 415.46.
      (2) ☐ under Code of Civil Procedure section 585(a). *(Complete the declaration under Code Civ. Proc., § 585.5 on the reverse (item 5).)*
      (3) ☐ for default previously entered on *(date):*

2. **Judgment to be entered.**

| | | Amount | Credits acknowledged | Balance |
|---|---|---|---|---|
| a. | Demand of complaint . . . . . . . . . . . . | $ | $ | $ |
| b. | Statement of damages* | | | |
| | (1) Special . . . . . . . . . . . . . . . . . . . | $ | $ | $ |
| | (2) General . . . . . . . . . . . . . . . . | $ | $ | $ |
| c. | Interest . . . . . . . . . . . . . . . . . . . . . . | $ | $ | $ |
| d. | Costs *(see reverse)* . . . . . . . . . . . . | $ | $ | $ |
| e. | Attorney fees . . . . . . . . . . . . . . . . . | $ | $ | $ |
| f. | **TOTALS** . . . . . . . . . . . . . . . . . . . | $ | $ | $ |

   g. **Daily damages** were demanded in complaint at the rate of: $              per day beginning *(date):*
   (* Personal injury or wrongful death actions; Code Civ. Proc., § 425.11.)

3. ☐ *(Check if filed in an unlawful detainer case.)* **Legal document assistant or unlawful detainer assistant** information is on the reverse *(complete item 4).*

   Date: March 5, 2024

   Amir Mostafavi                                           *Amir Mostafavi*
   _____                  ▶  _____
   (TYPE OR PRINT NAME)                                  (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

| **FOR COURT USE ONLY** | (1) ☑ Default entered as requested on *(date):* 03/05/2024 | |
|---|---|---|
| | (2) ☐ Default NOT entered as requested *(state reason):* | |
| | Clerk, by    K. Parenteau    , Deputy | Page 1 of 3 |

Form Adopted for Mandatory Use
Judicial Council of California
CIV-100 [Rev. January 1, 2023]

**REQUEST FOR ENTRY OF DEFAULT**
**(Application to Enter Default)**

Code of Civil Procedure, §§ 585–587, 1169
www.courts.ca.gov

**CIV-100**

| | |
|---|---|
| Plaintiff/Petitioner: NM FAMILY TRUST, Dated July 10, 2018<br>Defendant/Respondent: YOUR PRIME CONTRACTOR, INC., ET AL. | CASE NUMBER:<br>23SMCV0S401 |

4. **Legal document assistant or unlawful detainer assistant (Bus. & Prof. Code, § 6400 et seq.).** A legal document assistant or unlawful detainer assistant ☐ did ☒ did **not** for compensation give advice or assistance with this form. If declarant has received **any** help or advice for pay from a legal document assistant or unlawful detainer assistant, state:

    a. Assistant's name:                        c. Telephone no.:

    b. Street address, city, and zip code:          d. County of registration:

                                              e. Registration no.:

                                              f. Expires on *(date)*:

5. ☒ **Declaration under Code Civ. Proc., § 585.5** *(for entry of default under Code Civ. Proc., § 585(a))*. This action

    a. ☐ is ☒ is not on a contract or installment sale for goods or services subject to Civ. Code, § 1801 et seq. (Unruh Act).

    b. ☐ is ☒ is not on a conditional sales contract subject to Civ. Code, § 2981 et seq. (Rees-Levering Motor Vehicle Sales and Finance Act).

    c. ☐ is ☒ is not on an obligation for goods, services, loans, or extensions of credit subject to Code Civ. Proc., § 395(b).

6. **Declaration of mailing (Code Civ. Proc., § 587).** A copy of this *Request for Entry of Default* was

    a. ☐ **not mailed** to the following defendants, whose addresses are unknown to plaintiff or plaintiff's attorney *(names)*:

    b. ☒ **mailed** first-class, postage prepaid, in a sealed envelope addressed to each defendant's attorney of record or, if none, to each defendant's last known address as follows:

        (1)  Mailed on *(date)*: March 5, 2024        (2)  To *(specify names and addresses shown on the envelopes)*:<br>                                                       David NMN Abbitan, Agent for Service<br>                                                       7635 Ponce Avenue,<br>                                                       West Hills, CA 91304

I declare under penalty of perjury under the laws of the State of California that the foregoing items 4, 5, and 6 are true and correct.

Date: March 5, 2024

| | |
|---|---|
| Amir Mostafavi | *Amir Mostafavi* |
| (TYPE OR PRINT NAME) | (SIGNATURE OF DECLARANT) |

7. **Memorandum of costs** *(required if money judgment requested)*. Costs and disbursements are as follows (Code Civ. Proc., § 1033.5):

    a. Clerk's filing fees  . . . . . . . . . . . . . . . . . . .  $

    b. Process server's fees  . . . . . . . . . . . . . . . .  $

    c. Other *(specify)*:                      $

    d.                                    $

    e. **TOTAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $ _____

    f. ☐ Costs and disbursements are waived.

    g. I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing item 7 is true and correct.

Date:

| | |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF DECLARANT) |

**REQUEST FOR ENTRY OF DEFAULT**
**(Application to Enter Default)**

CIV-100

| | |
|---|---|
| Plaintiff/Petitioner: NM FAMILY TRUST, Dated July 10, 2018<br>Defendant/Respondent: YOUR PRIME CONTRACTOR, INC., ET AL. | CASE NUMBER:<br>23SMCV0S401 |

8. **Declaration of nonmilitary status** *(required for a judgment).*
No defendant/respondent named in item 1c is in the military service of the United States as defined by either the Servicemembers Civil Relief Act (see 50 U.S.C. § 3911(2)) or California Military and Veterans Code sections 400 and 402(f).

I know that no defendant/respondent named in item 1c is in the U.S. military service because *(check all that apply)*:

a. ☒ the search results that I received from *https://scra.dmdc.osd.mil/* say the defendant/respondent is not in the U.S. military service.

b. ☒ I am in regular communication with the defendant/respondent and know that they are not in the U.S. military service.

c. ☒ I recently contacted the defendant/respondent, and they told me that they are not in the U.S. military service.

d. ☐ I know that the defendant/respondent was discharged from U.S. military service on or about *(date):*

e. ☒ the defendant/respondent is not eligible to serve in the U.S. military because they are:
   ☐ incarcerated  ☐ a business entity

f. ☐ other *(specify):*

---

**Note**
- U.S. military status can be checked online at *https://scra.dmdc.osd.mil/.*
- If the defendant/respondent is in the military service, or their military status is unknown, the defendant/respondent is entitled to certain rights and protections under federal and state law before a default judgment can be entered.
- For more information, see *https://selfhelp.courts.ca.gov/military-defaults.*

---

I declare under penalty of perjury under the laws of the State of California that the foregoing item 8 is true and correct.

Date: March 5, 2024

_____
Amir Mostafavi
(TYPE OR PRINT NAME)

▶  *Amir Mostafavi*
_____
(SIGNATURE OF DECLARANT)

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form    Save this form    Clear this form

CIV-100

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:        STATE BAR NO: 282372<br>NAME: Amir Mostafavi, Esq.<br>FIRM NAME: Mostafavi Law Group, APC<br>STREET ADDRESS: 528 Palisades Dr., Suite 220<br>CITY: Pacific Palisades        STATE: CA    ZIP CODE: 90272<br>TELEPHONE NO.: (310) 849-2030    FAX NO.: (310) 473-2222<br>E-MAIL ADDRESS: amir@mostafavilaw.com<br>ATTORNEY FOR (name): NM FAMILY TRUST, Dated July 10, 2018 | **FOR COURT USE ONLY**<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>3/05/2024 11:19 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By K. Parenteau, Deputy Clerk** |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles<br>STREET ADDRESS: 1725 Main Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Santa Monica, CA 90401<br>BRANCH NAME: West Judicial District - Santa Monica Courthouse |

| |
|---|
| Plaintiff/Petitioner: NM FAMILY TRUST, Dated July 10, 2018<br>Defendant/Respondent: YOUR PRIME CONTRACTOR, INC., ET AL. |

| REQUEST FOR<br>(Application) | ☒ **Entry of Default**<br>☐ **Court Judgment** | ☐ **Clerk's Judgment** | CASE NUMBER:<br>23SMCV0S401 |
|---|---|---|---|

| **Not for use in actions under the Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.);** (see form CIV-105) |
|---|

1. TO THE CLERK: On the complaint or cross-complaint filed
   a. on *(date):* November 15, 2023
   b. by *(name):* Amir Mostafavi, Trustee of The NM Family Trust, Dated July 10, 2018
   c. ☒ Enter default of defendant *(names):*

      David NMN Abbitan

   d. ☐ I request a court judgment under Code of Civil Procedure sections 585(b), 585(c), 989, etc., against defendant *(names):*

      *(Testimony required. Apply to the clerk for a hearing date, unless the court will enter a judgment on an affidavit under Code Civ. Proc., § 585(d).)*
   e. ☐ Enter clerk's judgment
      (1) ☐ for restitution of the premises only and issue a writ of execution on the judgment. Code of Civil Procedure section 1174(c) does not apply. (Code Civ. Proc., § 1169.)
         ☐ Include in the judgment all tenants, subtenants, named claimants, and other occupants of the premises. The *Prejudgment Claim of Right to Possession* was served in compliance with Code of Civil Procedure section 415.46.
      (2) ☐ under Code of Civil Procedure section 585(a). *(Complete the declaration under Code Civ. Proc., § 585.5 on the reverse (item 5).)*
      (3) ☐ for default previously entered on *(date):*

2. **Judgment to be entered.**

| | | Amount | Credits acknowledged | Balance |
|---|---|---|---|---|
| a. | Demand of complaint . . . . . . . . . . . . $ | | $ | $ |
| b. | Statement of damages* | | | |
| | (1) Special . . . . . . . . . . . . . . . . . . . $ | | $ | $ |
| | (2) General . . . . . . . . . . . . . . . . . . $ | | $ | $ |
| c. | Interest . . . . . . . . . . . . . . . . . . . . . $ | | $ | $ |
| d. | Costs *(see reverse)* . . . . . . . . . . . . $ | | $ | $ |
| e. | Attorney fees . . . . . . . . . . . . . . . . . $ | | $ | $ |
| f. | **TOTALS** . . . . . . . . . . . . . . . . . . . $ | | $ | $ |
| g. | **Daily damages** were demanded in complaint at the rate of: $ | | per day beginning *(date):* | |

   *(* Personal injury or wrongful death actions; Code Civ. Proc., § 425.11.)*

3. ☐ *(Check if filed in an unlawful detainer case.)* **Legal document assistant or unlawful detainer assistant** information is on the reverse *(complete item 4).*

Date: March 5, 2024

_____
Amir Mostafavi
(TYPE OR PRINT NAME)

*Amir Mostafavi*
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

| **FOR COURT<br>USE ONLY** | (1) ☑ Default entered as requested on *(date):* 03/05/2024 |
|---|---|
| | (2) ☐ Default NOT entered as requested *(state reason):* |
| | Clerk, by _____K. Parenteau_____ , Deputy    **Page 1 of 3** |

Form Adopted for Mandatory Use
Judicial Council of California
CIV-100 [Rev. January 1, 2023]

**REQUEST FOR ENTRY OF DEFAULT**
**(Application to Enter Default)**

Code of Civil Procedure, §§ 585–587, 1169
*www.courts.ca.gov*

**CIV-100**

| Plaintiff/Petitioner: NM FAMILY TRUST, Dated July 10, 2018<br>Defendant/Respondent: YOUR PRIME CONTRACTOR, INC., ET AL. | CASE NUMBER:<br>23SMCV0S401 |
| --- | --- |

4. **Legal document assistant or unlawful detainer assistant (Bus. & Prof. Code, § 6400 et seq.).** A legal document assistant or unlawful detainer assistant ☐ did ☒ did **not** for compensation give advice or assistance with this form. If declarant has received **any** help or advice for pay from a legal document assistant or unlawful detainer assistant, state:

a. Assistant's name:

b. Street address, city, and zip code:

c. Telephone no.:

d. County of registration:

e. Registration no.:

f. Expires on *(date):*

5. ☒ **Declaration under Code Civ. Proc., § 585.5** *(for entry of default under Code Civ. Proc., § 585(a)).* This action

a. ☐ is ☒ is not on a contract or installment sale for goods or services subject to Civ. Code, § 1801 et seq. (Unruh Act).

b. ☐ is ☒ is not on a conditional sales contract subject to Civ. Code, § 2981 et seq. (Rees-Levering Motor Vehicle Sales and Finance Act).

c. ☐ is ☒ is not on an obligation for goods, services, loans, or extensions of credit subject to Code Civ. Proc., § 395(b).

6. **Declaration of mailing (Code Civ. Proc., § 587).** A copy of this *Request for Entry of Default* was

a. ☐ **not mailed** to the following defendants, whose addresses are unknown to plaintiff or plaintiff's attorney *(names):*

b. ☒ **mailed** first-class, postage prepaid, in a sealed envelope addressed to each defendant's attorney of record or, if none, to each defendant's last known address as follows:

(1) Mailed on *(date):* March 5, 2024

(2) To *(specify names and addresses shown on the envelopes):*
David NMN Abbitan
7635 Ponce Avenue,
West Hills, CA 91304

I declare under penalty of perjury under the laws of the State of California that the foregoing items 4, 5, and 6 are true and correct.

Date:  March 5, 2024

Amir Mostafavi
(TYPE OR PRINT NAME)

▶ *Amir Mostafavi*
(SIGNATURE OF DECLARANT)

7. **Memorandum of costs** *(required if money judgment requested).* Costs and disbursements are as follows (Code Civ. Proc., § 1033.5):

a. Clerk's filing fees  . . . . . . . . . . . . . . . . . . . .  $

b. Process server's fees  . . . . . . . . . . . . . . . . .  $

c. Other *(specify):*  $

d.  $

e. **TOTAL**  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  $ _____

f. ☐ Costs and disbursements are waived.

g. I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing item 7 is true and correct.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF DECLARANT)

**REQUEST FOR ENTRY OF DEFAULT**
**(Application to Enter Default)**

**CIV-100**

| Plaintiff/Petitioner: NM FAMILY TRUST, Dated July 10, 2018 | CASE NUMBER: |
|---|---|
| Defendant/Respondent: YOUR PRIME CONTRACTOR, INC., ET AL. | 23SMCV0S401 |

8. **Declaration of nonmilitary status** *(required for a judgment).*
   No defendant/respondent named in item 1c is in the military service of the United States as defined by either the Servicemembers Civil Relief Act (see 50 U.S.C. § 3911(2)) or California Military and Veterans Code sections 400 and 402(f).

   I know that no defendant/respondent named in item 1c is in the U.S. military service because *(check all that apply)*:

   a. [×] the search results that I received from *https://scra.dmdc.osd.mil/* say the defendant/respondent is not in the U.S. military service.

   b. [×] I am in regular communication with the defendant/respondent and know that they are not in the U.S. military service.

   c. [×] I recently contacted the defendant/respondent, and they told me that they are not in the U.S. military service.

   d. [ ] I know that the defendant/respondent was discharged from U.S. military service on or about *(date):*

   e. [×] the defendant/respondent is not eligible to serve in the U.S. military because they are:
       [ ] incarcerated  [ ] a business entity

   f. [ ] other *(specify):*

---

**Note**
- U.S. military status can be checked online at *https://scra.dmdc.osd.mil/.*
- If the defendant/respondent is in the military service, or their military status is unknown, the defendant/respondent is entitled to certain rights and protections under federal and state law before a default judgment can be entered.
- For more information, see *https://selfhelp.courts.ca.gov/military-defaults.*

---

I declare under penalty of perjury under the laws of the State of California that the foregoing item 8 is true and correct.

Date: March 5, 2024

_____
Amir Mostafavi
(TYPE OR PRINT NAME)

► *Amir Mostafavi*
_____
(SIGNATURE OF DECLARANT)

**REQUEST FOR ENTRY OF DEFAULT**
**(Application to Enter Default)**

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ] [ Save this form ] [ Clear this form ]

CIV-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 282372 | FOR COURT USE ONLY |
|---|---|---|

NAME: Amir Mostafavi, Esq.
FIRM NAME: Mostafavi Law Group, APC
STREET ADDRESS: 528 Palisades Dr., Suite 220
CITY: Pacific Palisades    STATE: CA    ZIP CODE: 90272
TELEPHONE NO.: (310) 849-2030    FAX NO.: (310) 473-2222
E-MAIL ADDRESS: amir@mostafavilaw.com
ATTORNEY FOR (name): NM FAMILY TRUST, Dated July 10, 2018

**Electronically FILED by
Superior Court of California,
County of Los Angeles
3/05/2024 11:19 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By K. Parenteau, Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 1725 Main Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Monica, CA 90401
BRANCH NAME: West Judicial District - Santa Monica Courthouse

Plaintiff/Petitioner: NM FAMILY TRUST, Dated July 10, 2018
Defendant/Respondent: YOUR PRIME CONTRACTOR, INC., ET AL.

| REQUEST FOR (Application) | [x] Entry of Default   [ ] Clerk's Judgment   [ ] Court Judgment | CASE NUMBER: 23SMCV0S401 |
|---|---|---|

**Not for use in actions under the Fair Debt Buying Practices Act (Civ. Code, § 1788.50 et seq.);** (see form CIV-105)

1. TO THE CLERK: On the complaint or cross-complaint filed
   a. on (date): November 15, 2023
   b. by (name): Amir Mostafavi, Trustee of The NM Family Trust, Dated July 10, 2018
   c. [x] Enter default of defendant (names):
      SHAY YEFET

   d. [ ] I request a court judgment under Code of Civil Procedure sections 585(b), 585(c), 989, etc., against defendant (names):

      (Testimony required. Apply to the clerk for a hearing date, unless the court will enter a judgment on an affidavit under Code Civ. Proc., § 585(d).)
   e. [ ] Enter clerk's judgment
      (1) [ ] for restitution of the premises only and issue a writ of execution on the judgment. Code of Civil Procedure section 1174(c) does not apply. (Code Civ. Proc., § 1169.)
         [ ] Include in the judgment all tenants, subtenants, named claimants, and other occupants of the premises. The *Prejudgment Claim of Right to Possession* was served in compliance with Code of Civil Procedure section 415.46.
      (2) [ ] under Code of Civil Procedure section 585(a). (Complete the declaration under Code Civ. Proc., § 585.5 on the reverse (item 5).)
      (3) [ ] for default previously entered on (date):

2. **Judgment to be entered.**

| | | Amount | Credits acknowledged | Balance |
|---|---|---|---|---|
| a. | Demand of complaint . . . . . . . . . . . . | $ | $ | $ |
| b. | Statement of damages* | | | |
| | (1) Special . . . . . . . . . . . . . . . . . . . | $ | $ | $ |
| | (2) General . . . . . . . . . . . . . . . . . . . | $ | $ | $ |
| c. | Interest . . . . . . . . . . . . . . . . . . . . . . | $ | $ | $ |
| d. | Costs (see reverse) . . . . . . . . . . . . . | $ | $ | $ |
| e. | Attorney fees . . . . . . . . . . . . . . . . . | $ | $ | $ |
| f. | **TOTALS** . . . . . . . . . . . . . . . . . . . . | $ | $ | $ |

   g. **Daily damages** were demanded in complaint at the rate of: $           per day beginning (date):
   (* Personal injury or wrongful death actions; Code Civ. Proc., § 425.11.)

3. [ ] (Check if filed in an unlawful detainer case.) **Legal document assistant or unlawful detainer assistant** information is on the reverse (complete item 4).

   Date: March 5, 2024

   Amir Mostafavi                                    ▶    *Amir Mostafavi*
   _____                                _____
   (TYPE OR PRINT NAME)                                    (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

| FOR COURT USE ONLY | (1) [✓] Default entered as requested on (date): 03/05/2024 |
|---|---|
| | (2) [ ] Default NOT entered as requested (state reason): |

   Clerk, by    K. Parenteau    , Deputy    Page 1 of 3

Form Adopted for Mandatory Use
Judicial Council of California
CIV-100 [Rev. January 1, 2023]

**REQUEST FOR ENTRY OF DEFAULT
(Application to Enter Default)**

Code of Civil Procedure, §§ 585–587, 1169
www.courts.ca.gov

**CIV-100**

| | |
|---|---|
| Plaintiff/Petitioner: NM FAMILY TRUST, Dated July 10, 2018<br>Defendant/Respondent: YOUR PRIME CONTRACTOR, INC., ET AL. | CASE NUMBER:<br>23SMCV0S401 |

4. **Legal document assistant or unlawful detainer assistant (Bus. & Prof. Code, § 6400 et seq.).** A legal document assistant or unlawful detainer assistant ☐ did ☒ did **not** for compensation give advice or assistance with this form. If declarant has received **any** help or advice for pay from a legal document assistant or unlawful detainer assistant, state:

a. Assistant's name:
b. Street address, city, and zip code:

c. Telephone no.:
d. County of registration:
e. Registration no.:
f. Expires on *(date)*:

5. ☒ **Declaration under Code Civ. Proc., § 585.5** *(for entry of default under Code Civ. Proc., § 585(a)).* This action

a. ☐ is ☒ is not on a contract or installment sale for goods or services subject to Civ. Code, § 1801 et seq. (Unruh Act).
b. ☐ is ☒ is not on a conditional sales contract subject to Civ. Code, § 2981 et seq. (Rees-Levering Motor Vehicle Sales and Finance Act).
c. ☐ is ☒ is not on an obligation for goods, services, loans, or extensions of credit subject to Code Civ. Proc., § 395(b).

6. **Declaration of mailing (Code Civ. Proc., § 587).** A copy of this *Request for Entry of Default* was

a. ☐ **not mailed** to the following defendants, whose addresses are unknown to plaintiff or plaintiff's attorney *(names):*

b. ☒ **mailed** first-class, postage prepaid, in a sealed envelope addressed to each defendant's attorney of record or, if none, to each defendant's last known address as follows:

(1) Mailed on *(date):* March 5, 2024

(2) To *(specify names and addresses shown on the envelopes):*
SHAY YEFET
7635 Ponce Avenue,
West Hills, CA 91304

I declare under penalty of perjury under the laws of the State of California that the foregoing items 4, 5, and 6 are true and correct.
Date: March 5, 2024

Amir Mostafavi
(TYPE OR PRINT NAME)

▶ *Amir Mostafavi*
(SIGNATURE OF DECLARANT)

7. **Memorandum of costs** *(required if money judgment requested).* Costs and disbursements are as follows (Code Civ. Proc., § 1033.5):
a. Clerk's filing fees . . . . . . . . . . . . . . . . . . . $
b. Process server's fees . . . . . . . . . . . . . . . . $
c. Other *(specify):* $
d. $
e. **TOTAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
f. ☐ Costs and disbursements are waived.
g. I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing item 7 is true and correct.
Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF DECLARANT)

**REQUEST FOR ENTRY OF DEFAULT**
**(Application to Enter Default)**

**CIV-100**

| | |
|---|---|
| Plaintiff/Petitioner: NM FAMILY TRUST, Dated July 10, 2018<br>Defendant/Respondent: YOUR PRIME CONTRACTOR, INC., ET AL. | CASE NUMBER:<br>23SMCV0S401 |

8. **Declaration of nonmilitary status** *(required for a judgment).*
   No defendant/respondent named in item 1c is in the military service of the United States as defined by either the Servicemembers Civil Relief Act (see 50 U.S.C. § 3911(2)) or California Military and Veterans Code sections 400 and 402(f).

   I know that no defendant/respondent named in item 1c is in the U.S. military service because *(check all that apply)*:

   a. ☒ the search results that I received from *https://scra.dmdc.osd.mil/* say the defendant/respondent is not in the U.S. military service.

   b. ☒ I am in regular communication with the defendant/respondent and know that they are not in the U.S. military service.

   c. ☒ I recently contacted the defendant/respondent, and they told me that they are not in the U.S. military service.

   d. ☐ I know that the defendant/respondent was discharged from U.S. military service on or about *(date):*

   e. ☒ the defendant/respondent is not eligible to serve in the U.S. military because they are:
      ☐ incarcerated  ☐ a business entity

   f. ☐ other *(specify):*

---

**Note**
- U.S. military status can be checked online at *https://scra.dmdc.osd.mil/.*
- If the defendant/respondent is in the military service, or their military status is unknown, the defendant/respondent is entitled to certain rights and protections under federal and state law before a default judgment can be entered.
- For more information, see *https://selfhelp.courts.ca.gov/military-defaults.*

---

I declare under penalty of perjury under the laws of the State of California that the foregoing item 8 is true and correct.

Date: March 5, 2024

| | |
|---|---|
| _____<br>Amir Mostafavi<br>(TYPE OR PRINT NAME) | ► *Amir Mostafavi*<br>_____<br>(SIGNATURE OF DECLARANT) |

CIV-100 [Rev. January 1, 2023]

**REQUEST FOR ENTRY OF DEFAULT**
**(Application to Enter Default)**

Page 3 of 3

For your protection and privacy, please press the Clear This Form button after you have printed the form.    Print this form    Save this form    Clear this form

# EXHIBIT D
## (State National Insurance Company, Inc. )



Mostafavi Law Group
528 Palisades Dr Suite 220
Pacific Palisades, CA 90272

April 24, 2024

Re:    State National Insured: Shlomi Abittan
       State National Claim Number: NXTC-CAGL-YTL4HF
       Claimant(s): Amir Mostafavi Trustee of NM Family Trust
       Date of Loss: July 26, 2023

Dear Mostafavi Law Group:

We strive to provide a thorough and fast response to every Next Insurance policy claim.

The loss you reported was on behalf of the NM Family Trust. After a comprehensive review, we have determined the insurance policy does not cover the claim you made.  We have disclaimed coverage to our insured Your Prime Contractor and Shlomi Abittan as the policy was not in force at the time of this remodel project.

If you believe this decision was made in error or without consideration of additional information we weren't aware of, please share details and documentation for further review. I can be reached at 512-862-9866 or d.harmon@nextinsurance.com.

Thank you for your understanding in this matter.

Sincerely,

Dionne Harmon
Claims Specialist
5128629866
d.harmon@nextinsurance.com

Next Claims Management, Inc. - CA License #: 2M56412.

For your protection California law requires the following to appear on this form: Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

If you disagree with this position, you may have the matter reviewed by the California Department of Insurance at the following address and phone number:

California Department of Insurance
Consumer Services Division,
300 S. Spring Street,
Los Angeles, CA 90013
800-927-4357
www.insurance.ca.gov



State National reserves the right under the Policy and applicable law to cite additional policy provisions and coverage defenses as may be appropriate. This letter should not be construed as a waiver of any known or unknown defense that we may have under the Policy, nor does this letter waive or change any provisions or conditions in the Policy. This letter is premised upon information we currently have available to us and upon the terms and conditions of the Policy.

# EXHIBIT C

**From:** **Jason Tortorici** jpt@schillecitortoricilaw.com  📎
**Subject:** RE: Mostafavi v. State National Ins. Co. et al., Next Claim no. NXTC-CAGL-YTL4HF, my file no. 2025-1424
**Date:** August 12, 2025 at 9:58 AM
**To:** MLG email amir@mostafavilaw.com

When do you plan to file an amended complaint?



# SCHILLECI & TORTORICI

## The Millennial Lawyer

Jason P. Tortorici
JPT@SchilleciTortoriciLaw.com
(310) 770-8498

**From:** MLG email <amir@mostafavilaw.com>
**Sent:** Tuesday, August 12, 2025 11:05 AM
**To:** Jason Tortorici <jpt@schillecitortoricilaw.com>
**Subject:** Re: Mostafavi v. State National Ins. Co. et al., Next Claim no. NXTC-CAGL-YTL4HF, my file no. 2025-1424

The complaint will be amended to replace the 11580 claim with declraratory relief claim for the issue of coverage.

Once the coverage issue is determined by the court, the 11580 claim could be relate back to when default judgemnt is entered.

Amir Mostafavi
Mostafavi Law Group, APC
15243 La Cruz Dr., #67
Pacific Palisades, CA 90272
(310) 849-2030 P
(310) 473-2222 F
www.mostafavilaw.com

On Aug 12, 2025, at 8:58 AM, Jason Tortorici <jpt@schillecitortoricilaw.com> wrote:

Am I to understand that you are offering to dismiss your direct action against State National Insurance Company without prejudice now and proceed with a declaratory relief action solely to decide the coverage issue?

<image001.png>
Jason P. Tortorici
JPT@SchilleciTortoriciLaw.com
(310) 770-8498

---

**From:** MLG email <amir@mostafavilaw.com>
**Sent:** Tuesday, August 12, 2025 10:55 AM
**To:** Jason Tortorici <jpt@schillecitortoricilaw.com>
**Subject:** Re: Mostafavi v. State National Ins. Co. et al., Next Claim no. NXTC-CAGL-YTL4HF, my file no. 2025-1424

Mr. Tortorici,

Do you have any authority to support your position that the coverage requires the WORK as you construe it, meaning construciton work? In another word, is your position that the coverage requires physical action like demolition?

You are correct that the section 11580 requires entry of Judgement. The issue faced here is that plaintiff need to have the coverge question be resolved beofre the trial of the underlying action which is set for Feb 2026. Are you amenable to have the coverage issue is adjudicated by the court under a declraratory relief claim?

The intend is to avoid undue prejudice to the plaintiff based on the issue of the coverage beofre the trial of the underlying action. Let me know your thoughts.

Amir Mostafavi
Mostafavi Law Group, APC
15243 La Cruz Dr., #67
Pacific Palisades, CA 90272
(310) 849-2030 P
(310) 473-2222 F
www.mostafavilaw.com

On Aug 12, 2025, at 8:38 AM, Jason Tortorici
<jpt@schillecitortoricilaw.com> wrote:

<jpt@schillecitortoricilaw.com> wrote:

Mr. Mostafavi –

You are not entitled to proceed directly against State National Insurance until judgement is ENTERED. Further, insurance contract triggers coverage upon COMPLETION of the work in question NOT when the contract was signed. The date the contract was signed is irrelevant. The fact that work started AFTER the insurance contract terminated at 12:01 a.m. on August 4, 2023 conclusively establishes that the WORK occurred outside the coverage period. Your complaint is frivolous and without merit. We will proceed with our demurrer and request all appropriate relief against you and your client.

<image001.png>
Jason P. Tortorici
JPT@SchilleciTortoriciLaw.com
(310) 770-8498

---

**From:** MLG email <amir@mostafavilaw.com>
**Sent:** Tuesday, August 12, 2025 10:33 AM
**To:** Jason Tortorici <jpt@schillecitortoricilaw.com>
**Subject:** Re: Mostafavi v. State National Ins. Co. et al., Next Claim no. NXTC-CAGL-YTL4HF, my file no. 2025-1424

Mr. Tortorici,

The Court has denied the YPC's second motion for setting aside the default judgment on July 25, 2025 (Exhibit A) as of now, the YPC, its owner David Abittan, and its sales person Shay Yefet are in default. California Insurance Code § 11580(b)(2) permits a judgment creditor to bring a direct action against an insurer to recover on a judgment for bodily injury, death, or property damage, provided the policy covers the liability. The liability against a defaulted insured is binding on the insurer if coverage exists and the insurer had notice of the action. The suit against State National Insurance Company is to preserve the rights and interests of the Plaintiff who suffered substantial damages by defaulting parties by satisfying both prongs. The remaining defendants in the underlying case have taken contradictory positions that must be brought affirmatively and directly to the State National's attention. The determination of the coverage and effect of tehir tactical positions must be adjudicated in the instant suit to avoid an unpleasant surprise to plaintiff in the underlying

action. The two defendants in the underlying suit are children of the YPC owner, David Abittan who have been operating the YPC and plaintif allged they are alter ego of each other. Perhaps, a phone conversation could further clarify the situation facilitating an amenable path for plaintiff and State National.

Lastly, In terms of the coverage period, I respectfully disagree with you and your client that the coverage could not be commenced when the contract was signed with YPC. As you notice from the allegations in the underlying suit, the wrongs occurred starting July 26, 2023 when the policy covered the insured. Please provide me with any authority to support your position that coverage did not exists during the July 26 and August 4 that you contend coverage ends.

Amir Mostafavi
Mostafavi Law Group, APC
15243 La Cruz Dr., #67
Pacific Palisades, CA 90272
(310) 849-2030 P
(310) 473-2222 F
www.mostafavilaw.com

On Aug 11, 2025, at 1:58 PM, Jason Tortorici <jpt@schillecitortoricilaw.com> wrote:

Mr. Mostafavi-

My office has been engaged by Next Insurance on behalf of State National Insurance Company to defend the above lawsuit. Attached is the signed notice and acknowledgement of receipt of the summons and complaint dated August 12, 2025. I plan to file our responsive pleading by September 4, 2025. I wanted to take this opportunity to meet and confer with you pursuant to CCP sections 128.7 and 430.41. I intend to file a demurer to your complaint as your client does not have standing to pursue a direct action against State National Insurance Company. Only default has been entered NOT an actual judgment. The underlying

lawsuit not only remains pending but YPC's motion to set aside was taken under submission and is due to be set aside. Moreover, as you were previously informed in writing by my client, the subject insurance policy was not in effect on the date of loss and in fact terminated at 12:01 a.m. on August 4, 2023, the day the underlying job started. Therefore, the subject insurance policy does not cover the underlying loss. Your direct action lawsuit has no merit is subject to demurrer and due to be dismissed with prejudice for the foregoing reasons. If we must bring a demurrer, my client has instructed me to seek all appropriate sanctions and relief under CCP section 128.7. Please let me know if you will agree to dismiss your complaint voluntarily or give me a call if there is anything further to discuss.

<image001.png>
Jason P. Tortorici
Schilleci & Tortorici, p.c.
Birmingham Los Angeles

100 Centerview Drive
Suite 205
Birmingham, AL 35216

21361 Pacific Coast Highway
Suite A
Malibu, CA 90265

www.themilleniallawyer.com
(310) 770-8498 cell
(205) 978-4211 Bham
(424) 255-6009 LA
(205)623-3700 fax

PRIVILEGE AND CONFIDENTIALITY NOTICE
**"ATTORNEY-CLIENT PRIVILEGED; DO NOT FORWARD WITHOUT PERMISSION."**

NOTICE: This E-mail, including attachments is covered by the Electronic Communications Privacy Act, U.S.C. §§ 2510-2521. The information herein is confidential, privileged and exempt from disclosure under applicable law. This E-mail (including attachments) is intended solely for the use of the addressee hereof. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating, or otherwise using this transmission. The originator of this E-mail and its affiliates do not represent, warrant or guarantee that the integrity of this communication has been maintained or that this communication is free of errors, viruses or other defects. Delivery of this message or any portions herein to any person other than the intended recipient is not intended or waives any right or privilege. This communication may contain material protected by the attorney-client privilege. If you have received this message in error, please promptly notify the sender by E-mail and immediately delete this message from your system. Communications from attorneys may not be forwarded without the sender's express permission.

Circular 230 Disclosure: To assure compliance with Treasury Department rules governing

Circular 230 Disclosure: To assure compliance with Treasury Department rules governing tax practice, we hereby inform you that any advice contained herein (including in any attachment) (1) was not written or intended to be used, and cannot be used, by you or any taxpayer for the purpose of avoiding any penalties that may be imposed on you or any taxpayer and (2) may not be used or referred to by you or any other person in connection with promoting, marketing or recommending to another person any transaction or matter addressed herein.

<1424 minute order 5-20-25 mtn set aside default 1.pdf><1424 minute order 7-2-25 mtn set aside default 2.pdf>
<Denial_Mostafavi_Law_Group__NXTC-CAGL-YTL4HF-01_2.pdf><1424 NAR - SNIC.pdf>

# EXHIBIT D

AMIR MOSTAFAVI, ESQ. (SBN: 282372)
**MOSTAFAVI LAW GROUP, APC**
15243 La Cruz Dr., #67
Pacific Palisades, California 90272
Telephone: (310) 849-2030
Facsimile: (310) 473-2222
amir@mostafavilaw.com
*Attorneys for Plaintiff Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION

| | |
|---|---|
| AMIR MOSTAFAVI, TRUSTEE OF THE NM FAMILY TRUST, Dated July 10, 2018,<br><br>Plaintiff,<br><br>vs.<br><br>SHLOMI ABITTAN, individually and dba Your Prime Contractor; STATE NATIONAL INSURANCE COMPANY, a Texas corporation, and DOES 1–10, inclusive,<br><br>Defendants. | CASE NO.: 25SMCV03852<br>*[Assigned to Hon. Susan Bryant-Deason, Dept. J]*<br><br>FIRST AMENDED COMPLAINT FOR:<br>1. **BREACH OF WRITTEN CONTRACT (Civil Code § 3300)**<br>2. **BREACH OF ORAL CONTRACT (Civil Code § 3300)**<br>3. **BREACH OF COVENANT OF GOOD-FAITH AND FAIR DEALING (Civil Code § 1657)**<br>4. **NEGLIGENCE (Civil Code § 1714)**<br>5. **PROFESSIONAL NEGLIGENCE (Civil Code § 43.7)**<br>6. **NEGLIGENT MISREPRESENTATION (Civil Code § 1710(2))**<br>7. **CONSTRUCTION DEFECT (Civil Code §§ 895–945.5)**<br>8. **CONVERSION (Civil Code §§ 3336, 3337)**<br>9. **FRAUD - INTENTIONAL MISREPRESENTATION (Civil Code §§ 1709, 1710)**<br>10. **FRAUD - CONCEALMENT (Civil Code § 1710(3))**<br>11. **FRAUD - FALSE PROMISE (Civil Code § 1710(4))**<br>12. **VIOLATION OF UNFAIR COMPETITION LAW (B&P Code § 17200 et seq.)**<br>13. **CONTRACTING WITHOUT A LICENSE / FRAUDULENT USE OF LICENSE (B&P Code §§ 7028, 7027.3, 7028.15)**<br>14. **DECLARATORY RELIEF (Code Civ. Proc. § 1060)**<br>**DEMAND FOR JURY TRIAL** |

1

FIRST AMENDED COMPLIANT

## NATURE OF THE ACTION AND NON-DUPLICATION

1.    This individual action arises from SHLOMI ABITTAN's systematic unlicensed contracting scheme operating under the DBA "Your Prime Contractor," which fraudulently induced Plaintiff into a home improvement contract that was repeatedly modified from $25,000 to $102,300, with SHLOMI ABITTAN collecting $44,500 before abandoning the project on September 15, 2023. The catastrophic destruction of Plaintiff's Property in the January 7, 2025, Palisades fire has exacerbated all pre-existing damages into permanent catastrophic losses requiring individualized assessment. This action is entirely distinct from any class action and seeks individual relief caused by SHLOMI ABITTAN to the PROPERTY under the unique circumstances including commercial rental property losses, fire-amplified damages, and senior citizen enhanced protections.

## DISCOVERY-BASED FACTUAL CORRECTIONS

2.    Critical Allegations Regarding True Business Structure: This First Amended Complaint makes allegations distinct from allegations made in the November 11, 2023 Complaint (Case No. 23SMCV05401 in the Los Angeles County Superior Court (the "UNDERLYING ACTION") as to the roles and conducts of SHLOMI ABITTAN. The UNDERLYING ACTION identified the contracting entity as "Your Prime Contractor, Inc. dba Prime Construction" ("PRIME CONSTRUCTION"), and primarily alleged claims against the company and its principal David Abittan.

3.    It also alleged claims against children of David Abittan under their direct involvement and as the alter egos and agents of the company and David Abittan. The instant First Amended Complaint alleges wrongs and omissions by SHLOMI ABITTAN dba Your Prime Contractor. Plaintiff incorporates by reference the allegations in the UNDERLYING ACTION as though fully set forth herein unless expressly modified. A true and accurate copy of the UNDERLYING ACTION is attached hereto as Exhibit A.

4.    Extensive discovery in the UNDERLYING ACTION, including home improvement contracts, banking records, CSLB filings, and insurance documentation now establishes that at all times, the actual contracting party was SHLOMI ABITTAN operating individually as an unlicensed sole proprietor under dba "Your Prime Contractor," who systematically concealed his individual identity and status to evade licensing requirements and personal liability.

## THE PARTIES

4.    Plaintiff Amir Mostafavi, Trustee of The NM Family Trust ("NMFT"), who is 65 years of age or older and considered a "Senior citizen" under Business & Professions Code Section 7150(b), is the

FIRST AMENDED COMPLIANT

legal owner of 1407 Monte Grande Pl., Pacific Palisades, California 90272 (the "PROPERTY"), which was a high-value rental property generating approximately between $14,000 to $20,000 per month in rental income before being completely destroyed in the January 7, 2025, Palisades fire. The PROPERTY was purchased on June 3, 2021, as a rental investment and was leased on June 25, 2021, at $10,000 excluding the agreed concessions the tenants for landscaping and advanced payment of full year lease amount, worth approximately $14,000 monthly fair rental value, which was offered for monthly lease of $14,000 in July 2022 by another tenant, and assessed by real estate professionals in January 2023 for $17,500 monthly rental value without remodeling and $20,000 after remodeling.

5.    Defendant SHLOMI ABITTAN operated as an unlicensed sole proprietor under dba "Your Prime Contractor" and transacted with Bank of America Account No. 325105660868 for operating his sole proprietorship starting on or about September 10, 2019. SHLOMI ABITTAN opened the checking account with the BOA under his individual social security number with signature card and W-9 form designating "Individual Owner/Sole Proprietor."

6.    STATE NATIONAL INSURANCE CO., INC. ("SNIC") issued insurance policies specifically to "Shlomi Abittan individually dba Your Prime Contractor" confirming individual business operations. SNIC issued SHLOMI ABITTAN a Commercial General Liability (CGL) policy (Policy No. NXTYHC6TE9-01-GL), effective August 4, 2022, to August 4, 2023 (12:01 a.m. standard time at the insured's mailing address, per Common Policy Declarations, Form NXT-0340 BM GL 0619), providing coverage for bodily injury (BI), property damage (PD), personal and advertising injury, and contractors errors and omissions (E&O), with limits of $1,000,000 per occurrence/$2,000,000 aggregate for CGL (per Limits of Insurance in Form IL 00 21 09 08) and $25,000 per occurrence/$50,000 aggregate for E&O (per endorsement in Certificate of Insurance). The policy includes the Commercial General Liability Coverage Form (IL 00 21 09 08), Common Policy Conditions (IL 00 17 11 98), and endorsements such as Nuclear Energy Liability Exclusion (IL 02 70 09 12) and California Changes - Cancellation and Nonrenewal (IL N 177 09 12). A true and accurate copy of the Certificate of Liability Insurance ("COI") issued by SNIC as to SHLOMI ABITTAN and its underlying policy is attached hereto as Exhibit B.

**COMMON ALLEGATIONS**

7.    Discovery evidence establishes systematic unlicensed operations. At all relevant times, SHLOMI ABITTAN was an individual doing business as Your Prime Contractor, a general contractor operating at 22222 Sherman Way, Suite 101, Canoga Park, CA 91303. Based upon a review of bank

statements for account number 3251 0566 0868 maintained at Bank of America in the name of SHLOMI ABITTAN sole prop dba Your Prime Contractor for the period from July 1, 2023 through August 31, 2024, SHLOMI ABITTAN, individually and doing business as Your Prime Contractor, received total deposits in the amount of $2,188,763.42 through three hundred thirty-five (335) separate transactions into said account. Said deposits included, but were not limited to, the sum of $150,000.00 received by wire transfer from Zuri Mesica through Israel Discount Bank of New York on or about March 29, 2024, the sum of $99,614.21 received from Celtic Bank on or about December 11, 2023, and the sum of $78,984.67 received from Celtic Bank on or about June 10, 2024.

8.    Additionally, Defendant SHLOMI ABITTAN received regular payments from OR Mania USA INC., an Israeli company totaling $41,216.61 between February 2024 and August 2024, purportedly for contracting services described as "M Topanga" work, and received four separate credit advances from Fundbox INC totaling $29,615.00 between July 2023 and November 2023.

9.    During this same period, Defendant SHLOMI ABITTAN made withdrawals and debits from said account totaling $1,203,965.85 through one thousand ninety-seven (1,097) separate transactions, including but not limited to wire transfers in the amounts of $75,000.00 and $74,940.00 to Daniel Moran Dauro to JP Morgan Chase bank on April 1, 2024 and April 2, 2024, respectively. Defendant SHLOMI ABITTAN further made payments to OnDeck Capital totaling $190,120.75 through fifty-six (56) separate transactions, payments to Fundbox INC totaling $62,036.25 through thirty-one (31) separate transactions, and payments on Chase credit cards totaling $147,864.62 through twenty-one (21) separate transactions.

10.    Additionally, Defendant transferred the sum of $145,905.82 through one hundred fifteen (115) Zelle payment transactions to various recipients, including $19,577.80 to Merav Avitan, $15,141.73 to an individual identified as "Lior My Love," $13,311.00 to Sharon Almakiys, and $3,000.00 to the Law Offices of Harvey Stern.

11. Defendant SHLOMI ABITTAN wrote four hundred ninety-three (493) checks totaling $1,242,376.41 from said account during the relevant period, with individual checks ranging from $38.00 to $17,500.00. The account, which maintained a beginning balance of $53,870.34 on July 1, 2023, declined to an ending balance of $5,361.39 as of August 31, 2024, representing a net decrease of $48,508.95. Despite receiving substantial deposits during the relevant period, SHLOMI ABITTAN's total outflows of $2,446,342.26, comprised of withdrawals and checks written, exceeded total deposits

FIRST AMENDED COMPLIANT

by \$257,578.84, demonstrating that SHLOMI ABITTAN disbursed funds in excess of those received and maintained in the account.

12. Plaintiff is informed, believes, and thereon alleges that the true names and capacities, whether individual, corporate, associate, or otherwise of all defendants named herein as DOES 1 through 10 are unknown to Plaintiff at this time. Plaintiff, therefore, sues said defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure. Plaintiff will seek leave to amend this First Amended Complaint to allege the true names and capacities of DOES 1-10 when their names are ascertained.

13. On information and belief, Plaintiff alleges SHLOMI ABITTAN dba Your Prime Contractor started the work on or about August 1, 2023 by bringing his crew and equipment accompanied by Shay Yefet. On August 2, 2023, the workers removed electrical wall switches and plugs, removed ceiling recess lights, removed kitchen cabinets, removed vanities from the bathrooms, removed the wall-installed mirrors from the bathrooms, removed the tiles from the J&J and small bathrooms, prepare the Property for installation of tiles and painting.

14. Plaintiff is informed and believes, and thereon alleges, that SHLOMI ABITTAN violated the License Lending in California. The California Contractor License No. 1031676 belongs exclusively to PRIME CONSTRUCTION (incorporated September 26, 2018). CSLB records establish that David Abittan serves as CEO/President, residing outside United States since 2019 with no operational control; Michael Huberman served as RMO from October 5, 2017, until disassociation August 1, 2024; Furthermore, critical CSLB certification reveals that PRIME CONSTRUCTION certified "zero employees" on October 31, 2023, confirming SHLOMI ABITTAN was never employee, officer, or authorized agent. SHLOMI ABITTAN's use of corporate license violates Business & Professions Code §§ 7027.3 and 7071 (prohibited license lending).

15. ORON AHARON AVITAN, SHLOMI ABITTAN's brother, participated as SHLOMI ABITTAN's alter ego through documented coordination and commission payments totaling \$32,759.83 from SHLOMI's personal account: \$3,308.52 (July 28, 2023); \$6,691.48 (August 18, 2023); \$5,000 (September 1, 2023); \$7,159.83 (September 25, 2023); \$6,000 (October 16, 2023); \$4,600 (November 30, 2023). Verified official documents received regarding SHLOMI ABITTAN's bank account with BOA confirm his role involving the Plaintiff's Property in 2023.

16. Plaintiff is informed, believes, and thereon alleges that at all times, defendants were acting as an agent, joint venture, integrated enterprise, and/or alter ego for each of the other defendants and each

was a co-conspirator with respect to the acts and the wrongful conduct alleged herein so that each is responsible for the acts of the other in connection with the conspiracy in such wrongful acts in connection with the other defendants.

17. Plaintiff is informed, believes, and thereon alleges that defendants were acting partly within and partly without the scope and course of their employment, and were acting with the knowledge, permission, consent, and ratification of every other defendant.

## AGENCY ALLEGATIONS

14. Plaintiff is informed, believes and thereon alleges that at all relevant times herein, each named defendant and DOES 1-10, were the partner, officer, director, agent, employee, servant and/or representative of other defendant and DOES 1-10, and in doing the things as alleged in this First Amended Complaint were acting within the course, scope, and/or authority of such agency, service, employment, partnership and/or joint venture, and with the consent, knowledge, approval and ratification of defendants.

15. Plaintiff is informed, believes and thereon alleges that defendants at all relevant times herein:

16. Each Defendant exercised and/or employed indirect control over the hiring, supervision, compliancy with California laws and regulations, and overall performance of terms and conditions of the HOME IMPROVEMENT CONTRACT as alleged and referenced by incorporated in the UNDERLYING ACTION.

17. Authorized, directed, sanctioned, consented, cooperated, approved, aided, instigated, assisted, participated in, made the decision to, and/or voted for hiring, retaining, firing, supervising, and controlling the operations of the contractors, subcontractors, employees, and service providers, regardless whether directly employed or retained as independent contractors for purposes of compliance with California law in general and California Department Of Consumer Affairs Contractors State License Board.

18. Authorized, directed, sanctioned, consented, cooperated, approved, aided, instigated, assisted, participated in, made the decision to, and/or voted for the acts, or omission of acts, as alleged in this Complaint, and incorporated herein by reference;

19. Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control was in violation of the applicable laws and applicable regulations, and he/she/it failed to take or order appropriate action to remedy and/or avoid the violation of the applicable ordinance(s) as alleged in this First Amended Complaint, and incorporated herein by reference;

6

20. Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control caused defendants and DOES 1-10 to violate the applicable laws, and he/she/it failed to take or order appropriate action to remedy and/or avoid the violation of the applicable laws by defendants and DOES 1-10 as alleged in this First Amended Complaint, and incorporated herein by reference;

21. Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control was injuring Plaintiff and he/she/it failed to take or order appropriate action to avoid harm;

22. Furthered the conspiracy by cooperation with *or* lent aid and encouragement to or ratified and adopted the acts of defendants and DOES 1-10 including, but not limited to, their refusal and failure to perform as required by the HOME IMPROVEMENT CONTRACT as defined and alleged in the UNDERLYING ACTION.

## ALTER EGO ALLEGATIONS

23. Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned, defendants and DOES 1-10 were the alter ego of the remaining defendants and DOES 1-10, and as hereinafter alleged, were acting for their own benefit and/or the benefit of one or more of the remaining defendants.

24. Plaintiff is informed, believes and thereon alleges that there exists a unity of ownership and interest, between one or more defendants and DOES 1-10 herein, such that any individuality and separateness between said defendants has ceased, and the said other defendants, and each of them, was at all times relevant to Plaintiff's claims, the alter ego of and all other defendants.

25. Plaintiff is informed, believes and thereon alleges that the Court's adherence to the fiction of the separate existence of any or all defendants and DOES 1-10 as entities distinct from the other defendants and DOES 1-10 would permit an abuse of the corporate privilege, would sanction fraud and/or promote injustice in that said defendants and DOES 1-10 have defaulted on their individual and collective obligations to Plaintiff under California law.

26. Plaintiff is informed, believes and thereon alleges that defendants and DOES 1-10 herein were an entity which is, and at all times herein mentioned was, controlled, dominated, and operated by one or more of the other defendants and in that the activities and business of the other defendants was carried on without or with the holding of directors and/or shareholders meetings and records or no records and/or minutes of any corporate preceding were maintained.

27. Plaintiff is informed, believes and thereon alleges that one or more of defendants and DOES 1-10 herein, and all other business entity defendants herein, is and at all times herein mentioned was a

7

mere shell and sham without the requisite capital and assets. Thus, said all other business entity defendants herein, is and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by defendants and DOES 1-10, said capitalization was inadequate to do business properly and legally under California law.

28. On information and belief, at all relevant times herein, defendants and DOES 1-10 were subject to the laws of the State of California.

### JURISDICTION AND VENUE

29. Pursuant to Article VI § 10 of the California Constitution, Subject Matter Jurisdiction is proper in the Superior Court of California, County of Los Angeles, State of California.

30. Pursuant to California Code of Civil Procedure § 395, venue is proper in the Superior Court of California for the County of Los Angeles, State of California, because this is where defendants' headquarters and principal place of business is located, and it is where the wrongful misconduct alleged herein originated.

### FIRST CAUSE OF ACTION
### BREACH OF WRITTEN CONTRACT
### (Civil Code § 3300)
### (Against SHLOMI ABITTAN and DOES 1-10)

31. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

32. Civil Code § 3300 provides damages for "all detriment proximately caused" by contract breach. Measure includes both direct and consequential damages flowing naturally from breach. The prima facie elements for breach of written contract are contract existence; plaintiff's performance; defendant's breach; and resulting damages.

33. Plaintiff entered into the initial contract on July 26, 2023 ($25,000 master bathroom remodeling with specific scope and material allocations) with First Amendment on August 1, 2023 (expansion to $89,300 adding comprehensive remodeling); Second Amendment on August 7, 2023 (increase to $99,300 for Jack & Jill bathroom modifications); Third Amendment on August 8, 2023 ($102,300 for three-bathroom complete remodeling plus painting, balcony, hardware installation.)

34. Essential contract terms included (a) scope with detailed work descriptions for three bathrooms, interior painting, waterproof balcony, door hardware, garage epoxy; (b) Timeline commitment by written and oral promises of 4-6 week completion by September 15, 2023; (c) Payment schedule with

8

specific milestones with statutory compliance prohibiting advance payments per Business & Professions Code § 7159; (d) Quality standards for implied warranty of workmanlike performance and building code compliance; and (e) License warranty for written representation of valid California contractor licensing.

35. Plaintiff performed by making all required payments totaling $44,500 according to agreed schedule: $1,000 down payment (August 2), $19,147.50 start payment (August 4), $14,352.50 progress payment (August 14), $10,000 progress payment (August 18); provided unlimited access for work performance and material storage; Purchased all required "finished materials" including vanities, faucets, tiles, fixtures per contract specifications; Agreed to three contract amendments expanding work scope based on defendants' representations; and tolerated delays and defective work while attempting to secure completion.

36. SHLOMI ABITTAN materially breached the written contract by (a) the fundamental licensing breach by performing all work unlicensed in violation of Business & Professions Code § 7028, rendering contract performance illegal and voidable at Plaintiff's option; (b) timeline breach to complete abandonment on September 15, 2023, violating specific completion deadline and 6-week performance promise; and (c) for quality and workmanship breaches for defective plumbing causing water damage, unpermitted electrical creating safety hazards, improper balcony slope causing water retention, substandard materials throughout Property, and incomplete work in all contracted areas; (d) by payment schedule violations for demanding unauthorized advances violating Business & Professions Code § 7159 and express contract terms; and (e) by supervision breach for failure to provide adequate project management, licensed oversight, or quality control.

37. Plaintiff suffered damages proximately caused by breach for the loss of bargain for $44,500 paid for incomplete, defective, unlicensed work; for cost of completion for additional expense to hire licensed contractors for remedial work and project completion; for lost rental income approximately for $20,000/month from August 2023, directly caused by timeline breach, now permanent due to fire destruction; for property damage for the diminished value and repair costs from defective workmanship; and the fire consequences for total property loss eliminating all remedial opportunities and converting temporary damages into permanent catastrophic losses.

38. If contract voidable due to unlicensed performance, Plaintiff entitled to complete restitution of all payments under Business & Professions Code § 7031(b) disgorgement principles.

39. Plaintiff seeks judgment under Civil Code § 3300 for compensatory damages, consequential

damages, restitution, prejudgment interest, and costs.

**SECOND CAUSE OF ACTION**

**BREACH OF ORAL CONTRACT**

**(Civil Code § 3300)**

**(Against SHLOMI ABITTAN and DOES 1-10)**

40. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

41. On information and belief, Plaintiff alleges that a specific oral agreement was formed when Shay Yefet, on behalf of SHLOMI ABITTAN, specifically promised at Property on July 26, 2023, and confirmed by him again on August 1, 2023 that expanded project would be completed within 4-6 weeks, no later than September 15, 2023. The oral agreement by Shay Yefet made with specific knowledge that Property generated approximately $20,000/month rental income and time was of essence. Shay Yefet assured for quality commitment and orally promised for using only licensed professional workmanship using skilled crews and proper supervision. Shay Yefet orally promised and agreed to provide comprehensive project management acting as "contractor, designer, and project manager rolled into one".

42. As consideration to promises and representations made by Shay Yefet on behalf of Your Prime Contractor and its principal SHLOMI ABITTAN, Plaintiff agreed to expand project scope from $25,000 to $102,300 and cancel then existing painting contract with another painting contractor in exchange for Shay Yefet's promise of expedited completion and professional service delivery by Your Prime Contractor and SHLOMI ABITTAN. Both parties understood that timeline performance was essential to avoid rental income loss.

43. SHLOMI ABITTAN dba Your Prime Contractor breached the oral terms by complete failure to meet September 15, 2023 deadline despite specific oral commitment; by using unlicensed subcontractors contrary to oral promises of licensed professional service; c. Management breach: No project management provided despite specific oral commitment; d. Abandonment: Walking away from project without completion or reasonable substitute performance.

44. Plaintiff suffered substantial damages flowing from oral contract breach for direct rental losses of approximately $20,000/month × 17+ months = $340,000+ directly attributable to timeline breach; for the opportunity costs for losing seasonal rental market for families with school children during Fall 2023 and 2024 where the timeline breach led to Property remaining unrentable when fire struck,

10

making all rental losses permanent. Plaintiff seeks judgment under Civil Code § 3300 for expectation damages, reliance damages, consequential damages, prejudgment interest, and costs.

## THIRD CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Civil Code § 1657)
### (Against SHLOMI ABITTAN and DOES 1-10)

45. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

46. There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 658.) Civil Code § 1657 requires if no time is specified for the performance of an act required to be performed, a reasonable time is allowed. Plaintiff alleges that the covenant applies in every contract requiring good faith performance.

47. SHLOMI ABITTAN owed Plaintiff a good faith performance and duty to perform contractual obligations honestly and without deliberately frustrating other party's reasonable expectations; duty for fair dealing by not to interfere with contractual benefits through bad faith conduct independent of express contract terms; and duty to communicate honestly about performance capabilities and material circumstances. Defendant SHLOMI ABITTAN dba Your Prime Contractor through and by his agent Shay Yefet impliedly warranted that construction services would be performed in a good and workmanlike manner, free from defects.

48. Defendant SHLOMI ABITTAN breached this warranty, resulting in defective work causing property damages. On information and belief, Plaintiff alleges this claim triggers coverage under Coverage A -- Bodily Injury and Property Damage Liability of the CGL Coverage Part (Section I, Coverage A, 1. Insuring Agreement of Policy Form IL 00 21 09 08) for resulting property damages during the policy period.

49. On information and belief, Plaintiff seeks to recover for damages for repair and remediation, not exceeding $1,000,000 per occurrence under the CGL policy (per Section III of Form IL 00 21 09 08), plus prejudgment interest, costs, and further relief.

50. If SHLOMI ABITTAN dba Your Prime Contractor fails to satisfy any judgment, Plaintiff seeks direct recovery from the insurer under Insurance Code § 11580(b)(2), as the policy obligates the insurer to indemnify for such damages (per Section I, Coverage A, 1. Insuring Agreement).

FIRST AMENDED COMPLIANT

51. On information and belief, Plaintiff alleges SHLOMI ABITTAN caused unfair interference with Plaintiff's contract benefits by running a systematic deception scheme for concealing unlicensed status while collecting payments under pretense of licensed professional service; by resource diversion where SHLOMI ABITTAN deliberately overcommitting through many concurrent projects while promising individual attention and timely completion; by financial manipulation for personal use of business funds evidenced by $76,822.38 in personal expenses from business account in July 2023 alone; by quality sabotage for deliberately employing unqualified workers while representing skilled professional service; by timeline manipulation for making impossible promises knowing systematic overcommitment prevented performance; and by abandonment strategy for collecting maximum payments then walking away when homeowners discovered defects or demanded performance.

52. SHLOMI ABITTAN's acts were in bad faith separate from express breaches that goes beyond nonperformance. SHLOMI ABITTAN's affirmative misconduct designed to frustrate Plaintiff's legitimate expectations while maximizing his own benefit; by using systematic exploitation, SHLOMI ABITTAN's pattern of conducts across multiple homeowners shows deliberate bad faith rather than mere breach; deploying specific exploitation of vulnerable Senior citizen and targeted elder and affluent population for enhanced financial gain; and abuse of fiduciary-like relationship in home improvement context.

53. Plaintiff substantially performed in good faith by full payment compliance, making timely payment of all requested amounts totaling $44,500; by accommodating on the scope with good faith agreement to three contract expansions based on SHLOMI ABITTAN dba Your Prime Contractor through and by his agent Shay Yefet's representations; fully cooperated with defendant for giving complete property access, material purchasing, tolerance of delays; and detailed written notices giving opportunity to cure defects.

54. Plaintiff is informed and believes, and thereon alleges, that the damages from bad faith was enhanced for emotional distress for SHLOMI ABITTAN's aggravated harm to Plaintiff for deliberate deception of senior citizen.

55. On information and belief, Plaintiff alleges SHLOMI ABITTAN's bad faith conduct supports enhanced damages beyond contract remedies amplified by the January 2025 Palisades fire causing total property destruction that exacerbated all harms from bad faith interference.

56. Plaintiff seeks judgment under Civil Code § 1657 for compensatory damages, emotional distress damages, punitive damages, prejudgment interest, and costs.

# FOURTH CAUSE OF ACTION

## NEGLIGENCE

### (Civil Code § 1714)

### (Against SHLOMI ABITTAN and DOES 1-10)

57. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

58. Civil Code § 1714 establishes universal duty of ordinary care: "Everyone is responsible for injury occasioned by want of ordinary care." Remedies include compensatory damages under Civil Code § 3333.

59. On information and belief, Plaintiff alleges SHLOMI ABITTAN owed legal duty of care from multiple sources: under the contractual relationship created by the written agreements, duty to perform with reasonable professional skill consistent with industry standards; Business & Professions Code § 7109, establishes a statutory duty requiring contractors to perform "good and workmanlike" construction according to accepted trade standards; the building code compliance created a legal obligation to perform work meeting applicable safety standards and governmental regulations; Business & Professions Code § 7150(b) establishes heightened duty of care toward vulnerable seniors in home improvement contexts; and by representing licensed professional service, SHLOMI ABITTAN assumed duty to perform with skill and care of licensed contractors.

60. On information and belief, Plaintiff alleges SHLOMI ABITTAN breached his duties through multiple negligent acts: by conducting unlicensed operations SHLOMI ABITTAN violated Business & Professions Code § 7028 that establishes licensing requirement as statutory standard of care, hence, violation constitutes negligence per se.

61. On information and belief, Plaintiff alleges SHLOMI ABITTAN's employing unlicensed persons including Julio and Carlos Siam without proper oversight, background verification, or quality control was negligent hiring and supervision.

62. On information and belief, Plaintiff alleges multiple defective installations including: Plumbing systems causing water damage throughout Property, Electrical work creating safety hazards and code violations, Balcony waterproofing with incorrect slope causing water retention, Structural modifications affecting load-bearing elements, and Substandard materials throughout Property constituted negligent work performance.

13

63. On information and belief, Plaintiff alleges SHLOMI ABITTAN supplied defective construction products or components in an unreasonably dangerous condition. The defect caused damages to the Property without substantial post-supply alteration requiring significant additional expenditures. The defective conditions caused by improper installation of the vent pipes for the toilets in the bathrooms, improper installations of the drainage kits in the shower and bathtubs, defective hot moping in the bathrooms, failure to install isolations in the bathrooms, and faulty electrical work causing injury to the Property without any substantial remedial change.

64. On information and belief, Plaintiff alleges SHLOMI ABITTAN was negligent in managing the project at the Property by failing to maintain adequate workforce, scheduling, quality control, and progress monitoring, and leaving project incomplete with safety hazards and code violations creating ongoing property damage resulting negligent work performance.

65. "But for" SHLOMI ABITTAN's negligent conduct, Plaintiff would not have suffered property damage, rental income loss, or safety hazards. Multiple negligent acts directly caused specific harms including defective plumbing directly caused water damage to walls, floors, structural elements; unpermitted electrical directly created safety hazards requiring remedial work; project abandonment directly caused lost rental income from August 2023 onward; and by negligent hiring that directly resulted in substandard workmanship throughout Property.

66. On information and belief, Plaintiff alleges all damages were foreseeable consequences of negligent unlicensed contracting resulting to Property damage from defective construction, which was classic foreseeable result of negligent contracting. Also, the loss of rental income was specifically discussed with SHLOMI ABITTAN through and to named defendants in the UNDERLYING ACTION who knew Property's commercial purpose; by code violations and safety hazards that are foreseeable results of unlicensed, unsupervised work; and the fire vulnerability that was caused by defective electrical work and compromised structural integrity increased fire susceptibility.

67. On information and belief, Plaintiff alleges this claim arises from an "occurrence" during the policy period, triggering coverage under Coverage A -- Bodily Injury and Property Damage Liability of the CGL Coverage Part (Section I, Coverage A, 1. Insuring Agreement of Policy Form IL 00 21 09 08: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies...") for BI and PD arising from the negligence, subject to the policy's exclusions (Section I.2.) and conditions (e.g., duties in the event of occurrence, offense, claim or suit under Section IV.2. of Form IL 00 21 09 08).

14

68. Plaintiff seeks compensatory damages in an amount to be proven at trial, not exceeding $1,000,000 per occurrence under the CGL policy (per Limits of Insurance, Section III of Form IL 00 21 09 08), plus prejudgment interest pursuant to Civil Code § 3287, costs of suit, and further relief as the Court deems just for the direct property damage because of the physical harm to structure from negligent construction estimated $50,000+ pre-fire; lost rental income for $20,000/month × 17+ months = $340,000+ from negligent abandonment; for fire amplification resulting to total property destruction converted all negligent damage into permanent catastrophic loss; the remedial costs for complete property replacement required due to negligent work and fire destruction; and for consequential damages for damaged materials and repurchased materials due to defective work, storage costs, emotional distress as senior citizen.

69. If SHLOMI ABITTAN dba Your Prime Contractor fails to satisfy any judgment, Plaintiff seeks direct recovery from the insurer under Insurance Code § 11580(b)(2), as the policy requires the insurer to pay sums the insured is obligated to pay (per Section I, Coverage A, 1. Insuring Agreement).

70. Plaintiff seeks judgment under Civil Code § 1714 for compensatory damages, consequential damages, prejudgment interest, and costs.

### FIFTH CAUSE OF ACTION

### PROFESSIONAL NEGLIGENCE

### (Civil Code § 43.7)

### (Against SHLOMI ABITTAN and DOES 1-10)

71. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

72. SHLOMI ABITTAN, as a professional contractor, owed a duty to perform services to the applicable standard of care. Defendant breached this duty through negligent errors or omissions in planning or oversight.

73. This claim is a "wrongful act" during the policy period, covered under the Contractors Errors and Omissions endorsement (Policy Number NXTYHC6TE9-01-GL, as listed in the Certificate of Insurance and Schedule of Forms), providing coverage for damages arising from negligent acts, errors, or omissions in rendering professional services, subject to the endorsement's insuring agreement and exclusions.

74. Plaintiff seeks compensatory damages not exceeding $25,000 per occurrence under the E&O coverage, plus prejudgment interest, costs, and further relief. If SHLOMI ABITTAN fails to satisfy

15

any judgment, Plaintiff seeks direct recovery from the insurer under Insurance Code § 11580(b)(2), as the endorsement obligates the insurer to pay for covered professional liability (per its insuring agreement terms).

**SIXTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(Civil Code § 1710(2))**

**(Against SHLOMI ABITTAN and DOES 1-10)**

75. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

76. Civ. Code § 1708 provides "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." Civil Code § 1710(2) defines deceit as "assertion of fact not true, without reasonable ground for believing it true."

77. On information and belief, Plaintiff alleges he was harmed because SHLOMI ABITTAN negligently misrepresented facts without reasonable grounds: (a) by claiming ability to perform licensed professional work without reasonable investigation into actual authorization and employee status under corporate license, by promising 4-6 week completion without reasonable assessment of current workload evidenced by 31 concurrent projects in July 2023; by representing skilled crews without reasonable verification of licensing status, experience, or availability of workers like Julio and Carlos Siam; by promising comprehensive oversight without reasonable basis given lack of licensed personnel and management infrastructure; by warranting code compliance without reasonable foundation for ensuring proper permits, inspections, and professional oversight; by improper use of PRIME CONSTRUCTION's contractor license (1031676); by improper use of surety bond insurance issued for PRIME CONSTRUCTION (Contractor's Bond No. G8081488604l))

78. On information and belief, Plaintiff alleges SHLOMI ABITTAN lacked reasonable grounds for belief for: (a) License verification: simple CSLB inquiry would reveal corporate license belonged to different entity with zero employees; (b) Capacity assessment: Own banking records showed impossibility of managing 31 concurrent projects with limited resources; (c). worker verification: no reasonable investigation of worker qualifications or licensing status; (d) Timeline analysis: no reasonable planning or resource allocation to support completion promises.

79. On information and belief, Plaintiff alleges SHLOMI ABITTAN intended to induce reliance by systematic targeting of homeowners with high-value properties requiring professional service

FIRST AMENDED COMPLIANT

demonstrates intent that victims rely on capability representations.

80. On information and belief, Plaintiff alleges Reasonable reliance and resulting damages: Senior citizen's reliance on professional capability representations was reasonable given statutory protections and apparent business presentation. Damages exceed $500,000 from reliance on false capabilities. Plaintiff seeks judgment under Civil Code § 1710(2) for compensatory damages, consequential damages, prejudgment interest, and costs.

**SEVENTH CAUSE OF ACTION**

**CONSTRUCTION DEFECT (Civil Code §§ 895--945.5)**

**(Against SHLOMI ABITTAN and DOES 1-10)**

81. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

82. On information and belief, Plaintiff alleges that SHLOMI ABITTAN violated SB 800 standards, including [e.g., water intrusion or structural failure] in residential improvements; failed to remedy defects after notice under Civil Code § 910. 23 causing harms by his work and failure to repair under Civil Code § 895 et seq.

83. On information and belief, Plaintiff alleges this claim constitutes PD from an occurrence during the policy period, covered under Coverage A -- Bodily Injury and Property Damage Liability of the CGL Coverage Part (Section I, Coverage A, 1.b. of Policy Form IL 00 21 09 08: applicability to "property damage" only if caused by an occurrence), subject to the "your work" exclusion (Section I.2.l.) unless by a subcontractor, and conditions requiring notice (Section IV.2.).

84. Plaintiff seeks to recover actual damages, attorney's fees under Right to Repair Act (Civil Code §§ 895 - 945.5), and costs not exceeding $2,000,000 aggregate under the CGL policy (per Section III of Form IL 00 21 09 08), plus prejudgment interest.

85. If SHLOMI ABITTAN fails to satisfy any judgment, Plaintiff seeks direct recovery from the insurer under Insurance Code § 11580(b)(2), as the policy provides indemnity for legally obligated damages (per Section I, Coverage A, 1. Insuring Agreement).

**EIGHTH CAUSE OF ACTION**

**CONVERSION**

**(Civil Code §§ 3336, 3337)**

**(Against SHLOMI ABITTAN and DOES 1-10)**

86. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth

17

herein.

87. Civil Code § 3336 provides damages as "value at time of conversion, with interest" or "return of property with damages." Civil Code § 3337 allows exemplary damages for wrongful conversion. Conversion is the wrongful exercise of dominion over the property of another. On information and belief, Plaintiff alleges SHLOMI ABITTAN converted personal properties of Plaintiff against plaintiff's ownership or right to possession of the property; by a wrongful act or disposition of property rights that resulted in damages.

88. On information and belief, Plaintiff alleges SHLOMI ABITTAN through his agents and workers converted (a) American Standard bathtub: $798 ($699 bathtub + $99 drain) purchased September 13, 2022, from Home Depot; (b) Behr Premium Plus paints: $1,900 value for ten 5-gallon containers of Swiss Coffee Semi-Gloss purchased for interior painting; (c) Kohler whirlpool tub with full set of faucets: Removed from master bathroom with installed faucets and water pump equipment, $1,250 value; (d) Additional materials and fixtures: Various items purchased by Plaintiff for project completion valued more than $1,500; and $44,500 paid by Plaintiff to SHLOMI ABITTAN dba Your Prime Contractor for the project at the Property.

89. On information and belief, Plaintiff alleges SHLOMI ABITTAN's acts constituted wrongful conversion by (a) unauthorized taking: SHLOMI ABITTAN and workers working for him removed property from Plaintiff's premises without permission during August-September 2023; (b) Failure to return: Refused to return property when Plaintiff demanded return in September 23, 2023 letter; (c) Denial of ownership: Claimed items were "trash" or disposed of without authorization; (d) Conversion to own use: Evidence suggests items were taken for use in other projects or personal benefit, and (e) refuse to return $44,500 as requested by Plaintiff in multiple occasions.

90. On information and belief, Plaintiff alleges Oron Avitan's actively participated in the conversion by coordinating the removal through documented site visits and text message coordination of work activities including material handling.

91. On information and belief, Plaintiff alleges total property destruction eliminated possibility of property recovery, making conversion permanent and requiring full replacement value.

92. On information and belief, Plaintiff alleges that malicious conversion by SHLOMI ABITTAN justifying exemplary damages for (a) Intentional taking: SHLOMI ABITTAN and his workers knew items belonged to Plaintiff and lacked permission for removal; (b). SHLOMI ABITTAN know or should have known that Plaintiff is a senior citizen and the exploitation of vulnerable population require

18

enhanced protection; (c) Pattern of misconduct: Part of systematic scheme to defraud homeowners.

93. Plaintiff seeks judgment under Civil Code §§ 3336, 3337 for replacement value of $50,000, prejudgment interest, exemplary damages, and costs.

## NINTH CAUSE OF ACTION
## FRAUD - INTENTIONAL MISREPRESENTATION
### (Civil Code §§ 1709, 1710)
### (Against SHLOMI ABITTAN and DOES 1-10)

94. Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

95. Civil Code § 1709 defines deceit as knowingly making false representation to induce action causing injury. Civil Code § 1710 specifies intentional misrepresentation as suggesting falsehood with knowledge thereof. Remedies include compensatory damages (Civil Code § 3333), consequential damages (Civil Code § 3343), and punitive damages (Civil Code § 3294).

96. On information and belief, Plaintiff alleges SHLOMI ABITTAN committed false representation of material fact; with knowledge of falsity; and intent to induce reliance; that Plaintiff justifiably relied upon resulting to suffering damages.

97. On information and belief, Plaintiff alleges SHLOMI ABITTAN made false representations of material fact made to Plaintiff: (a) Licensing misrepresentation: Shay Yefet, acting for SHLOMI ABITTAN, represented on July 26, 2023, that work would be performed under "valid California Contractor License No. 1031676" when discovery proves this license belonged to separate corporation with zero employees, making SHLOMI ABITTAN's use a violation of Business & Professions Code §§ 7027.3, 7071; (b) Timeline fraud: Specific promise of 4-6 week completion by September 15, 2023, knowing banking records show 31 concurrent projects making timely completion impossible; (c) Payment misrepresentation: Written contract prohibited advances per Business & Professions Code § 7159, while SHLOMI ABITTAN systematically planned to demand unauthorized early payments as evidenced by identical patterns across multiple homeowners; (d) Quality misrepresentation: Yefet promised "excellent, licensed subcontractors" and "skilled crews" knowing SHLOMI ABITTAN employed unlicensed workers including Julio and Carlos Siam with no proper supervision; (e) Corporate structure fraud: Represented established business with proper licensing, bonding, insurance when actually operating as unlicensed sole proprietor with personal bank account commingling.

19

98. On information and belief, Plaintiff alleges SHLOMI ABITTAN had the knowledge of falsity at time of representation: (a) CSLB awareness: Business & Professions Code § 7028 mandates individual licensing; SHLOMI ABITTAN knew he operated unlicensed sole proprietorship since September 2019 account opening; (b) License lending knowledge: Corporation certified zero employees establishing SHLOMI ABITTAN's awareness he was unauthorized to use corporate license; (c) Timeline impossibility: $215,180.99 in July 2023 deposits from 31 homeowners proved SHLOMI ABITTAN knew he couldn't complete projects within promised timeframes; (d) Payment scheme awareness: Systematic pattern of early payment collection followed by project abandonment across multiple victims evidenced in banking records; (e) Quality control knowledge: SHLOMI ABITTAN knew his unlicensed subcontractors lacked qualifications for code-compliant professional work.

99. On information and belief, Plaintiff alleges SHLOMI ABITTAN intended to induce reliance for fraudulent gain: (a) Systematic targeting: Banking evidence shows identical misrepresentations across dozens of homeowners to secure early payments into personal account; (b) Senior citizen targeting: Specific focus on vulnerable population entitled to enhanced protections under Business & Professions Code § 7150(b); (c) High-value property targeting: Tailored representations about efficiency and timeline specifically designed to induce Plaintiff's reliance on rental property concerns; (d) Commission-based scheme: $32,759.83 paid to Oron Avitan demonstrates coordinated effort to maximize sales through fraudulent representations; (e) Contract expansion strategy: Systematic pressure to cancel existing contracts and expand scope to maximize payments before inevitable abandonment.

100.    Plaintiff is informed and believes, and thereon alleges, that he relied justifiably on the representations: (a) Senior citizen protection: Business & Professions Code § 7150(b) establishes seniors' reasonable reliance on contractor licensing representations as matter of law; (b) Legal licensing mandate: Business & Professions Code § 7028 makes licensing status material to any reasonable homeowner's decision; (c) Rental property concerns: Plaintiff specifically inquired about professional service and timely completion due to $20,000/month rental income dependency; (d) Sophisticated targeting: Yefet's representations about company experience, skilled crews, and project management were specifically designed to address Plaintiff's professional requirements; (e) No reasonable discovery: CSLB database complexity and deliberate corporate confusion made individual homeowner discovery of license lending practically impossible.

FIRST AMENDED COMPLIANT

101.     On information and belief, Plaintiff alleges the resulting damages exceeding $500,000: (a) Direct fraud losses: $44,500 paid for unlicensed services subject to complete disgorgement under Business & Professions Code § 7031(b); (b) Induced contract cancellation: $17,000 painting contract forfeited due to fraudulent expansion scheme; (c) Lost rental income: $20,000/month × 17+ months = $340,000+ from August 2023, now permanent due to fire destruction; (d) Property damage: Pre-fire remedial costs estimated $50,000+, now total replacement required; (e) Consequential damages: Market value diminution, temporary housing costs, emotional distress as senior citizen victim of systematic fraud; (f) Fire amplification: Total property destruction converted all temporary losses into permanent catastrophic damages requiring expert assessment.

102.     On information and belief, Plaintiff alleges that punitive damages warranted: Systematic targeting of senior citizen with high-value property through elaborate licensing fraud and project abandonment scheme constitutes malicious, oppressive conduct justifying punitive relief under Civil Code § 3294.

103.     Plaintiff seeks judgment for actual damages exceeding $500,000, consequential damages, punitive damages, prejudgment interest, attorney fees where authorized, and costs.

**TENTH CAUSE OF ACTION**

**FRAUD - CONCEALMENT**

**(Civil Code § 1710(3))**

**(Against SHLOMI ABITTAN and DOES 1-10)**

104.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

105.     Civil Code § 1710(3) defines deceit as suppression of material fact by one bound to disclose or who gives partial information likely to mislead. Remedies include all damages flowing from justifiable reliance on concealed facts. On information and belief, Plaintiff alleges SHLOMI ABITTAN intentionally concealed certain information to the detriment of the Plaintiff.

106.     On information and belief, Plaintiff alleges SHLOMI ABITTAN did not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead such as the Contractor License he used belonged to PRIME CONSTRUCTION and not Your Prime Contractor; or all payments received from the homeowners were deposited in his own personal checking account with BOA and not an account of PRIME CONSTRUCTION; or Your Prime

21

Contractor did not have a surety bond insurance. All of these facts were known or accessible only to SHLOMI ABITTAN, and he knew they are not known to or reasonably discoverable by the Plaintiff

107.    On information and belief, Plaintiff alleges SHLOMI ABITTAN actively conceals the material facts systematically: (a) Unlicensed sole proprietorship status: While representing licensed corporate service, concealed that all operations conducted through individual DBA using personal social security number and "sole proprietor" banking designation; (b) License lending scheme: Concealed that License No. 1031676 belonged to separate corporation with no employees and no operational connection to SHLOMI ABITTAN's individual activities; (c) Systematic abandonment pattern: Concealed banking records showing $215,180.99 monthly deposits from 31 concurrent homeowners in July 2023, indicating deliberate overcommitment and inevitable project abandonment; (d) workers inadequacy: Concealed that Julio and Carlos Siam were unlicensed, unavailable due to other commitments, and lacked supervision or quality control; (e) Payment scheme: Concealed intention to demand unauthorized advances contrary to statutory requirements and written contract terms; (f) Personal fund commingling: Concealed that all business receipts mixed with personal expenses in individual account, demonstrating lack of professional business structure.

108.    On information and belief, Plaintiff alleges that SHLOMI ABITTAN owed duty to disclose arising from multiple sources: (a) Fiduciary relationship: Home improvement contracts create fiduciary-like duties requiring good faith disclosure of material facts affecting homeowner's reasonable expectations; (b) Statutory disclosure duty: Business & Professions Code § 7030 requires accurate license information in advertising and contracts; (c) Partial disclosure doctrine: Having voluntarily disclosed licensing and business capabilities, defendants had duty to disclose complete truth about actual authorization and business structure; (d) Senior citizen enhanced duty: Business & Professions Code § 7150(b) imposes heightened disclosure obligations to protect vulnerable seniors from home improvement fraud; (e) Contractual relationship: Written agreements created special relationship requiring honest dealing and material fact disclosure.

109.    On information and belief, Plaintiff alleges that SHLOMI ABITTAN had intent to defraud through systematic concealment: (a) Deliberate corporate confusion: Intentional use of similar business names ("Your Prime Contractor" vs. "Your Prime Contractor, Inc.") to mislead homeowners about legitimate licensing; (b) Banking concealment: Systematic deposit of all payments into personal account while maintaining facade of corporate operations; (c) Timeline concealment: Active hiding of multiple concurrent projects that made promised completion dates physically impossible; (d) Quality

22

concealment: Deliberate non-disclosure of subcontractor inadequacy and lack of licensed supervision; (e) Pattern evidence: Banking records across multiple victims show systematic concealment scheme designed to maximize early payments before project abandonment.

110.     On information and belief, Plaintiff alleges that he had reasonable ignorance and detrimental reliance: (a) No reasonable discovery means: CSLB database requires extensive research to discover corporate license separation, and banking records were privately held by defendants; (b) Senior citizen reasonable reliance: Business & Professions Code § 7150(b) recognizes seniors reasonably rely on contractor representations without extensive investigation; (c) Professional presentation: Yefet's sophisticated sales presentation and apparent corporate documentation gave no indication of underlying individual operations; (d) Detrimental action: Would not have contracted and certainly would not have expanded scope if aware of unlicensed status and systematic abandonment pattern; (e) Rental property vulnerability: High-value investment required professional, licensed service - concealed facts directly undermined decision-making.

111.     On information and belief, Plaintiff alleges he suffered damages from concealment for $500,000+ including fire-amplified catastrophic losses directly caused by reliance on concealed material facts. Plaintiff seeks judgment under Civil Code § 1710(3) for actual damages, consequential damages, punitive damages, prejudgment interest, attorney fees, and costs.

## ELEVENTH CAUSE OF ACTION

## FRAUD - FALSE PROMISE

### (Civil Code § 1710(4))

### (Against SHLOMI ABITTAN and DOES 1-10)

112.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

113.     Civil Code § 1710(4) defines deceit as "promise made without intention of performing."

114.     On information and belief, Plaintiff alleges that SHLOMI ABITTAN made specific false promises made without intent to perform: (a) 4-6 week completion promise: Yefet specifically promised on July 26, 2023, that entire expanded project would be completed by September 15, 2023, knowing banking records showed 31 concurrent projects making performance impossible; (b) Licensed professional service: Promise of licensed subcontractors and skilled crews knowing intention to use unlicensed workers like Julio and Carlos Siam with no proper supervision; (c) Project management promise: Specific promise that SHLOMI ABITTAN's company would act as "contractor, designer, and

project manager rolled into one" knowing no licensed supervision would be provided; (d) Code compliance promise: Written warranty of building code adherence knowing work would be performed without permits and proper inspections; (e) No advance payment promise: Contract provision prohibiting "payment for work not yet completed" while intending to demand unauthorized advances throughout project; (f) Quality completion promise: Promise to complete work to "satisfaction under reasonable standards" knowing systematic pattern of abandonment when homeowners complained about defects.

115.    On information and belief, Plaintiff alleges that SHLOMI ABITTAN did not intend to perform established by systematic evidence: (a) Physical impossibility: 31 concurrent projects in July 2023 made 4-6 week completion of expanded $102,300 project factually impossible; (b) Historical pattern: Banking records show systematic collection of early payments followed by project abandonment across multiple homeowners; (c) Resource inadequacy: Unlicensed sole proprietorship lacked infrastructure, licensed personnel, and management systems to deliver promised professional service; (d) Timeline manipulation: Back-dating contract amendments to avoid statutory cooling-off periods demonstrates premeditated scheme to collect payments without intention to complete; (e) Commission focus: $32,759.83 paid to Oron Avitan for sales generation shows priority on securing contracts rather than completing projects.

116.    On information and belief, Plaintiff alleges that SHLOMI ABITTAN had intent to deceive and induce reliance: (a) Rental property targeting: Specific promises about timeline and efficiency were calculated to address Plaintiff's concern about $20,000/month income loss; (b) Senior citizen manipulation: Sophisticated sales presentation designed to induce confidence in vulnerable population entitled to enhanced protection; (c) Contract expansion scheme: Systematic promises of efficiency and cost savings to induce cancellation of legitimate contractor and scope expansion; (d) False urgency creation: Timeline promises created artificial pressure to accelerate decision-making and prevent careful consideration.

117.    On information and belief, Plaintiff alleges that his reliance and resulting harm were reasonable: (a) Rental income dependency: Plaintiff's reliance on completion promises was specifically induced by defendants' knowledge of rental property income requirements; (b) Professional requirements: High-value property in affluent Pacific Palisades required professional, licensed service - Plaintiff reasonably relied on specific promises of licensed quality work; (c) Detrimental actions: Cancelled $17,000 painting contract, paid $44,500 for unlicensed service, expanded project scope

based on false completion promises; (d) Catastrophic consequences: Fire destruction converted temporary losses from broken promises into permanent $500,000+ damages.

118.    Plaintiff seeks judgment under Civil Code § 1710(4) for actual damages, consequential damages, punitive damages, prejudgment interest, attorney fees, and costs.

## TWELFTH CAUSE OF ACTION
## VIOLATION OF UNFAIR COMPETITION LAW
### (Business & Professions Code § 17200 et seq.)
### (Against SHLOMI ABITTAN and DOES 1-10)

119.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

120.    Business & Professions Code § 17200 prohibits "unlawful, unfair or fraudulent business practices." Section 17203 provides restitution and injunctive relief. Section 17204 grants standing to persons suffering injury in fact and lost money or property.

121.    On information and belief, Plaintiff alleges that SHLOMI ABITTAN engaged in unlawful business practices violating specific statutes: (a) Business & Professions Code § 7028: Unlicensed contracting - banking records show $215,180.99 monthly receipts for unlicensed individual operations; (b) Business & Professions Code §§ 7027.3, 7071: License lending - using corporate license while operating individual sole proprietorship with zero corporate employees; (c) Business & Professions Code § 7159: Unauthorized advance payments - collected $33,500 before substantial work completion contrary to statutory payment schedule; (d) Business & Professions Code § 7030: False license advertising - misrepresenting license status in contracts and marketing materials; (e) Business & Professions Code § 7152: Unlicensed salesperson - Shay Yefet acted as unregistered home improvement salesperson violating registration requirements; (f) Business & Professions Code § 7150(b): Senior citizen fraud - targeting vulnerable population without enhanced protections; and (g) Civil Code provisions: Violating home improvement contract requirements and consumer protection statutes.

122.    On information and belief, Plaintiff alleges that SHLOMI ABITTAN engaged in unfair business practices: (a) Public policy violation: Undermining contractor licensing system designed to protect consumers from unqualified, financially irresponsible contractors; (b) Unfair competitive advantage: Operating without licensing costs, insurance requirements, bonding obligations, and regulatory compliance while competing against legitimate licensed contractors; (c) Consumer harm:

FIRST AMENDED COMPLIANT

Systematic targeting of homeowners expecting licensed professional service for substantial home investments; (d) Senior citizen targeting: Unfair exploitation of vulnerable population entitled to enhanced statutory protections; (e) Market manipulation: Deliberate confusion between licensed corporate entity and unlicensed individual operations to deceive consumers.

123.     On information and belief, Plaintiff alleges that SHLOMI ABITTAN engaged in fraudulent business practices likely to deceive reasonable consumers: (a) License misrepresentation: Systematic use of corporate license number across multiple contracts while operating unlicensed sole proprietorship; (b) Business identity fraud: Intentional confusion between "Your Prime Contractor" (unlicensed DBA) and "Your Prime Contractor, Inc." (licensed corporation) to mislead consumers; (c) Professional credentials deception: Displaying apparent licenses and certificates while lacking actual authorization to perform contracting services; (d) Timeline manipulation: Promising impossible completion dates knowing systematic overcommitment prevents performance; (e) Quality misrepresentation: Advertising professional service while intending to use unlicensed, unqualified workers.

124.     On information and belief, Plaintiff alleges that he suffered economic injury in fact: Plaintiff lost $44,500 paid for unlicensed services plus additional damages exceeding $500,000 from defective work, rental income loss, and fire-amplified catastrophic destruction, establishing clear economic injury under UCL standing requirements.

125.     On information and belief, Plaintiff alleges that all economic injuries flow directly from defendants' unlawful, unfair, and fraudulent practices including reliance on licensing misrepresentations, timeline promises, and receipt of defective unlicensed work.

126.     Plaintiff seeks judgment under Business & Professions Code §§ 17200, 17203 for restitution of all monies wrongfully obtained ($44,500+), injunctive relief prohibiting future violations, attorney fees under Code of Civil Procedure § 1021.5 if applicable, and costs.

**THIRTEENTH CAUSE OF ACTION**

**CONTRACTING WITHOUT A LICENSE / FRAUDULENT USE OF LICENSE**

**(Business and Professions Code §§ 7028, 7027.3, 7028.15)**

**(Against SHLOMI ABITTAN and DOES 1-10)**

127.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

128.     On information and belief, Plaintiff alleges that SHLOMI ABITTAN engaged in

26

FIRST AMENDED COMPLIANT

contracting valued at $500 or more without a valid license, fraudulently using others' license numbers and surety bonds without proper affiliation. Such conducts violated statutory prohibitions and caused Plaintiff's damages.

129.    On information and belief, Plaintiff alleges that SHLOMI ABITTAN performance of work requiring licensure; with absence of valid license; and with intent to deceive via unauthorized use of license of another, he violated B&P §§ 7027.3, 7028.

130.    On information and belief, Plaintiff alleges the resulting damages constitutes an occurrence during the policy period, covered under Coverage A -- Bodily Injury and Property Damage Liability of the CGL Coverage Part (Section I, Coverage A, 1.a.--b. of Policy Form IL 00 21 09 08), notwithstanding exclusions for intentional acts (Section I.2.a.) if damages are accidental, and subject to common policy conditions on transfer of rights (Section F of Form IL 00 17 11 98).

131.    Plaintiff seeks the statutory penalties (5% of contract price or $5,000, whichever greater, per B&P § 7028), restitution, and compensatory damages not exceeding $1,000,000 per occurrence under the CGL policy (per Section III of Form IL 00 21 09 08), plus attorney's fees and costs. If SHLOMI ABITTAN fails to satisfy any judgment, Plaintiff seeks direct recovery from the insurer under Insurance Code § 11580(b)(2), as the policy requires payment of covered damages (per Section I, Coverage A, 1. Insuring Agreement).

**FOURTEENTH CAUSE OF ACTION**

**DECLARATORY RELIEF**

**(Code Civ. Proc. § 1060)**

**(Against SNIC Only)**

132.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

133.    Code of Civil Procedure § 1060 provides: "Any person whose rights, status or other legal relations are affected by a contract may obtain a declaration of rights, duties or other legal relations thereunder." Actual controversy relating to legal rights and duties requiring judicial determination for resolution.

134.    The insurance agent of SNIC, Next Insurance provided the COI for the Commercial General Liability Policy No. NXTYCT609-01-GL that shows David Abittan as the insured with PRIME CONSTRUCTION as the insured business entity contradicting the COI shown as Exhibit B. A true and accurate copy of COI for PRIME CONSTRUCTION is attached hereto as Exhibit C.

27

135.     On information and belief, Plaintiff alleges that actual controversy regarding SNIC's coverage obligations based on the Policy interpretation for the Commercial General Liability Policy No. NXTYCT609-01-GL and Contractors E&O coverage issued to "Shlomi Abittan individually dba Your Prime Contractor" create coverage questions regarding: (a) Occurrence definition: whether negligent construction acts constitute "accidents" under CGL policy; (b) Professional liability: whether construction errors fall within E&O coverage scope; (c) Intentional acts exclusion: Scope of exclusion for licensing misrepresentations vs. negligent workmanship; (d) Time of Occurrence: whether work at the Property prior to August 4, 2023 caused damages to the Property; (e) whether COI issued to David Abittan and PRIME CONSTRUCTION affects the COI issued to SHLOMI ABITTAN dba Your Prime Contractor.

136.     On information and belief, Plaintiff alleges that coverage analysis required for: (a) Property-specific defects: Plumbing leaks, electrical hazards, structural issues at Plaintiff's Property require individualized assessment; (b) Fire relationship: Whether pre-existing defects contributed to fire vulnerability or amplified damages; (c) Policy period timing: Work performed during August 4, 2022 to August 4, 2023 policy period.

137.     On information and belief, Plaintiff alleges there exist specific coverage questions requiring declaration: (a) whether negligent plumbing installations causing water damage constitute covered "occurrences" as "accidents" under CGL policy, distinct from intentional licensing misrepresentations; (b) whether negligent electrical work creating safety hazards falls within "property damage" coverage for "negligent acts" under professional liability; (c) whether negligent construction methods and subcontractor supervision constitute covered "errors and omissions" under E&O policy; (d) whether SNIC must indemnify Plaintiff for covered negligent acts up to policy limits if SHLOMI ABITTAN cannot satisfy judgment; (e) whether total property destruction from fire affects coverage analysis for pre-existing negligent damage.

138.     On information and belief, Plaintiff alleges that there is a necessity for judicial determination: (a) Complex policy language and mixed negligent/intentional conduct require court interpretation to determine coverage scope and parties' rights; (b) the public interest: Clarifying construction insurance coverage serves public interest in ensuring proper claims handling and consumer protection.

139.     Plaintiff seeks declaratory judgment that: (a) SNIC's CGL policy provides occurrence-based coverage for property damage from negligent construction acts at Plaintiff's Property (excluding

intentional misrepresentations); (b) SNIC's E&O policy covers professional errors in construction services causing property damage; (c) SNIC must indemnify Plaintiff up to policy limits for covered damages if SHLOMI ABITTAN cannot satisfy judgment; (d) Attorney fees under Code of Civil Procedure § 1021.5 if action substantially benefits public; (e) Costs of suit; and (f) Such other relief as Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

Against SHLOMI ABITTAN and DOES 1-10:

1. Actual damages of $500,000 for lost rental income of $340,000; Restitution of all payments ($44,500) for unlicensed services; Remedial costs and property damage in excess of $110,000; and converted personal property ($5,500+)

2. Enhanced statutory remedies: Disgorgement under Business & Professions Code § 7031(b); Treble damages under Code of Civil Procedure § 1029.8; Senior citizen protections under Business & Professions Code § 7150(b); UCL restitution under Business & Professions Code § 17203

3. Punitive damages under Civil Code § 3294 for malicious fraud against senior citizen

4. Exemplary damages under Civil Code § 3337 for wrongful conversion

5. Pre-judgment interest at legal rate on all monetary awards

6. Attorney fees under applicable statutes including: Code of Civil Procedure §§ 1021.5, 1029.8; Penal Code § 496(c) if applicable; Business & Professions Code § 17208

7. Costs of suit and such other relief as Court deems just and proper

Against SNIC:

1. Declaratory relief establishing coverage obligations for negligent acts causing property damage

2. Determination of indemnification duties if SHLOMI ABITTAN cannot satisfy judgment

3. Attorney fees if substantial public benefit achieved under Code of Civil Procedure § 1021.5

4. Costs of suit, and such other relief as Court deems proper

Dated: September 21, 2025          **MOSTAFAVI LAW GROUP, APC**

*Amir Mostafavi*

By:_____
AMIR MOSTAFAVI, Esq.
Attorney for Plaintiff, NM Family Trust

29

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury for all claims.

Dated: September 21, 2025          **MOSTAFAVI LAW GROUP, APC**

*Amir Mostafavi*

By:_____
AMIR MOSTAFAVI, Esq.
Attorney for Plaintiff, NM Family Trust

30

# EXHIBIT A

AMIR MOSTAFAVI, ESQ. (SBN: 282372)
**MOSTAFAVI LAW GROUP, APC**
528 Palisades Dr., Suite 220
Pacific Palisades, CA 90272
Telephone: (310) 849-2030
Facsimile: (310) 473-2222
amir@mostafavilaw.com

*Attorneys for Plaintiff Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION

| | |
|---|---|
| AMIR MOSTAFAVI, TRUSTEE OF THE NM FAMILY TRUST, Dated July 10, 2018,<br><br>Plaintiff,<br><br>vs.<br><br>YOUR PRIME CONTRACTOR, INC. DBA PRIME CONSTRUCTION; a corporation; DAVID NMN ABITTAN, an individual, SHLOMI ABITTAN, an individual; ORON AHARON AVITAN, an individual; SHAY YEFET, an individual, BUSINESS ALLIANCE INSURANCE COMPANY. DOES 1-30; inclusive,<br><br>Defendants. | **COMPLIANT FOR:**<br><br>1. **FRAUD - INTENTIONAL MISREPRESENTATION**<br>2. **FRAUD - CONCEALMENT**<br>3. **FRAUD - FALSE PROMISE**<br>4. **VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION**<br>5. **NEGLIGENCE**<br>6. **BREACH OF WRITTEN CONTRACT**<br>7. **BREACH OF ORAL CONTRACT**<br>8. **BREACH OF COVENANT OF GOOD-FAITH AND FAIR DEALING**<br>9. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br>10. **CONVERSION**<br>11. **NEGLIGENT MISREPRESENTATION**<br>12. **BREACH OF THIRD PARTY BENEFICIARY CONTRACT**<br><br>DEMAND FOR JURY TRIAL |

Amir Mostafavi, Trustee of the NM Family Trust, Dated July 10, 2018, ("Plaintiff"), hereby brings this Complaint against defendants YOUR PRIME CONTRACTOR, INC. DBA PRIME CONSTRUCTION; a corporation; DAVID NMN ABITTAN, an individual; ORON AHARON AVITAN, an individual; SHAY YEFET, an individual; BUSINESS ALLIANCE INSURANCE COMPANY and DOES 1-30, inclusive, on information and belief alleges as follows:

1

COMPLIANT

## NATURE OF THE ACTION

1.      This action is between the plaintiff homeowner one hand, and the home improvement contactor, its owners and its employees on the other hand who, *inter alia*, fraudulently induced the plaintiff into a home improvement contract, increased the contract price in multiple times, failed to complete the work as promised after receiving $44,500.00, and abandoned the work when the homeowner refused to pay more before they finish the work causing substantial damages including but limited to loss of rental income. The demand of additional payment was not only was unjust and unlawful, but also was prohibited under the terms of the home improvement contract that provided:

**IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NIT YET COMPLETED OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWN PAYMENT.**

Plaintiff seeks to hold Contractor Defendants accountable for their bad advice and construction services and the Plaintiff seek, among other things, the cost of completion of the work abandoned by Contractor Defendants, restitution of the money they received, and payment of loss of rental income, and the diminished value of their property as the result of their defective work.

## THE PARTIES

2.      Plaintiff NM Family Trust, through and by its trustee Amir Mostafavi, who is 65 years of age or older and is considered as a "Senior citizen" under Business & Professional Code Section 7150(b) and is the legal owner of the property located at 1407 Monte Grande Pl., Pacific Palisades, California 90272. (the "PROPERTY")

3.      On information and belief, Defendant YOUR PRIME CONTRACTOR, INC. DBA PRIME CONSTRUCTION, ("PRIME CONSTRUCTION") is a construction company engaged, as a home improvement contractor as defined under Business & Professional Code Section 7150.1 a home improvement contractor shall satisfy all requirements imposed by this article. in the County of Los Angeles and State of California, a CONTRACTOR under Bus & Prof C §§7026, and 7026.1 possessing a B - General Building Contractor and C-54 - Ceramic and Mosaic Tile Contractor licenses under the License # 1031676.  (Exhibit A)

4.      On information and belief, Defendant DAVID NMN ABITTAN, is the PRIME CONSTRUCTION's CEO, Secretary, CFO, Director, and Agent for Service of Process, is an individual who, under Bus & Prof C §7026, as a CONTRACTOR is at all times relevant, resided and did business in the County of Los Angeles and State of California who undertakes to or offers

2

COMPLIANT

to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, or the cleaning of grounds or structures in connection therewith, or the preparation and removal of roadway construction zones, lane closures, flagging, or traffic diversions, or the installation, repair, maintenance, or calibration of monitoring equipment for underground storage tanks, and whether or not the performance of work herein described involves the addition to, or fabrication into, any structure, project, development or improvement herein described of any material or article of merchandise. "Contractor" includes subcontractor and specialty contractor.

5.      On information and belief, Defendant SHLOMI ABITTAN is an individual who, at all times relevant, resided and did business in the County of Los Angeles and State of California. On information and belief, SHLOMI ABITTAN and DAVID NMN ABITTAN are related, separate individuals, or might be the same individuals.

6.      On information and belief, Defendant ORON AHARON AVITAN, is an individual who, at all times relevant, resided and did business in the County of Los Angeles and State of California, who is also a CONTRACTOR under Bus & Prof C §7026.

7.      On information and belief, Defendant SHAY YEFET, is an individual who, at all times relevant, resided and did business in the County of Los Angeles and State of California, who worked for PRIME CONSTRUCTION, DAVID NMN ABITTAN, and ORON AHARON AVITAN as a "Home improvement salesperson" under Bus & Prof C §7152(a), which required him to be registered under the California Business and Professions Code, Chapter 9. Contractors [Sections 7000 - 7191] in order to be engaged in the business of soliciting, selling, negotiating, or executing contracts for home improvements, for the sale, installation or furnishing of home improvement goods or services, on behalf of Defendant PRIME CONSTRUCTION.

8.      Plaintiff is informed and believes and thereupon alleges that Defendant BUSINESS ALLIANCE INSURANCE COMPANY was, at times relevant herein, a California corporation with its principle place of business in the State of California.  Plaintiff is further informed and believes and thereupon alleges that Defendant BUSINESS ALLIANCE INSURANCE COMPANY was the license bonding company for Defendant PRIME CONSTRUCTION as it acted as described herein.

COMPLIANT

9.      Plaintiff is informed, believes, and thereon alleges that the true names and capacities, whether individual, corporate, associate, or otherwise of all defendants named herein as DOES 1 through 30 are unknown to Plaintiff at this time.  Plaintiff, therefore, sues said defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1-30 when their names are ascertained.

10.     Plaintiff is informed, believes, and thereon alleges that each of the DOE defendants is in some manner liable to Plaintiff for the events and actions alleged herein. Unless otherwise specified by name, Defendants PRIME CONSTRUCTION, DAVID NMN ABITTAN, ORON AHARON AVITAN, SHAY YEFET and DOES 1 through 30, will be collectively referred to "Contractor Defendants".

11.     Plaintiffs Plaintiff is informed, believes, and thereon alleges that at all times, defendants were acting as an agent, joint venture, integrated enterprise, and/or alter ego for each of the other defendants and each was a co-conspirator with respect to the acts and the wrongful conduct alleged herein so that each is responsible for the acts of the other in connection with the conspiracy in such wrongful acts in connection with the other defendants.

12.     Plaintiff is informed, believes, and thereon alleges that defendants were acting partly within and partly without the scope and course of their employment, and were acting with the knowledge, permission, consent, and ratification of every other Defendant.

## AGENCY ALLEGATIONS

13.     Plaintiff is informed, believes and thereon alleges that that at all relevant times herein, each named defendant and DOES 1-30, were the partner, officer, director, agent, employee, servant and/or representative of other defendant and DOES 1-30, and in doing the things as alleged in this Complaint were acting within the course, scope, and/or authority of such agency, service, employment, partnership and/or joint venture, and with the consent, knowledge, approval and ratification of defendants.

14.     Plaintiff is informed, believes and thereon alleges that defendants at all relevant times herein:

a.      Defendant PRIME CONSTRUCTION is a corporation under the Entity (File) Number: C4048081 with the California Secretary of State.

b.      Defendant DAVID NMN ABITTAN is the co-owner and co-managing operator of PRIME CONSTRUCTION and a contractor as defined in Bus & Prof C §7026.

4

COMPLIANT

c.      Defendant ORON AHARON AVITAN is the co-owner and co-managing operator of PRIME CONSTRUCTION.

d.      Defendant SHAY YEFET is a Home improvement salesperson under Bus & Prof C §7152(a) for PRIME CONSTRUCTION, DAVID NMN ABITTAN, and ORON AHARON AVITAN.

e.      Each Defendant exercised and/or employed indirect control over the hiring, supervision, compliancy with California laws and regulations, and overall performance of terms and conditions of the HOME IMPROVEMENT CONTRACT. (*infra*)

f.      Authorized, directed, sanctioned, consented, cooperated, approved, aided, instigated, assisted, participated in, made the decision to, and/or voted for hiring, retaining, firing, supervising, and controlling the operations of the contractors, subcontractors, employees, and service providers, regardless whether directly employed or retained as independent contractors for purposes of compliance with California law in general and California Department Of Consumer Affairs Contractors State License Board.

g.      Authorized, directed, sanctioned, consented, cooperated, approved, aided, instigated, assisted, participated in, made the decision to, and/or voted for the acts, or omission of acts, as alleged in this Complaint, and incorporated herein by reference;

h.      Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control was in violation of the applicable laws and applicable regulations, and he/she/it failed to take or order appropriate action to remedy and/or avoid the violation of the applicable ordinance(s) as alleged in this Complaint, and incorporated herein by reference;

i.      Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control caused defendants and DOES 1-30 to violate the applicable laws, and he/she/it failed to take or order appropriate action to remedy and/or avoid the violation of the applicable laws by defendants and DOES 1-30 as alleged in this Complaint, and incorporated herein by reference;

j.      Knew or reasonably should have known that his/her/its conduct and/or conduct under his/her/its control was injuring Plaintiff and he/she/it failed to take or order appropriate action to avoid harm;

k.      Furthered the conspiracy by cooperation with *or* lent aid and encouragement to or ratified and adopted the acts of defendants and DOES 1-30 including, but not limited to, their refusal and failure to perform as required by the HOME IMPROVEMENT CONTRACT. (*infra*)

5

COMPLIANT

**ALTER EGO ALLEGATIONS**

15.    Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned, defendants and DOES 1-30 were the alter ego of the remaining defendants and DOES 1-30, and as hereinafter alleged, were acting for their own benefit and/or the benefit of one or more of the remaining defendants.

16.    Plaintiff is informed, believes and thereon alleges that there exists a unity of ownership and interest, between one or more defendants and DOES 1-30 herein, such that any individuality and separateness between said defendants has ceased, and the said other defendants, and each of them, was at all times relevant to Plaintiff's claims, the alter ego of and all other defendants.

17.    Plaintiff is informed, believes and thereon alleges that the Court's adherence to the fiction of the separate existence of any or all defendants and DOES 1-30 as entities distinct from the other defendants and DOES 1-30 would permit an abuse of the corporate privilege, would sanction fraud and/or promote injustice in that said defendants and DOES 1-30 have defaulted on their individual and collective obligations to Plaintiff under California law.

18.    Plaintiff is informed, believes and thereon alleges that defendants and DOES 1-30 herein were an entity which is, and at all times herein mentioned was, controlled, dominated, and operated by one or more of the other defendants and in that the activities and business of the other Defendants was carried on without or with the holding of directors and/or shareholders meetings and records or no records and/or minutes of any corporate preceding were maintained.

19.    Plaintiff is informed, believes and thereon alleges that one or more of defendants and DOES 1-30 herein, and all other business entity defendants herein, is and at all times herein mentioned was a mere shell and sham without the requisite capital and assets. Thus, said all other business entity defendants herein, is and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by defendants and DOES 1-30, said capitalization was inadequate to do business properly and legally under California law.

20.    On information and belief, at all relevant times herein, defendants and DOES 1-30 were subject to the laws of the State of California.

**JURISDICTION AND VENUE**

21.    Pursuant to Article VI § 10 of the California Constitution, Subject Matter Jurisdiction is proper in the Superior Court of California, County of Los Angeles, State of California.

22.    Pursuant to California Code of Civil Procedure § 395, venue is proper in the Superior Court of California for the County of Los Angeles, State of California, because this is where defendants'

6

headquarters and principal place of business is located, and it is where the wrongful misconduct alleged herein originated.

**GENERAL ALLEGATIONS**

23.    Plaintiff purchased the PROPERTY, a two-story property in Pacific Palisades Highland, an affluent neighbored Los Angeles, California in or about June 3, 2021 as a rental property. Plaintiff leased the PROPERTY shortly on June 25, 2021.

24.    Plaintiff is informed, believes and thereon alleges that the PROPERTY was assessed with fair market monthly lease amount of $20,000 by the real estate professionals in July 2022.

25.    Plaintiff is informed, believes and thereon alleges that in December 2022, the PROPERTY suffered damages from the water leaks caused by soft blockage in master bathroom on the second floor of the PROPERTY.

26.    Plaintiff is informed, believes and thereon alleges that after performing cleanup & dry out and water mitigation in accordance with standards & guidelines (IICRC S-500/520) including, but not limited to, the removal of the affected/damaged building materials in master bathroom and kitchen, Plaintiff desired to to restore the master bathroom and kitchen to its original conditions before the water damages.

27.    Plaintiff is informed, believes and thereon alleges that on or about July 23, 2023, Plaintiff entered onto a service contract with a licensed contractor for a complete painting of the PROPERTY starting August 3, 2023 for $17,000 in total including labor and material with a down payment of $1,000.

28.    In or about July 2023, Plaintiff learnt about PRIME CONSTRUCTION through their online advertising and marketing campaigns promoting itself as a general contractor for home, bathroom, and kitchen remodeling under www.remoelingforless.com website.

29.    On or about July 26, 2023, Plaintiff met with PRIME CONSTRUCTION's sales person SHAY YEFET when he visited the PROPERTY, where Plaintiff told him that the PROPERTY is rental property and discussed with him his desire to remodel the Property and that the time of the essence and the work must be completed with maximum exigency to avoid the loss of rental income.

30.    SHAY YEFET told Plaintiff about a variety of remodeling options, however, Plaintiff informed him that he needs only remodeling of the master bathroom and nothing else. During the same visit, Plaintiff explicitly informed SHAY YEFET that a painting contractor has been already retained and remodeling of the master bathroom is the only work that is needed.

COMPLIANT

31.    SHAY YEFET presented to Plaintiff that if PRIME CONSTRUCTION is retained for the remodeling of the bathroom, PRIME CONSTRUCTION essentially act as a contractor, designer, and project manager rolled into one.

32.    SHAY YEFET also presented himself as knowledgeable and experienced based on other projects that he had built so that Plaintiff would believe that he was capable of providing such services and acting in such capacity. In this regard, SHAY YEFET stated that PRIME CONSTRUCTION had many years of experience and that it had a crew of excellent, licensed subcontractors who he would have work on the project.

33.    DAVID NMN ABITTAN and ORON AHARON AVITAN never said anything to contradict SHAY YEFET's statements and representations regarding PRIME CONSTRUCTION's knowledge, experience, or qualifications.

34.    Based on SHAY YEFET's statements, representations, and omissions, Plaintiff entered into written agreements with PRIME CONSTRUCTION for them to remodel the master bathroom.

35.    Plaintiff is informed, believes and thereon alleges that on behalf of Defendant, SHAY YEFET signed a home improvement contract ("HOME IMPROVEMENT CONTRACT") under B&P §7151.2 for the repairing, remodeling, altering, converting, or modernizing of the master bathroom on July 26, 2023.

36.    Plaintiff is informed, believes and thereon alleges that the HOME IMPROVEMENT CONTRACT provided for remodeling the master bathroom for $25,000. The CONTINUATION/ADDENDUM page described the work as:

a.    Clear area for the start of work and preparation for work;
b.    Demo shower wall and make it up-to-date;
c.    Prepare the flooring in the shower, toilet, and vanity area for tiling, and install tiles;
d.    Fix the ceiling and update the recess lights, speakers, and relocate the fans, and install new fans;
e.    Prepare outlets/switches and make them up-to-date with the code;
f.    Install toilet water and drainage connections and follow the code;
g.    Prepare the vanity area and install the new vanity and mirrors;
h.    Prepare the shower area and install the shower door and fixed glass;
i.    Install bathroom faucets for the vanity, shower, and the tub;
j.    Tiles around the shower, bathroom, and vanity areas on the wall.

37.    THE CONTRACT CHANGE ORDER page of the HOME IMPROVEMENT CONTRACT provided that materials will be purchased by the owner and paid by the contractor up to $4,000. The total price of $25,000 includes all labor and materials for up to $4,000. Any cost exceeding

8

COMPLIANT

$4,000 for shower glass, vanity, mirror, toilet, faucets and tiles ("FINISHED MATERIALS"), will be paid by the owner in addition to $25,000.  (Exhibit B)

38.    After expiration of the Three-Day Cancellation Notice, Plaintiff made the down payment of $1,000 on August 2, 2023. (Exhibit C)

39.    On August 1, 2023, Plaintiff met with SHAY YEFET and Julio (Last name unknown, an individual brought, who is believed to be an unlicensed sub-contractor working for PRIME CONSTRUCTION again at the PROPERTY to review the work as specified in the HOME IMPROVEMENT CONTRACT before the start.

40.    During the walk-through, SHAY YEFET induced Plaintiff to cancel the contract with other painting contractor and replaced with PRIME CONSTRUCTION instead.

41.     SHAY YEFET demanded to increase the contract price by $68,300 from $21,000 labor (excluding $4,000 allocated for the FINISHED MATERIALS) to $89,300 claiming that expanded scope of the work beyond the remodeling of the master bathroom requires the increase of the contract price and shorten the time to complete the work if PRIME CONSTRUCTION does all the work instead of multiple contractors.

42.    In reliance to the representations by SHAY YEFET on behalf of the PRIME CONSTRUCTION, Plaintiff agreed to amend the HOME IMPROVEMENT CONTRACT that included higher price for additional work. ("FIRST AMENDED HOME IMPROVEMENT CONTRACT") (Exhibit D)

43.    Under the FIRST AMENDED HOME IMPROVEMENT CONTRACT, it was also agreed that the finished material remain limited to vanity, faucets, valves, floor tiles, wall tiles, shower glass, door levers, locks, mirrors, toilets, and tubs.

44.    On behalf of PRIME CONSTRUCTION, SHAY YEFET agreed the work starts by August 4, 2023. SHAY YEFET verbally promised that if Plaintiff give PRIME CONSTRUCTION the additional work, PRIME CONSTRUCTION would complete the entire work within 4-6 weeks, but no later than September 15, 2023.

45.    The FIRST AMENDED HOME IMPROVEMENT CONTRACT also itemized prices for work or services to be perform provided with the following payment schedule:

a.    Down payment: $2,000, which exceeded the lesser of $1,000 or 10% of the contract price of $89,300.

a.    Upon Start of job: $17,500

b.    Electrical and Plumbing: $10,000

COMPLIANT

c.      Tiling: $10,000

d.      Balcony: $10,000

e.      Painting: $10,000

f.      Door knobs, levers, recess lights. switches: $19,500

g.      Completion of work in entirely: $10,300

46.     On August 4, 2023, Plaintiff authorized the payment of $18,500 with a credit card. PRIME CONSTRUCTION charged $19,147.50, which was more than authorized amount. (Exhibit E)

47.      On August 7, 2023, PRIME CONSTRUCTION through its home improvement salesperson, SHAY YEFET, demanded the second increase to the contract price by $10,000 from $89,300 to $93,300 for changing the toilet area in the Jack & Jail Bathroom to shower, relocating toilet to the side of vanity, removing the existing tub and replace it with new tub in the small bathroom, and add recess lights in the small bathroom. ("SECOND AMENDED HOME IMPROVEMENT CONTRACT") (Exhibit F)

48.     Under SECOND AMENDED HOME IMPROVEMENT CONTRACT, the payment schedule was changed as shown in Exhibit F:

a.      down payment: $1,000

b.      upon the start of job: $18,500

c.      upon plumbing and electrical: $10,000

d.      upon tile: $10,000

e.      upon balcony demo: $10,000

f.      upon hot mop: $10,000

g.      upon paint: $16,000

h.      upon fixtures installation: $14,500

i.      upon completion: $7,300

49.     On August 8, 2023, SHAY YEFET demanded another increase to the contract price by $9,000 from $93,300 to $102,300 to install one tub and to create framing for two tile tubs, installation of tiles for tile tubs and shower for the master bathroom, Jack & Jill bathroom, and guest bathroom on floors and walls. ("THIRD AMENDED HOME IMPROVEMENT CONTRACT) (Exhibit G)

50.     The payment schedule for the THIRD AMENDED HOME IMPROVEMENT CONTRACT) was modified to show:

a.      down payment: $1,000

b.      upon the start of job: $18,500

c.      upon plumbing and electrical: $15,000

d.      upon start tile: $15,000

e.      upon balcony demo + start uator proofing: $10,000

10

COMPLIANT

f.      upon hot mop: $10,000

g.     upon start paint: $15,000

h.     upon fixtures installation: $11,300

i.      upon completion: $6,500

51.     Under the THIRD AMENDED HOME IMPROVEMENT CONTRACT, PRIME CONSTRUCTION agreed that for $102,300 to complete the followings:

a.     Complete Remodeling of the Jack & Jill Bathroom (J&J) – similar to the master bathroom including demolition of old tiles, clearing and preparing the area to start the work; installing tiles in the bathroom, installing faucets and vanity; upgrading the electrical to the code including recess lights, replacement of the fans, electrical switches, plugs, outlets in the bathroom area; installation of toilet, drainage pipes, installation of the new vanity and mirrors, glass shower doors, bathroom faucets and tiles on bathroom walls up to ceiling. The agreement provided the Owner is responsible for supplying the vanity, faucets, shower glass, shower head, and tiles for the remodeling of the J&J bathroom.

b.     All interior painting for walls, ceilings, doors, windows, balcony, and railings;

c.     Install waterproof balcony after demolishing existing tiles down to the plywood, sealing up with waterproofing, patching, and painting of the stucco; painting the railing, and restoration of the double door with patching and painting;

d.     Replace and install all door levers, handles, locks, deadbolts, and hinges, reinstalling existing recess lights, switches, plugs, smoke detectors, and fans;

e.     3rd Bathroom (Upstairs) – refinish existing remodeling of the bathroom, installing the vanity, toilet, finishing tiles, drywalls, fans, door, drainage, faucets, and head shower;

f.     Application of epoxy to the garage flooring.

(Exhibit H)

52.     To avoid another Three-Day Right to Cancel applies, SHAY YEFET required Plaintiff to back date the modified agreements as July 26, 2023, when the initial contract was signed.

53.     On August 14, 2023, Plaintiff made the third payment of $14,352.50 (Check #1060) and forth payment of $10,000 on August 18, 2023 (Check #1061) to PRIME CONSTRUCTION for total payment of $44,500 for the work provided by the HOME IMPROVEMENT CONTRACT, and its three amendments.

54.     On August 17, 2023, based on the recommendation by the PRIME CONSTRUCTION, Plaintiff purchased a tub to be installed in the guest bathroom at $382.16. Later on, it turned out that the tub was not suitable for the work causing Plaintiff to purchase another tub at much higher price including the expedited shipping to avoid any delay to the work. PRIME CONSTRUCTION failed to return the unused tub to store, but had agreed to credit Plaintiff $382.16 for its costs.

55.     PRIME CONSTRUCTION hired WE CARE DECK COATING as a subcontractor for the work on the balcony. When work was completed, on or about August 20, 2023, Plaintiff notified

COMPLIANT

PRIME CONSTRUCTION that the rain water rain water remains at the balcony because of defective slope. Plaintiff met with the owner of the WE CARE DECK COATING and showed the rain water that remained on the balcony. PRIME CONSTRUCTION and WE CARE DECK COATING refused to correct the work defect, but instead issued a justification (Exhibit I)

56.     On September 23, 2023, Plaintiff notified PRIME CONSTRUCTION regarding the issues and requested immediate action. The letter provided that:

**Loss of Rental Income due to delayed completion of the work** - The Owner entered into the Agreement [HOME IMPROVEMENT CONTRACT] and its subsequent amendments with the expectation that the work will be finished no later than 6 weeks from the start day of August 4, 2023, or September 15, 2023, which was a week ago.  It was made clear to The Agent, on multiple occasions and you and your partner David that the Property is for rent, and because time is of the essence, any delay of the completion would result in loss of income. As you can see from the attached pictures taken on Friday, September 22. 2023, little progress has been made so far despite receiving $44,000, or approximately 44% of the total amount. Please note that delayed completion of the work results in a loss of rental income of $666/day.  Please take notice that starting September 15, 2023, I will be demanding a credit of $666 per day to the remaining balance until the work is completed to my satisfaction under a reasonable standard used commonly in the home improvement industry.

**Subcontractor** – Earlier Julio was assigned as your subcontractor. As we discussed at length on the phone, there was a mismatch between not only the scope but also the quality of the work we agreed on under the agreements and what he agreed to do for the fee he was going to receive from you. I reported to Shay, you, and David that not only Julio is compromising the quality of the work, but also refuses to clean up the work from the trash and other materials created by the demolishing. In his words, his time was valuable and he was not making money to clean up after work was done on a daily basis. Carlos Siam replaced Julio on around August 31, 2023. Unfortunately, the problems did not go away though.

**No Work** - Since the early days of August, there have been many days on which no one is working on the Property. When there was someone there, it was only one or two workers. When I asked Carlos a couple of weeks ago why the work (plumbing, electrical, tiling, painting, etc.) is not done quicker, he stated that he and his 6–7-man crew were finishing up another three-bathroom project and he only could work with his crew only after he finished that project a few days later. Two weeks have passed and still, Carlos's crew members are not working on the Property.

12

**Project Management** – As a licensed contractor, you are expected to have a licensed foreman to oversee the project for speedy progress and compliance with the terms of the agreement. The Agent was unlicensed, and you were expected to manage the project. In our telephonic conversation, you mentioned you cannot make any progress unless the plumbing passes inspection this Wednesday, September 20, 2023. The plumbing work must have been started timely for a full completion for a much earlier inspection. The plumbing in the bathrooms has been finalized in TAA as of August 8, 2023, or over seven weeks ago! Even as of September 22, 2022, as shown in the attached pictures, the plumbing has not been fully completed.

**Material** – Since the agreements required the Owner to purchase the tile as part of the Finished Materials, the tiles were purchased, along with faucets, vanities, and supplemental parts for the drainages in the bathrooms as early as August 8, 2023. The purchased tile was not the Owner's first option; however, the Owner purchased them after The Agent who accompanied the Owner at the Floor & Décor store stated that the start of tiling work could not be delayed 3-5 days to allow the arrival of the preferred tiles. After seven weeks, the purchased tiles have not been installed as of September 22, 2023.

**Missing Properties** – The tub that was originally installed in the 3rd Bathroom (Upstairs) is missing. The tub was never used and it needed to be returned to Home Depot for a refund. In addition, the whirlpool tub that was removed from the master bathroom with installed faucets and equipment (water pump) is missing as well. We never told any of your workers that the tubs must be taken out as trash. In fact, the Owner had told The Agent and Julio to help take them to the store for a refund.

**Balcony –** As you know, there was water damage in the garage due to water leaks from the balcony. The Owner had attempted to repair the leak by removing the old plywood, resealing, and installation of travertine tiles. The work was defective causing the rainwater to remain on the balcony because of an incorrect slope. You agreed to install a waterproof balcony after demolishing existing tiles down to the plywood, sealing up with waterproofing, patching, and painting of the stucco; painting the railing, and restoration of the double door with patching and painting.  You hired "WE CARE DECK COATING" as the subcontractor to do the work for you. After the completion, we noticed the rainwater remained on the balcony due to an incorrect slope. We notified you about the defect and requested for a proper slope so no rainwater remains on the surface. Despite of multiple requests, no fix has been made and as noticed during the last week's mild rain, water remains to stay on.

13

**Painting -** We had an agreement from a licensed painting contractor to paid the entire Property including the walls, ceilings, closets, doors, balcony, railings, and garage for $17,000. This was clearly communicated with The Agent on July 26, 2023. After we entered into the FAA, we cancelled our agreement with other painting contractor. The contractor who did the balcony started the painting as well, albeit not to our satisfaction. Please make sure the surfaces are properly patched, sanded before painting. Please make sur sure prime is used before two coats of paint is applied. The paint color for walls (eggshell), ceilings (matte), trims (semi gloss), baseboards (semi gloss), doors (semi gloss), and closets (semi gloss) are all Swiss Coffee. The paint for the railings inside the living room and in the balcony is in eggshell Venetian Bronze color matching the door levers.

**Door knobs, levers, hinges, locks, deadbolts** – The knobs, levers, hinges, locks, deadbolts material for all doors (interior, entry door, doors to yards, and balcony, garage have been purchased and are available for installation. Please make sure you take a proper sequence for painting the surface, i.e., door, and reinstallation of them, i.e., knobs, levers, hinges, locks, deadbolts. Since the material is in Oil Brushed Bronze (Venetian Bronze) color, special care must be taken for the installation on a white color door.

**Quality** – The overall costs of the project exceed $150,000 including the Finishing Materials. A high quality of work is expected to ensure the Owner's satisfaction is achieved under the commonly standards in the industry. Lack of proper supervision of the workers, has been and continue to be an issue. You have been stated in multiple time that all communications regarding the quality and progress of the work must be done with you instead of your subcontractors. Please make sure you monitor the work quality as closely and frequently as needed. I have communicated with you concerns about failing to use insulation material under the drywall, proper preparation of the floor underneath the tub on the 3rd bathroom (Upstairs), incorrect slop on the balcony, delayed completion of electrical, incomplete plumbing, and inadequate protection of wood flooring during the work. Please note that the Owner will not accept a claim of the completion of the work if not up to a reasonable satisfaction standard.

**Future Payments -** Please allow this letter to serve you with our good faith attempt requesting for an immediate correction of the issues stated above. The intent is to have you to cure the defect and improve the quality of the work without any unnecessary delay. As mentioned earlier, time is of the essence. The Owner loses rental income for any delay to the completion of the work. Please further note that the Owner loses the seasonal demand from the prospective tenants with K-12 school

14

COMPLIANT

children after the start of the Fall.

You have received $44,000 so far and are still demanding for a payment despite the lack of any progress on completion of the work. On September 22, 2023 you demanded payment for starting the paint under the contract. Let's look at the payment schedule and see why your demand is unwarranted:

| Down Payment | $1,000 |
|---|---|
| Upon start of job | $18,500 |
| Upon start of plumbing +electrical | $15,000 |
| Upon start of tile | $15,000 |
| Upon Balcony Demo + start water proofing | $10,000 |
| Upon hot mop | $10,000 |
| Upon start Paint | $15,000 |
| Upon fixtures installation | $11,300 |
| Upon Completion | $6,500 |

Your expectation of compensation "upon start" is unreasonable. It is a commonly accepted and used practice in construction and remodeling that the contractor is compensated after the completion and not the start of the job. The only exception is the initial down payment and the first payment to allow the contractor to purchase the materials and the initial payment to the subcontractor(s). You have received $19,500 for the Down Payment and for starting the job. In addition, from the $44,000 total payment, you have received additional $24,500 for plumbing, electrical, and tiling. As stated above not only electrical and plumbing have been completed, you have not even started any tiling work at all.

**Moving Forward -** No payment is due until the completion of all electrical as explained in our agreement, and all plumbing and tiling in all three bathrooms. Start does not allow the Owner to benefit from the work, the completion, however does.

57.    DAVID NMN ABITTAN called Plaintiff immediately acknowledging the issue and promised to address them immediately. However, once again, that was another empty promise that he never intended to fulfill.

58.    On October 5, 2023, Plaintiff sent another letter with pictures informing PRIME CONSTRUCTION and individual defendants DAVID NMN ABITTAN, ORON AHARON AVITAN and SHAY YEFET that it was evident that significant progress has not been made to complete the work, despite numerous assurances following the previous complaints.

59.    Plaintiff complained that instead of completing the work, defendants have been demanding additional funds despite the inadequate progress they have made thus far.

15

60.     Plaintiff attached photographs taken from various areas of the property, clearly illustrating the lack of progress. Plaintiff once again reminded defendants that the situation rendered the property non-rentable, incurring approximately $666 in rent losses per day.

61.     On the October 5, 2023 letter, Plaintiff provided the defendants with specific issues that previously raised but remained unresolved:

a.      Inconsistent worker attendance during workdays.
b.      Limited workforce engagement, often with only one or two individuals on site.
c.      Failure to maintain a clean and safe work environment, posing hazards.
d.      Absence of a dedicated project manager overseeing daily progress.
e.      Delays caused by attempts to secure additional payments for various project stages, which is not in accordance with the contractual terms. The agreed-upon $44,500 payment was intended to cover advance payments for the project's completion.

62.     Plaintiff demanded fulfillment of the contractual obligations to complete the work promptly, or refund the sum of $44,500, allowing him to engage an alternative licensed contractor to expedite the project's completion and property listing for rent.

63.     On October 26, 2023, not only defendants refused to refund $44,500 that Plaintiff had paid them, continuing the work for completion, but also give Plaintiff a Notice of Mechanics Lien for $10,000. (Exhibit J)

**FIRST CAUSE OF ACTION**
**FRAUD - INTENTIONAL MISREPRESENTATION**
**(Against All Contractor Defendants and DOES 1-30)**

64.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

65.     Plaintiff claims that Contractor Defendants made false representations that harmed him.

66.     Defendant SHAY YEFET falsely represented to Plaintiff that he was a "Home improvement salesperson" under Bus & Prof C §7152(a), which required him to be registered under the California Business and Professions Code, Chapter 9. Contractors [Sections 7000 - 7191] in order to be engaged in the business of soliciting, selling, negotiating, or executing contracts for home improvements, for the sale, installation or furnishing of home improvement goods or services, on behalf of Defendant PRIME CONSTRUCTION.

67.     Defendant SHAY YEFET falsely represented to Plaintiff that after making a down payment of $1,000, PRIME CONSTRUCTION will start the project by August 4, 2023 and complete it in entirely within 4 weeks but not later than 6 weeks approximately by September 15, 2023.

16

COMPLIANT

68.     Defendant SHAY YEFET falsely represented to Plaintiff that PRIME CONSTRUCTION employs skilled crews who are experienced, and competent to satisfactorily do the work and finish it timely and properly.

69.     Defendant SHAY YEFET falsely represented to Plaintiff that inserting "upon start" for the itemized tasks was a common practice in the construction industry and has no material effect on Contractor Defendants' obligations to perform and will not be prejudicial to Plaintiff's rights.

70.     Defendant SHAY YEFET falsely represented to Plaintiff that PRIME CONSTRUCTION will use only licensed subcontractors for the remodeling projects.

71.     SHAY YEFET's representations were false, and he knew that the representations were false when he made them, or that he made the representations recklessly and without regard for its truth.

72.      SHAY YEFET intended that Plaintiff rely on the representations.

73.     Plaintiff] reasonably relied on SHAY YEFET's representations.

74.     Plaintiff was harmed; and his reliance on SHAY YEFET's representations was a substantial factor in causing him harm.

75.     All false representations made recklessly and without regard for their truth by SHAY YEFET were made in order to induce action by Plaintiff to hire PRIME CONSTRUCTION to do the remodeling work at the Property were the equivalent of misrepresentations knowingly and intentionally uttered.

76.     Plaintiff's actual and justifiable reliance on the SHAY YEFET's representations caused him to take a detrimental course of action to cancel the contract for painting job with another contractor, and hire PRIME CONSTRUCTION for the entire remodeling project in addition to the painting. The detrimental action taken by the Plaintiff caused lose rental income, expenditures for purchasing the material that either neither were used or became wasted due to the incompleteness of the work and the payments made to PRIME CONSTRUCTION without any benefits.

77.     Plaintiff is informed, believes and thereon alleges that Contractor Defendants' conducts as alleged in this Complaint were malicious, oppressive, and fraudulent justifying award of punitive damages under California Civil Code section 3294.

## SECOND CAUSE OF ACTION
### FRAUD - CONCEALMENT
### (Against All Contractor Defendants and DOES 1-30)

78.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

79.     Plaintiff claims that he was harmed because Contractor Defendants, and each and every of

17

concealed certain information that if were disclosed, Plaintiff would not agree to sign the HOME IMPROVEMENT CONTRACT, make payments to them, purchase the materials to be used by Contractor Defendants for the remodeling, and hire another contractor who would actually perform timely.

80.     Contractor Defendants owed Plaintiff a duty to disclose material facts under the terms, conditions, and covenants they voluntarily assumed by contractual undertaking by entering the HOME IMPROVEMENT CONTRACT on July 26, 2023.

81.     The relationship created between the parties is present because there was a transaction between the parties. Under the owner/contractor relationship caused by the HOME IMPROVEMENT CONTRACT. Contractor Defendants had a duty to disclose when parties entered into HOME IMPROVEMENT CONTRACT.

82.     Defendant makes representations that PRIME CONSTRUCTION was a licensed contractor to do the work, but intentionally did not disclose facts that the SHAY YEFT, Julio, or Carlos Siam who, is believed to be an unlicensed subcontractor working for PRIME CONSTRUCTION, supervised the workers and were responsible for timely and properly performance of the workers not only were not licensed, but also there will be no one from PRIME CONSTRUCTION would be at the Property daily to ensure workers show up, work, or making the work as agreed under the HOME IMPROVEMENT CONTRACT.

83.     Contractor Defendants did not disclose that they will not complete the project timely and that they will be making demand for additional payments from Plaintiff prior to completing the work or even making substantial progress. Contractor Defendants' failure to materially qualify the facts about timing of the completeness of the work was made to mislead Plaintiff.

84.     Contractor Defendants intentionally failed to disclose certain facts to Plaintiff that were known or accessible only to Contractor Defendants, and Contractor Defendants knew Plaintiff did not or could not know about how Contractor Defendants retain the service of their subcontractors such as Julio, Carlos Siam or other individuals who worked at the Property on their behalf. These material facts were not reasonably discoverable by the Plaintiff.

85.     Contractor Defendants actively conceals discovery from the Plaintiff not to learn about work schedules of Julio, Carlos Siam that they could not work at the Property because they were already working at other projects for other customers of PRIME CONSTRUCTION.

86.      Plaintiff did not know of the concealed facts and Contractor Defendants intended to deceive Plaintiff by concealing the facts. That had the omitted information been disclosed, Plaintiff

COMPLIANT

reasonably would have behaved differently by not making any payment to Contractor Defendants, requesting to rescind the HOME IMPROVEMENT CONTRACT immediately before expiration of three-day cancellation period, and hire another contractor instead.

87.    Plaintiff was harmed; and Contractor Defendants' concealment was a substantial factor in causing of Plaintiff's harm when Contractor Defendants failed to perform resulting to substantial loss of rental income.

88.    Plaintiff is informed, believes and thereon alleges that Contractor Defendants' conducts as alleged in this Complaint were malicious, oppressive, and fraudulent justifying award of punitive damages under California Civil Code section 3294.

### THIRD CAUSE OF ACTION
### FRAUD - FALSE PROMISE
### (Against All Contractor Defendants and DOES 1-30)

89.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

90.    "Under Civil Code section 1709, one is liable for fraudulent deceit if he 'deceives another with intent to induce him to alter his position to his injury or risk. Section 1710 of the Civil Code defines deceit for the purposes of Civil Code section 1709 as, inter alia, '[a] promise, made without any intention of performing it. The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.

91.    On August 4, 2023, PRIME CONSTRUCTION assigned Julio as its subcontractor. After Plaintiff complained to Contractor Defendants about the Julio's quality, the scope of the work, and refusal to clean up the work from the trash and other materials created by the demolishing, PRIME CONSTRUCTION replaced Julio and replaced it with Carlos Siam on around August 31, 2023.

92.    Contractor Defendants promised that Carlos Siam and 6-7 of his crew would come to the Property to finish the work as timely as possible to make up for the delayed caused previously. Plaintiff alleges Contractor Defendants committed promissory fraud, a subspecies of fraud and deceit. Contractor Defendants made promises to complete the remodeling work at the Property no later than six weeks after the start date of August 4, 2023 or no later than September 15, 2023.

93.    SHAY YEFET on behalf of PRIME CONSTRUCTION promised that work would be completed no later than 4-6 from the start day of August 4, 2023.

94.    Contractor Defendants, however, made those promises without such intention, which is an

19

implied misrepresentation of fact that may be actionable fraud.

95.    Plaintiff was harmed because Contractor Defendants made false promises that did not intend to perform this promise when they made it.

96.    Contractor Defendants intended that Plaintiff rely on these promises. In fact, Plaintiff reasonably relied on Contractor Defendants' promises.

97.    Contractor Defendants did not perform the promised act;

98.    Plaintiff was harmed; and his reliance on Contractor Defendants' promise was a substantial factor in causing him harm.

99.    Plaintiff is informed, believes and thereon alleges that Contractor Defendants' conducts as alleged in this Complaint were malicious, oppressive, and fraudulent justifying award of punitive damages under California Civil Code section 3294.

## FOURTH CAUSE OF ACTION
### VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION
### (Against All Contractor Defendants and DOES 1-30)

100.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

101.    At all times relevant, Defendant wrongfully and unlawfully acted as described in this Complaint by rendering construction services without being duly licensed under the California State license law of the state of California.

102.    Plaintiff is a consumer affected by Contractor Defendants' violations and seeks relief as authorized by Business and Professions code sections 7028.4 and 7031, including restitution of all sums that SHAY YEFET, DAVID NMN ABITTAN, and ORON AHARON AVITAN directed Plaintiff to pay to PRIME CONSTRUCTION.  In this regard, SHAY YEFET, DAVID NMN ABITTAN, and ORON AHARON AVITAN directed Plaintiff to make payment to PRIME CONSTRUCTION during the course of the construction for the construction services that Julio, Carlos Siam rendered as an unlicensed contractor.

103.    Because said Contractor Defendants acted as contractors within the meaning of Business and Professions code section 7026 at all times relevant to this action, but without holding a valid contractor's license as required by Business and Professions code section 7028, Plaintiff is entitled to treble damages and, if the court's discretion so determines, attorney's fees and costs incurred in connection with this action.

///

///

20

COMPLIANT

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Contractor Defendants and DOES 1-30)**

104.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

105.    During and as part of their performance of each of their contracts, Contractor Defendants negligently advised Plaintiff on a number of issues relating to the construction and remodeling of bathrooms, balcony, painting, and including without limitation, regarding the estimated time for completion of the work, requiring Plaintiff to find and order the material during the construction ignoring the fact that Plaintiff had no knowledge, or experience of the technical specification of the correct material that resulted to requiring Plaintiff to unnecessarily spend additional money to purchase the material that were not used.

106.    Contractor Defendants, and each of them, failed to use the skill and care that a reasonably prudent professional would have used under similar circumstances.

107.    In this regard, Contractor Defendants should have known that the estimated time for completion of work would be substantially greater than 4-6 weeks, and the completion would not be feasible by September 15, 2023.

108.    But for Contractor Defendants' representation that the entire project as specified in the THIRD AMENDED HOME IMPROVEMENT CONTRACT will be finished within 4-6 weeks, Plaintiff would not agree to expand the project from the remodeling of the master bathroom to the Jack & Jill bathroom, balcony, garage, and installation of door knobs, levers, dead bolt locks, hinges, and recess lights and air ventilation fans.

109.    As a direct and proximate result of Contractor Defendants negligence, Plaintiff has suffered actual damages, including without limitation costs of repairing the defective construction, diminution in value of the property, loss of use, and loss of the rental income in an amount not yet known, but believed to be in excess of $250,000 and to be proven at trial.

**SIXTH CAUSE OF ACTION**
**BREACH OF WRITTEN CONTRACT**
**(Against All Contractor Defendants and DOES 1-30)**

110.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

111.    On July 26, 2023, Plaintiff entered onto a HOME IMPROVEMENT CONTRACT, orally and in writing, that contained in several documents, with Contractor Defendants for the

COMPLIANT

performance of a home improvement as defined in Section 7151 that included all labor, services, and materials to be furnished and performed thereunder.

112.    The HOME IMPROVEMENT CONTRACT was between PRIME CONSTRUCTION signed by its salesperson, whether or not he was a home improvement salesperson, and Plaintiff, the owner of the Property for the installation, or furnishing of home improvement goods or services.

113.    Each of the Plaintiff's contracts with Contractor Defendants contained the implied term that Contractor Defendants would conform their work to all applicable building code requirements of the State of California, County of Los Angeles, and City of Los Angeles.

114.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by collecting payment for work not yet completed in addition to the $1,000 down payment.

115.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by requesting payments after receiving $1,000 down payment on August 2, 2023, $19,147.50 on August 4, 2023, $14,352.50 on August 14, 2023 (Check #1060), and $10,000 on August 18, 2023 (Check #1061)

116.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by refusing to perform to complete the work after not receiving additional payments.

117.    Plaintiff claims that PRIME CONSTRUCTION breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by failing to perform the work specified therein.

118.    Contractor Defendants' construction services and work did not conform to all applicable building code requirements of the State of California, County of Los Angeles, and City of Los Angeles.

119.    Because of Contractor Defendants' breach of contract, Plaintiff is damaged in a sum not yet known but believed to be in excess of $250,000 and in an amount to be proven at trial.

120.    Plaintiff also claims that PRIME CONSTRUCTION's breach of HOME IMPROVEMENT CONTRACT and its amendments caused harm to Plaintiff for loss of rental income in the amount of at least $20,000 per month from August 4, 2023.

121.    Plaintiff also claims that PRIME CONSTRUCTION's breach of HOME IMPROVEMENT CONTRACT and its amendments continues to cause harm to Plaintiff for the additional losses

COMPLIANT

resulting for redoing the defective work done by PRIME CONSTRUCTION and mitigation of the defects caused by their sub-standard work needed from other contractors.

**SEVENTH CAUSE OF ACTION**
**BREACH OF ORAL CONTRACT**
**(Against All Contractor Defendants and DOES 1-30)**

122.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

123.    Under the HOME IMPROVEMENT CONTRACT, SHAY YEFET agreed to finish the work within 4-6 weeks no later than September 15, 2023.

124.    Plaintiff claims that PRIME CONSTRUCTION. And SHAY YEFET breached HOME IMPROVEMENT CONTRACT and its three subsequent amendments by failing to complete the work by the promised date of September 15, 2023, or within 4-6 weeks from the start date of August 4, 2023.

125.    Contractor Defendants were aware that the subject property is for lease. Contractor Defendants were told by Plaintiff that the Property was under the lease and Plaintiff needs to put the Property on the market for new lease agreements. Contractor Defendants became aware that time of the essence and any delay on the completion of the work directly results to harm to Plaintiff causing him loss of rental income at $20,000 per month.

126.    Contractor Defendants breached the oral contract to compete the remodeling work at the Property as agreed by the HOME IMPROVEMENT CONTRACT and its amendments by failing to complete the work by September 15, 2023.

**EIGHTH CAUSE OF ACTION**
**BREACH OF COVENANT OF GOOD-FAITH AND FAIR DEALING**
**(Against All Contractor Defendants and DOES 1-30)**

127.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

128.    In every contract or agreement there is an implied promise of good faith and fair dealing. This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation.

129.    Plaintiff and Contractor Defendants entered onto HOME IMPROVEMENT CONTRACT on July 26, 2023 and its amendments shortly thereafter.

23

COMPLIANT

130.    Plaintiff did all, or substantially all of the significant things that the contract required him to do including paying the down payment, making additional $43,500 payments, purchasing all furnished materials that were necessary for the Contractor Defendants to perform and was excused to make the payments for the remaining balance due to Contractor Defendants' failure to make sufficient performance.

131.    All conditions required for Contractor Defendants' performance had occurred.

132.    Contractor Defendants did not secure skilled workers to the work, did not supervise the workers at the job site, did not monitor that the workers were actually show up to work, did not ensure that the work is actually done under the terms of the contract, did not provide a licensed foreman to the job, did not advise Plaintiff to purchase the right finished materials, did not complete the work timely, did not do the work to Plaintiff's satisfaction under the commonly accepted standards in the industry, improperly demanded additional payments in order to continue the work, refused to continue the work, and abandoned the work short of completion.

133.    By doing so, Contractor Defendants did not act fairly and in good faith that caused Plaintiff to be harmed by their conducts.

134.    Contractor Defendants' breach of the covenant was more and separate from the breach of written and oral contracts by depriving Plaintiff to receive the full benefits of services promised by Contractor Defendants for remodeling the Property for lease with remodeled house.

135.    Plaintiff retained the services of Contractor Defendants under the reasonable belief that they are skilled, experienced, honest, and trustworthy for receiving the funds prior to the completion of the work, and expecting a timely completion as promised. Contractor Defendants breached the covenants by failing to satisfy both conditions.

136.    By failing to complete the work timely, Contractor Defendants unfairly frustrated Plaintiff from receiving the benefits of the agreement actually made, none were discretionary under the contract.

137.    By asserting the term "upon start" on the HOME IMPROVEMENT CONTRACT and its amendments, Contractor Defendants, acted in bad faith to make the demands for funds prior to actually performing the services justifiable as a contractual term. Contractor Defendants' use of the term "upon start" was in bad faith and solely was used to frustrate Plaintiff from receiving just benefits under the contract.

138.    Contractor Defendants' breach of the covenant undermined and prevented the Plaintiff from leasing the Property causing additional subsequent harm for loss of rental income.

COMPLIANT

## NINTH CAUSE OF ACTION
### NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
#### (Against All Contractor Defendants and DOES 1-30)

139.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

140.    Contractor Defendants negligently interfered with a relationship between Plaintiff and the prospective lessees that probably would have resulted in an economic benefit to the Plaintiff.

141.    Plaintiffs and prospective lessees were in an economic relationship by which Plaintiff could have received rental income from leasing the Property at least for $20,000 per month.

142.    Contractor Defendants knew that the Property is rental, has been leased recently and is going to be put back in the market for lease after the completion of the remodeling by Contractor Defendants.

143.    Contractor Defendants knew that the fair market lease value for the Property is at least $20,000 a month.

144.    Contractor Defendants knew or should have known that the relationship between Plaintiff and prospective lessees would be disrupted if they fail to act with reasonable care to finish the remodeling timely and properly as required by the HOME IMPROVEMENT CONTRACT and its amendments.

145.    Contractor Defendants failed to act with reasonable care to finish the remodeling timely and properly as required by the HOME IMPROVEMENT CONTRACT and its amendments.

146.    Contractor Defendants engaged in wrongful conduct through fraud, violation of statutes, breaching written and oral contracts, and acted in bad faith in breaching the covenant of the good faith and fair dealing as alleged in this complaint.

147.    The relationship between Plaintiff and prospective lessees were disrupted causing harm to Plaintiff.

148.    Contractor Defendants' wrongful conduct was a substantial factor in causing Plaintiff's harm.

## TENTH CAUSE OF ACTION
### CONVERSION
#### (Against All Contractor Defendants and DOES 1-30)

149.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

150.    Plaintiff claims that Contractor Defendants wrongfully exercised control over his personal property.

COMPLIANT

151.     Plaintiff owned an American Standard bathtub that he had purchased from Home Depot for $798) Bathtub $699 and Whirlpool Soak Drain for $99) on September 13, 2022 that was replaced with other bathtubs by the Contractor Defendants in 2023. After Contractor Defendants replaced the   American Standard tub, they took it without permission from the Property.

152.     Plaintiff also purchased ten Behr Premiums Plus 5 gallons #12 Swiss Coffee Semi-Gloss Enamel Low Oder Interior Paint and Primer at $1,900 from Home Depot that were taken by the Contractor Defendants without Plaintiff's permission. (Exhibit K)

153.     After removing a Kohler Whirlpool tub and its tub faucet sets from the master bathroom for making a tile bathtub, Contractor Defendants also took the Kohler Whirlpool tub and its tub faucet sets from the Property without the Plaintiff's permission.

154.     Contractor Defendants substantially interfered with Plaintiff's property by knowingly or intentionally taking possession of the bathtubs, faucets and paints, preventing the Plaintiff from having access to his items of personal property and refusing to return the items after demanding their return.

155.     Plaintiff did not consent, and he was harmed; and Contractor Defendants' conduct was a substantial factor in causing Plaintiff's harm.

## ELEVENTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
### (Against All Contractor Defendants and DOES 1-30)

156.     Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

157.     Contractor Defendants made certain representations with no reason to believe that they were true. (See Civ. Code, § 1710(2).) "Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit. 'Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.

158.     Plaintiff was harmed because Contractor Defendants negligently misrepresented material facts as true.

159.     Contractor Defendants' representations that they work at the Property for work specified under HOME IMPROVEMENT CONTRACT will be done by licensed contractors and subcontractors or licensed foreman, and that the work will be completed no later than six weeks from the start on July 26, 2023, and that PRIME CONSTRUCTION will make sure there will be a proper project management in place at the Property to ensure the workers show up for work and

26

COMPLIANT

actually do work were not true.

160.    Even if Contractor Defendants may have honestly believed that the representations were true. Contractor Defendants had no reasonable grounds for believing the representations were true when they made it. Defendants PRIME CONSTRUCTION, DAVID NMN ABITTAN, and ORON AHARON AVITAN, knew their work load, how many working subcontractor they had access to, at what job site these subcontractors were working, how long these subcontractors were engaged at those other job site, and when they are practically able to complete the work at the Property.

161.    On information and belief, Contractor Defendants negligently misrepresented several material matters to Plaintiff, including without limitation that:

a.      The work will be done by licensed subcontractors;
b.      The project will be supervised by a licensed foreman;
c.      The project will be completed within 4-6 weeks after the start;
d.      Other than the down payment, Plaintiff will not be required to advance payments prior to completion of work;
e.      SHAY YEFET, Julio and Carlos Siam were sufficiently knowledgeable, experienced, qualified and capable of providing construction services in compliance with the Business and Professions Code;

162.    The representations made by Contractor Defendants were in fact false.  Among other things, the true facts were that:

f.      The work was not done by licensed subcontractors;
g.      The project was not supervised by a licensed foreman;
h.      The project as not completed within 4-6 weeks after the start;
i.      Other than the down payment, Plaintiff was required to advance payments prior to completion of work;
j.      SHAY YEFET, Julio and Carlos Siam were not sufficiently knowledgeable, experienced, qualified and capable of providing construction services in compliance with the Business and Professions Code;

163.    Contractor Defendants intended that Plaintiff rely on their representations. And in fact, Plaintiff reasonably relied on Contractor Defendants' representations that resulted to his harm.

164.    Plaintiff's reliance on Contractor Defendants' representations was a substantial factor in causing his harm.

165.    As a direct and proximate result of Contractor Defendants negligent misrepresentation Plaintiff has suffered actual damages, including without limitation costs of redoing the defective work done by PRIME CONSTRUCTION and mitigation of the defects caused by their sub-standard work needed from other contractors believed to be in excess of $250.000 and to be proven at trial.

///

COMPLIANT

## TWELFTH CAUSE OF ACTION
### BREACH OF THIRD PARTY BENEFICIARY CONTRACT
#### (Against BUSINESS ALLIANCE INSURANCE COMPANY, and Does 1-30)

166.    Plaintiff re-alleges and incorporates by reference the foregoing allegations as though set forth herein.

167.    Plaintiff is informed and believes and thereupon alleges that BUSINESS ALLIANCE INSURANCE COMPANY issued a licensure surety bond to PRIME CONSTRUCTION pursuant to Business and Professions Code section 7071.6.

168.    Plaintiff is informed and believes and thereupon alleges that the licensure surety bonds were issued for the protection and benefit of each and every homeowner that contracted with PRIME CONSTRUCTION and Does 1-30 for home improvements at a personal residence.

169.    The contracts between Plaintiff and PRIME CONSTRUCTION and Does 1-30 were for improvements at the Plaintiff's personal residence.

170.    Plaintiff is authorized by Business and Professions Code section 7071.5 to pursue his bond claims against that BUSINESS ALLIANCE INSURANCE COMPANY and Defendant 1-30 for those damages caused by violations of Chapter 9 of the Contractors State License Law.

171.    It is a violation of section 7109 for a licensee to willfully depart from accepted trade standards for good and workmanlike construction.  It is a violation of section 7110 for a licensee to willfully depart from building laws.  It is a violation of section 7113 for a licensee to fail to complete a construction project in any material respect.

172.    Plaintiff is informed and believes and thereupon alleges at all times relevant herein, PRIME CONSTRUCTION and Does 1-30 violated sections 7109, 7110 and 7113, among others, of the Contractors State License Law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Contractor Defendants and DOES 1-30 as follows:

1.    Actual damages according to proof;

2.    Past and Future economic loss, Past and Future noneconomic loss, including physical pain/mental suffering;

3.    For pre-judgment interest;

4.    Damages—Benefit of the Bargain Rule, or in the alternative damages Out of Pocket Rule;

5.    For punitive damages as allowed by law;

6.    For reasonable attorneys' fees; and for costs of suit incurred herein;

28

7.      For such other and further relief as the court deems just and proper.

As against BUSINESS ALLIANCE INSURANCE COMPANY and DOES 1-30 for:

     1.   The full amount available under the licensure bond;

     2.   Interest;

     3.   Costs of suit herein incurred; and,

     4.   For such other and further relief as the Court may deem just and proper.

Dated: November 13, 2023          **MOSTAFAVI LAW GROUP, APC**

*Amir Mostafavi*

By:_____
AMIR MOSTAFAVI, Esq.
Attorney for Plaintiff
NM Family Trust

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury for all claims.

Dated: November 13, 2023          **MOSTAFAVI LAW GROUP, APC**

*Amir Mostafavi*

By:_____
AMIR MOSTAFAVI, Esq.
Attorney for Plaintiff
NM Family Trust

29

COMPLIANT

# EXHIBIT A

STATE OF CALIFORNIA



# CONTRACTORS STATE LICENSE BOARD

Pursuant to Chapter 9 of Division 3 of the Business and Professions Code
and the Rules and Regulations of the Contractors State License Board,
the Registrar of Contractors does hereby issue this license to:

## YOUR PRIME CONTRACTOR INC
## DBA PRIME CONSTRUCTION

### License Number 1031676

to engage in the business or act in the capacity of a contractor in the following classifications:

B - GENERAL BUILDING CONTRACTOR
C54 - TILE (CERAMIC AND MOSAIC)

Witness my hand and seal this day.

October 20, 2017

**Issued October 5, 2017**

CERTIFIED COPY

Kevin J. Albanese, Board Chair

David R. Fogt, Registrar of Contractors

This license is the property of the Registrar of Contractors,
is not transferable, and shall be returned to the Registrar
upon demand when suspended, revoked, or invalidated
for any reason. It becomes void if not renewed.

13L-24 (REV. 03/15)

OSP 15 136646
AUDIT NO: 638383

# EXHIBIT B

# HOME IMPROVEMENT CONTRACT

**THIS AGREEMENT, DATED** 3/6 7/26/2023 , **IS BETWEEN:**

The Notice of Cancellation may be mailed to the address of the contractor as shown below:

Colony Kerer / Your Prime Construction **AND** Amir Mostafavi Truster of NY Family Trust
(Contractor's Name)                                         (Owner's Name)

1031676                                                     1407 Monte Grande Pl.
(Contractor's License Number)                               (Job Address)

23222 Sherman Way                                           Pacific Palisades CA 70272
(Contractor's Address)                                      (City, State & Zip)

#101 Canoga Park ca 91303                                   (310) 849-2030
(City, State & Zip)                                         (Home Telephone)          (Work Telephone)

866-909-3006                                                Same
(Contractor's Telephone)                                    (Cell Phone)              (Fax Number)

**Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed:**
Contractor will furnish all labor and materials to construct and complete in a good, workmanlike and substantial manner:
**SEE ATTACHED CONTINUATION/ADDENDUM FOR DESCRIPTION OF WORK**

**NOT INCLUDED:** The following items are specifically excluded or are to be provided by Owner. NOTE: Entire agreement is contained herein. NO ORAL REPRESENTATION shall be considered part of this contract unless listed in writing.

Approximate Start Date: _____     Approximate Completion Date: _____
All start and completion dates are approximate. (See additional terms and conditions on reverse side).
The work to be performed under this contract shall be commenced on approximate start date as long as any required building permits are received and any approved funds are paid to Contractor. The project will be completed by approximate completion date subject to permissible delays.

**CONTRACT PRICE: $** 25,000.00     **DOWN PAYMENT: $** 1000.00
(Owner agrees to pay Contractor total cash price)     (If any; if not applicable, put "none")

Contract price is subject to additions and deductions pursuant to changes agreed upon in writing by the parties and subject to allowances.
**THE DOWN PAYMENT MAY NOT EXCEED $1,000 OR 10% OF THE CONTRACT PRICE, WHICHEVER IS LESS.**
**SCHEDULE OF PROGRESS PAYMENTS:** The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment.
**IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWNPAYMENT.**

(Work or Services to be Performed or Materials to be Supplied)     **AMOUNT**

1. Apon Star of the Job          $ 12,500
2. Apon complition of tiling part $ 8000
3. Apon Finish                    $ 3500
4. _____       $ _____
5. _____       $ _____
6. _____       $ _____

Upon satisfactory payment being made for any portion of the work performed, the contractor shall, prior to any further payment being made, furnish to the person contracting for the home improvement work a full and unconditional release from any claim or mechanic's lien pursuant to Section 3114 of the Civil Code for that portion of the work for which payment has been made.

Contractor may, if requested, refer owner to a finance company, but any negotiations or arrangements between owner and finance company is owners sole responsibility. Unless specifically stated above that this Agreement is subject to approval of financing, this Agreement is not subject to obtaining or approval of financing.

**List of Documents to be incorporated into the Contract:** Notice Concerning Commercial General Liability Insurance (CGL); Notice Concerning Worker's Compensation Insurance; Arbitration of Disputes; Notice of Cancellation; Three-Day Right to Cancel; Mechanic's Lien Warning; Information about Contractors' State License Board, Checklist for Homeowners. A notice concerning Commercial General Liability Insurance is attached to this contract. A notice concerning Workers' Compensation Insurance is attached to this contract. (list any additional attachements):

Owner acknowledges receipt of a fully completed copy of this agreement and all documents listed above: _____

| ARBITRATION | You (the owner or tenant) have the right to require the Contractor to have a performance and payment bond; however, the Contractor can charge you for the costs of procuring a bond. | RIGHT TO CANCEL |
|---|---|---|
| OWNER: Initial this box if you agree to arbitration. Review the "Arbitration of Disputes" section attached | | The law requires that the contractor give you a notice explaining your right to cancel. Initial the checkbox if the contractor has given you a "Notice of the Three-Day Right to Cancel" |

**You are entitled to a completely filled in copy of this agreement, signed by both you and the contractor, before any work may be started.**

X _____     7/26/2023     X _____     7/26/23
(Owner's Signature)          (Date)          (Salesperson's Signature)     (Date)

X _____     _____     State Registration Number _____
(If more than one Owner, please Sign Here)     (Date)

BY SIGNING ABOVE, OWNER ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT AND ALL ATTACHED DOCUMENTS

NOTICE TO OWNER: THIS AGREEMENT IS SUBJECT TO HOME OFFICE APPROVAL BEFORE IT BECOMES EFFECTIVE

# ADDITIONAL TERMS AND CONDITIONS

1. **OWNER'S RESPONSIBILITIES.** The Owner is responsible to supply water, gas, sewer and electrical utilities unless otherwise agreed to in writing. Electricity and water to the site is necessary. Owner agrees to allow and provide Contractor and his equipment access to the property. The Owner is responsible for having sufficient funds to comply with this agreement. This is a cash transaction unless otherwise specified. The Owner is responsible to remove or protect any personal property and Contractor is not responsible for same or for any carpets, drapes, furniture,
driveways, lawns, shrubs, etc. The Owner shall point out and warrant the property lines to Contractor, and shall hold Contractor harmless for any disputes or errors in the property line or setback locations.

2. **DELAYS.** Contractor agrees to start and diligently pursue work through to completion, but shall not be responsible for delays for any of the following reasons: failure of the issuance of all necessary building permits within a reasonable length of time, funding of loans, disbursement of funds into control or escrow, acts of neglect or omission of Owner or Owner's employees or Owner's agent; acts of God, stormy or inclement weather, strikes, lockouts, boycotts or other labor union activities, extra work ordered by Owner, acts of public enemy, riots or civil commotion, inability to secure material through regular recognized channels, imposition of Government priority or allocation of materials, failure of Owner to make payments when due, or delays caused by inspection or changes ordered by the inspectors of authorized Governmental bodies, or for acts of independent Contractor's, or other causes beyond Contractor's reasonable control.

3. **PLANS AND SPECIFICATIONS.** If plans and specifications are prepared for this job, they shall be attached to and become a part of this Agreement. Contractor will obtain all required building permits, but Owner will pay for permits, assessments and charges required by public bodies and utilities for financing or repaying the
cost of sewers, storm drains, water service, other utilities, water hook-up charges and the like.

4. **SUBCONTRACTS.** The Contractor may subcontract portions of this work to properly licensed and qualified subcontractors.

5. **COMPLETION AND OCCUPANCY.** Owner agrees to sign and record a notice of completion within five days after the project is complete and ready for occupancy. If the project passes final inspection by the public body but Owner fails to record Notice of Completion, then owner hereby appoints Contractor as Owner's agent to sign and record a Notice of Completion on behalf of Owner. This agency is irrevocable and is an agency coupled with an interest. In the event the Owner occupies the project or any part thereof before the Contractor has received all payment due under this contract, such occupancy shall constitute full and unqualified acceptance of all the Contractor's work by the Owner and the Owner agrees that such occupancy shall be a waiver of any and all claims against the Contractor.

6. **INSURANCE AND DEPOSITS.** Owner will procure at his own expense and before the commencement of any work hereunder, fire insurance with course of construction, vandalism and malicious mischief clauses attached, such insurance to be a sum at least equal to the contract price with loss, if any, payable to any beneficiary under any deed of trust covering the project, such insurance to name the Contractor and his subcontractors as additional insured and to protect Owner, Contractor and his subcontractors and construction lender as their interests may appear; should Owner fail to do so, Contractor may procure such insurance as agent for and at the expense of Owner, but is not required to do so. If the project is destroyed or damaged by disaster, accident or calamity, such as fire, storm, earthquake, flood, landslide, or by theft or vandalism, any work done by the Contractor rebuilding or restoring the project shall be paid by the Owner as extra work. Contractor shall carry Worker's Compensation Insurance for the protection of contractor's employees during the progress of the work. Owner shall obtain and pay for insurance against injury to his own employees and persons under Owner's discretion and persons on the job site at Owner's invitation.

7. **RIGHT TO STOP WORK.** Contractor shall have the right to stop work if any payment shall not be made, when due, to Contractor under this agreement: Contractor may keep the job idle until all payments due are received. Such failure to make payment, when due, is a material breach of this Agreement.

8. **CLEAN UP.** Contractor will remove from Owner's property debris and surplus material created by his operation and leave it in a neat and broom clean condition.

9. **LIMITATIONS.** No action of any character arising from or related to this contract or the performance thereof, shall be commenced by either party against the other more than two years after completion or cessation of work under this contract.

10. **VALIDITY AND DAMAGES.** In case one or more of the provisions of this Agreement or any application thereof shall be invalid, unenforceable or illegal, the validity, enforceability and legality of the remaining provisions and any other applications shall not in any way be impaired thereby. Any damages for which Contractor may be liable to Owner shall not, in any event, exceed the cash price of this contract.

11. **ASBESTOS, LEAD, MOLD, AND OTHER HAZARDOUS MATERIALS.** Owner hereby represents that Owner has no knowledge of the existence on or in any portion of the premises affected by the Project of any asbestos, lead paint, mold (including all types of microbial matter

or microbiological contamination, mildew or fungus), or other hazardous materials. Testing for the existence of mold and other hazardous materials shall only be performed as expressly stated in writing. Contractor shall not be testing or performing any work whatsoever in an area that is not identified in the Scope of Work. Unless the contract specifically calls for the removal , disturbance, or transportation of asbestos, polychlorinated biphenyl , (PCB), mold, lead paint, or other hazardous substances or materials, the parties acknowledge that such work requires special procedures, precautions, and/or licenses. Therefore, unless the contract specifically calls for same, if Contractor encounters such substances, Contractor shall immediately stop work and allow the Owner to obtain a duly qualified asbestos and/or hazardous material contractor to perform the work or Contractor may perform the work itself at Contractor's option. Said work will be treated as an extra under this contract, and the Contract Term setting forth the time for completion of the project may be delayed. In the event that mold or microbial contamination is removed by Contractor. Owner understands and agrees that due to the unpredictable characteristics of mold and microbial contamination, Contractor shall not be responsible for any recurring incidents of mold or microbial contamination appearing in the same or any adjacent location, subsequent to the completion of the work performed by Contractor. Owner agrees to hold Contractor harmless, and shall indemnify Contractor harmless for any recurrence of mold or microbial contamination. Owner also agrees that Contractor shall not be responsible, and agrees to hold Contractor harmless and indemnify Contractor for the existence of mold or microbial contamination in any area that Contractor was not contracted to test and/or remediate. Further, Owner is hereby informed, and hereby acknowledges, that most insurers expressly disclaim coverage for any actual or alleged damages arising from mold or microbial contamination. Contractor makes no representations whatsoever as to coverage for mold contamination, though at Owner's additional expense, if requested in writing, contractor will inquire as to the availability of additional coverage for such contamination or remediation, and if available, will obtain such coverage if the additional premium is paid for by Owner as an extra.

12. **STANDARDS OF MATERIALS AND WORKMANSHIP.** Contractor shall use and install "standard grade" or "builder's grade" materials on the project unless otherwise stated in the Scope of Work, the plans, and/or specifications provided to Contractor prior to the execution of this Agreement. Unless expressly stated in the Scope of Work, Contractor shall have no liability or responsibility to restore or repair the whole or any part of the existing premises affected by the work of Contractor to be performed herein or by any subsequently agreed-upon change order, including as an illustration and not as a limitation, any landscaping, sprinkler system, flooring and carpet, wall coverings, paint, tile, or decorator items.

13. **INTEREST.** Overdue payments will bear interest at the rate of 1½ % per month ( 18% per annum).

14. **CHANGE IN THE WORK.** Should the Owner, construction lender, or any public body or inspector direct any modification or addition to the work covered by this contract, the contract price shall be adjusted accordingly.
Modification or addition to the work shall be executed only when a Contract Change Order or Continuation/Addendum has been signed by both the Owner and the Contractor. The change in the Contract Price caused by such Contract Change shall be as agreed to in writing, or if the parties are not in agreement as to the change in Contract Price, the Contractor's actual cost of all labor, equipment subcontracts and materials, plus a Contractor's fee of 20% shall be the change in Contract Price.
The Contract Change Order may also increase the time within which the contract is to be completed.

15. **NOTE ABOUT EXTRA WORK AND CHANGE ORDERS.** Extra Work and Change Orders or Continuation/Addendums become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments. You, the buyer, may not require a contractor to perform extra or change-order work without providing written authorization prior to the commencement of any work covered by the new change order. Extra work or a change order is not enforceable
against a buyer unless the change order also identifies all of the following in writing prior to the commencement of any work covered by the new change order:

(I)The scope of work encompassed by the order; (II) The amount to be added or subtracted from the contract; and (III) The effect the order will make in the progress payments or the completion date. The contractor's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.

16. **EXISTING DEFECTS.** Contractor Is not responsible for existing structural defects, defective soil conditions, or existing code violations. Despite the exercise of reasonable care during construction, conditions may be discovered, the repair of which are outside the scope of this Agreement. The cost to repair such defective conditions will be added as an extra charge to this Agreement by way of a change order or continuation/addendum.

# CONTINUATION /ADDENDUM

Your Prime contractor

**(Contractor's Name)**

**(Type of Project)**

PROJECT: Amir Mostakavi, Trustee
**(Customer Name)**

1407 Monte Grande Pl.
**(Address)**

Pacific Palisades, CA 90272
**(City, State and Zip)**

This is a Continuation or Addition to original Home Improvement Contract dated _____ ,20_____

Home # _____    Work # _____    Cell # (310) 849-2030

## ATTENTION ALL HOMEOWNERS

It is illegal for any representatives to ask for checks to be issued in their names or to ask for cash.
Please contact the Company immediately should this happen to you.
We will accept no responsibility for any checks issued to others.
*NOTE: price does not include permit fees unless specified below.

**(Continue Contract Provision Here)**

Scoop of work

1. Clear area for start of Work and Preparation for Work
2. Down Shower Wall and make it Up-to-Date.
3. Prepare th Flooring in th Shower, Toilet and Vanit area for tiling and install tiles
4. Fix th Ceiling and update th recess lights, speakers, and relocate th fans and install th need fan.
5. Prepare Outlets/Switches and make it up to th Code. code.
6. Install Toilet and Water and drainage connection and follow th
7. Prepare th Vanity area and install th new Vanity and mirrors
8. Prepare th shower area and install shower door and fixed glass
9. Install bathroom Faucets for th Vanity, shower and close wet to spatta bath tub.
10. Tiles around th shower, bathroom and vanity area, on th Walls

Approximate Start Date: _____    Approximate Date of Completion: _____

TOTAL PRICE OF ABOVE: $ _____    Down Payment: $ _____
(Includes Labor and Materials)

**Payment Schedule as Follows:**

$ _____ due upon cost of Ma    Finish matirer up to $4000 contractor cover
$ Area sample _____ due upon _____
$ upon Start _____ due upon 1000
$ upon Start of due upon 12.500
$ Work _____ due upon 8500
$ upon sanitation _____ due upon 2300 3500

*The above continuation /addendum is subject to company approval. Customer understands that project could be delayed due to plans, permits, city requirements and additional work added to original contract, thus, all start and completion dates are approximate. Customer further understands that entire agreement is contained herein. No oral representation shall be considered part of this contract unless listed in writing. All other terms and conditions stated in original contract to remain the same.

Contractor Initials _____ 11/20/2023

Customer's Signature _____    Date ____ / ____ / ____

# CONTRACT CHANGE ORDER

☐ OWNER   ☐ ARCHITECT   ☐ CONTRACTOR   ☐ FIELD   ☐ OTHER

PROJECT:_____ CHANGE ORDER#_____ DATE:_____

Your Prime contractor     Amir Mostakavi
(Company)             (Customer's Name)

22222 Sherman Way     1407 Monte Grande Pl
(Address)             (Address)

Canoga Park CA 91303    
(City, State, Zip)            (City, State, Zip)

866 909 3006     (310) 849-7030
(Phone)    (Fax)             (Phone)

This contract change order modifies and amends the contract between the above named parties dated

_____:_____:_____

Material Costs

1. Material will be Purchased by Owner and Paid by
the Contractor up to $4,000.00 & The Total
Price of $25,000.00 include all labor & Matrials
for up to $4,000.00

Any cost excording $4,000 for Shower Glass, Vanity
Mirror, toilet, Faucets and Tiles will be Paid by
the owner in addition to $25,000.00

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by_____days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

_____     _____
(Contractor/Owner)           (Owner/Subcontractor)

_____     _____
(Date) 7/26/2023       7/26/2023 (Date)

# EXHIBIT C

# CHASE ◻ BUSINESS

Printed from Chase for Business

---

## CREDIT CARD (...2528)

### $1,000.00
Sale

Aug 2, 2023
Transaction date

Aug 3, 2023
Posted date

YPC

(866) 909-3006

---

| | |
|---|---|
| Description | YPC |
| Also known as | YPC |
| Merchant type | General contractors: residential and commercial |
| Method | Online, mail or phone |
| Card number | (...2528) |
| Category | Repair & maintenance |

---

Rewards earned with this transaction

| | |
|---|---:|
| + 1 Point per $1 earned on all purchases | 1,000 |
| Total Ultimate Rewards® points | 1,000 |

---

Transaction details may be preliminary or incomplete and may not match the transaction as it appears on your periodic statement, which is the official record of your account activity.

---

JPMorgan Chase Bank, N.A. Member FDIC        ©2023 JPMorgan Chase & Co.        Equal Housing Opportunity

# EXHIBIT D

④

# HOME IMPROVEMENT CONTRACT

**THIS AGREEMENT, DATED** _July 26, 2023_ **, IS BETWEEN:**

The Notice of Cancellation may be mailed to the address of the contractor as shown below:

_Your Prime Contractor_ **AND** _NM Family Trust, Trustee Amir Mostari Pai_
(Contractor's Name) — (Owner's Name)

_1031676_      _1407 Monte Grande Pl._
(Contractor's License Number) — (Job Address)

_22222 Sherman Way #101_      _Pacific Palisades_
(Contractor's Address) — (City, State & Zip)

_Canoga Park CA 91303_
(City, State & Zip)

_866 909 3006_      _(310) 849-2030_
(Contractor's Telephone) — (Cell Phone) / (Home Telephone) / (Work Telephone) / (Fax Number)

**Description of the Project and Description of the Significant Materials to be Used and Equipment to be Installed:**
Contractor will furnish all labor and materials to construct and complete in a good, workmanlike and substantial manner:
**SEE ATTACHED CONTINUATION/ADDENDUM FOR DESCRIPTION OF WORK**

_See Addendum_

**NOT INCLUDED:** The following items are specifically excluded or are to be provided by Owner. NOTE: Entire agreement is contained herein. NO ORAL REPRESENTATION shall be considered part of this contract unless listed in writing.

_Vanity ✗ All Finish Materials such as Vanity, faucets, Valves, floor tile Wall tiles, Shower glass, Door lever, locks, mirrors, toilets, tubs_

**Approximate Start Date:** _Friday August 4, 2023_ **Approximate Completion Date:** _____

All start and completion dates are approximate. (See additional terms and conditions on reverse side).
**The work to be performed under this contract shall be commenced on approximate start date as long as any required building permits are received and any agreed upon funds are paid to Contractor. The project will be completed by approximate completion date subject to permissible delays.**

**CONTRACT PRICE: $** _89,300.00_      **DOWN PAYMENT: $** _2,000.00_
(Owner agrees to pay Contractor total cash price) — (If any; if not applicable, put "none")

Contract price is subject to additions and deductions pursuant to changes agreed upon in writing by the parties and subject to allowances.
**THE DOWN PAYMENT MAY NOT EXCEED $1,000 OR 10% OF THE CONTRACT PRICE, WHICHEVER IS LESS.**
**SCHEDULE OF PROGRESS PAYMENTS: The schedule of progress payments must specifically describe each phase of work, including the type and amount of work or services scheduled to be supplied in each phase, along with the amount of each proposed progress payment.**
**IT IS AGAINST THE LAW FOR A CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED OR FOR MATERIALS NOT YET DELIVERED. HOWEVER, A CONTRACTOR MAY REQUIRE A DOWNPAYMENT.**

(Work or Services to be Performed or Materials to be Supplied)      **AMOUNT**

1. _Upon start of job_    $ _17,500.00_
2. _Electrical and Plumbing_    $ _10,000.00_
3. _Tiling_    $ _10,000.00_
4. _Balcony_    $ _10,000.00_
5. _Painting_    $ _10,000.00_
6. _Door Knobs, levers, locks, recess, light, switch_    $ _19,500.00_
7. _Completion of Work in entirely_    _10,300.00_

Upon satisfactory payment being made for any portion of the work performed, the contractor shall, prior to any further payment being made, furnish to the person contracting for the home improvement work a full and unconditional release from any claim or mechanic's lien pursuant to Section 3114 of the Civil Code for that portion of the work for which payment has been made.

Contractor may, if requested, refer owner to a finance company but any negotiations or arrangements between owner and finance company is owners sole responsibility. Unless specifically stated above that this Agreement is subject to approval of financing, this Agreement is not subject to obtaining or approval of financing.

**List of Documents to be incorporated into the Contract:** Notice Concerning Commercial General Liability Insurance (CGL); Notice Concerning Worker's Compensation Insurance; Arbitration of Disputes; Notice of Cancellation; Three-Day Right to Cancel; Mechanic's Lien Warning; Information about Contractors' State License Board, Checklist for Homeowners. A notice concerning Commercial General Liability Insurance is attached to this contract. A notice concerning Workers' Compensation Insurance is attached to this contract. (list any additional attachments):

Owner acknowledges receipt of a fully completed copy of this agreement and all documents listed above:

| **ARBITRATION** | You (the owner or tenant) have the right to require the Contractor to have a performance and payment bond; however, the Contractor can charge you for the costs of procuring a bond. | _AM_ **RIGHT TO CANCEL** |
|---|---|---|
| OWNER: Initial this box if you agree to arbitration. Review the "Arbitration of Disputes" section attached | | The law requires that the contractor give you a notice explaining your right to cancel. Initial the checkbox if the contractor has given you a "Notice of the Three-Day Right to Cancel |

**You are entitled to a completely filled in copy of this agreement, signed by both you and the contractor, before any work may be started.**

X _[signature]_    _7/26/2023_      X _[signature]_    _7/26/2023_
(Owner's Signature)    (Date) — (Salesperson's Signature)    (Date)

X _____
(If more than one Owner, please Sign Here)    (Date)

**State Registration Number** _____

BY SIGNING ABOVE, OWNER ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT AND ALL ATTACHED DOCUMENTS

**NOTICE TO OWNER:** THIS AGREEMENT IS SUBJECT TO HOME OFFICE APPROVAL BEFORE IT BECOMES EFFECTIVE

# ADDITIONAL TERMS AND CONDITIONS

**1. OWNER'S RESPONSIBILITIES.** The Owner is responsible to supply water, gas, sewer and electrical utilities unless otherwise agreed to in writing. Electricity and water to the site is necessary. Owner agrees to allow and provide Contractor and his equipment access to the property. The Owner is responsible for having sufficient funds to comply with this agreement. This is a cash transaction unless otherwise specified. The Owner is responsible to remove or protect any personal property and Contractor is not responsible for same or for any carpets, drapes, furniture,
driveways, lawns, shrubs, etc. The Owner shall point out and warrant the property lines to Contractor, and shall hold Contractor harmless for any disputes or errors in the property line or setback locations.

**2. DELAYS.** Contractor agrees to start and diligently pursue work through to completion, but shall not be responsible for delays for any of the following reasons: failure of the issuance of all necessary building permits within a reasonable length of time, funding of loans, disbursement of funds into control or escrow, acts of neglect or omission of Owner or Owner's employees or Owner's agent: acts of God, stormy or inclement weather, strikes, lockouts, boycotts or other labor union activities, extra work ordered by Owner, acts of public enemy, riots or civil commotion, inability to secure material through regular recognized channels, imposition of Government priority or allocation of materials, failure of Owner to make payments when due, or delays caused by inspection or changes ordered by the inspectors of authorized Governmental bodies, or for acts of independent
Contractor's, or other causes beyond Contractor's reasonable control.

**3. PLANS AND SPECIFICATIONS.** If plans and specifications are prepared for this job, they shall be attached to and become a part of the Agreement. Contractor will obtain all required building permits, but Owner will pay for permits, assessments and charges required by public bodies and utilities for financing or repaying the
cost of sewers, storm drains, water service, other utilities, water hook-up charges and the like.

**4. SUBCONTRACTS.** The Contractor may subcontract portions of this work to properly licensed and qualified subcontractors.

**5. COMPLETION AND OCCUPANCY.** Owner agrees to sign and record a notice of completion within five days after the project is complete and ready for occupancy. If the project passes final inspection by the public body but Owner fails to record Notice of Completion, then owner hereby appoints Contractor as Owner's agent to sign and record a Notice of Completion on behalf of Owner. This agency is irrevocable and is an agency coupled with an interest. In the event the Owner occupies the project or any part thereof before the Contractor has received all payment due under this contract, such occupancy shall constitute full and unqualified acceptance of all the Contractor's work by the Owner and the Owner agrees that such occupancy shall be a waiver of any and all claims against the Contractor.

**6. INSURANCE AND DEPOSITS.** Owner will procure at his own expense and before the commencement of any work hereunder, fire insurance with course of construction, vandalism and malicious mischief clauses attached, such insurance to be a sum at least equal to the contract price with loss, if any, payable to any beneficiary under any deed of trust covering the project, such insurance to name the Contractor and his subcontractors as additional insured and to protect Owner, Contractor and his subcontractors and construction lender as their interests may appear; should Owner fail to do so. Contractor may procure such insurance as agent for and at the expense of Owner, but is not required to do so. If the project is destroyed or damaged by disaster, accident or calamity, such as fire, storm, earthquake, flood, landslide, or by theft or vandalism, any work done by the Contractor rebuilding or restoring the project shall be paid by the Owner as extra work. Contractor shall carry Worker's Compensation Insurance for the protection of contractor's employees during the progress of the work. Owner shall obtain and pay for insurance against injury to his own employees and persons under Owner's discretion and persons on the job site at Owner's invitation.

**7. RIGHT TO STOP WORK.** Contractor shall have the right to stop work if any payment shall not be made, when due, to Contractor under this agreement: Contractor may keep the job idle until all payments due are received. Such failure to make payment, when due, is a material breach of this Agreement.

**8. CLEAN UP.** Contractor will remove from Owner's property debris and surplus material created by his operation and leave it in a neat and broom clean condition.

**9. LIMITATIONS.** No action of any character arising from or related to this contract or the performance thereof, shall be commenced by either party against the other more than two years after completion or cessation of work under this contract.

**10. VALIDITY AND DAMAGES.** In case one or more of the provisions of this Agreement or any application thereof shall be invalid, unenforceable or illegal, the validity, enforceability and legality of the remaining provisions and any other applications shall not in any way be impaired thereby. Any damages for which Contractor may be liable to Owner shall not, in any event, exceed the cash price of this contract.

**11. ASBESTOS, LEAD, MOLD, AND OTHER HAZARDOUS MATERIALS.** Owner hereby represents that Owner has no knowledge of the existence on or in any portion of the premises affected by the Project of any asbestos, lead paint, mold (including all types of microbial matter

or microbiological contamination, mildew or fungus), or other hazardous materials. Testing for the existence of mold and other hazardous materials shall only be performed as expressly stated in writing. Contractor shall not be testing or performing any work whatsoever in an area that is not identified in the Scope of Work. Unless the contract specifically calls for the removal , disturbance, or transportation of asbestos, polychlorinated biphenyl , (PCB), mold, lead paint, or other hazardous substances or materials, the parties acknowledge that such work requires special procedures, precautions, and/or licenses. Therefore, unless the contract specifically calls for same, if Contractor encounters such substances, Contractor shall immediately stop work and allow the Owner to obtain a duly qualified asbestos and/or hazardous material contractor to perform the work or Contractor may perform the work itself at Contractor's option. Said work will be treated as an extra under this contract, and the Contract Term setting forth the time for completion of the project may be delayed. In the event that mold or microbial contamination is removed by Contractor. Owner understands and agrees that due to the unpredictable characteristics of mold and microbial contamination, Contractor shall not be responsible for any recurring incidents of mold or microbial contamination appearing in the same or any adjacent location, subsequent to the completion of the work performed by Contractor. Owner agrees to hold Contractor harmless, and shall indemnify Contractor harmless for any recurrence of mold or microbial contamination. Owner also agrees that Contractor shall not be responsible, and agrees to hold Contractor harmless and indemnify Contractor for the existence of mold or microbial contamination in any area that Contractor was not contracted to test and/or remediate. Further, Owner is hereby informed, and hereby acknowledges, that most insurers expressly disclaim coverage for any actual or alleged damages arising from mold or microbial contamination. Contractor makes no representations whatsoever as to coverage for mold contamination, though at Owner's additional expense, if requested in writing, contractor will inquire as to the availability of additional coverage for such contamination or remediation, and if available, will obtain such coverage if the additional premium is paid for by Owner as an extra.

**12. STANDARDS OF MATERIALS AND WORKMANSHIP.** Contractor shall use and install "standard grade" or "builder's grade" materials on the project unless otherwise stated in the Scope of Work, the plans, and/or specifications provided to Contractor prior to the execution of this Agreement. Unless expressly stated in the Scope of Work, Contractor shall have no liability or responsibility to restore or repair the whole or any part of the existing premises affected by the work of Contractor to be performed herein or by any subsequently agreed-upon change order, including as an illustration and not as a limitation, any landscaping, sprinkler system, flooring and carpet, wall coverings, paint, tile, or decorator items.

**13. INTEREST.** Overdue payments will bear interest at the rate of 1½ % per month ( 18% per annum).

**14. CHANGE IN THE WORK.** Should the Owner, construction lender, or any public body or inspector direct any modification or addition to the work covered by this contract, the contract price shall be adjusted accordingly.
Modification or addition to the work shall be executed only when a Contract Change Order or Continuation/Addendum has been signed by both the Owner and the Contractor. The change in the Contract Price caused by such Contract Change shall be as agreed to in writing, or if the parties are not in agreement as to the change in Contract Price, the Contractor's actual cost of all labor, equipment subcontracts and materials, plus a Contractor's fee of 20% shall be the change in Contract Price.
The Contract Change Order may also increase the time within which the contract is to be completed.

**15. NOTE ABOUT EXTRA WORK AND CHANGE ORDERS.** Extra Work and Change Orders or Continuation/Addendums become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order. The order must describe the scope of the extra work or change, the cost to be added or subtracted from the contract, and the effect the order will have on the schedule of progress payments. You, the buyer, may not require a contractor to perform extra or change-order work without providing written authorization prior to the commencement of any work covered by the new change order. Extra work or a change order is not enforceable against a buyer unless the change order also identifies all of the following in writing prior to the commencement of any work covered by the new change order:

(I)The scope of work encompassed by the order; (II) The amount to be added or subtracted from the contract; and (III) The effect the order will make in the progress payments or the completion date. The contractor's failure to comply with the requirements of this paragraph does not preclude the recovery of compensation for work performed based upon legal or equitable remedies designed to prevent unjust enrichment.

**16. EXISTING DEFECTS.** Contractor is not responsible for existing structural defects, defective soil conditions, or existing code violations. Despite the exercise of reasonable care during construction, conditions may be discovered, the repair of which are outside the scope of this Agreement. The cost to repair such defective conditions will be added as an extra charge to this Agreement by way of a change order or continuation/addendum.

# EXHIBIT E

# CREDIT CARD AUTHORIZATION FORM

*** All information will remain confidential ***

Card Holder Name: **Amir Mostafavi**

Billing Address: **1407 Monte Grande Pl.**

City: **Pacific Palisades** Zip: **90272**    Date: **8   4   2023**

## CREDIT CARD INFORMATION

- Type of the Card (VISA) / AMEX / MASTERCARD / Discover

- Credit Card No.  **2528**

- Expiration Date: **06/28**

- Card Identification Number (last 3 digits, located on the back): **039**

- Amount to charge $ **18,500.00**

I authorize ___**Your Prime Contractor**___ to charge the amount listed above to Credit Card provided herein. I agree to pay 3.5 % for this transaction in accordance with issuing Bank card Holder agreement.

**Cardholder**: Please print your name, sign and date below.

Printed Name: **Amir Mostafavi**    Date: **8/4/2023**

Signature: _____

**Home Improvement Contract Dated July 26, 2023**

Please return the Completed and Signed form to the following:

**Your Prime Contractor, Shlomi Abittan**
**22222 Sherman Way #101**
**Canoga Park, CA 91303**

#2



*Your Prime Contractor Inc.*

## Client Credit Card Transaction Receipt

Card Number: XXXXXXXXXXXX2528

Card Holder: AMIR MOSTARAVI

Card Brand: VISA

Payment on 8/4/2023

Amount of $18,500

Cc Fee $647.50

Total transaction amount $19,147.50

# EXHIBIT F

# ⏺ CONTRACT CHANGE ORDER ⏺

☑ OWNER    ☐ ARCHITECT    ☑ CONTRACTOR    ☐ FIELD    ☐ OTHER

PROJECT: _____    CHANGE ORDER# _____    DATE: 8/7/2023

Your Prime contractor          NM Family Trust, Amir Mostafavi
_____        _____
(Company)                      (Customer's Name)

22222 Sherman way #101         1407 Monte Grande Pl
_____        _____
(Address)                      (Address)

Canoga Park CA 91303           Pacific Palisade CA 90272
_____        _____
(City, State, Zip)             (City, State, Zip)

866 909 306                    (310)849-7030
_____        _____
(Phone)        (Fax)           (Phone)

This contract change order modifies and amends the contract between the above named parties dated

July 26 ; 2023 _____ :

Change of Schedule payment

1. Down payment:                        $1000
2. Upon start of job:                   $18,500
3. Upon Plumbing + electrical:          $10,000
4. Upon Tile:                           $10,000
5. Upon balcony demo:                   $10,000
6. Upon hot Mop:                        $10,000
7. Upon paint:                          $~~15~~,000 AM
8. Upon Fixtures installation:          $14,500
9. Upon Completion:                     $~~5,800~~ 7.300 AM

Total : ~~89,300~~ 93,300.00 AM

Modification of Work

1. Changing Toilet area in J&J Bathroom to shower

2. Relocate toilet to side of Vanity

3. Removing existing tub and replace it with new Tub in the small bathroom. ~~Both~~ Finish Material not included

4. Add recess lights in the small bathroom

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by _____ days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

✗ _____         _____
(Contractor/Owner)                (Owner/Subcontractor)

✗ 8/7/2023 _____         _____
(Date)                            (Date)

# EXHIBIT G

# CONTRACT CHANGE ORDER

⑥

☑ OWNER   ☐ ARCHITECT   ☑ CONTRACTOR   ☐ FIELD   ☐ OTHER

PROJECT: _____   CHANGE ORDER# _____   DATE: 8/8/2023

Your prime contractor          NM Family Trel Amir Mostafavi
_____(Company)_____        _____(Customer's Name)_____

22222 Sherman Way #101    1407 Monte Grande
_____(Address)_____        _____(Address)_____

Canoga Park CA 91303
_____(City, State, Zip)_____    _____(City, State, Zip)_____

866 909 3026
_____(Phone)____(Fax)_____   ( 810 ) 840 2030  (Phone)

This contract change order modifies and amends the contract between the above named parties dated

_____ ; _____ :

Amir 818 585 8878

✓  Down payment $1000 AM
✓  Upon start of job $18.500 AM AM
✓  Upon start Plumbing + Electric $15000 AMK
   Upon start tile $15.000
✓  Upon Balcony Demo + start water Proofing $12.000
   Upon Hot mop $10.000
   Upon start Paint $15.000          CAM AM
   Upon Fixtures installation $11.300
   Upon completion $6.500

$ 13.000
+total 102.300
Contractor install one tub and will creat framing
for 2 ~~bathtub~~ and tile, tub + put tile installtin
for tile, tub and shower for master bathroom
J&J Bathroom and guest bathroom floor and walls

Finish matirials not included

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by_____ days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

_____          _____
(Contractor/Owner)          (Owner/Subcontractor)

8/8/2023                    8/8/23
_____          _____
(Date)                      (Date)

# EXHIBIT H

# CONTRACT CHANGE ORDER

⑦

☑ OWNER  ☐ ARCHITECT  ☑ CONTRACTOR  ☐ FIELD  ☐ OTHER

PROJECT:_____  CHANGE ORDER#_____  DATE: 7/26/2023

_____
(Company)

NM Family Trust, Trustee Amir Moitabai P.

_____
(Address)

1407 Monte Grande Pl.

_____
(City, State, Zip)

Pac. Fic Palisades, CA 90272

_____
(Phone)        (Fax)

(310) 849-2030
(Phone)

This contract change order modifies and amends the contract between the above named parties dated

_____;_____:_____

① Additional Bathroom Complete remodeling, demo bathroom
Contractor will clear and Prepare area to start work
"       "     "   install tile in bathroom, Toilet and vanity
"       "     "   upgrade electrical up to code including recess lights
fans replacement, switches, outlets in bathroom area
Contractor will install toilet and drainage and new vanity and mirror
Contractor will install glass shower doors and bathroom faucets and
tiles on bathrooms walls up to ceiling. Material for vanity, faucets, shower
glass, shower head and tiles will be provided by the owner.

② All interior Painting for walls, ceilings, doors, windows, baram, railing

③ Install water proof balcony, demo tile down to playwood, sealing up with
water proofing and cover strucco, Patch and Painting, Painting railing, reshape
the double that Patch and Paint.

④ Replace and install door levers, handles, locks, deadbolts, install back
existing recess lights, switches, plugs, smoke detectors, fans

⑤ 2nd Bathroom, refinish existing bathroom, install vanity, toilets, finish
tiles, dry walls, fans, doors, reconnect drainage and faucets and
head shower

⑥ Garage Epoxy

It is mutually agreed that the contract price is increased/decreased by $_____
payable/deductible immediately upon completion of the work called for in this change order.
As a result of this change order, the time for completion of the above-mentioned contract is hereby extended/reduced
by_____ days.

This change order is incorporated into and governed by the above-mentioned contract and is incorporated therein.

_____        _____
(Contractor/Owner)              (Owner/Subcontractor)

_____        _____
(Date)                          (Date)

# EXHIBIT I

# WE CARE DECK COATING

**4051 S. Broadway, Los Angeles, CA 90037**
**Mailing Address: 1155 S. Harvard Blvd, Los Angeles, CA 90006**
Tel: (213)700-6462        Email: wecaredeck@gmail.com

## BID-PROPOSAL

**DATE:**        09/05/2023
**PROPOSAL SUBMIT TO:**

    NAME:        Shay, Your Prime Contractor
    Address:
    City:

    Tel:        646-378-8693

**WORK TO BE PERFORMED AT:**

Address:    1407 Monte Grande Pl
City        Pacific Palisades, 90272
Email:      Shaykenyc@gmail.com
            office@yourprimecontractor.com

**Construction To Begin: Will follow up after signed**        **Contract Completion Date:**

## Job Description

We make a slope about at 3/4 inch per foot so the water slides down.

However, as construction is done by human hands, it won't be at a perfect degree.

And if we make the slope with more higher degree so no water puddle can stay on 1 area, it will create new water puddle on other areas

because raising a slope on 1 area means other place need to be lowered. It'll be a constant loop without resolving anything.

Also, if we make the entire slope too steep, it'll be danagerous for the people to use and can cause an accident like people slipping and falling down,

especially for elderly people. And it will become a liability issue.

This is why on the proposal we state;

**Less than 1/8 inch water puddle is not covered by warranty.**

When it's rains, it's natural for some water puddles to form but once rain stops, it'll eventually dry out and this is where our warranty is applied.

# EXHIBIT J

Recording Requested by Your Prime
Contractor
Please Return To:
Your Prime Contractor
c/o Mail Center
9450 SW Gemini Dr #7790
Beaverton, Oregon 97008-7105
Reference ID: BTJP8FZYR9TQ
APN: 4431-026-001

SPACE ABOVE FOR RECORDER'S USE

# CLAIM OF MECHANICS LIEN
## Cal. Civ. Code §8416

**Claimant**
Your Prime Contractor
23055 SHERMAN WAY #4028
WEST HILLS , California 91308
(866) 909-3006

**Property Owner** (Owner)

Amri Mostafavi Trustee of the NM Family Trust, dated
July 10, 2018
528 Palisades Dr # 220
Pacific Palisades, California 90272

Mostafavi Amir
1407 Monte Grande Place
Pacific Palisades, California 90272

**Property Liened** (Property)
County: Los Angeles County
1407 Monte Grande Place, Pacific Palisades,
California 90272

**Legal Property Description:**
Property located at the municipal address of 1407
MONTE GRANDE PL, PACIFIC PALISADES, CA
90272.In the county of Los Angeles County. APN
4431-026-001. Briefly described as *TR=41709*(EX
OF STS) LOT/SEC 1. Subdivision: 41709.
Municipality / Township of WEST /PAC PALISADES.
Legal Lot 1.

**Services:** The lien is claimed for the following labor,
services, equipment or materials: breach of contract ,
client refusing to pay per schedule payment , on
contract signed on 7/26/23

**Job Number (if any):** 2219

**Amount Due:** Amount due after deducting all just
credits and offsets: **$10,000.00**

**Hiring Party:** Name and Address of person or entity to
whom Claimant furnished labor, services, equipment
and/or materials:
Mostafavi Amir
1407 Monte Grande Place
Pacific Palisades, California 90272

**The following exhibits are attached hereto and made a part hereof (if applicable):**

**NOTICE IS HEREBY GIVEN** that Claimant claims a lien for labor, service, equipment or materials under Section 8416 et seq. of the Civil Code of the State of California, upon the Property, above-described, and upon every estate or interest in such structures, improvements and premises held by any party holding any estate therein. The labor, service, equipment or materials were furnished for the construction of those certain buildings, improvements, or structures, now upon that certain parcel of land above-described as the Property.

I, the undersigned, as a disclosed and authorized agent of the Claimant, state that I have read the foregoing Claim of Lien, that I have been provided information regarding the facts and contents therein, and that based thereupon, **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

Name of Claimant:
Your Prime Contractor

Signed:

Signed:

Claimant, Your Prime Contractor
by authorized limited agent
Print Name: Jeremiah Gradine
Date: October 26, 2023
State of Louisiana
County of Orleans

Claimant, Your Prime Contractor
by authorized limited agent
Print Name: Jeremiah Gradine
Date: October 26, 2023
State of Louisiana
County of Orleans

---

**IMPORTANT INFORMATION ON THE FOLLOWING PAGE(S)**

Affidavit of Delivery

Delivery on behalf of:  Your Prime Contractor
Re:  *1407 Monte Grande Place, Pacific Palisades , California 90272*
Item Delivered:  Claim of Lien (Mechanics Lien)

Proof of Service Affidavit, California Civil Code § 8416(a)(7), and (c)
I, Jeremiah Gradine, declare that on October 26, 2023, I delivered copies of the attached
Mechanic's Lien and Notice of Mechanic's Lien to the property owner identified thereon at the
address provided below, and in the delivery manner provided below.  In addition to this delivery, or in
the alternative to said delivery pursuant to California Code §8416(c)(2) if delivery to the owner as
required by §8416(c)(1) could not be performed, I served / also served copies of the Mechanic's
Lien and Notice of Mechanic's Lien to the following parties at the following addresses, and through
the following method of delivery:

**Property Owner / Public Entity**, Amri Mostafavi Trustee of the NM Family Trust, dated July 10,
2018
528 Palisades Dr # 220
Pacific Palisades, California 90272
**By**: US Certified with Return Receipt, **No.** 9314 8699 0430 0113 6013 10 **at** October 26, 2023
**Property Owner / Public Entity**, Mostafavi Amir
1407 Monte Grande Place
Pacific Palisades, California 90272
**By**: US Certified with Return Receipt, **No.** 9314 8699 0430 0113 6013 34 **at** October 26, 2023


I declare under penalty of perjury that the foregoing is true and correct.

Signature: _____
Agent for Claimant
Signed by: Jeremiah Gradine
October 26, 2023

## NOTICE OF MECHANICS LIEN
## ATTENTION!

Upon the recording of the enclosed MECHANICS LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanics lien is recorded.

The party identified in the enclosed mechanics lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanics lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanics lien is released.

BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANICS LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEBSITE AT www.cslb.ca.gov.

Levelset mailing center
9450 SW Gemini Dr #7790
Beaverton, OR 97008-7105



**9314 8699 0430 0113 6013 10**

RETURN RECEIPT (ELECTRONIC)

Total Postage: $7.18

AMRI MOSTAFAVI TRUSTEE OF THE NM FAMILY TRUST,
528 PALISADES DR PMB 220
PACIFIC PALISADES, CA 90272-2844

Reference Number: 18835986

# EXHIBIT K

## Customer Receipt

9/13/2022, 3:31 PM PDT

Sales Person AXB3HZJ    Store Phone # (310) 822-3330

Store # 6611    Location 12975 W JEFFERSON BLVD, LOS ANGELES, CA 90066

### Customer Information

AMIR MOSTAFAVI          3836 CASTLEROCK RD
(310) 849-2030          MALIBU, CA 90265
AMIR@MOSTAFAVILAW.COM

Order # H6611-795863

Receipt # 6611 00097 36430

PO / Job Name 1407 Monte Grande Pl

---

🛒 **Carryout**         👤 Runner Name
                          Fish

| Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|
| 01 Custom Building Products Polyblend Plus #09 Natural Gray 10 lb. Unsanded Grout | | 1005401381 | $19.50 / each | 1 | $19.50 |
| 02 Custom Building Products Polyblend Plus #19 Pewter 10 lb. Unsanded Grout | | 1005401387 | $19.50 / each | 1 | $19.50 |

---

🚚 **Delivery**    📍 Delivery Address          🚚 Delivery Options         📅 Delivery Date
                      1407 Monte Grande Pl          Outside Delivery           Thursday, September 15
                      Pacific Palisades , CA 90272                             6:00 AM PDT - 10:00 AM
                                                                               PDT

| Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|
| 01 Custom Building Products VersaBond 50 lb. White Fortified Thinset Mortar 🏷 DISCOUNT $1.97 OFF EACH | MTSW50 | 399775 | $19.70 / each $17.73 / each | 10 | $177.30 |
| 02 Unbranded 2 in. x 4 in. x 104-1/4 in. Prime Green Douglas Fir Stud     CA LBR FEE | 328939 | 328939 999735 | $6.98 / each $0.35 / each | 5 1 | $34.90 $0.35 |
| 03 American Standard Deep Soak Whirlpool Drain | 1599.500.020 | 553243 | $99.00 / each | 1 | $99.00 |
| 04 American Standard EverClean 60 in. Acrylic Left Drain Rectangular Alcove Whirlpool Bathtub in White | 2425LC-LHO.020 | 518305 | $699.00 / each | 1 | $699.00 |
| 05 Mueller Streamline 1/2 in. x 10 ft. Copper Type L Pipe | LH04010 | 867926 | $23.26 / each | 2 | $46.52 |
| 06 BEHR PREMIUM PLUS 5 gal.#12Swiss Coffee Semi-Gloss Enamel Low Odor Interior Paint & Primer 🏷 DISCOUNT $38.00 OFF EACH     GL RECY$ | 301205 | 927655 1008043615 | $190.00 / each $152.00 / each $1.50 / each | 10 10 | $1,900.00 $15.00 |
| 07 James Hardie HardieBacker 0.42 in. x 3 ft. x 5 ft. Cement Backerboard 🏷 DISCOUNT $1.69 OFF EACH | 220023 | 202225 | $16.88 / each $15.19 / each | 31 | $470.89 |
| 08 Custom Building Products RedGard 1 Gal. Waterproofing and Crack Prevention Membrane | LQWAF1 | 755504 | $68.00 / each | 1 | $68.00 |
| 09 Olympic WaterGuard 1 gal. Clear Exterior Wood Sealer 🏷 DISCOUNT $3.60 OFF EACH     GL RECYC$ | 55260XIA-01 | 1006106360 1008043510 | $17.98 / each $14.38 / each $0.65 / each | 2 2 | $35.96 $1.40 |

---

**Customer Receipt**
9/13/2022, 3:31 PM PDT

Sales Person AXB3HZJ          Store Phone # (310) 822-3330

Store # 6611          Location 12975 W JEFFERSON BLVD, LOS ANGELES, CA 90066

Order # H6611-795863          Receipt # 6611 00097 36430

| | Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|---|
| 10 | Custom Building Products TileLab 1 Gal. Grout and Tile Sealer | TLPSRA1 | 124084 | $53.65 / each | 2 | $107.30 |
| | GL Recyc$ | | 999832 | $0.75 / each | 2 | $1.60 |
| 11 | TRIMACO Easy Mask 3 ft. x 167 ft. Red Rosin Medium Weight Paper | 35145 | 384815 | $13.97 / each | 4 | $55.88 |
| 12 | USG Sheetrock Brand 5/8 in. x 4 ft. x 8 ft. Firecode X Drywall | 14211011308 | 419109 | $17.83 / each | 5 | $89.15 |
| 13 | Unbranded 23/32 in. x 4 ft. x 8 ft. Fir Sheathing Plywood (Actual: 0.688 in. x 48 in. x 96 in.) | 439614 | 439614 | $50.66 / each | 8 | $405.28 |
| | CA LBR FEE | | 999735 | $4.05 / each | 1 | $4.05 |
| 14 | Outside Delivery | | 515663 | $109.00 / each | 1 | $109.00 |

**Delivery**

**Delivery Address**
1407 Monte Grande Pl
Pacific Palisades , CA 90272

**Delivery Options**
Priority Ground Shipping

**Estimated Arrival**
September 20 – September 23

| | Item Description | Model # | SKU # | Unit Price | Qty | Subtotal |
|---|---|---|---|---|---|---|
| 01 | Acudor Products 15 in. x 15 in. Steel Wall or Ceiling Access Door ⊕ Delivered by Sep 20 - Sep 23 | | 1001208493 | $38.08 / each | 3 | $114.24 |
| 02 | Priority Ground Shipping | | | | 1 | $0.00 |

**90 DAY RETURN POLICY.** The Home Depot reserves the right to limit / deny returns. Please see the return policy sign in the stores for details.

**Payment Method**

Visa 0647          Charged $4,472.66

| | |
|---|---|
| Subtotal | $4,545.71 |
| Discounts | -$459.29 |
| Sales Tax | $386.24 |
| Order Total | $4,472.66 |

Take a short survey for a chance TO WIN A $5,000 Home Depot Gift Card. Entries must be completed within 14 days of purchase. Entrants must be 18 or older to enter. No Purchase necessary. See complete rules on www.homedepot.com/survey

User ID: GVM3 79760 73246          Password: 22463 73149

# EXHIBIT B



# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 05/10/2023 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | | |
|---|---|---|---|
| Next First Insurance Agency, Inc.<br>PO Box 60787<br>Palo Alto, CA 94306 | CONTACT NAME: | | |
| | PHONE (A/C, No, Ext): (855) 222-5919 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : State National Insurance Company, Inc. | | 12831 |
| INSURED | INSURER B : | | |
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES    CERTIFICATE NUMBER: 891093544    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | EACH OCCURRENCE | $1,000,000.00 |
| | ☐ CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000.00 |
| | | | | | | | MED EXP (Any one person) | $15,000.00 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000.00 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000.00 |
| | X POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000.00 |
| | ☐ OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Contractors Errors and Omissions | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | Each Occurrence:<br>Aggregate: | $25,000.00<br>$50,000.00 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

| CERTIFICATE HOLDER | | CANCELLATION |
|---|---|---|
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | LIVE CERTIFICATE<br>[QR code]<br>Click or scan to view | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | | AUTHORIZED REPRESENTATIVE<br>*[signature]* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

NMFT183

# CERTIFICATE OF PROPERTY INSURANCE

**DATE (MM/DD/YYYY)** 05/10/2023

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**PRODUCER** Next First Insurance Agency, Inc.
PO Box 60787
Palo Alto, CA 94306

**CONTACT NAME:**
**PHONE (A/C, No, Ext):** (855) 222-5919  **FAX (A/C, No):**
**E-MAIL ADDRESS:** support@nextinsurance.com
**PRODUCER CUSTOMER ID:**

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A : State National Insurance Company, Inc. | 12831 |
| INSURER B : | |
| INSURER C : | |
| INSURER D : | |
| INSURER E : | |
| INSURER F : | |

**INSURED** Shlomi Abittan
Your Prime Contractor
22222 Sherman Way Ste 101
Canoga Park, CA 91303

## COVERAGES     CERTIFICATE NUMBER: 891093544     REVISION NUMBER:

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|---|---|
| A | X PROPERTY | | NXT7I6AULC-01-CP | 08/04/2022 | 08/04/2023 | | BUILDING | $ |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | X | PERSONAL PROPERTY | $15,000.00 |
| | BASIC | BUILDING | | | | X | BUSINESS INCOME | $Included |
| | BROAD | CONTENTS | | | | X | EXTRA EXPENSE | $Included |
| | X SPECIAL | $500.00 | | | | | RENTAL VALUE | $ |
| | EARTHQUAKE | | | | | | BLANKET BUILDING | $ |
| | WIND | | | | | | BLANKET PERS PROP | $ |
| | FLOOD | | | | | | BLANKET BLDG & PP | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | INLAND MARINE | | TYPE OF POLICY | | | | EQUIPMENT | $ |
| | CAUSES OF LOSS | | | | | | MISC TOOLS | $ |
| | NAMED PERILS | | POLICY NUMBER | | | | BORROWED TOOLS | $ |
| | OPEN PERILS | | | | | | | $ |
| | CRIME | | | | | | | $ |
| | TYPE OF POLICY | | | | | | | $ |
| | | | | | | | | $ |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |

SPECIAL CONDITIONS / OTHER COVERAGES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

## CERTIFICATE HOLDER

Shlomi Abittan
Your Prime Contractor
22222 Sherman Way Ste 101
Canoga Park, CA 91303

**LIVE CERTIFICATE**
Click or scan to view

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

ACORD 24 (2016/03)     The ACORD name and logo are registered marks of ACORD

© 1995-2015 ACORD CORPORATION. All rights reserved.

NMFT184

**ACORD®**

# CERTIFICATE OF PROPERTY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 08/04/2023 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER Next First Insurance Agency, Inc.<br>PO Box 60787<br>Palo Alto, CA 94306 | CONTACT NAME: | | |
|---|---|---|---|
| | PHONE (A/C, No, Ext): (855) 222-5919 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | | |
| | PRODUCER CUSTOMER ID: | | |
| | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| INSURED  Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | INSURER A : State National Insurance Company, Inc. | | 12831 |
| | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: 698739405 | REVISION NUMBER: |
|---|---|---|

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | | LIMITS |
|---|---|---|---|---|---|---|---|---|
| A | X  PROPERTY | | NXT7I6AULC-02-CP | 08/04/2023 | 08/04/2024 | | BUILDING | $ |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | X | PERSONAL PROPERTY | $16,500.00 |
| | BASIC | BUILDING | | | | X | BUSINESS INCOME | $included |
| | BROAD | | | | | X | EXTRA EXPENSE | $included |
| | X  SPECIAL | CONTENTS $500.00 | | | | | RENTAL VALUE | $ |
| | EARTHQUAKE | | | | | | BLANKET BUILDING | $ |
| | WIND | | | | | | BLANKET PERS PROP | $ |
| | FLOOD | | | | | | BLANKET BLDG & PP | $ |
| | | | | | | | | $ |
| | INLAND MARINE | | TYPE OF POLICY | | | | EQUIPMENT | $ |
| | CAUSES OF LOSS | | | | | | MISC TOOLS | $ |
| | NAMED PERILS | | POLICY NUMBER | | | | BORROWED TOOLS | $ |
| | OPEN PERILS | | | | | | | $ |
| | CRIME | | | | | | | $ |
| | TYPE OF POLICY | | | | | | | $ |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |

SPECIAL CONDITIONS / OTHER COVERAGES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| **LIVE CERTIFICATE**<br>Click or scan to view | AUTHORIZED REPRESENTATIVE |

© 1995-2015 ACORD CORPORATION. All rights reserved.

ACORD 24 (2016/03)          The ACORD name and logo are registered marks of ACORD

NMFT185

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 05/11/2022 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | |
|---|---|---|
| Next First Insurance Agency, Inc.<br>PO Box 60787<br>Palo Alto, CA 94306 | PHONE (A/C, No, Ext): (855) 222-5919 | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | |
| | INSURER(S) AFFORDING COVERAGE | NAIC # |
| | INSURER A : State National Insurance Company, Inc. | 12831 |
| INSURED | INSURER B : | |
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES    CERTIFICATE NUMBER: 3529443    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** X<br>CLAIMS-MADE  X OCCUR | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | EACH OCCURRENCE | $1,000,000.00 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000.00 |
| | | | | | | | MED EXP (Any one person) | $15,000.00 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000.00 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>X POLICY  PRO-JECT  LOC<br>OTHER: | | | | | | GENERAL AGGREGATE | $2,000,000.00 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000.00 |
| | | | | | | | $ | |
| | **AUTOMOBILE LIABILITY**<br>ANY AUTO<br>OWNED AUTOS ONLY  SCHEDULED AUTOS<br>HIRED AUTOS ONLY  NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | $ | |
| | **UMBRELLA LIAB**  OCCUR<br>EXCESS LIAB  CLAIMS-MADE<br>DED  RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | $ | |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N<br>ANYPROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | PER STATUTE  OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Contractors Errors and Omissions | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | Each Occurrence | $25,000.00 |
| | | | | | | | Aggregate: | $50,000.00 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

| CERTIFICATE HOLDER | | CANCELLATION |
|---|---|---|
| Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | LIVE CERTIFICATE<br><br>Click or scan to view | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

ACORD 25 (2016/03)

© 1988-2015 ACORD CORPORATION. All rights reserved.<br>The ACORD name and logo are registered marks of ACORD

NMFT186



POLICY DOCUMENTS

# HELLO!

Enclosed you will find the policy documents that make up your insurance contract. Please read through all of these documents. If you have any questions or need to update any of your information, please contact us.



### A few key insurance terms to help navigate these documents

- Declarations: States that your business is the named insured and specifies limits.
- Policy: The formal contract issued by the insurance company.
- Endorsements: Included "extras" in the policy.
- Exclusions: What is not covered in the policy.

### Need to file a claim?

We are here to assist and protect your interests. Please report a claim as soon as an incident occurs, even if you're not at fault.

Login to the customer portal or contact support and share your details about the claim.

✉ support@nextinsurance.com    📞 (855) 222 - 5919    🔗 nextinsurance.com    📍 PO Box 60787, Palo Alto, CA 94306

# SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
(signature)
Secretary

_____
(signature)
President

# STATE NATIONAL INSURANCE COMPANY, INC.

(a stock insurance company)

**1900 L Don Dodson Dr.**
**Bedford, Texas 76021**
**(800) 877-4567**

**Administered by:**

**Next Insurance, Inc.**
**PO Box 60787**
**Palo Alto, CA 94306**
**(855) 222-5919**

## COMMON POLICY DECLARATIONS

| | |
|---|---|
| **POLICY NUMBER:** NXTYHC6TE9-01-GL | |
| **Named Insured and Mailing Address:** Shlomi Abittan<br>Your Prime Contractor<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | |
| Policy Period:    From: 08/04/2022                    To: 08/04/2023<br>                 at 12:01 AM_____ standard time at the mailing address shown above | |

**DESCRIPTION OF BUSINESS:** General Contractor

**IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
|---|---|
| | **PREMIUM** |
| BOILER AND MACHINERY COVERAGE PART | $ |
| COMMERCIAL AUTOMOBILE COVERAGE PART | $ |
| COMMERCIAL CRIME COVERAGE PART | $ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $1,421.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ |
| COMMERCIAL PROPERTY COVERAGE PART | $ |
| EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART | $ |
| FARM COVERAGE PART | $ |
| LIQUOR LIABILITY COVERAGE PART | $ |
| POLLUTION LIABILITY COVERAGE PART | $ |
| PROFESSIONAL LIABILITY COVERAGE PART | $ |
| COMMERCIAL UMBRELLA/ EXCESS COVERAGE PART | $ |
| **TOTAL:** | $1,421.00 |

Premium shown is payable: $_____ at inception.

# SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

These Declarations, together with the Common Policy Conditions, and the Coverage Form(s) and endorsement(s), complete the above numbered policy.

Listed below are the forms and endorsements attached to this policy at the time of issue:

| Title | Form Number and Edition Date |
|---|---|
| Signature Page | NXT-0001 IL 1017 |
| Common Declarations Page | NXT-0340 BM GL 0619 |
| Calculation Of Premium | IL 00 03 09 08 |
| Common Policy Conditions | IL 00 17 11 98 |
| Nuclear Energy Liability Exclusion Endorsement (Broad Form) | IL 00 21 09 08 |
| California Changes - Cancellation and Nonrenewal | IL 02 70 09 12 |
| California Premium Refund Disclosure Notice | IL N 177 09 12 |
| Privacy Notice | NXT-0002 IL 0218 |

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

      CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
      COMMERCIAL AUTOMOBILE COVERAGE PART
      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      COMMERCIAL INLAND MARINE COVERAGE PART
      COMMERCIAL PROPERTY COVERAGE PART
      CRIME AND FIDELITY COVERAGE PART
      EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
      EQUIPMENT BREAKDOWN COVERAGE PART
      FARM COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc., 2007

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc.,  1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property threat.

**2.** As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

IL 02 70 09 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

(1) Nonpayment of premium; or

(2) Discovery of fraud by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

(3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

 © Insurance Services Office, Inc., 2012

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

  **(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

  **(b)** Continuation of the policy coverage would:

    **(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

    **(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

**(1)** Accepted an offer of earthquake coverage; or

**(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

**1.** Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**2. Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below.

**b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

**(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

**(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

**(3)** We have:

**(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

**(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

**c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge.

**d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

**3.** We are not required to send notice of nonrenewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.,** to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© Insurance Services Office, Inc., 2012

**IL 02 70 09 12**

**IL N 177 09 12**

# CALIFORNIA PREMIUM REFUND DISCLOSURE NOTICE

In accordance with CAL. INS. CODE § 481.(c), we are notifying you that in the event that the first Named Insured cancels the insurance policy, we shall retain 10% of the unearned premium. The premium refunded to you will therefore be calculated as 90% of the pro rata unearned premium. But if cancellation takes place during the first year of a multiyear prepaid policy, we will return 90% of the pro rata unearned premium for the first year and the full annual premium for the subsequent years.

If you have an Equipment Breakdown policy or your policy contains an Equipment Breakdown Coverage Part, then the following premium refund calculation applies instead of that provided in the preceding paragraph. For the Equipment Breakdown policy premium or for the premium attributable to the Equipment Breakdown Coverage Part, we shall retain 25% of the unearned premium. The premium refunded to you will therefore be calculated as 75% of the pro rata unearned premium. But if cancellation takes place during the first year of a multiyear prepaid policy, we will return 75% of the pro rata unearned premium for the first year and the full annual premium for the subsequent years.

However, the penalties set forth in the preceding paragraphs will not apply under the following circumstances, even if the first Named Insured cancels the policy:

1.  The Insured(s) no longer has a financial or insurable interest in the property or business operation that is the subject of insurance;

2.  Cancellation takes place after the first year for a prepaid policy written for a term of more than one year; or

3.  The policy is rewritten in the same insuring company or company group.

# STATE NATIONAL INSURANCE COMPANY, INC.
## (a stock insurance company)

**1900 L Don Dodson Dr.**
**Bedford, Texas 76021**
**(800) 877-4567**

**Administered by:**

**Next Insurance, Inc.**
**PO Box 60787**
**Palo Alto, CA 94306**
**(855) 222-5919**

## COMMERCIAL GENERAL LIABILITY DECLARATIONS

## CERTAIN COVERAGES IN THE POLICY MAY BE WRITTEN ON A CLAIMS-MADE BASIS. PLEASE READ YOUR POLICY CAREFULLY.

**POLICY NUMBER:** NXTYHC6TE9-01-GL

**Named Insured and Mailing Address:** Shlomi Abittan
Your Prime Contractor
22222 Sherman Way Ste 101
Canoga Park, CA 91303

Policy Period:    From: 08/04/2022         To: 08/04/2023
at 12:01 AM_____standard time at the mailing address shown above

---

## DESCRIPTION OF BUSINESS

Insured is:

X_____  Individual / Sole Proprietor              _____ Partnership/Joint Venture

_____  Limited Liability Company                _____ Trust

_____  Other - Corporation

| Business of Insured: | General Contractor |
|---|---|

---

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| Each Occurrence Limit | $1,000,000.00 | |
| Damages to Premises Rented to You Limit | $100,000.00 | Any one premises |
| Medical Expense Limit | $15,000.00 | Any one person |
| Personal & Advertising Injury Limit | $1,000,000.00 | Any one person or organization |
| General Aggregate Limit | $2,000,000.00 | |
| Products/Completed Operations Aggregate Limit | $2,000,000.00 | |

---

| | | | | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|---|
| **LOCATION NUMBER** | **CLASSIFICATION** | **CODE NO.** | **PREMIUM BASE** | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| | 91583 | | SUBCOST | $641.76 | $779.24 | | |

**CLASSIFICATION AND PREMIUM**

| | |
|---|---|
| State Tax Or Other (if applicable) | $0.00 |
| TOTAL PREMIUM (SUBJECT TO AUDIT) | $1,421.00 |

PREMIUM SHOWN IS PAYABLE:

| | |
|---|---|
| At Inception | $_____ |
| At Each Anniversary | $_____ |

(If policy period is more than one year and premium is paid in annual installments)

**AUDIT PERIOD (IF APPLICABLE)**

__X__ Annually _____ Semi-Annually _____ Quarterly _____ Monthly

# SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

These Declarations, together with the Common Policy Conditions, and the Coverage Form(s) and endorsement(s), complete the above numbered policy.

Listed below are the forms and endorsements attached to this policy at the time of issue:

| Title | Form Number and Edition Date |
|---|---|
| Commercial General Liability Declarations | NXT-0337 BM GL 0619 |
| Commercial General Liability Coverage Form | CG 00 01 04 13 |
| Additional Insured - Owners, Lessees or Contractors - Automatic Status When Required in Construction Agreement With You | CG 20 33 04 13 |
| Exclusion  - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - With Limited Bodily Injury Exception | CG 21 06 05 14 |
| Communicable Disease Exclusion | CG 21 32 05 09 |
| Employment-Related Practices Exclusion | CG 21 47 12 07 |
| Total Pollution Exclusion Endorsement | CG 21 49 09 99 |
| Exclusion - Designated Ongoing Operations | CG 21 53 01 96 |
| Limited Exclusion - Designated Operations Covered By a Consolidated (Wrap-Up) Insurance Program | CG 21 54 01 96 |
| Fungi or Bacteria Exclusion | CG 21 67 12 04 |
| Exclusion of Certified Acts of Terrorism | CG 21 73 01 15 |
| Exclusion - Exterior Insulation and Finish Systems | CG 21 86 12 04 |
| Silica or Silica-Related Dust Exclusion | CG 21 96 03 05 |
| Exclusion - Engineers, Architects or Surveyors Professional Liability | CG 22 43 04 13 |
| Exclusion - Damage to Work Performed by Subcontractors on Your Behalf | CG 22 94 10 01 |
| Exclusion For Injury To Volunteer Workers | NXT-0019 BM GL 0918 |
| Total Professional Services Exclusion | NXT-0059 BM GL 0318 |
| Earth Movement Exclusion | NXT-0074 BM GL 0218 |
| Prior Completed and Abandoned Work Exclusion | NXT-0075 BM GL 0218 |
| Continuous or Progressive Injury and Damage Exclusion | NXT-0076 BM GL 0218 |
| Cross Suits Exclusion | NXT-0077 BM GL 0218 |
| Bodily Injury to Employees Exclusion | NXT-0078 BM GL 0218 |
| Exclusion - Asbestos Exclusion | NXT-0080 BM GL 0218 |
| Prior Damages Exclusion | NXT-0081 BM GL 0218 |
| Limitation of Coverage to Business Description | NXT-0082 BM GL 0218 |
| Blanket Additional Insured | NXT-0115 BM GL 0218 |
| Sexually Transmitted Diseases Exclusion | NXT-0116 BM GL 0218 |
| Unintentional E&O, Knowledge of Occurrence, Notice of Occurrence | NXT-0235 BM GL 0218 |
| Contractor/Subcontractor Insurance Requirements | NXT-0307 BM GL 0418 |
| Additional Insured Automatic Status | NXT-0308 BM GL 0619 |
| Contractor Professional Liability Limited Exclusion | NXT-0312 BM GL 0218 |
| Contractor E&O | NXT-0313 BM GL 0719 |
| Foreign Drywall Contaminants | NXT-0314 BM GL 0218 |
| Condominium, Townhome, Timeshare, and Tract Home Exclusion | NXT-0350 BM GL 0318 |
| Exclusion - Lead Exclusion | NXT-0079 BM GL 0218 |
| Non Compensatory Damages Exclusion | NXT-0083 BM GL 0218 |
| Notice of Terrorism | NXT-0073 BM GL 0418 |
| OFAC Notice | SNC-IL-0719-OFAC-N (SNIC) |
| Trade or Economic Sanctions | SNC-IL-0719-TOES-E (SNIC) |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012
**CG 00 01 04 13**

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C;**

   b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012
**CG 00 01 04 13**

COMMERCIAL GENERAL LIABILITY
CG 20 33 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

© Insurance Services Office, Inc., 2012

**2.** "Bodily injury" or "property damage" occurring after:

    **a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

    **b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

    **1.** Required by the contract or agreement you have entered into with the additional insured; or

    **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012
**CG 20 33 04 13**

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

© Insurance Services Office, Inc., 2008

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of,  "pollutants".

POLICY NUMBER:  NXTYHC6TE9-01-GL

**COMMERCIAL GENERAL LIABILITY**
**CG 21 53 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED ONGOING OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Designated Ongoing Operation(s):**

SEE ATTACHED SCHEDULE

**Specified Location (If Applicable):**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in  the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

CG 21 53 01 96                    Copyright, Insurance Services Office, Inc.,  1994                    **Page 1 of 1**    ☐

POLICY NUMBER:  NXTYHC6TE9-01-GL                          **COMMERCIAL GENERAL LIABILITY**

**SCHEDULE OF EXCLUSIONS - DESCRIPTION OF DESIGNATED ONGOING OPERATIONS**

Appliance installation, maintenance or repair, unless incidental to a project or operation for which this policy provides coverage

Abatement or remediation of asbestos, mold or other hazardous materials

Repair or remediation of fire, water, mold or termite damage as a general contractor

Manufacturing and/or sales to the general public of items (appliances, fixtures, supplies, millwork, cabinets, doors or windows) other than in connection with your installation, service, repair or other activities

New homes in tracts or subdivisions of more than 10 homes (including all phases) prior to attaining a certificate of occupancy

Work on new mobile home parks containing more than 10 spaces (including all phases)

Apartment conversions to, or construction work involving, condominiums, town homes or time shares

Work on railroads, gas stations, refineries, chemical plants, airports, public utilities, hospitals, nursing homes, senior housing, military housing or student dormitories

Work that you perform under a Wrap-Up program or any operations you perform at a location at which you are covered under a Wrap-Up program

Exterior work more than 6 feet below ground or 30 feet (3 stories) above ground

Hot application roofing

Man hole work

Right-of-Way clearing (removing vegetation) in proximity of power lines or pipelines

Stand alone roofing (other than roof decking and plywood installation work done as part of new construction, add-ons or remodels)

Torch down roofing

Welding activities not performed as part of plumbing or HVAC work

Work on pools, pool systems, pool lips, saunas, jacuzzis, ponds, or child-proof pool fences.

POLICY NUMBER:  NXTYHC6TE9-01-GL

**COMMERCIAL GENERAL LIABILITY**
**CG 21 54 01 96**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description and Location of Operation(s):**

1. ALL OPERATIONS AT LOCATIONS AT WHICH THE INSURED WAS AT ANY TIME COVERED UNDER A WRAP-UP PROGRAM; AND
2. OPERATIONS AT ANY LOCATION FOR OR RELATED TO THE INSURED'S WORK UNDER A WRAP-UP PROGRAM.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2003

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2014

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

  **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

  **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

  **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

  **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

  **3.** A reinforced or unreinforced base coat;

  **4.** A finish coat providing surface texture to which color may be added; and

  **5.** Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Silica Or Silica-Related Dust**

  **a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

  **b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

  **c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Silica Or Silica-Related Dust**

  **a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

  **b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

  **1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

  **2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 22 43 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

**COMMERCIAL GENERAL LIABILITY**
**CG 22 94 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **l.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION FOR INJURY TO VOLUNTEER WORKERS

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE,** Paragraph **2. Exclusions**:

**Injury to Volunteer Workers**

"Bodily injury" to:

**(1)** A "volunteer worker" of any insured arising out of and in the course of:

    **(a)** Donating work to any insured; or

    **(b)** Performing duties related to the conduct of an insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "volunteer worker" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Regardless of in what capacity an insured may be liable; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

All other terms and conditions of the Policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TOTAL PROFESSIONAL SERVICES EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART


This insurance does not apply to damages, loss, cost or expense arising out of the rendering of or failure to render any professional service, advice or instruction. This exclusion applies:

**(1)**  Whether such service, advice or instruction is ordinary and customary to any insured's profession; and

**(2)**  Regardless of whether a claim or suit is brought by any client or any other person or organization.


All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EARTH MOVEMENT

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to **SECTION I - COVERAGES**, **Coverage A Bodily Injury and Property Damages Liability**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2.  Exclusions**

**2. Exclusions**

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" which was directly or indirectly, based upon or contributed to in whole or in part, arising out of, resulting from, or in any matter related to "earth movement" whether or not any such "earth movement" is combined with any other causes.

**B.** The following definition is added to the **DEFINITIONS**  Section:

"Earth Movement" means earthquake, land- slide, subsidence, mud flow, sinkhole, erosion, or the sinking, rising, shifting, expanding, vibrating or contracting of earth or soil, or any other movement of land, soil or earth.

All other terms and conditions of the policy remain the  same.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRIOR COMPLETED AND ABANDONED WORK

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions:**.

This insurance does not apply to:

**1.** "Bodily injury" or "property damage" arising out of "your work" completed or "abandoned' prior to the earliest inception of continuous coverage with  us.

**B.** Paragraph 16.a.(2) of **SECTION V – DEFINITIONS** is deleted in its entirety and replaced by  the following:

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following  times:

 **(a)** When all of the work called for in your contract has been  completed.

 **(b)** When all of the work to be done at the job site has been completed if your contract calls for work  at more than one job site.

 **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization.

 Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

 **C.** The following is added to **SECTION V –  DEFINITIONS**:

 "Abandoned" means a project on which you have stopped work or upon which you have not provided labor, materials or services for 60 days.

 All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I - COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** section **1. Insuring Agreement,** paragraph **b.(3)**, paragraph **c.**, and paragraph **d., (1), (2), (3)** are replaced by the following:

**c.** This insurance does not apply to any damages because of or related to "bodily injury", "property damage", or "personal and advertising injury":

**(1)** which first existed, or alleged to have first existed, prior to the inception of continuous coverage written with us; or

**(2)** which are,or are alleged to be,in the process of taking place prior to the inception of continuous coverage written with us, even if the actual or alleged "bodily injury", "property damage", or "personal and advertising injury" continues during this policy period;  or

**(3)** which were caused, or are alleged to have been caused, by the same condition which resulted in "bodily injury", "property damage", or "personal and advertising injury" which first existed prior to the inception of continuous coverage written with us.

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" to which this endorsement applies.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CROSS SUITS

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES**, **Coverage A Bodily Injury and Property Damages Liability**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE  B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**

"Bodily injury", "property damage" or "personal and advertising injury" arising from claims or "suits" brought by any named insured against any other named  insured.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – BODILY INJURY TO EMPLOYEES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following replaces **SECTION I – COVERAGES, Coverage A Bodily Injury and Property Damages Liability** paragraph **2. Exclusions,** exclusion **e. Employer's  liability**

**e. Employer's Liability**

"Bodily Injury" to:

(1) An "employee" of any insured arising out of and in the course of:

a. Employment by any insured; or

b. Performing duties related to the conduct of an insured's business;  or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

All other terms and conditions of the polic y remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES**, **Coverage A Bodily Injury and Property Damages Liability**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE  B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "asbestos".

As used in this exclusion, "Asbestos" means the material in any form.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRIOR DAMAGES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to **SECTION I – COVERAGES, Coverage A Bodily Injury and Property Damages Liability,** paragraph **2. Exclusions** and to **SECTION I – COVERAGES, Coverage B Personal and Advertising Injury Liability,** paragraph **2. Exclusions** and to **SECTION I – COVERAGES, Coverage C Medical Payment,** paragraph **2. Exclusions**

This insurance does not apply to:

**Prior Damages**

"Bodily injury", "property damage", "personal and advertising injury" and medical payments arising out of any damage, defect, deficiency, inadequacy or dangerous condition which existed prior to the inception of the policy period shown in the Declarations of this Policy, whether visible or invisible, detected or undetected, known or unknown, to any Insured before such inception date. This exclusion shall apply whether or not the Insured's legal obligation to pay damages in respect of such damage, defect, deficiency, inadequacy or dangerous condition was established before the inception date of this policy. This exclusion shall be applicable to all damage(s), defect(s), deficiency(ies), inadequacy(ies) or dangerous condition(s) including, but not limited to, damage, defect, deficiency, inadequacy, or dangerous condition.

"Bodily injury", "property damage", "personal and advertising injury" and medical payments arising out of any damage, defect, deficiency, inadequacy or dangerous condition shall be deemed to have existed as of the earliest date by which any damage occurred, irrespective of whether the Insured was aware of the existence of any such damage, and irrespective of whether such damage may have been continuous or progressive or may have been due to repeated exposure to substantially the same harmful conditions or may have become progressively worse during the period of this Policy.

**B.** For purposes of this endorsement only, Insured shall include any Named Insured or Insured as defined by this Policy, their officers, directors, partners, project managers, risk managers or any person acting in similar capacities.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO BUSINESS DESCRIPTION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Business Description: |
| --- |
| Contractors - Subcontracted Work - Family Dwellings |

I.    **SECTION I – COVERAGES, COVERAGE A BODILIY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

**(4)** The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.

II.    **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

This insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.

All other terms and conditions remain of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. SECTION II - WHO IS AN INSURED** is amended to include the following as insureds:

**1. Lessor of Leased Equipment**

Any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to their liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

No such person or organization is an insured under this section:

**a.** Upon expiration or termination of their contract or agreement with you for such leased equipment ends;

**b.** For any "bodily injury" or "property damage" caused by an "occurrence" which takes place after expiration or termination of their contract or agreement with you; or

**c.** For any "personal and advertising injury" caused by an "offense" which takes place after expiration or termination of their contract or agreement with you.

**2. Managers or Lessors of Premises**

Any person or organization from whom you lease premises when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to liability arising out of your ownership, maintenance or use of that part of the premises leased to you.

No such person or organization is an insured under this section for any:

**a.** For "bodily injury" or "property damage" caused by an "occurrence" which takes place after you cease to be a tenant in that premises.

**b.** Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

**3. Grantor of Franchise**

Any person or organization (referred to below as grantor of a franchise) with whom you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy, but only with respect to "bodily injury" or "property damage" arising out of " liability as grantor of a franchise to you

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION III LIMITS OF INSURANCE**:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

COMMERCIAL GENERAL LIABILITY

**C.** With respect to the provisions of this endorsement, the following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, paragraph **4. Other Insurance**:

Regardless of whether other insurance is available to an additional insured on a primary basis, this insurance will be primary and noncontributory if a written contract between you and the additional insured specifically requires that this insurance be primary.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – SEXUALLY TRANSMITTED DISEASES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, paragraph **2. Exclusions**, and to **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**:

This insurance does not apply to:

**Sexually Transmitted Disease**

Any claim, "suit", or cause of action arising from instances, "occurrences" or allegations involving sexually transmitted diseases, including Acquired Immune Deficiency Syndrome (AIDS).

This exclusion applies even if the claim, "suit" or cause of action against the insured alleges negligence or other wrongdoing in the:

**(1)** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a sexually transmitted disease;

**(2)** Testing for a sexually transmitted disease;

**(3)** Failure to prevent the spread of the sexually transmitted disease; or

**(4)** Failure to report the sexually transmitted disease to the proper authorities.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UNINTENTIONAL ERRORS AND OMISSION
# KNOWLEDGE OF OCCURRENCE
# NOTICE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following are added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

Unintentional Errors and Omissions

Any unintentional error or omission in the description of, or failure to completely describe, any premises or operations intended to be covered by this Coverage Part will not invalidate or adversely affect coverage for those premises or operations. However, you must report such error or omission to us as soon as practicable after its discovery.

Knowledge of Occurrence

Notwithstanding any other provision(s) in this policy to the contrary, and solely as respects any loss reporting requirements under this policy, it is understood that knowledge of "occurrence" by the agent, servant, or employee of the insured or any other person shall not in itself constitute knowledge by the insured, unless the risk manager or risk management department or substantially similar position or department received notice from said agent, servant, employee or any other person.

Notice of Occurrence

Your rights under this coverage part will not be prejudiced if you fail to give us notice of an "occurrence", offense or claim and that failure is solely due to your reasonable belief that the "bodily injury", "property damage" or "personal and advertising injury" is not covered under this coverage part. However, you shall give written notice of such "occurrence", offense or claim to us as soon as you are aware that this insurance may apply to such "occurrence", offense or claim.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONTRACTOR/SUB-CONTRACTOR INSURANCE REQUIREMENTS

This endorsement modifies insurance provided under the following:
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Notwithstanding any other provision in this Coverage Part:

**A.** Coverage under this Coverage Part does not apply to an "occurrence" in which a sub-contractor is involved unless such sub-contractor:

**1.** Is operating pursuant to a written agreement between you and the contractor or sub-contractor; and

**2.** Has commercial general liability insurance on which you are named as an additional insured with limits equal to or exceeding the limits provided by this policy.

**B.** With respect to an "occurrence" in which a sub-contractor is involved and such sub-contractor:

**1.** Is operating pursuant to a written agreement between you and the contractor or sub-contractor; and

**2.** Has commercial general liability insurance on which you are named as an additional insured with limits equal to or exceeding the limits provided by this policy,

any insurance provided by this Coverage Part shall be excess over any insurance provided to you through or by the sub-contractor.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – AUTOMATIC STATUS

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

**A.** Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf
with respect to:

    **a.** Premises you own, rent, lease, or occupy; or
    **b.** Your ongoing operations performed for that insured.

**B.** The insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**C.** The Limits of Insurance applicable to the additional insured are the lesser of those specified in:
    1. The written contract or agreement; or
    2. The Declarations for this policy, whichever is less.
    Such are included in, and not in addition to, the Limits of Insurance shown in the Declarations.

**D.** Regardless of whether other insurance is available to an additional insured on a primary basis, this insurance will be primary and noncontributory if a written contract between you and the additional insured specifically requires that this insurance be primary.

All other terms and conditions of the policy remain unchanged.

Includes material copyrighted by Insurance Services Office, Inc. used with its permission

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS PROFESSIONAL LIABILITY LIMITED EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, paragraph **2. Exclusions** and **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, **p**aragraph **2. Exclusions**:

1.  This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
    a.  Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
    b.  Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.

    Notwithstanding the foregoing, this exclusion does not apply to coverage provided under the **CONTRACTORS ERROR AND OMISSIONS COVERAGE** insuring agreement.

2.  Subject to Paragraph **3.** below, professional services include:
    a.  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
    b.  Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3.  Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

All other terms and conditions of the policy remain unchanged.

# CONTRACTORS ERRORS AND OMISSIONS COVERAGE

The following is added to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM as indicated below:

## SCHEDULE

| | |
|---|---|
| **Contractor Services:** | General Contractor |
| **Contractors Errors and Omissions Coverage Limit Option** | • **Option 1 $** 25,000.00 **Per Loss**<br><br>• **Option 2:**<br><br>**The lesser of:**<br><br>   • **$** ; or<br><br>   • **Whichever of the following applies to the Repairs:**<br>   **% of the Actual Original Cost if the Repairs are Performed by Someone Other than You or a Person or Organization Affiliated with You; or**<br><br>   **% of the Actual Original Cost if the Repairs are Performed by You or a Person or Organization Affiliated with You** |
| **Contractors Errors and Omissions Coverage Period:** | 08/04/2022 to 08/04/2023 |
| **Contractors Errors and Omissions Coverage Aggregate Limit:** | 50,000.00 |
| **Contractors Errors and Omissions Deductible:** | • **Per Claim** **$**<br>• **Per Loss** **$** 0.00 |

**A.**   The following is added to **SECTION I**:
**CONTRACTORS ERRORS AND OMISSIONS COVERAGE**

1.   **Insuring Agreement**

We will pay those sums that the insured becomes legally obligated to pay as "loss" because of:

**a.**   "Property damage" to "your work";

**b.**   "Property damage" to "your product"; or,

**c.**   "Impaired property" arising out of a defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work";

to which this insurance applies. The "loss" must be caused by your "wrongful act" in rendering or failing to render Contractor Services shown in the **SCHEDULE** above to others for a fee. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" for any "loss" to which this insurance does not apply. We may, at our discretion, investigate any "loss" and settle any claim or "suit" that may result. But:

**(1)**   The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)**   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this **Contractors Errors and Omissions Coverage**.

Our obligation under the **Contractors Errors and Omissions Coverage** to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above and described in section E. below as applicable to such coverage.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under section **B. Supplementary Payments** below.

2.   This insurance applies to "loss" only if:

**a.**   The "loss" is caused by a "wrongful act" that takes place in the "coverage territory";

**b.**   The "wrongful act" occurs during the policy period;

**c.**   Prior to the policy period, no insured listed under Paragraph **1.** of **SECTION II – WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of a "loss" or claim, knew that the "wrongful act" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "wrongful act" occurred, then any continuation, change or resumption of such "wrongful act" during or after the policy period will be deemed to have been known prior to the policy period; and

**d.**   You have issued a written contract or work order prior to initiating "your work" if the "original estimated cost" of "your work" exceeds $500.

3.   **Exclusions**
   **a.   Architectural and Engineering Professional Liability**

Any liability arising out of the rendering of or failure to render the "professional services" whether such services are provided to others:

**(1)**   By you or on your behalf; or

**(2)**   By independent professionals you have provided or hired to provide engineering, architectural or surveying services in connection with construction work you perform.

   **b.   Asbestos, "Pollutants", "Fungus" and Lead**

Any liability of any nature arising out of, attributable to, or any way related to asbestos, "pollutants", "fungus" or lead in any form or transmitted in any manner, including any loss, cost, or expense arising out of any:

**(1)**   Request, demand, or order that any insured or others test for, monitor, clean up, remove, remediate, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of asbestos, "pollutants", "fungus" or lead; or,

**(2)**   "Claim" or "suit" by or on behalf of any governmental authority for damages resulting from the testing for, monitoring, cleaning up, removing, remediating, containing, treating, detoxifying, neutralizing or in any way responding to or assessing the effects of asbestos, "pollutants", "fungus" or lead.

**c. Bankruptcy**

Any liability arising out of your insolvency or bankruptcy or the insolvency or bankruptcy of any person or entity for which the insured may be liable.

**d. Bodily Injury and Personal or Advertising Injury**

Any liability arising from:

**(1)** "Bodily injury"; or

**(2)** "Personal and advertising injury".

**e. Bridges and Dams**

Any liability in connection with:

**(1)** Bridges exceeding 150 feet in length; or

**(2)** Dams.

**f. Construction Materials and Tools**

**(1)** Any cost or expense for additional products or materials that would not have been incurred had the correct recommendations or specifications been made;

**(2)** Any material or products that have been recalled, identified as not conforming to industry safety standards, identified as illegal, banned, outlawed, identified to be in violation of statute, or not approved for sale or use in the United States of America by any industry or governmental authority or agency. This exclusion also applies to any work related to any such material or products;

**(3)** Any liability arising from a decision to substitute a material or product or to deviate from a process or procedure that was specified on:

**(a)** Blueprints;

**(b)** Work orders;

**(c)** Contracts or;

**(d)** Engineering specifications; or

**(4)** Any materials or tools that will be used in another project

unless there has been written authorization from us.

**g. Contractual Liability**

Any liability of others assumed by you or any other insured under any contract or agreement, whether oral or in writing.

**h. Criminal, Fraudulent and Intentional Acts**

Any liability arising out of the criminal, fraudulent and intentional acts by or at the direction of any insured.

**i. Delay**

Any liability arising from a delay in or failure related to:

**(1)** The completion a contract or project; or

**(2)** The completion a contract or project on time.

**j. Electronic Data**

Any liability arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**k. Estimates, Financing and Legal Work**

Any liability because of an error or omission:

**(1)** In the preparation of estimates of probable job costs or cost estimates being exceeded, estimates of profit or return on capital.

**(2)** In advising or failing to advise on financing of the work or project.

**(3)** In advising or failing to advise on any legal work, title checks, form of insurance or suretyship.

**l. Expected or Intended**

Any "loss" expected or intended from the standpoint of the insured.

**m. Exterior Insulation and Finish System**

Any liability arising out of the "exterior insulation and finish system".

**n. Intellectual Property**

Any liability which arises out of any:

    **(1)** Actual or alleged infringement of copyright or trademark or patent;

    **(2)** Unfair competition or piracy; or

    **(3)** Theft or wrongful taking of concepts or intellectual property.

**o. Manufacturer's Warranties**

Any liability arising out of manufacturer's warranties or guarantees, whether express or implied.

**p. Non-Monetary Damages**

All "claims" alleging, arising out of, based upon, or attributable to any proceeding whether:

    **(1)** Civil;

    **(2)** Criminal; or

    **(3)** Administrative

in which the relief sought is other than monetary damages, including but not limited to:

    **(a)** Proceedings seeking injunctive relief;

    **(b)** Declaratory relief;

    **(c)** Disgorgement;

    **(d)** Other equitable remedies;

    **(e)** Those arising out of any kind of criminal proceedings; or

    **(f)** Civil or criminal fines or penalties imposed by law, punitive or exemplary damage or any other type of non-compensatory damages, the multiplied portion of multiplied damages, taxes, any amount for which an insured is not financially liable, or matters which are deemed uninsurable under the law pursuant to which this coverage shall be construed.

**q. Other Coverage**

The coverage provided under this Errors and Omission Coverage shall not apply under any circumstances to the extent any "claim" hereunder is covered under a policy or endorsement or other form of coverage that provides Operations coverage, Products Liability coverage or Completed Operations coverage.

**r. Other Insured Enterprises**

    **(1)** Any liability arising out of services performed by or for an insured other than the **Contractor Services** shown in the **SCHEDULE** above;

    **(2)** Any liability arising from "claims" brought against the insured by a business enterprise (or its assignees) which is wholly or partly owned, operated or managed by any insured, or which has directly or indirectly any interest in your ownership or management.

**s. Owned or Rented Property**

Any liability arising from "property damage" to property:

    **(1)** Owned by;

    **(2)** Rented to; or

    **(3)** Leased to

any insured.

**t. Products**

Any liability arising from "property damage" to products that are in your physical possession.

**u. Profit**

Any liability arising from your loss of:

    **(1)** Profit; or

    **(2)** Expected profit.

**v. Property Damage**

Any liability arising from "property damage" to property other than "your product", "your work" or "impaired property"

arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work".

### w. Right of Action

Any liability arising from "claims" or "suits" where the right of action against an insured has been relinquished or waived.

### x. Subcontracted Work

Any liability, including liability for "property damage" to "your work", "your product" or "impaired property", arising out of work that was performed on your behalf by a subcontractor or any person or organization other than an insured.

### y. Undamaged Property

Any liability, cost or expense arising out of "your work" or "your product" that does not constitute "property damage".

### z. Your Work Not Completed

Any liability arising out of "your work" or "your product" before you have completed "your work". "Your work" will be deemed completed at the earliest of the following times:

**(1)** When all the work called for in your contract or work order has been completed;
**(2)** When all the work to be done at the job site has been completed if your contract calls for work at more than one job site; or
**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, partial repair or replacement, but which is otherwise complete, will be treated as completed.

## B. SUPPLEMENTARY PAYMENTS - CONTRACTORS ERRORS AND OMISSIONS COVERAGE

We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend until our limit of liability is exhausted by payment of "loss":

**1.** All expenses we incur in the defense of any "claim" or "suit" covered hereunder.
**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
**3.** All reasonable expenses incurred by any insured at our request to assist us in the investigation or defense of the "claim" or "suit" including actual loss of earnings up to $250 a day due to time off from work.
**4.** All court costs taxed against an insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against an insured.
**5.** Prejudgment interest awarded against an insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## C. The following is added to **SECTION II – WHO IS AN INSURED**, paragraph **3.**:

**a. Contractors Errors and Omissions Coverage** does not apply to "wrongful acts":

**(1)** That were committed or existed before you acquired or formed the organization; or
**(2)** That are committed by the newly acquired or formed organization if it is not engaged in providing the **Contractor Services** described in the **SCHEDULE** above.

## D. SECTION III LIMITS OF INSURANCE, paragraphs **1.** and **2.** are replaced by the following:

**1.** The Coverage Limits of Insurance shown in the Schedule above and the rules below are the most we will pay for any "loss" regardless of the number of:

**a.** Insureds;

    **b.** "Claims" made or "suits brought;

    **c.** Persons or organizations making "claims" or bringing "suits"; or

    **d.** "Wrongful acts".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

    **a.** Medical expenses under **COVERAGE C**;

    **b.** Damages under **COVERAGE A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

    **c.** Damages under **COVERAGE B**; and

    **d.** "Losses" under **CONTRACTORS ERRORS AND OMISSIONS COVERAGE**.

**E.** The following are added to **SECTION III LIMITS OF INSURANCE**

    **1.** Subject to General Aggregate Limit, the Contractors Errors and Omissions Coverage Aggregate Limit is the most we will pay for the sum of all "losses" under **CONTRACTORS ERRORS AND OMISSIONS COVERAGE**.

    **2.** Subject to the Contractors Errors and Omissions Coverage Aggregate Limit above, the Contractors Errors and Omissions Coverage Limit Option shown in the **SCHEDULE** above is the most we will pay as the result of any one "loss".

Any "claim" or aggregation of "claims" resulting from any one "wrongful act" will be considered one "loss".

    **3.** Deductible

        **a.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

            **(1)** **PER CLAIM BASIS**. If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies to all damages sustained by any one person because of "property damage" as the result of any one "loss". With respect to "property damage", person includes an organization.

            **(2)** **PER LOSS BASIS.** If the deductible amount indicated in the Schedule above is on a "per loss" basis, that deductible amount applies to all damages because of "property damage" as the result of any one "loss", regardless of the number of persons or organizations who sustain damages because of that "loss".

        **b.** The terms of this insurance, including those with respect to:

            **(1)** Our right and duty to defend the insured against any "suits" seeking those damages; and

            **(2)** Your duties in the event of an "loss", claim, or "suit"

apply irrespective of the application of the deductible amount.

        **c.** We may pay any part or all the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**F.** With respect to **Contractors Errors and Omissions Coverage**, **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, paragraph **4. Other Insurance**, **b. Excess Insurance** is replaced by the following:

    **b.** **Excess Insurance**

        **(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the **Contractors Errors and Omissions Coverage Period** shown in the **SCHEDULE** above and applies to "property damage".

        **(2)** When this insurance is excess, we will have no duty to defend an insured against any "suit" if any other insurer has a duty to defend such insured against that "suit". If no other insurer defends, we will undertake such defense, but we will be entitled to your rights against any other insurers.

        **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

            **(a)** The total amount that all such other insurance would pay for the loss in the absence of this

insurance; plus

    **(b)** The total of any deductible and self-insured amounts underlying all such insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the applicable limits of insurance shown in the **SCHEDULE** above. The method of sharing shall be as described in paragraph 3 below.

**G.** With respect to **Contractors Errors and Omissions Coverage**, the following definitions replace their counterparts in **SECTION V – DEFINITIONS**:

**1.** "Coverage territory" means anywhere in the world, provided the "claim" or "suit" is brought against an insured within the United States of America, its territories or possessions or Canada.

**2.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because it incorporates "your product" or "your work" that is found to be defective, deficient, inadequate or dangerous but only if such "impaired property" can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work".

"Impaired property" does not include property that is impaired due to:

    **a.** You or anyone acting on your behalf knowingly failing to fulfill the terms of a contract or agreement; or

    **b.** The result of sudden and accidental physical injury to "your product" or "your work".

**3.** "Your product"

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products; but

    **b.** Does not include:

        **(1)** Vending machines or other property rented to or located for the use of others but not sold; or

        **(2)** Either:

            **(a)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; or

            **(b)** The providing of or failure to provide warnings or instructions.

**4.** "Your work" means:

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations; but

    **b.** Does not include:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; or

        **(2)** The providing of or failure to provide warnings or instructions.

**H.** With respect to **Contractors Errors and Omissions Coverage**, the following definitions are added to **SECTION V – DEFINITIONS**.

**1.** "Actual original cost" means the original amount paid to the insured for the work completed. In the event that the customer does not pay any amount to the insured for the work done, "actual original cost" means the total cost that the insured has quoted to the customer for the completion of "your work".

The "actual original cost" includes any materials that are included in the amount paid to or quoted by the insured for the job.

**2.** "Claim" means a written demand or "suit" which seeks monetary damages for:

    **a.** "Property damage" to "your product";

 Includes material copyrighted by Insurance Services Office, Inc. used with its permission

    **b.** "Property damage" to "your work"; or

    **c.** "Property damage" to "impaired property" arising out of a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work".

**3.** "Electronic data" means information, facts or programs:

    **a.** Stored as or on;

    **b.** Created or used on; or

    **c.** Transmitted to or from;

computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**4.** "Exterior insulation and finishing system" means a type of building exterior wall cladding system that provides exterior walls with an insulated finished surface and waterproofing in an integrated composite material system.

**5.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**6.** "Interrelated wrongful acts" means all "wrongful acts" related to a specific job or project for a specific customer at a specific location or premises that contributed to a covered "claim".

**7.** "Loss(es)" means monetary amounts to which this insurance applies and which you are legally obligated to pay for judgments and settlements.

However, "loss" shall not include:

    **a.** Civil or criminal fines or penalties imposed by law;

    **b.** Any amounts for which you are not financially liable or for which there is no legal recourse against you;

    **c.** The costs and expenses of complying with any injunctive or other form of equitable relief;

    **d.** Punitive or exemplary damages, the multiplied portion of multiplied damages; or

    **e.** Matters which may be deemed uninsurable under the law.

**8.** "Original estimated cost" means the total cost that you have quoted to the customer for completion of "your work". The "original estimated cost" includes any materials that are included in the amount paid to the insured for the job.

**9.** "Professional services" means:

    **a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**10.** "Wrongful Act" means any actual or alleged negligent act, error or omission resulting in "property damage", arising out of the performance of Contractor Services shown in the **SCHEDULE** above.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FOREIGN DRYWALL CONTAMINANTS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY POLICY

The following is added to **SECTION I - COVERAGES**, **Coverage A Bodily Injury and Property Damages Liability**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**

1.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, caused by, or contributed to by the discharge, dispersal, seepage, migration, release, escape, inhalation, ingestion, existence, or presence of one or more "foreign drywall contaminants" at any time.   This exclusion only applies if the injury and/or damage is caused by, or is a result of, the emission of fumes, odors, vapors, and/or leaching of substances from building materials, drywall or drywall components.

2.  Any damages or any loss, cost or expense arising out any (i) claim or suit by or on behalf of any governmental authority or any other alleged responsible party, or because of (ii) request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be responsible for:

    a. Assessing the presence, absence or amount or effects of "foreign drywall contaminants";

    b. Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating "foreign drywall contaminants".

3.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

4.  Any obligation to share damages with or repay someone else in connection with any of the subsections above.

    As used in this exclusion, "Foreign drywall contaminants" are described as chemicals or compounds that can be in a solid, liquid or gaseous form. They can be contained in or applied to certain drywall (also known as gypsum board, plasterboard, sheetrock and wallboard) or drywall components. They also can be found or created when such drywall or drywall components come into contact with other elements. They allegedly or actually cause damage to property, corrode materials, emit noxious odors, cause health problems and/or otherwise act as a contaminant or irritant. They include but are not limited to, the following: butanethial, carbon disulfide, carbonyl sulfide, hydrogen sulfide, mercaptan, methylthio pyridine, sulfuric acid, sulfurous acid, sulfur dioxide and strontium sulfide. This includes drywall manufactured anywhere other than the United States of America (including its territories and possessions), Puerto Rico and Canada.

    All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDOMINIUM, TOWNHOME, TIMESHARE AND TRACT HOME EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES**, **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGES LIABILITY,** paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the construction  of:

**(1)** "Condominiums" or "townhomes";

**(2)** Any location which has been or becomes converted into "condominiums" or "townhomes", regardless of whether:

    **(a)** Any insured had involvement in the  conversion;

    **(b)** Any insured had knowledge of the  conversion;

    **(c)** The conversion is prior to or subsequent to any insured's work at the  location.

**(3)** Timeshare developments; or

**(4)** Any project or location on which more than 10 houses have been built or are in any stage of development, planning, or construction.

This exclusion does not apply to:

**(1)** Non-structural remodeling within one unit on a premises or in a building described in paragraphs 1, 2, or 3 above; or

**(2)** Remodeling or additions to a single house in a development described in paragraph 4. above;  or

**(3)** Maintenance, service, or non-structural repairs to common areas of a completed and occupied development or project.

As used in this exclusion, "condominiums" and "townhomes" mean a unit of residential real property in a multi-unit residential building or project where each unit is separately  owned and titled.

All other terms and conditions of the policy remain unchanged.

Includes material copyrighted by Insurance Services Office, Inc. used with its permission

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES**, **Coverage A Bodily Injury and Property Damages Liability**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE  B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**

"Bodily injury" or "property damage" or "personal and advertising injury" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "lead"

As used in this exclusion, "Lead" means the element in any form.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – NON-COMPENSATORY DAMAGES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

**PUNITIVE DAMAGES**

This insurance does not apply to any claim for or awards of non-compensatory damages, including, but not limited to:

1.  Punitive, exemplary or multiple damages;

2.  Equitable or non-pecuniary relief; or

3.  Fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards.


All other terms and conditions of the policy remain unchanged.

**POLICYHOLDER DISCLOSURE**

**NOTICE OF TERRORISM INSURANCE COVERAGE**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Risk Insurance Coverage**

|   | I hereby elect to purchase terrorism coverage for a prospective premium of $ 22.35           . |
|---|---|
| X | I hereby decline to purchase terrorism coverage for certified acts of terrorism.  I understand I will have no coverage for losses resulting from certified acts of terrorism. |

State National Insurance Company, Inc.

_____          _____
Policyholder/Applicant's Signature                    Insurance Company

Shlomi Abittan                                          NXTYHC6TE9-01-GL
_____          _____
Print Name                                              Policy Number

08/04/2022
_____
Date

_____

NXT-0073 BM GL 0418    Includes copyrighted material of National Association of Insurance Commissioners, with its permission.

# State National Insurance Company, Inc.

## Policy Holder Privacy Statement

As a policyholder of State National Insurance Company, Inc., you may remember that you purchased your State National Insurance Company, Inc. policy from an insurance agent. Please understand that the agent from whom you purchased your State National Insurance Company, Inc. policy is not affiliated with State National Insurance Company, Inc., but rather is a separate legal entity.  In the process of purchasing your State National Insurance Company, Inc. policy, you may have provided your insurance agent with various information, including nonpublic personal information about yourself.  You did not provide any such information directly to State National Insurance Company, Inc., but on occasion we may receive such information from your insurance agent.  This statement is intended to explain and disclose State National Insurance Company, Inc.'s policies and practices regarding the collection, disclosure and protection of such information.

State National Insurance Company, Inc. will provide customers like yourself with a copy of our privacy policy at the beginning of our relationship and annually thereafter, unless and until our relationship ends.  As our products and services continue to evolve, it may be necessary to review and revise our privacy policies, in which case we will provide you with an updated privacy notice.

I.      Financial Information Collected.

During the ordinary course of our business, State National Insurance Company, Inc. may – as explained above – collect information about you from the following sources:

- Information the insurance agent receives from you on applications or other forms;
- Information about your transactions (including claims) with us, our affiliates and others; and
- Information we receive from other agents, brokers, administrators, insurance support agencies, legal counsel, consumer reporting agencies and government reporting agencies.

II.     Financial Information Disclosed.

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business.

III.    Parties To Whom Information is Disclosed.

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business.

IV.     Confidentiality and Security of Information.

We restrict access to information about you to those employees who need to know that information to provide products or services to you.  We maintain physical, electronic, and procedural safeguards to guard your information.

V.    <u>Access to and Correction of Your Information</u>.

You may write to us if you have any questions about the information that we may have in our records about you.  We will respond within 30 business days from the date such request is received to your inquiry.  If you wish, you may review this information in person or receive a copy at a reasonable charge.  You can notify us in writing if you believe any information should be corrected, amended, or deleted and we will review your request.  We will either make the requested change or explain why we did not do so.  If we do not make the requested change, you may submit a short written statement identifying the disputed information, which will be included in all future disclosures of your information.

We value your business.  This statement is for your information.  No response is necessary.

Secretary

President

**INTERLINE**

# STATE NATIONAL INSURANCE COMPANY, INC.

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

SNC-IL-0719-OFAC-N

INTERLINE

# STATE NATIONAL INSURANCE COMPANY, INC.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited, to those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

SNC-IL-0719-TOES-E

# EXHIBIT C

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 07/15/2024 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Next First Insurance Agency, Inc.<br>PO Box 60787<br>Palo Alto, CA 94306 | PHONE (A/C, No, Ext): (855) 222-5919 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : State National Insurance Company, Inc. | | 12831 |
| INSURED | INSURER B : | | |
| David Abittan<br>Your Prime Contractor Inc. DBA Prime Construction<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES    CERTIFICATE NUMBER: 856773255    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** [X]<br>CLAIMS-MADE [ ] [X] OCCUR<br><br>GEN'L AGGREGATE LIMIT APPLIES PER:<br>[X] POLICY [ ] PRO-JECT [ ] LOC<br>OTHER: | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | EACH OCCURRENCE | $1,000,000.00 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000.00 |
| | | | | | | | MED EXP (Any one person) | $15,000.00 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000.00 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000.00 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000.00 |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY**<br>[ ] ANY AUTO<br>[ ] OWNED AUTOS ONLY [ ] SCHEDULED AUTOS<br>[ ] HIRED AUTOS ONLY [ ] NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | [ ] **UMBRELLA LIAB** [ ] OCCUR<br>[ ] **EXCESS LIAB** [ ] CLAIMS-MADE<br>[ ] DED [ ] RETENTION $ | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N<br>ANYPROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBEREXCLUDED? [ ] N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | [ ] PER STATUTE [ ] OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Contractors Errors and Omissions | | | NXTYHC6TE9-01-GL | 08/04/2022 | 08/04/2023 | Each Occurrence: | $25,000.00 |
| | | | | | | | Aggregate: | $50,000.00 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Proof of Insurance.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| David Abittan<br>Your Prime Contractor Inc. DBA Prime Construction<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Ann Ryan* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**    The ACORD name and logo are registered marks of ACORD

# ACORD® CERTIFICATE OF PROPERTY INSURANCE

**DATE (MM/DD/YYYY)**
07/15/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

| PRODUCER Next First Insurance Agency, Inc.<br>PO Box 60787<br>Palo Alto, CA 94306 | CONTACT NAME: | | |
|---|---|---|---|
| | PHONE (A/C, No, Ext): (855) 222-5919 | | FAX (A/C, No): |
| | E-MAIL ADDRESS: support@nextinsurance.com | | |
| | PRODUCER CUSTOMER ID: | | |
| | **INSURER(S) AFFORDING COVERAGE** | | **NAIC #** |
| INSURED   David Abittan<br>Your Prime Contractor Inc. DBA Prime Construction<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | INSURER A : State National Insurance Company, Inc. | | 12831 |
| | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: 856773255 | | REVISION NUMBER: |
|---|---|---|---|

LOCATION OF PREMISES / DESCRIPTION OF PROPERTY  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|---|---|
| A | X PROPERTY | | NXT7I6AULC-02-CP | 08/04/2023 | 07/15/2024 | | BUILDING | $ |
| | CAUSES OF LOSS | DEDUCTIBLES | | | | X | PERSONAL PROPERTY | $16,500.00 |
| | BASIC | BUILDING | | | | X | BUSINESS INCOME | $Included |
| | BROAD | | | | | X | EXTRA EXPENSE | $Included |
| | X SPECIAL | CONTENTS $500.00 | | | | | RENTAL VALUE | $ |
| | EARTHQUAKE | | | | | | BLANKET BUILDING | $ |
| | WIND | | | | | | BLANKET PERS PROP | $ |
| | FLOOD | | | | | | BLANKET BLDG & PP | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | INLAND MARINE | | TYPE OF POLICY | | | | EQUIPMENT | $ |
| | CAUSES OF LOSS | | | | | | MISC TOOLS | $ |
| | NAMED PERILS | | POLICY NUMBER | | | | BORROWED TOOLS | $ |
| | OPEN PERILS | | | | | | | $ |
| | CRIME | | | | | | | $ |
| | TYPE OF POLICY | | | | | | | $ |
| | BOILER & MACHINERY / EQUIPMENT BREAKDOWN | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |
| | | | | | | | | $ |

SPECIAL CONDITIONS / OTHER COVERAGES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Proof of Insurance.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| David Abittan<br>Your Prime Contractor Inc. DBA Prime Construction<br>22222 Sherman Way Ste 101<br>Canoga Park, CA 91303 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE   *Ann Ryan* |

© 1995-2015 ACORD CORPORATION.  All rights reserved.

ACORD 24 (2016/03)                    The ACORD name and logo are registered marks of ACORD

## PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, the undersigned, declare: I am employed in the County of Los Angeles, State of California. I am over the age of 18. My business address is 15243 La Cruz Dr., 67, Pacific Palisades, California 90272. I am readily familiar with the business practice of processing of documents for service for Mostafavi Law Group, APC. September 10, 2025, I served a true and correct copy of the foregoing document(s) described as:

### FIRST AMENDED COMPLIANT

On all the following interested parties as indicated below:

Schilleci & Tortorici, p.c.
Jason p. Tortorici
Anthony c. Kohrs
21225 pacific coast Hwy, suite C, Malibu, ca 90265
Telephone (424) 255-6009 | Facsimile (205)623-3700
Jpt@schillecitortoricilaw.com ack@themilleniallawyer.com
Attorneys for defendant state national insurance company

by causing service by the method indicated below:

> U.S. Mail – By placing a copy of said document(s) in a sealed envelope with postage thereon fully prepaid, and depositing said envelope with the U.S. Postal Service via U.S. First Class Mail, following this office's business practices.
> Overnight Delivery - By placing a copy of said document(s) in a sealed prepaid overnight envelope or package, and depositing said envelope or package today in a box or other facility regularly maintained by the express service carrier, following this office's business practices.
> Personal Service – By personally delivering said document(s) in an envelope or package clearly labeled to identify the attorney/party located at the office(s) of the addressee(s) stated above.
> Facsimile – By placing a true copy thereof into a facsimile machine to the fax number stated above, as agreed upon, in writing, by parties or attorneys of the record.
> X   Electronic Service – By electronically sending a copy of said document(s) to the attorney or party as stated above and as agreed upon, in writing, by the parties, or their attorneys of the record.

I declare under the penalty of perjury under laws of the State of California that the foregoing is true and correct. Executed on September 10, 2025, at Los Angeles, California.

*Amir Mostafavi*

_____
Amir Mostafavi

31

FIRST AMENDED COMPLIANT

# EXHIBIT E

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Santa Monica Courthouse, Department J

25SMCV03852                                              September 24, 2025
**NM FAMILY TRUST, DATED JULY 10, 2018 vs STATE**                    8:30 AM
**NATIONAL INSURANCE COMPANY, INC.**

Judge: Honorable Mark H. Epstein            CSR: None
Judicial Assistant: E. Morris               ERM: None
Courtroom Assistant: A. Crespin             Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Amir Mostafavi (via LA Court Connect)

For Defendant(s): Jason Patrick Tortorici (via LA Court Connect)

**NATURE OF PROCEEDINGS:** Hearing on Demurrer - without Motion to Strike

The matter is called for hearing in Department I.

The Court and counsel confer regarding the status of the case, the amended complaint and relating this matter with 23SMCV05401.

The Court notes that this matter was recently transferred from Department J and requires additional time to review the case.

The parties are directed to meet and confer regarding the procedural appropriateness of filing a demurrer in this matter, and to explore whether alternative resolutions may be more suitable.

The order On Notice of Related Case is signed and filed.

The Court finds that the following cases, 25SMCV03852 and 23SMCV05401, are related within the meaning of California Rules of Court, rule 3.300(a). 23SMCV05401 is the lead case. For good cause shown, said cases are assigned to Judge Mark H. Epstein in Department I at Santa Monica Courthouse for all purposes.

All hearings in cases other than the lead case are advanced and taken off calendar. This order is made without prejudice to the parties making a motion to consolidate in the newly assigned department. The moving party is ordered to serve notice of this order (including hearings vacated, if necessary) by mail forthwith on all interested parties within ten (10) days of the receipt of this minute order.

The Court sets a Case Management Conference for case number 25SMCV03852 only.

Case Management Conference Re: 25SMCV03852 is scheduled for 10/27/2025 at 09:00 AM in

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Santa Monica Courthouse, Department J

**25SMCV03852**                                                                September 24, 2025
**NM FAMILY TRUST, DATED JULY 10, 2018 vs STATE**                                      8:30 AM
**NATIONAL INSURANCE COMPANY, INC.**

Judge: Honorable Mark H. Epstein            CSR: None
Judicial Assistant: E. Morris               ERM: None
Courtroom Assistant: A. Crespin             Deputy Sheriff: None

Department I at Santa Monica Courthouse.

On the Court's own motion, the Hearing on Demurrer - without Motion to Strike scheduled for
09/24/2025 is continued to 10/27/2025 at 09:00 AM in Department I at Santa Monica
Courthouse.

Plaintiff's counsel is to give notice.

---

Minute Order                                                                   Page 2 of 2

1

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I, the undersigned, declare: I am employed in the County of Los Angeles, State of California. I am over the age of 18. My business address is 15243 La Cruz Dr., 67, Pacific Palisades, California 90272. I am readily familiar with the business practice of processing of documents for service for Mostafavi Law Group, APC. September 10, 2025, I served a true and correct copy of the foregoing document(s) described as:

**DECLARATION OF AMIR MOSTAFAVI ISO OF MOTION TO DISMISS BASED ON THE COLORADO RIVER ABSTENTION DOCTRINE**

On all the following interested parties as indicated below:

| Catharine M. Tolson, Esq., SBN 271223 GOODMAN, NEUMAN, HAMILTON 100 Bush Street, Suite 1800 San Francisco, CA 94104 T: 415/705-0400 ctolson@gnhllp.com Attorneys for plaintiff STATE NATIONAL INSURANCE COMPANY | Schilleci & Tortorici, p.c. Jason p. Tortorici; Anthony c. Kohrs 21225 pacific coast Hwy, suite C, Malibu, ca 90265 Telephone (424) 255-6009 | Facsimile (205)623-3700 Jpt@schillecitortoricilaw.com ack@themillenniallawyer.com Attorneys for defendant state national insurance company |
|---|---|

by causing service by the method indicated below:

U.S. Mail – By placing a copy of said document(s) in a sealed envelope with postage thereon fully prepaid, and depositing said envelope with the U.S. Postal Service via U.S. First Class Mail, following this office's business practices.

Overnight Delivery - By placing a copy of said document(s) in a sealed prepaid overnight envelope or package, and depositing said envelope or package today in a box or other facility regularly maintained by the express service carrier, following this office's business practices.

Personal Service – By personally delivering said document(s) in an envelope or package clearly labeled to identify the attorney/party located at the office(s) of the addressee(s) stated above.

Facsimile – By placing a true copy thereof into a facsimile machine to the fax number stated above, as agreed upon, in writing, by parties or attorneys of the record.

X    Electronic Service – By electronically sending a copy of said document(s) to the attorney or party as stated above and as agreed upon, in writing, by the parties, or their attorneys of the record.

I declare under the penalty of perjury under laws of the State of California that the foregoing is true and correct. Executed on October 1, 2025, at Los Angeles, California.

*Amir Mostafavi*

_____
Amir Mostafavi

5

DECLARATION OF AMIR MOSTAFAVI ISO OF MOTION TO DISMISS BASED ON THE COLORADO RIVER ABSTENTION DOCTRINE